# EXHIBIT 1
# Part 1 of 2

MC-275

Name _Arcadio Acuna_

Address _Pelican Bay State Prison_

_P.O. Box 7500 / FD3-112_

_Crescent City, CA 95532_

CDC or ID Number _C-43165_

**Original**

**FILED**

OCT 0 6 2005

SUPERIOR COURT OF CALIFORNIA
COUNTY OF DEL NORTE

_Superior Court of California_

_County of Del Norte_

(Court)

| |
|---|
| _Arcadio Acuna_ <br> Petitioner <br> vs. <br> _Richard Kirkland, Warden,_ <br> Respondent |

PETITION FOR WRIT OF HABEAS CORPUS

No. _HCPB 05-5242_

(To be supplied by the Clerk of the Court)

## INSTRUCTIONS — READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Page one of six

- [ ] A conviction
- [ ] Parole
- [ ] A sentence
- [ ] Credits
- [ ] Jail or prison conditions
- [x] Prison discipline
- [ ] Other (specify): _____

Your name: Arcadio Acuns

1. Where are you incarcerated? Pelican Bay State Prison, Crescent City, CA

2. Why are you in custody? [x] Criminal Conviction   [ ] Civil Commitment

*Answer subdivisions a. through i. to the best of your ability.*

a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon"):

Kidnap/robbery (2 counts); prior prison term enhancements

b. Penal or other code sections: P.C. §§ 209(b) / 12022.5

c. Name and location of sentencing or committing court: Superior Court of California — County of Santa Clara

d. Case number: SCL 103259

e. Date convicted or committed: Mar. 9, 1987

f. Date sentenced: Mar. 9, 1987

g. Length of sentence: Life + Life + Life + 8 yrs.

h. When do you expect to be released? 2012

i. Were you represented by counsel in the trial court? [x] Yes.   [ ] No.   If yes, state the attorney's name and address:

N/A

What was the LAST plea you entered? (check one)

[x] Not guilty   [ ] Guilty   [ ] Nolo Contendere   [ ] Other: _____

If you pleaded not guilty, what kind of trial did you have?

[x] Jury   [ ] Judge without a jury   [ ] Submitted on transcript   [ ] Awaiting trial

3. GROUNDS FOR RELIEF

Ground 1: State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

Petitioner Was Denied Notice of the Charges and the Opportunity to Present His Views on the Gang Validation

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

(See Attached Memorandum of Points and Authorities, pp. 1-8)

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

(see Attached Memorandum of Points and Authorities, pp. 1-8)

Petitioner's Validation as a Member of a Prison Gang Is Not Supported By the Evidence

a. Supporting facts:

(see Attached Memorandum of Points and Authorities, pp. 8-14)

b. Supporting cases, rules, or other authority:

(see Attached Memorandum of Points and Authorities, pp. 8-14)

Argument or Ground 3 (if applicable):

Petitioner Was Denied Due Process By Classification
Committee Decision to Impose Indeterminate Term of
Segregation

a. Supporting facts:

(see Attached Memorandum of Points and Authorities, pp 14-16)

b. Supporting cases, rules, or other authority:

(see Attached Memorandum of Points and Authorities, pp 14-16)

Did you appeal from the conviction or commitment? ☐ Yes. ☐ No. If yes, give the following information:

a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

    Court of Appeal

b. Result: Denied                                  c. Date of decision: N/A

d. Case number or citation of opinion, if known: Unknown

e. Issues raised: (1) N/A

    (2) _____

    (3) _____

f. Were you represented by counsel on appeal? ☒ Yes. ☐ No. If yes, state the attorney's name and address, if known:

    Unknown

9. Did you seek review in the California Supreme Court? ☒ Yes. ☐ No. If yes, give the following information:

a. Result: Denied                                  b. Date of decision: N/A

c. Case number or citation of opinion, if known: Unknown

d. Issues raised: (1) Unknown

    (2) _____

    (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

    N/A

11. Administrative Review:

a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See In re Muszalski (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

    Exhausted Administrative Remedies by Institutional Appeal
    CDC-602 through Director's Level of Review. (see Attached,
    #16-32, Exhibit-C, CDC-602).

    _____

    _____

    _____

    _____

b. Did you seek the highest level of administrative review available? ☒ Yes. ☐ No.
    Attach documents that show you have exhausted your administrative remedies.

MC-275 [Rev. January 1, 1999]          PETITION FOR WRIT OF HABEAS CORPUS                    Page five of six

Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court? If yes, continue with number 13. If no, skip to Page 8 of 40

a. (1) Name of court: Superior Court of Calif. Del Norte County

(2) Nature of proceeding (for example, "habeas corpus petition"): habeas Corpus petition

(3) Issues raised: (a) petitioner was denied due process by Classification Committee decision to impose Indeterminate term of Segregation

(b) petitioner's validation as a member of prison gang not supported by evidence

(c) petitioner was denied notice of charges and opportunity to present views on gang validation

(4) Result (Attach order or explain why unavailable): denied for failure to exhaust administrative remedy

(5) Date of decision: June 20, 2005 (see Exhibit - A)

b. (1) Name of court: Superior Court of Cahf. Del Norte County

(2) Nature of proceeding: Motion for Reconsideration

(3) Issues raised: (a) failure to exhaust administrative remedies can be excused

(b) _____

(4) Result (Attach order or explain why unavailable): Motion denied

(5) Date of decision: July 18, 2005 (see Exhibit - B)

c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

N/A

5. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)

N/A

. Are you presently represented by counsel? ☐ Yes. ☒ No. If yes, state the attorney's name and address, if known:

7. Do you have any petition, appeal, or other matter pending in any court? ☐ Yes. ☒ No. If yes, explain:

8. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

N/A

, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that he foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as o those matters, I believe them to be true.

Date: 10/2/05

Arcadio Quines
(SIGNATURE OF PETITIONER)

MC-275 [Rev. January 1, 1999]          PETITION FOR WRIT OF HABEAS CORPUS          Page six of six

Arcadio Acuna # C-43165
PBSP-SHU 1FD3-112
P.O. Box 7500
Crescent City, Calif. 95532


In pro per


Superior Court of California
County of Del Norte


Arcadio Acuna,                    | Case No._____
        petitioner,               |
                                  |
    vs.                           | Memorandum of Points and
Richard Kirkland, warden,         | Authorities in Support of
        Respondent.               | Petition for writ of Habeas
                                  | Corpus


## Introduction

Petitioner, Arcadio Acuna, is a prisoner currently housed in the Security Housing Unit (SHU) of Pelican Bay State Prison, in crescent City, California. He previously filed a petition for writ of habeas corpus in the Superior court of Del Norte County challenging the validation process, placement in the SHU, and committee action to retain him on indeterminate status, but the petition was denied on

(1)

June 20 2005, for failure to exhaust administrative remedies. (see Exhibit-A)

On Sept. 28, 2005, petitioner finally received the Director's Level Response to the appeal he originally filed more than 18-months ago. (see Exhibit-C, Director's Review dated Sept. 28, 2005) The appeal was denied, holding that there was sufficient evidence to warrant re-validation as a gang "associate", but did not address the issue of petitioner not being provided disclosure of confidential information before the validation package was submitted to the LEIU, and did not explain why petitioner was never interviewed at any level of the appeal as required by the Code of Regulations.

Additionally, the Director's Level Review made reference to a Second Level Review response (see Exhibit-C, p.   ) and provided a Supplemental Second Level response which petitioner had not previously been given. The Supplemental page was undated and mistakenly states petitioner validated as an "associate", and claims petitioner provided with one CDC-1030 Disclosure Form showing information deemed reliable per § 3321. (see Exhibit.   , p.11 ) The response also did not specifically address each of challenges petitioner made to the source items used in the validation process, or explain why petitioner was not interviewed at this stage of the appeal as required by the Code of Regulations.

Petitioner, herein challenges the lack of due process afforded during the validation process (labeling him a "member" of a

(2)

prison gang, disputes the source items relied on in that process, and asserts he was denied due process at the classification hearing which decided to impose an indeterminate term of segregation, submitting that this case is a classic example of an arbitrary action taken by prison officials because petitioner refused to become an informant. A review of the institutional appeal(s) he filed also shows a flagrant disregard for the procedures required for a fair adjudication of claims, and reveals the bad faith with which prison officials acted at each step of the appeal in an effort to simply rubber-stamp the decision made by the LEIU.

## I.

### Petitioner was Denied Notice of the Charges and the Opportunity to Present his Views on his Gang Validation

As a preliminary matter, petitioner asserts that Calif. law grants prisoners a state-created liberty interest in "remaining in the general prison population and not being confined in a security housing unit." (Madrid v. Gomez, 889 F.Supp. 1146, 1270-71, see also Cato v. Rushin, 824 F.2d 703, 704 (9th cir. 1987), Hewitt v. Helms, 459 U.S. 460, 466 (1982), Wolff v. McDonnell, 418 U.S. 539 (1974)).

Furthermore, it is firmly established that Calif. Code of Regulations, §§ 3335(a), 3336, and 3339(a), "taken together create a constitutionally protected liberty interest to be free from placement in ad.seg." (Madrid, supra, 889 F.Supp. at 1270). Also of particular relevance is § 3341.5, which "explicitly and substantially limits the exercise of official discretion" to retain inmates in

the SHU (Id. at 1271).

Underscoring petitioner's state created liberty interests are three recognized requirements of due process: (1) prison officials must hold an informal non-adversarial hearing within a reasonable time after prisoner is segregated; (2) prison officials must inform prisoner of charges against him or their reasons for considering segregation; and (3) prison officials must allow prisoner to present his views. (Toussaint v. McCarthy, 801 F.2d 1080, 1100-01 (9th cir. 1986), cert. denied 481 U.S. 1069 (1987); Madrid v. Gomez supra., 889 F.Supp. at 1270-75 (aff'g. Toussaint IV, 926 F.2d 800 (9th cir 1990)[holding that SHU prisoners must be allowed to present their views to gang coordinator, and affirming that SHU confinement falls in the ambit of ad. seg. rather than disciplinary action, while recognizing that SHU confinement carries a more significant liberty interest than ordinary segregation (emphasis added)]).

Due process further requires that the official charged with deciding to retain inmate in segregation must be the official to whom the inmate presents his views. (Toussaint v. McCarthy, 918 F.2d 752 (9th cir. 1990)). The U.S. Supreme Court has explicitly held that due process affords prisoners "an opportunity to present his views" to the official "charged with deciding whether to transfer him to ad. seg. (Hewitt v. Helms, supra., 459 U.S. at 426)

Moreover, prison officials must give notice of the evidence considered in a hearing prior to the hearing, and give a prisoner

(4)

the opportunity to be heard at the hearing where the decision is made, not subsequent hearings. (mudrid, supra., 889 F.Supp. at 1270-75) (allg. Toussaint v, 711 F.Supp. 536, 541 ["difficulties engendered in determining prison gang membership may create a need for special due process procedures to ensure compliance with constitutional requirements" resulting in notice and opportunity to be heard prior to review by gang coordinator]).

The requirement that due process be afforded to specific prison decisions is additionally supported by other provisions contained in Calif. Code of Regulations. Namely, $.3320(c)(1-2)$, requires that for disciplinary violations no disciplinary hearing may be held until an inmate has been given 24-hr. notice of all "non-confidential reports to be relied upon in the hearing." And, in the administrative context, $.3375(c)(7)$, provides that SHU inmates he given at least 72-hrs. notice of classification hearing. Clearly, the purpose behind this concept of due process is that part of the function of notice is to give the charged party a chance to marshal the facts in the defense and clarify what the charges are, in fact. (In re Garrett, 387 U.S. 1, 33-34 (1967)).

Thus, under the facts of this case petitioner asserts that there can be no mistaking that due process required that notice and an opportunity to be heard by the actual decision maker should have occurred prior to the decision being made to validate him as a member of a prison gang.

A review of the record here shows that petitioner, a 53-yr. old prisoner serving a sentence of triple-life, plus 8-yrs., has

(5)

been continuously confined in various Calif. prisons since 1985, and served a previous term of indeterminate segregation in PBSP-SHU from 1990-2000, after being validated as an "associate" of a prison gang. Soon after §3328(e) was incorporated into Calif. Code of Regulations, petitioner was granted "in-active" status in may 2000, and ordered released to the general population. (see Exhibit-D, ¶¶.34-36)

Petitioner was transferred from PBSP-SHU to the general prison population of Calif. Correctional Institution, Tehachapi, Calif., on July 20, 2000, where he remained for two-years. During this time period, petitioner was assigned to various jobs, earned average or above average job performance reports from his supervisors (see Exhibit-D, ¶¶37-39), completed a 12-week Anger Management/Substance Abuse Self-Help Program (see Exhibit-D p.78), and received one disciplinary report CDC-115 in May 2001, for possession of inmate manufactured alcohol.

On May 20, 2002, petitioner was transferred to Calif. State Prison-L.A. County, Lancaster, Calif., after requesting and being granted a hardship transfer because of medical issues concerning his only surviving sibling, and a need to be housed closer to his daughter and grandchildren. (see Exhibit-D, p.40) During the almost two-years petitioner was housed at this prison, he earned numerous certificates of completion in his vocational assignments, and was given laudatory job performance reports from his supervisors. (see Exhibit-D, pp.41-52) He received no CDC-115 Rules Violation Reports, but in Dec. 2003, was advised by

(6)

gang coordinator Lt. Garcilazo a validation package would be submitted to the LEIU to send him back to PBSP-SHU unless he agreed to become an informant. Petitioner refused to do so, no specific acts of gang activity were charged, and petitioner was not provided with CDC-1030 Confidential Disclosure forms outlining the information being considered in the validation process.

Petitioner, remained in the general population at Calif. State Prison - L.A. County, until Mar. 1, 2004, when he was given a non-adverse transfer to Calipatria State Prison. On Mar. 5, 2004, petitioner was placed in ad seg. after prison officials received notice from LEIU he had been validated as a gang member on Jan. 20, 2004. (see Exhibit - , pp. 14-15)

On Mar. 11, 2004, petitioner challenged the validation process and each of the source items used in that process via 4-separate appeals, CDC-602 (see Exhibit - C, pp. 6-92), arguing that he had been denied due process in a number of ways, including the fact he was not provided with CDC-1030 Disclosure forms. The gang coordinator at Calipatria on Apr. 4, 2004, provided the requested disclosures (Exhibit - C, pp. 18, 21, 24), but the appeal took more than 18-months to resolve and not once during the Informal, Formal and Second Level Reviews was petitioner interviewed or provided with written responses explaining why the appeal was being denied. (see Exhibit - C, pp. 6-92)

Instead, when petitioner received the Director's Level Review response on Sept. 28, 2005, it was mistakenly stated that

petitioner had been validated as an "associate", and not a "member", as documented by the LEIU. An undated, never before seen 2nd level Review response was attached to the form, again repeating validation as "associate", and simply ignoring challenges to each source item. (see Exhibit C, p.11)

Finally, petitioner submits that notwithstanding these glaring mischaracterizations of the evidence, it is clear he was not given prior notice of the evidence relied on in validation process and he has never been given an opportunity to present his views to the decision maker who validated him as a gang member — these lapses, under the legal standards set forth above show he was denied due process and as such the validation should be overturned and petitioner released back into the general prison population.

II.

## Petitioner's Validation as a member of a Prison Gang is not supported by the Evidence

Having once been granted in-active status and released from the SHU to the general population, CCR, Title 15, § 3378 (c)(2), establishes that the procedures applicable to an initial validation shall be followed in a subsequent action to validate a prisoner as a member or associate of a prison gang.

Under these procedures, prison officials must support their identification (referred to as a "validation") of a prisoner as a gang member or associate with "at least three independent source items" from the prisoner's file. (CCR, § 3378(c)(3)). These source items

(8)

"must [either] contain factual information or, if from some confidential source, meet the test of reliability established in §3321". (CCR, §3378(c)(2)).

Now, in order for petitioner's gang validation to be lawful, "some evidence" must support it. (Toussaint v. McCarthy, 801 F.2d 1080, 1104 (9th cir. 1986)) Prison officials are required to establish some "indicia of reliability" of the evidence that forms the basis for ad. seg. (Cato v. Rushen, 824 F.2d 703, 704-05 (9th cir. 1981); Madrid v. Gomez, 889 F. supp. 1146, 1274-75 (ND Cal. 1995)).

Additionally in examining the criteria for determining whether petitioner should have been labeled a gang member, CCR, §3023, references the acts which constitute gang activity as those defined in §3000, incorporating into its rules the provisions set forth in Pen. Code § 186.22. (see People v. Castaneda, 23 C.4th 743 (2000); Scales v. U.S., 367 U.S. 203 (1961)). Section 3000 in turn declares gang activity to be "unlawful act or acts of misconduct classified as serious pursuant to §3315", with §3312(a)(3) mandating such acts be reported and adjudicated in CDC-115 Rules Violation Reports.

Thus, according to the department's rules, for petitioner to be labeled a gang "member" it must show he has been accepted into membership by a gang (§3378 (c)(3)(8), and has been found guilty of committing or actively aiding, abetting, promoting or furthering act(s) of misconduct classified as gang activity. As explained below, petitioner asserts the evidence relied on in the validation does not be any means establish that he has been accepted into membership of a prison gang, or that while in the general population from July 2000 to

(9)

Mar. 2004, he engaged in specific activities aiding, abetting, promoting or furthering a prison gang from which it can be deduced he is a member of a prison gang.

Moreover, prison officials now have on numerous occasions documented petitioner was validated as an "associate" (see Exhibit-C, CDC-602 2nd level response, Director's level Response, Exhibit-, CDC-744 date 8/25/05) apparently drawing no distinction between an "associate" and "member" when criteria for each is very distinct. By holding that enough evidence exists to sustain an "associate" label in the Director's level Response to the institutional appeal, the administrative either did not properly review the issues raised in the appeal or are conceding the evidence does not support validation as a "member."

But notwithstanding this glaring inconsistency, petitioner asserts an examination of each of the source items used in the validation reveals they contain nothing more than self-serving, conclusionary allegations devoid of reference to specific acts detailed by time and place, and in spite of the fact the information contained therein was not properly disclosed, petitioner has consistently disputed the reliability of each document, and in the institutional appeal and committee hearings offered a credible defense and material facts challenging the evidence debated as follows:

(1) CDC-128 B, Informational Chrono, dated Sept. 21, 2000 — Information from a confidential source whose reliability was allegedly established by the informant incriminating himself in criminal activity at the time he provided the information (see Exhibit-C, p.18)

states petitioner continued to communicate with a known gang member, Arthur Estrada, while at Calif. Correctional Institutions. Petitioner vehemently denies that he has ever communicated with inmate Estrada, either directly or indirectly, in any way shape or form after his release from PBSP-SHU in July 2000. The source does not identify a specific verifiable instance of any such communication, and the statement is wholly self-serving and conclusionary. If as the source alleges, it was true an act, or acts of communication had taken place, prison officials were required to document this serious rule violation in a Rules Violation Report, CDC-115. (CCR, § 3312(a)(3)) By failing to do so, petitioner was denied the due process that would otherwise have been provided pursuant to § 3315, and allowed for him to be punished for unproven, unfounded and false charges which eventually formed the basis for imposing an indeterminate term of segregation. Notwithstanding the fact petitioner never communicated with inmate Estrada, even if prison officials were permitted to accept the information as true, without a direct link to an act of misconduct aiding, abetting or in furtherance of a prison gang this source item does not prove petitioner has been accepted into membership of a gang.

(2) CDC-128 B, Informational Chrono, dated Sept. 23, 2003 — This second source item alleges petitioner continued to involve himself in gang activities while at Calif. State Prison-L.A. County, by sending money to gang members, and states the reliability of the informant providing the information was established by the individual

incriminating himself in criminal activities while at Calif. State Prison-
Los Angeles County, by sending money to gang members, and states the
reliability of the informant providing the information was established by
the individual incriminating himself in criminal activities at the time
the information was provided. (see Exhibit-C, q.21)   Again, the document-
ed allegations of gang activity are completely self-serving, conclusionary
and were accepted and used without evidentiary support or factual
basis.  Petitioner declares that he has never sent money, either dir-
ectly or indirectly, to any alleged gang member, and stresses that if
the information and the informant providing it were reliable as prison
officials claim, then by not reporting this serious rule violation as
mandated by CCR, §3312(a)(3), petitioner was denied due process
of law allowing prison officials to rely on unfounded, false accusations
to validate him as a gang member and thereafter impose an indeter-
minate term of segregation.

  Moreover, the information by no means establishes by a pre-
ponderance of evidence that petitioner was guilty of committing a
specific act(s) of misconduct, aiding, abetting, promoting or
in furtherance of a prison gang, and certainly by the criteria
set forth in the Code of Regulations does not show petitioner was
accepted into membership by a prison gang.

(3) CDC-128 B, Informational Chrono, dated Dec. 12, 2003 — In the
third source item it was documented a confidential informant
accused petitioner of continuing to participate in some unspecified
gang activity while at Calif. State Prison-L.A. County, with the rel-
iability of the informant being accepted by prison officials, because

as recorded on the disclosure form, part of the information had already proven to be true.(see Exhibit-C, p. 24) No specific acts of misconduct was alleged showing petitioner was guilty of aiding, abetting, promoting or furthering a prison gang, and even if the information had been properly disclosed before validation took place, without notice of the charges he was facing petitioner had no way to present a viable defense other than that which he has always proffered, namely, that he has not been involved in gang activities since his release from PBSP-SHU July 2000, and he is not, and never has been a member of a prison gang.

Finally, petitioner asserts that by the criteria set forth in the Calif. Code of Regulations the information contained in the three source items does not show petitioner has been accepted into a prison gang or actively participated in gang conduct. (Scales v. U.S., supra, 367 U.S. at 233). To the contrary, a review of the evidence shows that in the four years after he was granted in-active status and released to the general population he reasonably conformed to prescribed rules of conduct and diligently performed his assigned duties, earning certificates of completion and high marks from his supervisors. Not once did staff working in close proximity to petitioner on a daily basis report any conduct indicative of gang activity. It is petitioner's firm belief based on his personal observations of IGI Lt. Garcia and his aggressive recruitment of prisoners to debrief, that petitioner is being punished for refusing to become an informant. Petitioner submits that after 20-yrs. of continuous confinement he has been

arbitrarily labeled a gang member and in effect sentenced to life in prison without possibility of parole since validated gang members as a matter of practice are not granted in-active status, and the parole board will never grant parole as long as petitioner remains in the state labeled member of a prison gang.

### III

**Petitioner was Denied Due Process by Classification Committee Decision to Impose Indeterminate Term of Segregation**

Shortly after his arrival at PBSP-SHU, petitioner was issued a CDC-114D Administrative Segregation Placement Notice (see Exhibit-D, p.54), and on Nov. 23, 2004, made a personal appearance before an Institutional Classification Committee in regards to his validation as a prison gang member and placement in the SHU for an indeterminate term of segregation. During the hearing Petitioner raised issues concerning the initial validation process and source items relied on in the process, but committee did not take notice of these issues or record them in any way, informing petitioner that the committee had no authority to act on challenges to the validation once it was imposed by the LEIU, and simply documented petitioner had "participated" in the hearing. (see Exhibit-D p.55)

Petitioner asserts he was denied due process in a number of ways by the committee action. First of all, CCR, §3378(c)(7) absolutely requires that questionable identification, notations

(14)

or new information brought to the attention of a committee during a CDC-114D Hearing or Annual Review <u>must</u> be referred to a gang coordinator for investigation. As set forth elsewhere in this memorandum, there exist serious questions concerning due process being denied during the initial validation because the information relied on was not disclosed before the validation took place, because the sources independently or together do not show petitioner was guilty of committing specific acts of serious rule violations aiding, abetting, promoting or in furtherance of a prison gang and the, and the information does not show petitioner was accepted into membership of a gang according to the Code of Regulations. (see supra, Grounds 1-2)

Notwithstanding these flagrant denials of due process, petitioner submits that the committee hearing did not allow him the opportunity to present his challenges to the actual decision maker responsible for the validation (Toussaint v. McCarthy, 918 F.2d 752 (9th cir. 1990), since by practice the committee itself was not empowered, or inclined, to overturn the decision made by the LEIU.

Furthermore, because the LEIU did not form part of the committee and the LEIU is the actual decision maker in the validation process (CCR, §3378(c)(6)), and the committee did not, or would not act on his challenges to the validation, the hearing held on Nov. 23, 2004, was reduced to a "meaningless gesture" which simply "rubber stamped" the original, illegal LEIU decision. (Toussaint v. McCarthy, 801 F.2d 1080 (9th cir. 1986)).

there, because petitioner presented a viable challenge to the validations and the committee failed to address these challenges on record then to be forwarded to the LEIU for investigation, clearly petitioner was denied the due process guaranteed under the 14th Amendment as established by the U.S. Supreme Court in Sandin v. Conner, 515 U.S. 472 (1998).

Finally, petitioner submits that considering the committee hearing by regulation was held to make a decision whether to impose an indeterminate term of segregation to a prison recognized as inflicting the most severe restrictions, deprivations and isolation on prisoners (Madrid v. Gomez, 889 F. Supp. 1146 (ND Cal. 1995)), and petitioner has a protected liberty interest to be free from such confinement (see Ground 1), his rights guaranteed by the state and U.S. Constitutions were violated by the committee hearing held on Nov. 23, 2004.

### Conclusion

For all the reasons set forth in this memorandum, the accompanying petition, attached exhibits and all other evidence that may come before the court relevant to these proceedings, petitioner asserts his validation as a member of a prison group is not supported by the evidence, he was denied due process in the initial validation and subsequent committee hearing, and as such the Court should issue the writ and grant any and all other relief as may be just and proper.

Respectfully Submitted,

Date: 10/2/05    /s/ Arcadio Cleere

EXHIBIT - A

FILED

JUN 2 0 2005

SUPERIOR COURT OF CALIFORNIA
COUNTY OF DEL NORTE

1

2

3

4

5

6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   FOR THE COUNTY OF DEL NORTE

10

11   In Re:    Arcadio Acuna                )   CASE NO.: HCPB 05-5129
              C-43165                       )
12                                          )
                                            )
13                                          )   ORDER DENYING PETITION FOR WRIT
                            Petitioner,     )   OF HABEAS CORPUS
14                                          )
15   On Habeas Corpus.                      )
                                            )
16   _____)

17

18          Petitioner has not supplied proof that he exhausted his administrative

19   appeals through the third level.  Therefore, this Petition is dismissed for failure to

20   exhaust administrative remedies.

21          It is noted at page 24 of Petitioner's attachments that Petitioner requested a

22   Director's level review on 9-26-04.  However, there is no proof in the file that this

23   was ever mailed to the Director of Corrections, P.O. Box 942883, Sacramento, CA

24   94283-0001, nor can any response from the Director of Corrections be found in the

25   papers submitted by Petitioner.

26          A litigant will not be afforded judicial relief unless he has exhausted

27   available administrative remedies.  *In re Dexter* (1979) 25 Cal.3rd 921, 925; *In re*

28   *Muszalski,* (1975) 52 Cal.App.3d 500, 503.

(1)

HB-DFEAR

1

DATED:    June 20, 2005

WILLIAM H. FOLLETT
Judge of the Superior Court

(7)

EXHIBIT-B

(4)

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## IN AND FOR THE COUNTY OF DEL NORTE

**DATE:** July 18, 2005      **JUDGE:** William H. Follett      **CLERK:** Patricia Baker
**BAILIFF:** np      **REPORTER:** np

In re

ARCADIO ACUNA, C-43165                    CASE NO.: HCPB 05-5129

On Habeas Corpus

### MINUTE ORDER

Petitioner's motion for reconsideration is denied.



**Date**: July 18, 2005                    **WILLIAM H. FOLLETT**
Judge of the Superior Court

**Copies Mailed To:**

( 5 )

EXHIBIT-C

(6)

REC D CAL APPEALS

MAR 1 5

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

Location:  Institution/Parole Region    Log No.    Category  6

1.  CAV - A -         1.  04-545

2.  ISP-LAC-X    C4-0238O

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|-----------|-----------------|
| ACUNA | C-43165 | Ad Seg | A5-237 |

A. Describe Problem: On 3/5/04, I was placed in Ad Seg based on an allegation that I was a validated "member" of a prison gang. (see attached CDC-114-D) I received as that tale a copy of a CDC-128-B2 (see attached) asserting that I had been validated per confidential chronos dated 12/12/03, 9/23/03 and, 9/21/00. submitted as part of a validation package by CSP/LAC gang investigator Lt. Garcilazo. I am asserting by this appeal that my due process rights were violated in a number of ways by the validation

If you need more space, attach one additional sheet.

(continued on attached page)

B. Action Requested: Rescind validation as a gang member and return to general population

Inmate/Parolee Signature: Arcadia Acuna          Date Submitted: 3/11/04

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

_____

_____

_____

_____

Staff Signature: _____    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____    Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

04-545

AL-A- 04-545

First Level    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _____ Due Date: _____

Interviewed by: _____

_____

_____

_____

_____

_____

Staff Signature: _____    Title: _____    Date Completed: _____
Division Head Approved: _____    Returned
Signature: _____    Title: _____    Date to Inmate: _____

*CSP-CAL BY-PASS*

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____    Date Submitted: _____

Second Level    ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other _____    8/27/01    10/13/0

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: _____    Due Date: _____
☐ See Attached Letter

SEP 1 8 2004

Signature: _____ Sgt    Date Completed: 9/10/04

Warden/Superintendent Signature: _____    Date Returned to Inmate: 9-10

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

As shown above 6 months after it was filed this appeal was denied without ex-
planation or comment, and each of the CDC-602 forms I submitted challenging
confidential info used in the validation process were simply attached as
exhibits and not individually addressed. The validation process was a gross denial of
due process and sentencing me to an indeterminate SHU based on this process
is a grave miscarriage of justice and violation of constitutionally protected rights

Signature: Ricardo Chunia    Date Submitted: 9/26/04

For the Director's Review, submit all documents to:  Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION:    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____
☐ See Attached Letter

Date: _____

CDC 602 (12/87)

RECD CAL APPEALS

MAR 1 5 2004

04 545

- DC-602 (Continued)

process, and vehemently deny that I am a member of a prison gang. First of all, I have never been provided with CDC-1030 disclosure forms indicating that confidential information had been placed in my c-file, and submit that each of the listed chronos does not conform to Title 15, Code of Regulations, § 3322(b)(3)(A)-(B). Moreover, concerning the chronos dated 12/03 and 9/03, during an interview with Lt. Garcilazo at CSP/LAC, he stated that "some" type of correspondence had been intercepted by "some" unnamed individual or individuals alleging my involvement in gang activities. Now, the confidential chrono dated 9/21/00, I know for a fact does not claim any type of gang activity, but as disclosed to me by Capt. Medina CSP/LAC, it documents that a mentally unstable black inmate took himself off the yard because he said he had verbally disrespected me in the law library where I worked as a clerk and felt threatened by other black prisoners because of this. I hereby declare that at no time did I threaten this inmate or "pressure" black prisoners to harm him in any way. A verbal exchange did occur in the presence of numerous black prisoners, but I simply walked away from the situation and gave it no further thought. Furthermore, a review of my c-file shows that all during the almost four years that I was released from PBSP-Indeterminate SHU, except for one CDC-115 I received for possession of pruno, I have been a model of good comportment, have performed above average at each of my assigned jobs and earned certificates/laudatory job performance reports, completed an Anger Management/Substance Abuse self-help program, and interacted positively with prisoners, job supervisors, housing and custody staff. It is a grave injustice to now label me a gang member after such positive programming and by this action

REC'D CAL APPEALS

MAR 1 6 2004

04 545

I am no doubt being sentenced to serve a life-term without possibility of parole in the SHU, without justification, and in violation of Due Process Rights based on false information not even closely establishing that I am a gang member whose presence in the general population threatens the safety and security of the institution.

# CALIFORNIA DEPARTMENT OF CORRECTIONS
# CALIFORNIA STATE PRISON-LOS ANGELES COUNTY

## SUPPLEMENTAL PAGE

**RE:**    Appeal Log #LAC-X-04-02386
Second Level Response
Inmate ACUNA, C43165

## APPEAL DECISION: DENIED.

## APPEAL ISSUE: PRISON GANG VALIDATION.

You state in your appeal that you want your validation as an associate of the Mexican Mafia Prison Gang rescinded and to be placed back on a General Population Yard.

## ACTION REQUESTED:

You requested that your status as a Validated Associate of the Mexican Mafia Prison Gang be rescinded and all confidential information utilized against you be removed from your Central-File.

## APPEAL RESPONSE

On January 12, 2004, a prison gang validation package was submitted to LEIU/SSU, by CSP-Los Angeles County Institutional Gang Investigator J. Garcilazo to re-validate you as an associate of the Mexican Mafia Prison Gang. While at CSP-LAC you were in the General Population due to being released from Pelican Bay State Prison Security Housing Unit as an In-Active Mexican Mafia Associate. On January 20, 2004 you were re-validated as an associate of the Mexican Mafia Prison Gang pursuant to the validation requirements established in Title 15 CCR Section 3378. Your case will be considered for review in six (6) years for In-Active status, if you have remained gang activity free in that time.


M. Hunter
Chief Deputy Warden (A)
CSP-Los Angeles County

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA  94283-0001

# DIRECTOR'S LEVEL APPEAL DECISION

Date:  SEP 2 3 2005

In re:  Acuna, C-43165
Pelican Bay State Prison
P.O. Box 7000
Crescent City, CA  95531-7000

IAB Case No.: 0500285        Local Log No.:  CAL  04-545

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner S. Ortiz, Facility Captain.  All submitted documentation and supporting arguments of the parties have been considered.

**I   APPELLANT'S ARGUMENT:** It is the appellant's position that he was placed in the California State Prison, Los Angeles County (LAC) Administrative Segregation Unit based on allegations that he was a validated gang member of a prison gang. The appellant contends that this was action was a direct violation of his due process rights.  The appellant requests that his validation as a gang member be rescinded and that he be returned to the general inmate population.

**II   SECOND LEVEL'S DECISION:** The reviewer found that on January 12, 2004, a gang validation package was submitted to the Law Enforcement Investigation Unit by the LAC Institution Gang Investigator, to re-validate the appellant as an associate of the Mexican Mafia (EME) prison gang.  While at LAC the appellant was in the general inmate population (GP) due to being released from Pelican Bay State Prison (PBSP) Security Housing Unit as an in-active "EME" associate.  On January 20, 2004, the appellant was re-validated as an associate of the "EME" prison gang pursuant to the validation requirements established by the California Code of Regulations, Title 15, (CCR).  The appellant's case will be considered for review in six years for in-active status, if he remains gang activity free for that time frame.  The reviewer learned the one CDC Form 1030 Confidential Information Disclosure notice was provided to the appellant and the information was deemed reliable in accordance with the CCR 3321.  Therefore, the Second Level of Review denied the appeal.

**III   DIRECTOR'S LEVEL DECISION:** Appeal is denied.

**A.   FINDINGS:** There was sufficient evidence to warrant the appellant's re-validation as an "EME" gang associate. The appellant provided no evidence to the committee members contesting his validation.  The appellant was provided with copies of the materials used to re-validate him.  Additionally, the LEIU provided a CDC Form 128-B2, Validation Chrono, dated January 20, 2004, which identified three items which supported the validation of the appellant as a member of the EME.  The appellant has not provided sufficient evidence to overturn or rescind his validation as an associate of the "EME."  The appeal was denied at the Director's Level of Review.

**B.   BASIS FOR THE DECISION:**
CCR: 3001, 3335, 3338, 3339, 3370, 3375, 3378

**C.   ORDER:** No changes or modifications are required by the institution.

ACUNA, C-43165
CASE NO. 0500285
PAGE 2


This decision exhausts the administrative remedy available to the appellant within CDCR.


*N. GRANNIS, Chief*
N. GRANNIS, Chief
Inmate Appeals Branch

cc:     Warden, PBSP
        Appeals Coordinator, PBSP
        Appeals Coordinator, CAL

STATE OF CALIFORNIA
ADMINISTRATIVE SEGREGATION UNIT PLACEMENT NOTICE
CDC 114-D (Rev 10/98)

**DEPARTMENT OF CORRECTIONS**

04 545

| DISTRIBUTION: | |
|---|---|
| WHITE - CENTRAL FILE | CANARY - WARDEN |
| BLUE - INMATE(2ND COPY) | PINK - HEALTH CARE MGR |
| GREEN - ASU | GOLDENROD - INMATE (1ST COPY) |

| INMATE'S NAME | CDC NUMBER |
|---|---|
| ACUNA, Arcardio | C-43165 |

## REASON(S) FOR PLACEMENT *(PART A)*

[X] PRESENTS AN IMMEDIATE THREAT TO THE SAFETY OF SELF OR OTHERS

[ ] JEOPARDIZES INTEGRITY OF AN INVESTIGATION OF ALLEGED SERIOUS MISCONDUCT OR CRIMINAL ACTIVITY

[X] ENDANGERS INSTITUTION SECURITY     [ ] UPON RELEASE FROM SEGREGATION, NO BED AVAILABLE IN GENERAL POPULATION.

DESCRIPTION OF CIRCUMSTANCES WHICH SUPPORT THE REASON(S) FOR PLACEMENT: On Friday, March 05, 2004, the Institutional Gang Investigator at Calipatria State Prison received a facsimile copy of a CDC 1288-2, Gang Validation Chrono, from the Special Services Unit (SSU), identifying you, Inmate Arcardio Acuna, C-43165, B5-201, as a validated member of the Mexican Mafia prison gang. Due to your current gang status as an active member of the Mexican Mafia, your continued presence on a general population facility (B Facility) has been deemed a threat to the safety and security of the institution. You are being re-housed in Administrative Segregation pending review by the Institutional Classification Committee for program and housing needs. Due to your Ad-Seg placement, your custody level, privilege group, credit earning and visiting status are subject to change. Inmate ACUNA is not a participant in the Mental Health Services Delivery System (MHSDS) and Disability Placement Program (DPP)

| [ ] CONTINUED ON ATTACHED PAGE (CHECK IF ADDITIONAL) | [X] IF CONFIDENTIAL INFORMATION USED, DATE OF DISCLOSURE: | | / / |
|---|---|---|---|
| DATE OF ASU PLACEMENT 03-05-04 | SEGREGATION AUTHORITY'S PRINTED NAME R. ANTI | SIGNATURE | TITLE LIEUTENANT |
| DATE NOTICE SERVED 3-5-04 | TIME SERVED 1515 | PRINTED NAME OF STAFF SERVING ASU PLACEMENT NOTICE   SIGNATURE | STAFF'S TITLE C/O |
| [ ] INMATE REFUSED TO SIGN | INMATE SIGNATURE   X Arcardio Acuna | | CDC NUMBER C-43165 |

## ADMINISTRATIVE REVIEW *(PART B)*
*The following to be completed during the initial administrative review by Captain or higher by the first working day following placement*

| STAFF ASSISTANT (SA) | | INVESTIGATIVE EMPLOYEE (IE) | |
|---|---|---|---|
| STAFF ASSISTANT NAME | TITLE | INVESTIGATIVE EMPLOYEE'S NAME | TITLE |

**IS THIS INMATE:**

| | | | | | |
|---|---|---|---|---|---|
| LITERATE? | [ ] YES | [ ] NO | EVIDENCE COLLECTION BY IE UNNECESSARY | [ ] YES | [ ] NO |
| FLUENT IN ENGLISH? | [ ] YES | [ ] NO | DECLINED ANY INVESTIGATIVE EMPLOYEE | [ ] YES | [ ] NO |
| ABLE TO COMPREHEND ISSUES? | [ ] YES | [ ] NO | ASU PLACEMENT IS FOR DISCIPLINARY REASONS | [ ] YES | [ ] NO |
| FREE OF MENTAL HEALTH SERVICES DELIVERY SYSTEM NEEDS? | [ ] YES | [ ] NO | DECLINED 1ST INVESTIGATIVE EMPLOYEE ASSIGNED | [ ] YES | |
| DECLINING FIRST STAFF ASSISTANT ASSIGNED? | [ ] YES | | | | |
| [ ] NOT ASSIGNED | Any "NO" requires SA assignment | | [ ] NOT ASSIGNED | Any "NO" may require IE assignment | |

## INMATE WAIVERS

[ ] INMATE WAIVES OR DECLINES INTERVIEW WITH ADMINISTRATIVE REVIEWER     [X] INMATE WAIVES RIGHT TO 72 HOURS PREPARATION TIME

| [ ] NO WITNESSES REQUESTED BY INMATE | INMATE SIGNATURE | DATE 3/3/04 |
|---|---|---|

## WITNESSES REQUESTED FOR HEARING

| WITNESS' NAME | TITLE/CDC NUMBER | WITNESS' NAME | TITLE/CDC NUMBER |
|---|---|---|---|
| | | | |
| WITNESS' NAME | TITLE/CDC NUMBER | WITNESS' NAME | TITLE/CDC NUMBER |
| | | | |

**DECISION:** [ ] RELEASE TO UNIT/FACILITY   [X] RETAIN PENDING ICC REVIEW   [ ] DOUBLE CELL   [ ] SINGLE CELL PENDING ICC

REASON FOR DECISION:

| ADMINISTRATIVE REVIEWER'S PRINTED NAME | TITLE | DATE OF REVIEW | TIME | ADMINISTRATIVE REVIEWER'S SIGNATURE |
|---|---|---|---|---|
| CORRECTIONAL ADMINISTRATOR'S PRINTED NAME (if necessary) | | CORRECTIONAL ADMINISTRATOR'S CO-SIGNATURE (if necessary) | | DATE OF REVIEW |

See chronological Classification Review document (CDC 128 - G) for specific hearing information
(155)

REC'D CA APPEALS

MAR 1 5 2004

STATE OF CALIFORNIA
CORRECTIONS
CDC 128-B-2 (5/95)

04 545 DEPARTMENT OF

---

**INMATE'S NAME:** Acuna, Arcadio                              **CDC NUMBER:** C43165

---

On Feburary 4, 2000, a gang validation package regarding subject was received from Institution Gang Investigator Crandall at PBSP.

*SUBSEQUENT INFORMATION WAS RECEIVED BY SSU ON January 12, 2004, FROM GANG INVESTIGATOR Lt. Garcilazo AT CSP-LOS. (UPDATED ITEMS LISTED IN ITALICS).*

**TOTAL NUMBER OF ITEMS SUBMITTED FOR REVIEW: (3)**

The following items meet the validation requirements:          *Conf Memo dated 12-12-03, Conf Memo dated 9-23-03 and Conf 128B dated 9-21-00.*

**TOTAL NUMBER OF ITEMS WHICH MEET VALIDATION REQUIREMENTS: (3)**

The following items do not meet the validation requirements and were/shall not be used as a basis for validation:

**TOTAL NUMBER OF ITEMS WHICH DO NOT MEET VALIDATION REQUIREMENTS: (0)**

---

**ACTION OF REVIEWER**

Pursuant to the validation requirements established in 15 CCR Section 3378, Arcadio Acuna is:

☒ **VALIDATED**          ☐ **REJECTED**

as a member of the Mexican Mafia prison gang.

**Wm Luper**
**Special Agent SSU**

**DATE:** 1-20-04

GANG VALIDATION/REJECTION REVIEW
GENERAL CHRONO
LEIU/SSU

**DISTRIBUTION:**
Original - Central File
Copy - Classification & Parole Representative/Parole Administrator I
Copy - Institutional Gang Investigator/Region Gang Coordinator
Copy - Law Enforcement Liaison Unit
Copy - Inmate/Parolee

(15)

REC'D CAL APPEALS

ATTACHMENT

INMATE/PAROLEE
APPEAL FORM
CDC 602 (12/87)

Location:   Institution/Parole Region

APR 26 2004   1. CAL-A

2. _____

Log No   04   724   TO: Category 04-545

1. _____

2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| Acuna | C-43165 | Ad Seg | A5-237 |

A. Describe Problem: On 4/20/04, I received a CDC-1030 Confidential Information Disclosure Form stating that while at CCI confidential information was documented on a CDC-128 B dated 9/21/00 alleging that I continued to communicate with a validated gang member, and that the reliability of the source providing this information was established under criteria (d)" This source incriminated himself in a criminal activity at the time of providing the information" First of all I vehemently deny that I have communicated in any way, shape or form with any

If you need more space, attach one additional sheet.

(see attached)

B. Action Requested: Expunge Confidential Memorandum dated 9/21/00 from my C-File, Nullify validation process, and return me to the general population of a Level III prison.

Inmate/Parolee Signature: Arcadio Acuna                    Date Submitted: 4/22/04

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

_____

_____

_____

CAL BY-PASS

Staff Signature: _____                    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

Signature: _____                    Date Submitted: _____
Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim                    CDC Appeal Number: _____

(16)

04 724