**EXHIBIT 4**

Arcadio Acuna #C-43165
PBSP-SHU /FD3-209
P.O. Box 7500
Crescent City, CA 95532

In Pro Per

Superior Court of California
County of Del Norte

In re:                               ] No. HCPB-05-5424
                                     ]
   Arcadio Acuna #C-43165            ]
                                     ] Reply to Informal Response
                                     ] to Petition for Writ of
   on Habeas Corpus                  ] Habeas Corpus

Petitioner, Arcadio Acuna, respectfully submits this Reply to Respondent's Informal Response to Petition for Writ of Habeas Corpus received Jan. 03, 2006, and hereby denies that Respondent has made a showing that due process was afforded when Petitioner was validated as a member of a prison gang, and asserts that Respondent has failed to set forth sufficient facts or law to show why the requested relief should not be granted. Petitioner

(1)

asserts that the Informal Response contains grave errors of both fact and law, specifically addressed as follows:

1.) The Gang Validation Process (Response, ¶¶ 1-2)

While correctly noting that there is a process for validating inmates as prison gang members or associates, that Petitioner has a protected liberty interest to remain free from confinement in administrative segregation, and that in order to have been validated as a member Petitioner had to have been shown to have been accepted into membership based on three independent source items indicative of actual membership (Response, ¶¶ 1-2), Respondent fails to indicate how the information relied on in this case establishes membership in accordance with the criteria set forth in the Code of Regulations, Title 15, § 3378(c)(3).

Petitioner herein reasserts that the information relied on in the validation is false, and its use did not conform to the express requirements of due process as identified by the Courts. (See generally Castillo v. Alameida, et. al. No. C-94-2847 (N.D. Cal. 2003); also In re Ruben Ruiz Del Norte Superior Court No. HCPB-05-5110 [acknowledging that more than the limited due process concerning initial segregation detailed in Hewitt v. Helms (1983) 459 U.S. 460, is required in cases involving inmates held in PBSP-SHU for indeterminate terms of segregation.]).

Moreover, Respondent's allegation that PBSP-SHU inmates

(2)

serving indeterminate terms of segregation are considered for release to the general population every 180-days by Classification Committees (Response, p.2), and that if committees determine any questions exist on an inmates gang status the inmate will be referred to IGI, LEIU, SSU or DRB for review is incorrect, as it is well established and recognized by this court that these classification committees are not empowered to overturn a gang validation once it has been put in place by the LEIU, as a matter of policy and practice do not forward questionable evidence to gang officials, and are simply meaningless administrative gestures carried out to generate documentation rubber stamping previous decisions (see Petition, Ground 3.)

2.) Petitioner's Validation (Response, pp.3-4)

To begin with, Petitioner submits that by the Informal Response and attached Exhibit-3, Respondent concedes that at least as to one of the three source items relied on in the validation process Petitioner was not given in any way shape or form notice as required by law. (see Exhibit-4, referencing confidential memo dated Sept. 21, 2000, as one of three source items relied on by the LEIU). As such, this denial of due process unto itself renders the entire validation process unlawful.

But more importantly, Respondent is patently incorrect

(3)

is claiming that by an interview held on Dec. 18, 2003, due process was satisfied as notice was given and petitioner had an opportunity to challenge the evidence before the validation package was submitted to the LEIU. Petitioner asserts that the interview fell far short of meeting the criteria set forth in the Code of Regulations and given emphasis by the <u>Castillo</u> decision in that the chrono dated Dec. 18, 2003, records only that Lt. Garcilazo may have made vague reference to "some information" he had supposedly obtained from two confidential sources, but did not identify any specific conduct to which Petitioner could have made a viable challenge to except to deny, as he did, any gang involvement and put emphasis on his good conduct. The chrono also fails to record that Lt. Garcilazo threatened to send petitioner back to the SHU by any means necessary if he refused to become a prison informant.

Furthermore, Respondent concedes in the Response that the confidential information relied on in the validation process was not disclosed in accordance with departmental regulations via CDC-1030 Disclosure forms until 4-months after the validation decision had already been made. (Response, p.4; Exhibit-9) A review of the record thus shows that only when Petitioner finally became aware of the nature of the charges made against him by these

(4)

disclosures was he able to mount a vigorous challenge to the information by filing 3-seperate CDC-602 appeals on each of the different source items. (see Respondent's Exhibit-B, pp. 7-15) These appeals reveal that prison officials, as Respondent, were unresponsive to the issues raised addressing the validity of the confidential information and have never attempted to show that a direct link exists tying petitioner to verifiable acts of misconduct said to aid and abet, promote or further a prison gang, nor have they explained how the information establishes actual gang membership.

In fact, serious due process concerns exist in that if petitioner was guilty of committing the serious misconduct alleged by the informants, then by not reporting this misconduct in CDC-115 RVR's as required by the Code of Regulations, Title 15, § 3312(a)(3), petitioner was denied the due process he would otherwise have been afforded pursuant to §§ 3315(c)-(g). This in turn allowed for false, unreliable and unproven charges to be relied on to validate petitioner as a gang member and impose an indeterminate term of segregation based on that status.

Respondent in the Informal Response further alleges that after Petitioner was revalidated, but before he was returned to the SHU, he had notice and an opportunity to challenge his housing decision, correctly stating that

(5)

petitioner attended each of the committee hearings held at Calipatria State Prison, but then incorrectly asserts that petitioner expressed no disagreement or asserted any challenges to his segregation at these hearings. In fact, petitioner vigorously challenged his validation at every opportunity and expressed to committee members the grave injustice he was being made to suffer. But, as is the practice of prison officials these challenges or comments were not recorded in any way, and the committees made it clear they had no authority, or inclination to even question the validation once it was imposed by the L.E.I.U. (see petition, Ground 3)

Conclusion (Response, p.5)

Petitioner denies that Respondent has made a showing sufficient to warrant denial and dismissal of the petition, and by this Reply denies each and every other allegation made by Respondent in the Informal Response not otherwise specifically addressed herein, submitting that, as based on all the papers and pleadings now before the court relevant to this action a prima facie showing has been made that he was denied due process in the initial validation process labeling him a gang member, summarized as follows:

A. As conceded by Respondent, petitioner was not given notice or an opportunity to challenge the information con-

(6)

tained in confidential memo dated Sept. 21, 2000, before it was submitted to the LEIU as one of three source items;

B. Petitioner was not given proper notice and an opportunity to challenge the information contained in confidential memo's dated Sept. 23, 2003, and Dec. 12, 2003, because they were not disclosed via CDC-1030 Disclosure forms until 4-months after the validation had already been imposed by the LEIU, and that Lt. Garcilazo may have made reference to some unspecified information at the interview held on Dec. 18, 2003, was not sufficient as a matter of law to satisfy due process requirements;

C. The confidential information relied on by definition does not establish Petitioner has been accepted into actual membership of a prison gang;

D. The confidential information relied on does not establish a direct link to any specific and verifiable act of misconduct showing petitioner aided and abetted, promoted or acted in furtherance of a prison gang; and,

E. By not reporting the alleged serious misconduct made reference to in the three source items in CDC-115 RVR's as required by the Code of Regulations, petitioner was denied due process of law and he was illegally punished for false, unproven accusations.

In closing, petitioner submits that a review of

(7)

his prison file clearly shows he is not, and has never been a member of a prison gang, and as a 54-yr. old prisoner who has been continuously confined for more than 20-yrs. has reasonably conformed to behavioral expectations, has <u>never</u> in those 20-yrs. received a RVR for gang misconduct, has diligently performed his duties when assigned to numerous prison jobs, and has been, and continues to be rewarded with classification score reductions for his good conduct. Based on what he was told by Lt. Garcilazo petitioner asserts he was arbitrarily and without good cause labeled a gang member and returned to the SHU because he refused to become a prison informant.

I declare under penalty of perjury that all of the foregoing statement is true and correct, and was executed on this 5th day of Jan., 2006, in Crescent City, California.

Respectfully Submitted,

*Arcadio Acuna*
Arcadio Acuna # C-43165
Petitioner, In Pro Per

(8)

## PROOF OF SERVICE BY MAIL

(C.C.P. section 101a #2015.5; 20 U.S.C. section 1746)

I, **Arcadio Acuna**, am a resident of Pelican Bay State Prison, in the County of Del Norte, State of California. I am over eighteen (18) years of age and am a party to the below entitled action.

My Address is: P.O. Box 7500; Crescent City, CA 95531.

On the **5th** day of **Jan.**, in the year of 20**06**, I served the following documents: (set forth the exact title of documents served)

**Reply to Informal Response to Petition for Writ of Habeas Corpus**

on the party(s) listed below by placing a true copy(s) of said document, enclosed in a sealed envelope(s) with postaage thereon fully paid, in the United states mail, in a deposit box so provided at Pelican Bay State Prison, Crescent City, CA 95531 and addressed as follows:

**Pamela B. Hooley, Dty. Attorney General**
**Department of Justice**
**1300 "I" Street, Ste 125**
**Sacramento CA**
**94244-2550**

I declare under penalty of perjury that the foregoing is true and correct.

Dated this **5th** day of **Jan**, 20**06**.

Signed: *Arcadio Acuna*
(Declarant Signature)

Rev: 03/10/00

**EXHIBIT 5**



FILED
FEB 1 4 2006
SUPERIOR COURT OF CALIFORNIA
COUNTY OF DEL NORTE
E. ESPARZA

COPY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF DEL NORTE

IN RE: ) CASE NO.: HCPB05-5242
)
)
ARCADIO ACUÑA, ) ORDER TO SHOW CAUSE RE WRIT
C-43165, ) OF HABEAS CORPUS
)
Petitioner, )
)
On Habeas Corpus. )

The Court has read and considered the Petition for Writ of Habeas Corpus and finds a sufficient showing has been made to require a formal response by Respondent. Accordingly, Respondent shall have thirty (30) days to show why relief should not be granted. Within thirty (30) days after service and filing of the Return, Petitioner may serve on Respondent and file a Denial. Failure to file a Denial may be deemed by the Court to be an admission of the allegations of the Return.

Apparently it is not disputed that petitioner was not provided with copies of the CDC 1030 Confidential Information Disclosure forms until after the IGI had apparently prepared and sent off the validation package to the LEIU. The forms are utilized to provide inmates with information so that they can respond to the Institutional Gang Investigator (IGI). Failure to provide the 1030 forms prior to validation would appear to be in violation of the established due process. It is

1

argued by the Attorney General that the petitioner was subsequently provided the forms prior to an ICC review, which compensates for the failure to disclose the forms earlier. In light of the fact that the ICC is required to keep inmates in SHU once they have been validated, it is not clear to the Court how providing the documents late complies with minimum due process.

The Court is also deeply concerned about the sufficiency of the evidence supporting the validation after *in camera* review of the documents at the informal response stage. Exhibit "Y" gives detailed information about alleged gang activity by the petitioner as well as grounds for the memo writer to believe that the reliability of the confidential source was established. However, validation requires three independent sources and the Court is not convinced that the legal requirements have been met.

Exhibit "X," the confidential memorandum dated December 12, 2003, indicates that petitioner may have been told something about gang activities by another "inactive" associate of the gang. The Return should address whether this is sufficient to constitute an "independent source item of documentation indicative of association with validated gang members or associates." The source of the information appears to be speculating that petitioner had been told something by the other inactive gang member. It is unclear how that speculation can be considered to be reliable evidence.

Exhibit "Z," the September 21, 2000 confidential memorandum, was referenced in a corresponding CDC 1030 confidential disclosure form. The 1030 form that was provided to petitioner appears to be incorrect in that it indicates the "source incriminated himself-herself in criminal activity at the time of providing the information." No other statement of the reliability is given in the CDC 1030 nor the memorandum itself. Nor is it clear to the Court how this evidence establishes that

2

1 | the petitioner is involved "periodically or regularly" with associates of the gang. See
2 | 15 C.C.R. 3378 (c)(4).
3 |     George Mavris, Attorney at Law, is appointed to represent the petitioner.
4 | His address is 1 Point St. George, Crescent City, CA 95531. His telephone number
5 | is 707-464-1418.
6 | DATED: _____ FEB **1 3** 2006

WILLIAM H. FOLLETT
Judge of the Superior Court

PROOF OF SERVICE BY MAIL (1013a, 2015.5 C.C.P)

I am a citizen of the United States and a resident of the County of Del Norte. I am over the age of eighteen (18) years and am not a party to the entitled action; my business address is 450 H St, Crescent City California 95531.

On Tuesday, February 14, 2006, I served a copy of the **ORDER TO SHOW CAUSE RE WRIT OF HABEAS CORPUS, FILED 2/14/06** by depositing a true copy in the United States mail in Crescent City, California, in a sealed envelope with postage prepaid, addressed as follows:

**ARCADIO ACUÑA, C-43165**
C/O Pelican Bay State Prison
P.O. Box 7500
Crescent City, CA 95532

Harlan Watkins
Litigation Department
P.O. Box 7500
Crescent City, CA 95531

Pamela B. Hooley
Deputy Attorney General
P.O. Box 944255
Sacramento, CA 94244-2550

George Mavris
Attorney at Law
[Courthouse Mailbox # 11]

I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and that it was executed at Crescent City, California this date.

DATED: February 14, 2006

Esperanza Esparza
Judicial Assistant