# EXHIBIT 6
# part 1 of 4

1  BILL LOCKYER
   Attorney General of the State of California
2  JAMES M. HUMES
   Chief Assistant Attorney General
3  FRANCES T. GRUNDER
   Senior Assistant Attorney General
4  JENNIFER A. NEILL
   Supervising Deputy Attorney General
5  PAMELA B. HOOLEY, State Bar No. 161616
   Deputy Attorney General
6   1300 I Street, Suite 125
    P.O. Box 944255
7   Sacramento, CA 94244-2550
    Telephone: (916) 323-1951
8   Fax: (916) 324-5205

9  Attorneys for Respondent
   SA2005301964
10

**FILED**

JUN 19 2006

SUPERIOR COURT OF CALIFORNIA
COUNTY OF DEL NORTE

DOCKETED
Hooley
JUN 2 6 2006

By _____ J. FARAL
No. SA2005301964

11                 SUPERIOR COURT OF CALIFORNIA

12                     COUNTY OF DEL NORTE

13

14

15  | In re | NO. HCPB05-5242 |
16  | | |
    | **ARCADIO ACUNA (C-43165),** | **RETURN AND SUPPORTING** |
17  | | **MEMORANDUM OF POINTS** |
    | Petitioner, | **AND AUTHORITIES** |
18  | **On Habeas Corpus.** | |

19

20      Respondent Robert A. Horel, as a return to the order to show cause, states:

21      1.   Petitioner Arcadio Acuna (C-43165) is in the lawful custody of the California

22  Department of Corrections and Rehabilitation (CDCR) serving three consecutive life terms,

23  following his conviction in Santa Clara County Superior Court, for three counts of kidnapping

24  for robbery, with multiple enhancements.  (Ex. A, Abstracts of Judgment.)

25      2.   His petition does not challenged the validity of his convictions; instead, he challenges

26  the decision of January 20, 2004, when he was re-validated as a member of the Mexican Mafia

27  prison gang, also known as the EME.  (See generally Pet.)

28  ///

                                      1
   Return and Supporting Points and Authorities

OFFICE COPY
ATTORNEY GENERAL

3.   CDCR has a process for validating inmates as prison gang members and associates. (See Cal. Code Regs., tit. 15, § 3378.)  The initial validation of an inmate as a gang member or an associate requires at least three independent source items indicative of actual membership in, or association with validated gang members or associates, respectively.  (*Id.* at § 3378, subd. (c).) The source items may be based upon self-admission, tattoos and symbols, written material, photographs, staff information, information from other agencies, association with other known gang affiliates, informants, commitment offense, information contained in probation reports, receiving visits from known gang "runners" or affiliates, and communications evidencing gang affiliation or debriefing reports.  (*Id.* at § 3378, subd. (c)(8); see also *Madrid v. Gomez* (1995) 889 F.Supp. 1146, 1277 [expressing approval for the regulatory criteria].)  A gang member is an inmate who has been accepted into membership by the gang, while a prison gang associate is defined as an inmate who is involved periodically or regularly with either members or associates of a gang.  (*Id.* at § 3378, subd. (c)(3)-(4).)

4.   A validated gang member or associate is considered a threat to institutional safety and security.  (Cal. Code Regs., tit. 15, § 3341.5, subd. (c)(2)(A)(2).)  Inmates may be placed in administrative segregation or in the Security Housing Unit (SHU) when it is determined that their presence in the general population poses a threat to institutional safety and security.  (*Id.* at § 3335.)  An inmate who is validated as either a gang member or associate will be given an indeterminate SHU term.  (*Id.* at § 3341.5, subd. (c)(2)(A).)

5.   The indeterminate SHU term is not irrevocable; the inmate may be considered for release from SHU after he is verified as a "gang dropout" through a debriefing process.  (*Id.* at §§ 3341.5, subd. (c)(4), 3378, subd. (c)(5).)  In addition, prison regulations provide for regular reviews of an inmate's validated gang status.  An inmate assigned to the SHU for an indeterminate term is reviewed by a classification committee every 180 days for consideration for release to the general population.  (*Id.* at § 3341.5, subd. (c)(2)(A)(1).)  In addition, the inmate's status is reviewed annually by the unit classification committee.  (*Id.* at § 3376, subd. (d)(2).)  If during the course of its reviews, the committee determines that there are any questions about the inmate's validated gang status, the committee can refer the inmate to the Institution Gang

2

1    Investigation Unit (IGI), the Law Enforcement Investigation Unit (LEIU), the Special Services

2    Unit (SSU), which is the field office for the LEIU, or the Departmental Review Board (DRB) for

3    a review. (See, e.g., Cal. Code Regs., tit. 15, § 3341.5, subd. (c)(5); § 3376, subd. (d)(2)(D).)

4    Finally, prison regulations provide that an inmate housed in the SHU because of his gang status

5    may be reviewed and considered for "inactive status" when he has not been identified as having

6    been involved in any gang activity for six years. (*Id.* at § 3378, subd. (e).)

7        6.   Acuna had been validated as an EME associate of the Mexican Mafia in the past, but

8    he was later found to be "inactive" and released from the SHU. (See generally Pet.; see also, e.g.,

9    Ex. B, CDC 128-B2, dated 10/05/95; Ex. B, CDC 128-G, dated 05/31/00 [DRB decision

10    releasing Acuna from the SHU based on his inactive gang status].)

11        7.   In December 2003, while Acuna was housed at California State Prison, Los Angeles

12    County, an investigation of Acuna's gang status was initiated by the local institutional gang

13    investigator after the IGI received new confidential information indicating that Acuna was

14    currently involved in EME activity. As part of this investigation, Acuna was photographed and

15    interviewed, and he was informed that the IGI would be submitting a validation package to the

16    LEIU for his re-validation. Acuna was told that there were two confidential memoranda that

17    implicated him as continuing to participate in gang activity. Acuna was given the opportunity to

18    participate and discuss any issues concerning his validation, and he denied any current

19    involvement with the gang. (Ex. C, General Chrono, dated 12/17/03; Ex. D, General Chrono,

20    dated 12/18/03.)

21        8.   An inmate who has been categorized as an inactive gang member or associate and who

22    has been released from the SHU, may re-validated and returned to the SHU based upon one

23    reliable source item that identifies the inmate as an active gang member or associate. (Cal. Code

24    Regs., tit. 15, §§ 3341.5, subd. (c)(6), 3378, subd. (f)(1); see also Ex. E, Hawkes Decl., ¶ 12.)

25        9.   A validation package was submitted by the IGI to the LEIU/SSU in January 2004, and

26    on January 20, 2004, Acuna was re-validated as a member of the Mexican Mafia prison gang.[1]

27    

28        1. Although Acuna was apparently re-validated as a member, it appears that he should have
been re-validated as an associated, since he had previously been validated as an associate, rather than

3

1  (Ex. F, CDC 128-B2, dated 01/20/04; see also Ex. X, Confidential Memorandum, dated

2  12/12/03; Ex. Y, Confidential Memorandum dated 09/23/00, 2003; and Ex. Z, Confidential CDC

3  128B, dated 09/21/00, all of which were previously filed under seal, for in camera review

4  pursuant to the Court's order of October 31, 2005. For the Court's convenience, copies of these

5  three confidential exhibits are being resubmitted for filing under seal now.)

6      10.  After the validation package had been submitted and Acuna had been re-validated, but

7  before Acuna had been transferred to the SHU, he was transferred to Calipatria State Prison.

8  (See Pet., p. 7; see also Ex. G, Movement History, entry dated 03/01/04.)

9      11.  On March 5, 2004, Acuna was placed in administrative segregation based on his

10  validated active gang status, pending review of his housing and program needs by the institution

11  classification committee. (Ex. G, entry dated 03/05/04; Ex. H, CDC 114D, dated 03/05/04.)

12     12.  On March 11, 2004, Acuna appeared before an institution classification committee for

13  his initial review, and the committee decided he should be retained in administrative segregation

14  pending his transfer to the SHU. Acuna had notice of the hearing, and during the hearing, he had

15  an opportunity to challenge the housing decision. However, he expressed no disagreement with

16  the committee's decision, and he did not assert any challenge to his validated gang status; in fact,

17  he asked no questions and made no comments during the hearing. (Ex. H; Ex. I, CDC 128G,

18  dated 03/11/04.)

19     13.  Acuna's administrative segregation placement was reviewed periodically until his

20  transfer to the PBSP SHU on November 17, 2004. Acuna attended each of these hearings, and

21  he never disagreed with the committee's decisions or voiced any concern with respect to his

22  validated gang status; indeed, he asked no questions and made no comments during any of these

23  hearings. (See Ex. G, entry dated 11/17/04; Ex. J, CDC 128Gs, dated 04/22/04, 07/15/04, and

24  10/07/04.)

---

25

26  a member. This mistaken reference does not, however, undermine the decision to re-validate
   Acuna's as an active gang affiliate. Moreover, whether validated as a member or as an associate,

27  Acuna would have been subject to the indeterminate SHU assignment. (Cal. Code Regs., tit. 15,
   § 3341.5, subd. (c)(2)(A)(2).) Finally, the IGI recently recommended that Acuna be validated as an

28  active EME associate, rather than as a member; LEIU's validation decision is still pending. (Ex. E,
   Hawkes Decl., ¶¶ 13, 20-22.)

4

14. In the meantime, before he was transferred to the SHU, Acuna submitted an appeal, which he dated March 11, 2004. In this appeal, Acuna requested that his gang validation be rescinded for various reasons, including because he had not been provided with Confidential Information Disclosure Forms, also known as CDC 1030s, for the confidential documents that had been relied upon to validate him. (See Pet., Ex. C; see also Ex. K, Inmate Appeal, Local Log No. CAL 04-545, pp. 1-3.)

15. The CDC 1030s are forms used to identify the reason or reasons why the confidential information relied upon has been deemed reliable, and the forms disclose as much information as possible without jeopardizing the safety and security of the institution. (See Cal. Code Regs., tit. 15, § 3321.)

16. After filing this appeal, on April 20, 2004, Acuna was given CDC 1030s for the three documents relied upon to validate him. (Ex. L, CDC 1030s, referencing the 12/23/03 and 09/23/03 memoranda and the 09/21/00 CDC 128B.)

17. In the meantime, Acuna apparently submitted three more appeals, this time challenging the sufficiency of the evidence described in each of the CDC Form 1030s. (See Pet., Ex. C; see also Ex. K, pp. 8-20.) These appeals were consolidated with his initial appeal and ultimately denied at the second level and again at the Director's Level because there was sufficient evidence to warrant Acuna's re-validation. (See Pet., Ex. C, Supplemental Page; see also Ex. K, pp. 23-25.[2])

18. As a result of this habeas matter, the respondent is in the process of reviewing Acuna's status as an active gang affiliate. During this review process, Acuna has been afforded the requisite due process. The decision is still pending.[3] (See Ex. E, Hawkes Decl., ¶¶ 20-22.)

---

2. Acuna complains because the Director's Level Appeal Decision refers to him as both an associate and as a member. This confusion likely arises from the fact that Acuna had previously been validated as an associate and was subsequently validated as a member. The mistaken reference in the appeal response, however, does not undermine the validation decision itself or the Director's Level decision upholding the determination that Acuna was active with the gang. Moreover, this discrepancy is being addressed in the pending review.

3. Respondent will provide the Court and Acuna's counsel with a copy of the LEIU's decision, once it has been issued.

19.  Acuna fails to state or establish any grounds for habeas corpus relief.

20.  Except as expressly admitted in this return, respondent denies the allegations of the petition, generally and specifically, and specifically denies that Acuna's rights have been violated.

This return is based on these allegations and the attached exhibits and memorandum of points and authorities, all of which are incorporated by reference.  For the reasons stated in this return, respondent respectfully submits that the order to show cause should be discharged, that the petition should be denied, and that this action should be dismissed.

DATED: June 16, 2006

Respectfully submitted,

BILL LOCKYER
Attorney General of the State of California

JAMES M. HUMES
Chief Assistant Attorney General

FRANCES T. GRUNDER
Senior Assistant Attorney General

JENNIFER A. NEILL
Supervising Deputy Attorney General

PAMELA B. HOOLEY
Deputy Attorney General

Attorneys for Respondent

6

## MEMORANDUM OF POINTS AND AUTHORITIES
## INTRODUCTION

In the past, Acuna had been validated as an EME associate, but he was later classified as an inactive EME associate. After CDCR received information that Acuna was currently involved with the gang again, he was re-validated as an active gang affiliate. Acuna's petition challenges that decision, claiming not only that the evidence was insufficient, but also that he was denied due process. Respondent respectfully submits that this petition should be denied.

This Court has already concluded that one of three confidential documents submitted in support of Acuna's re-validation provided reliable and detailed information about Acuna's gang activity. However, the Court mistakenly indicated that three sources are necessary. Unlike an initial validation decision, when an inactive gang member or associate is re-validated, only one reliable source is required. In this case the Court has already found that there is one reliable source. Therefore, any deficiencies with respect to the other two sources are irrelevant to the resolution of the petition.

It is true that Acuna did not receive confidential disclosure forms (CDC 1030s) before his validation package was submitted to the LEIU. However, he did discuss his validation with the IGI before the package was submitted. And he received his CDC 1030s before he was transferred to the SHU, so he had the opportunity to challenge the validation decision then. He did so by filing an administrative appeal that was ultimately denied because the evidence was sufficient to re-validate him.

Moreover, respondent respectfully submits that even if Acuna was denied due process by the delayed receipt of the CDC 1030s he is not entitled to relief where, as here, his validation would have followed inevitably. Finally, Acuna's gang status is being reviewed, and Acuna has been provided due process in connection with this review, obviating then need for habeas relief.

///
///
///
///

7

**ARGUMENT**

**I.**

**THE PETITION SHOULD BE DENIED BECAUSE ONLY ONE ITEM IS NECESSARY FOR RE-VALIDATION.**

The SHU placement of an inmate who is a validated gang member or associate, and who refuses to disassociate himself from that unlawful conspiracy, furthers the legitimate penological purpose of maintaining safety and security of the prisons. (*Madrid v. Gomez, supra*, 889 F.Supp. at pp. 1274-1276, 1280.) A high-level security institution such as Pelican Bay State Prison (PBSP) has a particular need for such placement. (*Turner v. Safley* (1987) 482 U.S. 78-79, 89.) CDCR's regulations require three independent source items to validate an inmate as a gang member or associate. (Cal. Code Regs., tit. 15, § 3378, subd. (c).)

When a validated gang member or associate has not been active with the gang for a minimum of six years, CDCR will consider whether that inmate can be classified as inactive and safely released to the general population from the SHU. (See Cal. Code Regs., tit. 15, §§ 3341.5, subd. (c)(5); 3378, subd. (e); see also Ex. E, Hawkes Decl., ¶12.) However, if CDCR has "*one* reliable source item identifying the inmate as an active gang member or associate," then the inmate can be re-validated and returned to the SHU. (Cal. Code Regs., tit. 15, §§ 3341.5, subd. (c)(6) 3378 [emphasis added], subd. (f)(1) [emphasis added]; see also Ex. E, Hawkes Decl., ¶12.) Thus, unlike the requirements for an initial validation, a single item is sufficient to re-validate an inactive gang member or associate. (*Ibid.*) Thus, respondent respectfully submits that the Court erred when it asserted that three independent source items are needed in this case. (See Order, dated 02/14/06, at 2:1012.)

Instead only one item was necessary to re-validate Acuna. (Cal. Code Regs., §§ 3341.5, subd. (c)(6) 3378, subd. (f)(1).) Nonetheless, the IGI actually submitted three source items for consideration by the LEIU, and the LEIU ultimately accepted all three. (See Ex. C-D, F, X-Z.) This Court has already concluded that one of the three items (Exhibit Y) meets the criteria for validating an inmate's gang status because it includes reliable, detailed information about Acuna's gang activity. (Order, dated 02/14/06, at 2:8-10.) That document alone provides a

8

1 sufficient basis for Acuna's re-validation. Thus, the adequacy of the other two items is irrelevant

2 to the resolution of this petition.

3                                    II.

4 **THE DELAYED RECEIPT OF THE CDC FORM 1030s DOES NOT
   WARRANT HABEAS RELIEF.**

5

6      Limited due process requirements apply to placing an inmate in administrative segregation.

7 An informal evidentiary review is sufficient both for the decision that an inmate represents a

8 security threat and the decision to confine an inmate to administrative segregation pending

9 completion of an investigation into misconduct charges against him. (*Hewitt v. Helms* (1983)

10 459 U.S. 460, 476.) The inmate must be given notice of the charges and opportunity to present

11 his views to the prison official charged with deciding whether to transfer him to administrative

12 segregation. (*Ibid.*)

13      In this case, the evidence contradicts Acuna's claim that he was denied notice and an

14 opportunity to challenge his validation before the validation package was submitted to the

15 LEIU/SSU. (See Ex. C-D.) Instead, the evidence demonstrates that Acuna was given notice that

16 two confidential memoranda were being used to document his continuing participation in gang

17 activity. (See Ex. D.) In addition, contrary to the allegations in his petition, Acuna was, in fact,

18 given the opportunity by the IGI to participate and discuss any issues concerning his validation.

19 (*Ibid.*) The IGI documented this discussion, including Acuna's specific claims denying any

20 current gang affiliation for consideration by the LEIU. (*Ibid.*)

21      It is true that Acuna apparently was not given the CDC 1030s before the validation package

22 was sent to LEIU/SSU. (See Ex. L.) However, he did receive them on April 20, 2004, before his

23 actual transfer to the SHU in November. (See Ex. L; Ex. G, entry dated 11/17/04.) And

24 although he had the opportunity to assert challenges to his gang validation at multiple

25 classification hearings, he never raised any questions about his validation during those hearings.

26 (Ex. I-J.) If Acuna had challenged his validation during one of these committee hearings, the

27 committee would have been obligated to refer any questionable gang identifications, notifications

28 or new information to the IGI. (Cal. Code Regs., tit. 15, § 3378, subd. (c)(7); see also Ex. E,

                                       9

1   Hawkes Decl., ¶ 19.)  Thus, even though the CDC 1030s were not given to Acuna, he had notice

2   and an opportunity to challenge his validation.  Therefore he was afforded due process, and his

3   petition should be denied.

4       Moreover, since the ultimate decision to re-validate Acuna was correct (based on

5   Exhibit Y), and Acuna has not demonstrated any prejudice from the delayed presentation of the

6   CDC 1030s, his petition should be denied.  (*In re LaCroix* (1974) 12 Cal.3d 146, 154-155.)  In

7   *LaCroix*, a parolee was denied a timely pre-revocation hearing and sought his release.  The

8   California Supreme Court held that the denial of due process does not necessarily require a

9   remedy unless a showing of actual prejudice is made.  (*Ibid.*)  Because LaCroix could not

10   demonstrate any prejudice, his petition was denied.  (*Ibid.*; see also *In re Shapiro* (1975) 14

11   Cal.3d 711, 718 [rejecting challenge to parole revocation because there was no evidence that the

12   result would have been different].)  Similarly, the Supreme Court refused to release an inmate

13   whose parole had been revoked even though he had been denied due process  because the inmate

14   could not demonstrate any prejudice.  (*In re Caudillo* (1980) 26 Cal.3d 623, 638 [failure to

15   provide prerevocation hearing].)  The Court found that it would be "pointless" to issue an order

16   directing his release to afford him the requisite process since his immediate imprisonment would

17   inevitably follow.  (*Id.* at pp. 638-639; see also *People v. Hayes* (2006) 137 Cal.App.4th 34, 41,

18   49-50 [rejecting challenge to Sexually Violent Predator commitment even though trial court

19   erred because no prejudice demonstrated].)

20       This analysis is equally applicable here because Acuna has not demonstrated any prejudice.

21   Therefore, his petition should be denied.

22       Finally, Acuna has now been provided due process in connection with the pending review of

23   his gang status.  He was given notice of the source items being considered; he was able to

24   provide his opinion as to each item; and his input is now being considered by the LEIU.  Thus,

25   there is no basis for habeas relief, and his petition should be denied.

26   ///

27   ///

28   ///

10

## CONCLUSION

Contrary to the allegations in his petition, Acuna was given notice and an opportunity to challenge his gang validation in connection with the 2004 decision finding him to be active with the Mexican Mafia. More importantly, the evidence of Acuna's continuing involvement with the Mexican Mafia is sufficient to justify his re-validation. And Acuna has now been afforded the requisite due process. Accordingly, his petition should be denied and this matter dismissed.

Dated: June 16, 2006

Respectfully submitted,

BILL LOCKYER
Attorney General of the State of California

JAMES M. HUMES
Chief Assistant Attorney General

FRANCES T. GRUNDER
Senior Assistant Attorney General

JENNIFER A. NEILL
Supervising Deputy Attorney General

PAMELA B. HOOLEY
Deputy Attorney General

Attorneys for Respondent

30108502.wpd

11

Return and Supporting Points and Authorities

# EXHIBIT A

FORM DSL 290

## ABSTRACT OF JUDGMENT — COMMITMENT

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **SANTA CLARA**

BRANCH **CRIMINAL**

COURT I.D. **4 3**

| PEOPLE OF THE STATE OF CALIFORNIA | versus | | PRESENT | X | CASE NUMBER(S) |
|---|---|---|---|---|---|
| DEFENDANT: **ARCADIO SERRANO ACUNA** | | | PRESENT | X | 103259 - A |
| AKA: | | | NOT PRESENT | | - B |
| | | | | | - C |

COMMITMENT TO STATE PRISON
ABSTRACT OF JUDGMENT　　☐ AMENDED ABSTRACT　　- D / - E

| DATE OF HEARING (MO) (DAY) (YR) | DEPT. NO. | JUDGE | CLERK |
|---|---|---|---|
| 03  09  87 | 04 | JACK KOMAR | RALPH B. ULATE |

| REPORTER | COUNSEL FOR PEOPLE | COUNSEL FOR DEFENDANT | PROBATION NO. OR PROBATION OFFICER |
|---|---|---|---|
| D. ROGINA | T. HANFORD | R. DIXON | E. KAMMELAAR |

### 1. DEFENDANT WAS CONVICTED OF THE COMMISSION OF THE FOLLOWING FELONIES:

A. ☐ ADDITIONAL COUNTS ARE LISTED ON ATTACHMENT

| COUNT | CODE | SECTION NUMBER | CRIME | YEAR CRIME COMMITTED | MO | DAY | YEAR | CONVICTION BY | | | SENTENCE RELATION | | | | | PRINCIPAL OR CONSECUTIVE TIME IMPOSED | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | JURY | COURT TRIAL | PLEA | TERM (L,M,U) | CONCURRENT | CONSECUTIVE 1170.1(a) | CONSECUTIVE FULL 1170.1(a) | INCOMPLETE SENTENCE | 654 STAY | YEARS | MONTHS |
| 08 | PC | 211 | Robbery (Prin. Term) | 85 | 01 | 29 | 87 | X | | | U | | | | | | 05 | 00 |
| 10 | PC | 211 | Robbery | 85 | 01 | 29 | 87 | X | | | U | | X | | | | 01 | 00 |
| 11 | PC | 211 | Robbery | 85 | 01 | 29 | 87 | X | | | U | | X | | | | 01 | 00 |
| 12 | VC | 10851(a) (Drive or Take Veh) | | 85 | 01 | 29 | 87 | X | | | U | | | X | | X | (03 | 00) |

### 2. ENHANCEMENTS (CHARGED AND FOUND, STRICKEN, TIME IMPOSED):

| COUNT | 12022(a) | | | 12022(b) | | | 12022.3(a) | | | 12022.3(b) | | | 12022.5 | | | 12022.6(a) | | | 12022.6(b) | | | 12022.7 | | | 12022.8 | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | C/F | S | I | C/F | S | I | C/F | S | I | C/F | S | I | C/F | S | I | C/F | S | I | C/F | S | I | C/F | S | I | C/F | S | I | | |
| 08 | | | | | | | | | | | | | X | X | | | | | | | | | | | | | | 02 | 00 |
| 10 | | | | | | | | | | | | | Stayed PC 1170.1(a) | | | | | | | | | | | | | | | (01 | 00) |
| 11 | X | | X | | | | | | | | | | Stayed PC 1170.1(a) | | | | | | | | | | | | | | | (01 | 00) |
| 12 | X | | X | | | | | | | | | | Stayed PC 654 | | | | | | | | | | | | | | | | |

*****ACTS - SEE INDETERMINATE SENTENCE JUDGMENT !*****

### 3. INCOMPLETED SENTENCE(S) CONSECUTIVE:

| COUNTY | CASE NUMBER | CREDIT FOR TIME SERVED |
|---|---|---|
| | | |

### 5. A. NUMBER OF PRIOR PRISON TERMS:

| § | C/F | S | |
|---|---|---|---|
| 667.5(a) | | | 0  0 |
| 667.5(b) | | | 0  0 |
| 667.6(b) | | | 0  0 |

### 4. OTHER ORDERS: ☒ **Total Term Imposed**
**09Yrs 08 Mos Stayed PC 654****
**Ct. 05 dismissed mot. DA**
**Deft. advised appeal rights**

### B. NUMBER OF PRIOR FELONY CONVICTIONS:

| § | C/F | S | |
|---|---|---|---|
| 667.6(a) | | | 0  0 |

| 6. TOTAL TIME IMPOSED ON ALL ATTACHMENT PAGES (FORM DSL 290-A): | 00  08 |
|---|---|
| 7. TIME STAYED § 1170.1(a) [5-YEAR LIMIT] AND/OR § 1170.1(f) [DOUBLE BASE LIMIT] : ➤ | 09  08 |
| 8. TOTAL TERM IMPOSED: | 09  08 |

### 9. EXECUTION OF SENTENCE IMPOSED:

A. ☒ AT INITIAL SENTENCING HEARING　　B. ☐ AT RESENTENCING PURSUANT TO DECISION ON APPEAL　　C. ☐ AFTER REVOCATION OF PROBATION　　D. ☐ AT RESENTENCING PURSUANT TO RECALL OF COMMITMENT [PC§1170(d)]

### 10. DATE SENTENCE PRONOUNCED

| MO | DAY | YEAR | TOTAL DAYS CREDIT FOR TIME SPENT IN CUSTODY: | ACTUAL TIME | LOCAL CONDUCT CREDITS | STATE INSTITUTIONS |
|---|---|---|---|---|---|---|
| 03 | 09 | 87 | *** INCLUDING: | *** | *** | ☐ DMH　☐ CDC |

### 11. DEFENDANT IS REMANDED TO THE CUSTODY OF THE SHERIFF, TO BE DELIVERED:

☒ FORTHWITH
☐ AFTER 48 HOURS, EXCLUDING SATURDAYS, SUNDAYS AND HOLIDAYS

☐ INTO THE CUSTODY OF THE DIRECTOR OF THE CORRECTIONS AT THE RECEPTION-GUIDANCE CENTER LOCATED AT:

☐ CALIF. INSTITUTION FOR WOMEN - FRONTERA
☐ OTHER (SPECIFY):
☒ CALIF. MEDICAL FACILITY — VACAVILLE
☐ CALIF. INSTITUTION FOR MEN — CHINO

**CLERK OF SUPERIOR COURT**

*I hereby certify the foregoing to be a correct abstract of the judgment made in this action.*

DEPUTY'S SIGNATURE: Ralph B. Ulate

DATED: 9 MARCH 1987

This form is prescribed pursuant to Penal Code §1213.5 to satisfy the requirements of Penal Code §1213 (Abstract of Judgment and Commitment) for determinate sentences under Penal Code §1170. A copy of probation report shall accompany the Department of Corrections' copy of this form pursuant to Penal Code §1203c. A copy of the sentencing proceedings and any supplementary probation report shall be transmitted to the Department of Corrections pursuant to Penal Code §1203.01. Attachments may be used but must be incorporated.

Form Adopted by the
Judicial Council of California
Effective July 1, 1981

## ABSTRACT OF JUDGMENT — COMMITMENT
FORM DSL 290

Pen.C. 1213.5.

DISTRIBUTION:　　PINK COPY — COURT FILE,　　YELLOW COPY — DEPARTMENT OF CORRECTIONS,　　WHITE COPY — ADMINISTRATIVE OFFICE OF THE COURTS.

# ABSTRACT OF JUDGMENT – COMMITMENT
## ATTACHMENT PAGE

FORM DSL 290-A

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ___SANTA CLARA___

COURT I.D. `4 3`    BRANCH ___CRIMINAL___

PEOPLE OF THE STATE OF CALIFORNIA                    versus

DEFENDANT: ARCADIO SERRANO ACUNA    [XX] PRESENT   [ ] NOT PRESENT

AKA:

COMMITMENT TO STATE PRISON
ABSTRACT OF JUDGMENT    [ ] AMENDED ABSTRACT    CASE NUMBER 103259

| DATE OF HEARING (MO)(DAY)(YR) | DEPT. NO. | JUDGE | CLERK |
|---|---|---|---|
| 03 09 87 | 04 | JOACK KOMAR | RALPH B. ULATE |

| REPORTER | COUNSEL FOR PEOPLE | COUNSEL FOR DEFENDANT | PROBATION NO. OR PROBATION OFFICER |
|---|---|---|---|
| D. ROGINA | T. HANFORD | R. DIXON. | E. KAMMELAAR |

1. DEFENDANT WAS CONVICTED OF THE COMMISSION OF THE FOLLOWING FELONIES:

A. [ ] ADDITIONAL COUNTS ARE LISTED ON ATTACHMENT

| COUNT | CODE | SECTION NUMBER | CRIME | YEAR CRIME COMMITTED | DATE OF CONVICTION MO DAY YEAR | CONVICTION BY JURY TRIAL | COURT TRIAL | PLEA | TERMIN.(U) | CONCURRENT | CONSECUTIVE 1/3 WEST | CONSECUTIVE 1/3 NONVIOL | CONSECUTIVE FULL TERM | CS INCOMPLETE OFFENSE 1170.1 (a) | 654 STAY | PRINCIPAL OR CONSECUTIVE TIME IMPOSED YEARS | MONTHS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 13 | PC | 664-211 | (Attempts) | 85 | 01 29 87 | x | | U | | x | | | | | | 00 | 08 |
| 06 | PC | 12021(a)(Poss. Firearm by | 85 | 01 14 87 | | | x | U | | | | | x | x | (03 00) | | |
| Person prev. convicted viol. offenses) | | | | | | | | | | | | | | | | | |
| 09 | VC | 10851 (Drive or Take Veh.) | 85 | 01 29 87 | x | | | U | | | | | | x | (03 00) | | |

88*** NOTE:
        CT. 10 PC211 Deft. Sent. STATE PRISON 05 YEARS OF SAID SENTENCE 02
YEARS WAS STAYED PURSUANT TO SECTION 1170.1(a) of the PC.
        Ct. 11 PC 211 Deft. Sent. State Prison 05 Yrs. 04 YRS STAYED PURSUANT
TO SECTION 1170.1(a) PC.
        CT. 13 PC 664-211 (Attempts) Deft. Sentenced to State Prison 03 YRS.
28 months STAYED PURSUANT TO SEC. 1170.1(a) PC.
        Deft. Pay Restitution $100.00 (Atty fees)
        Deft. advised of Parole Rights

(TOTAL)

2. ENHANCEMENTS (CHARGED AND FOUND, STRICKEN, TIME IMPOSED):

| COUNT | 12022 (a) C/F S I | 12022 (b) C/F S I | 12022.3 (a) C/F S I | 12022.3 (b) C/F S I | 12022.5 C/F S I | 12022.6 (a) C/F S I | 12022.6 (b) C/F S I | 12022.7 C/F S I | 12022.8 C/F S I | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 13 | x   x | Stayed PC 1170.1(a) | | | | | | | | (01 | 00) |
| 09 | | | | | x   x | Stayed  PC 654 | | | | (02 | 00) |

(TOTAL)

3. TOTAL TIME IMPOSED ON THIS ATTACHMENT PAGE: ⟶    (TOTAL) 00 08

This form is prescribed pursuant to Penal Code §1213.5 to satisfy the requirements of Penal Code §1213 (Abstract of Judgment and Commitment) for determinate sentences under Penal Code §1170. A copy of probation report shall accompany the Department of Corrections' copy of this form pursuant to Penal Code §1203c. A copy of the sentencing proceedings and any supplementary probation report shall be transmitted to the Department of Corrections pursuant to Penal Code §1203.01. Attachments may be used but must be incorporated by reference.

Form Adopted by the
Judicial Council of California
Effective July 1, 1981

## ABSTRACT OF JUDGMENT – COMMITMENT
ATTACHMENT FORM DSL 290-A

Pen. C. 1213.5

DISTRIBUTION:    PINK COPY - COURT FILE.    YELLOW COPY - DEPARTMENT OF CORRECTIONS.    WHITE COPY - ADMINISTRATIVE OFFICE OF THE COURT

DEPT. No __04__   CASE NO __103259__

# In the Superior Court of the State of California

IN AND FOR THE _____ COUNTY OF __SANTA CLARA__

## AMENDED
### ABSTRACT OF JUDGMENT
(Commitment to State Prison as provided by Penal Code Section 1213.5)

| The People of the State of California, | Hon __JACK KOMAR__ |
|---|---|
| | (Judge of Superior Court) |
| vs | __T. HANFORD__ |
| | (District Attorney) |
| __ARCADIO SERRANO ACUNA__          Defendant | __R. DIXON__ |
| | (Counsel for Defendant) |

This certifies that on the __09th__ day of __MARCH__, 19 __87__ judgment of conviction of the above-named defendant was entered as follows:

In Case No __103259__ _____ Count No __02__ _____ he was convicted by __JURY__ ; on his plea of _____
(Court or Jury)

__NOT GUILTY__ _____ (guilty, not guilty, former conviction or acquittal, once in jeopardy,

not guilty by reason of insanity); of the crime of __KIDNAPPING FOR ROBBERY__ _____

(designation of crime and degree, if any, including fact that it constitutes a second or subsequent conviction of same offense if that affects the sentence and if under Section 209 of the Penal Code whether victim suffered bodily harm):

in violation of __PENAL CODE SECTION 209(b)__ _____
(reference to Code or Statute, including Section and Sub-section);

with prior convictions charged and proved or admitted as follows:

| DATE | COUNTY AND STATE | CRIME | DISPOSITION |
|---|---|---|---|
| | SAN BERNARDINO | Robbery (PC 211) | STATE PRISON |
| | SAN BERNARDINO | Burglary (PC 459) | STATE PRISON |
| | | | |
| | | | |
| | | | |
| | | | |

Defendant __WAS__ _____ charged and admitted being, or was found to have been armed with a deadly weapon at the time
(was or was not)

of commission of the offense, or a concealed deadly weapon at the time of his arrest within the meaning of Penal Code Sections ~~969c and 3024~~ 12022.5

7936 REV 8/74

This certifies that on the 07th day of MARCH, 1987 judgment of conviction of the above-named defendant was entered as follows:

In case No. 103259 Count No. 03 he was convicted by JURY ; on his plea of NOT guilty
(Court of Jury)
_____ (guilty, not guilty, former conviction or acquittal, once in jeopardy, not guilty by reason of insanity); of the crime of KIDNAPPING FOR ROBBERY

(designation of crime and degree, if any, including fact that it constitutes a second or subsequent conviction of same offense if that affects the sentence and if under Section 209 of the Penal Code whether victim suffered bodily harm):

in violation of PENAL CODE SECTION 209 (b)

(reference to Code or Statute, including Section and Sub-section);

with prior convictions charged and proved or admitted as follows:

| DATE | COUNTY AND STATE | CRIME | DISPOSITION |
|------|------------------|-------|-------------|
| | SAN BERNARDINO | Robbery (PC 211) | STATE PRISON |
| | SAN BERNARDINO | Burglary (PC 459) | STATE PRISON |
| | | | |
| | | | |

Defendant WAS charged and admitted being, or was found to have been armed with a deadly weapon at the time
(was) or (was not)

of commission of the offense, or a concealed deadly weapon at the time of his arrest within the meaning of Penal Code Sections 969c and 3024 12022 (a)

This certifies that on the 09th day of MARCH, 1987 judgment of conviction of the above-named defendant was entered as follows:

In case No. 103259 Count No. 04 he was convicted by JURY ; on his plea of NOT GUILTY
(Court of Jury)
_____ (guilty, not guilty, former conviction or acquittal, once in jeopardy, not guilty by reason of insanity); of the crime of KIDNAPPING FOR ROBBERY

(designation of crime and degree, if any, including fact that it constitutes a second or subsequent conviction of same offense if that affects the sentence and if under Section 209 of the Penal Code whether victim suffered bodily harm):

in violation of PENAL CODE SECTION 209 (b)

(reference to Code or Statute, including Section and Sub-section);

with prior convictions charged and proved or admitted as follows:

| DATE | COUNTY AND STATE | CRIME | DISPOSITION |
|------|------------------|-------|-------------|
| | SAN BERNARDINO | Robbery (PC 211) | STATE PRISON |
| | SAN BERNARDINO | Burglary (PC 459) | STATE PRISON |
| | | | |
| | | | |

Defendant WAS charged and admitted being, or was found to have been armed with a deadly weapon at the time
(was) or (was not)

of commission of the offense, or a concealed deadly weapon at the time of his arrest within the meaning of Penal Code Sections 969c and 3024 12022 (a)

7956 REV 8/74

_ant WAS NOT_ judged a habitual criminal within the meaning of Sub-division _A or B_ of
(was) or (was not)                                                                  (a) or (b)

_ection 644 of the Penal Code; and the defendant _IS NOT_ a habitual criminal in accordance with Sub-division (c)
(is) or (is not)

of that Section.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the said defendant be punished by imprisonment in the State Prison of the State of California for the term provided by law, and that he be remanded to the Sheriff of the _____ County of _SANTA CLARA_ and by him delivered to the Director of Corrections of the State of California at the place hereinafter designated. _CALIFORNIA MEDICAL FACILITY- VACAVILLE_

It is ordered that sentences shall be served in respect to one another as follows _CONSECUTIVE_

(Note whether concurrent or consecutive as to each count)

_CT. 02 Viol. PC. SEC. 209 (b) (KIDNAPPING FOR ROBBERY) DEFT. SENT. TO STATE PRISON FOR THE TERM OF LIFE; FOR A VIOL P.C. SECTION 12022.5 DEFT. SENT. TO STATE PRISON FOR THE TERM OF 02 YEARS CONSECUTIVE TO LIFE TERM CT. 02. CT. 03. VIOL. P.C. SEC. 209 (b) (KIDNAPPING FOR ROBBERY) DEFT. SENT. TO STATE PRISON FOR THE TERM OF LIFE CONSECUTIVE TO CT. 02, FOR A VIOL PC SEC. 12022 (a) DEFT. SENT. TO STATE PRISON FOR THE TERM OF 01 YEAR CONSECUTIVE TO CT. 02 STAYED IN THE INTEREST OF JUSTICE. CT. 04 VIOL. PC SEC. 209 (b) (KIDNAPPING FOR ROBBERY) DEFT. SENT. TO STATE PRISON FOR THE TERM OF LIFE CONSECUTIVE TO CTS COUNTS 2 AND 3._

and in respect to any prior incomplete sentence (s) as follows: _N/a_

(NOTE whether concurrent or consecutive as to all incomplete sentences from other jurisdictions)

_FOR A VIOL PC SECTION 12022 (a) DEFT. SENT. TO STATE PRISON FOR THE TERM OF 01 YEAR CONSECUTIVE TO CTS 2 AND 3, STAYED PURSUANT TO SECTION 654 PC. PRIOR CONVICTIONS: FOR A VIOL PC SEC. 667/1172.7 DEFT. SENT. STATE PRISON FOR A TERM OF 05 YEARS CONSECUTIVE TO COUNTS 2,3,4 (SINGLE 5 YEAR TERM). FOR A VIOL. PC SEC. 667.5 (b) DEFT. SENT. TO STATE PRISON FOR A TERM OF 01 YEAR CONSECUTIVE TO COUNTS 2,3,4._

To the Sheriff of the _____ County of _SANTA CLARA_ and to the Director of Corrections:

Pursuant to the aforesaid judgment, this is to command you, the said Sheriff, to deliver the above-named defendant into the custody of the Director of Corrections at _CALIFORNIA MEDICAL FACILITY- VACAVILLE_ at your earliest convenience.

_CREDIT FOR TIME SERVED:_

_ACTUAL LOCAL TIME_

_504 days_

_LOCAL CONDUCT CREDITS:_

_252 days_

_TOTAL:_

_756 days_

_NOTE:_

_MOTION NEW TRIAL DENIED 3/9/87_

_MOTION TO STRIKE PRIOR CONVICTIONS- DENIED 3/9/87_

_DEFT. ADVISED APPEAL RIGHTS 3/9/87_

Witness my hand and seal of said court

this ___28th___ day of ___APRIL___ ___1987___

_GRACE K. YAMAKAWA_ _____ Clerk

by _Ralph B. Ulate (Ralph B. ULATE)_ _____ Deputy

SEAL

State of California, } ss.
_____ County of _SANTA CLARA_ }

I do hereby certify the foregoing to be a true and correct abstract of the judgment duly made and entered on the minutes of the Superior Court in the above entitled action as provided by Penal Code Section 1213.

Attest my hand and seal of the said Superior Court this ___28th___ day of ___APRIL___ 19 _87_
_GRACE K. YAMAKAWA, COUNTY CLERK_
_By Ralph B. Ulate (Ralph B. ULATE)_
County Clerk and Ex-officio Clerk of the Superior Court of the State of California in and for the
_____ County of _SANTA CLARA._

The Honorable: _____

_JACK KOMAR_
Judge of the Superior Court of the State of California, in and for the _____ County of

_SANTA CLARA_ _____

Note: If probation was granted in any sentence of which abstract of judgment is certified, attach minute order reciting the fact and imposing sentence or ordering a suspended sentence into effect.

7956 REV 8/76

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SANTA CLARA

Court convenes at SAN JOSE

DATE: __28 APRIL 1987__                                    Courtroom __04__

PRESENT: HON ___JACK KOMAR___ , JUDGE         RALPH B. ULATE ___ DEPUTY CLERK

___NOT REPORTED___ , REPORTER                  P. O'DONOVAN ___ BAILIFF

| TITLE: THE PEOPLE OF THE STATE OF CALIFORNIA, Plaintiff, vs. ARCADIO SERRANO ACUNA, Defendant. | COUNSEL PRESENT: T. HANFORD, DDA R. DIXON, ESQ., |
|---|---|

NATURE OF PROCEEDINGS:

## MINUTE ORDER

THE INDETERMINATE ABSTRACT OF JUDGMENT FOR DEFENDANT ARCADIO SERRANO

ACUNA DATED 09 MARCH 1987 IS ORDERED AMENDED AS FOLLOWS:

DEFENDANTS SENTENCE TO STATE PRISON FOR A VIOLATION OF PENAL CODE

SECTION 12022(a) in COUNT 03 of 12 MONTHS WITH 08 MONTHS STAYED IS VACATED.

DEFENDANT SENTENCED TO STATE PRISON FOR A VIOLATION OF PENAL CODE SECTION

12022(a) IN COUNT 03 FOR THE TERM OF 12 MONTHS TO RUN CONSECUTIVE TO COUNT

02, WITH SAID 12 MONTH SENTENCE STAYED IN THE INTEREST OF JUSTICE.

cc: DEPARTMENT OF CORRECTIONS
    LEGAL PROCESSING UNIT
    P.O. BOX 942883
    SACRAMENTO, CA. 94283-0001

CRIMINAL

|   | LAW AND MOTION MINUTES | BOOK _____ | ACTION NO. __103259__ |
|---|---|---|---|
| XXX | MINUYE ORDER | PAGE _____ | DATE: __28 APRIL 1987__ |
|   | TRIAL MINUTES |   |   |

2826

# EXHIBIT B

**NO. C-43165**                                                                                    **CDC-128-G** (Rev. 2/96)
Custody: MAX AS                       Assignment:
Comments: DEPARTMENTAL REVIEW BOARD

Location: PBSP / SHU      CS: 81          Enemy: YES      MEPD: 5-17-12
Gang: INACTIVE EME        Prior DRB: NO                   Restitution: NOT APPLICABLE

REASON FOR REFERRAL: This case was referred to DRB pursuant to California Code of Regulations (CCR), Title 15, Section 3378 (d)(e) whereas "…an inmate housed in a Security Housing Unit (SHU) as a gang member or associate may be considered for review of inactive status by DRB when the inmate has not been identified as having been involved in gang activity for a minimum of six years. The Assistant Director, LEIU, or designee shall approve verification of an inmate's inactive status…". This case has been validated by LEIU staff as meeting the inactive criteria, and requires a DRB review to evaluate the inmate's inactive status and alternative placement options, if approved by DRB action. The following case factors are noted:

1. On 10-5-98, Inmate Acuna was validated as an associate of the EME per the CDC-128-B-2 process (copy attached). The validation documents used to validate Inmate Acuna have been included with the DRB referral documents. A review of these documents indicates that Inmate Acuna did not have a significant EME role.
2. On 1-31-00, the Inactive Gang Task Force completed an investigation relative to Inmate Acuna's gang involvement (copy of CDC-128-B attached). This investigation determined that Inmate Acuna qualified for a potential "inactive validation" via LEIU. This document also notes the last source document related to gang activity is dated 8-31-90.
3. A CDC-128-B-2 dated 2-07-00, was prepared by LEIU staff and documents that Acuna has been determined to be an "inactive" EME associate and therefore, meets the criteria for a DRB referral / review.

The inmate has requested placement at PBSP-IV "general population". The institution has recommended that DRB approve a transfer to either CCI-IV or SVSP-IV general population.

CIRCUMSTANCES: Inmate Acuna was received into CDC on 3-11-87 as a PV/WNT from Santa Clara County for Kidnap for Robbery (3 counts). He was sentenced to three Life terms plus eight years. He has an extensive criminal record dating to 1978. He has not appeared to be a management concern during this current CDC term. His last disciplinary action was in 1995 for Talking in the Library. Inmate Acuna was also found to be the victim of a stabbing assault in 1990.

Date: 5-31-00              **Classification: DRB ACTION**              Inst.: PBSP
**NO. C-43165**                       **NAME: ACUNA**                  CDC-128-G (Rev. 2/96)
Custody: MAX AS           Assignment:
Comments: DEPARTMENTAL REVIEW BOARD

INSTITUTION STAFF RECOMMENDATION: Approve transfer to either PBSP-IV or CCI-IV general population.

CLASSIFICATION SERVICES RECOMMENDATION: CSU notes all case factors and the recent "inactive" gang validation. Additionally, the inmate has maintained a satisfactory program and has not been a management concern. The LEIU Investigation results warrant this review and substantiate a potential placement of Inmate Acuna in a general population facility for a twelve-month period of observation. Therefore, CSU recommends: 1. Approve a transfer to SVSP-IV for a twelve-month period of observation. 2. The PBSP C&PR to facilitate this transfer within 14 days after receiving this action. 3. The PBSP C&PR to complete the CDC-840 with applicable transfer information / administrative determinates prior to the inmate's transfer. 4. The inmate to be advised that any signs of gang activity (one reliable source) will result in a removal from the general population. 5. After a twelve-month period of observation has been completed, the inmate is to be reviewed by a Classification Committee to ensure that his placement is consistent with his classification score and case factors.

DRB ACTION OF 5-31-00: DRB reviewed Inmate Acuna's case, in person, on this date at PBSP. Acuna was permitted to discuss his case with the DRB members. Inmate Acuna acknowledged the reason for his DRB appearance and understood the "inactive gang" process. DRB noted all case factors relative to meeting the "inactive gang" criteria, including the inmate's positive behavior and lack of any documented gang activity. DRB discussed all program expectations with Inmate Acuna, who claimed to understand all functions of this DRB review. Acuna stated "I just want to get a date…". DRB noted the following factors, staff comments and discussion points:
1. The Tier Officer assigned to Inmate Acuna's "POD" was asked by DRB members about his behavior, compliance with directions, attitude toward staff and ability to program with members of rival gangs / disruptive groups in a

NO. C-43165                                          NAME: ACUNA                    CDC-128-G (Rev. 2/96)
Custody: MAX AS                    Assignment:
Comments: DEPARTMENTAL REVIEW BOARD

positive manner.  The Officer expressed positive comments about Acuna and indicated he was not a problem inmate.  The Officer felt Acuna should be able to program with inmates of opposing factions.

2. Inmate Acuna indicated that if placed in a general population setting / integrated yard, he would be able to program with inmates from rival groups.

3. Acuna also understood that DRB may approve Double-Celling upon his reception at a general population institution, and he claimed he would have no problems housing with another inmate.

4. Acuna claimed he would not involve himself in future gang activity and acknowledged the consequences, should he become involved in any type of future gang activity / association.

After a review of all case factor and noting the above comments, DRB elected to grant the inmate's release from Indeterminate SHU with placement at CCI-IV for 180 design housing.  The following DRB actions were also approved: 1. Retain CLO-A custody for a period of twelve months, at which time, the institution is to evaluate the inmate's behavior and relevant case factors to determine his eligibility for a less restrictive custody.  2. The CCI-IGI is to closely monitor the inmate's behavior and activity while housed at CCI.  3. Double-Cell housing is approved upon his reception at CCI.  4. The PBSP C&PR to facilitate this transfer with CSU staff within 14 days after receiving this action.  The C&PR is to also complete the CDC-840 with applicable information / administrative determinates to include "INA" prior to the inmate's transfer.  5. Although DRB will not maintain future transfer control over this case, it is requested by DRB that if Inmate Acuna is identified as being involved in any future gang activity, which would again subject him to an Indeterminate SHU placement, that the DRB coordinator be advised in order to monitor the success of this program.  6. Case to be reviewed in twelve months by a Classification Committee to ensure that the inmate's placement is consistent with his Classification Score / case factors.

RETAIN DRB TRANSFER CONTROL: YES ___ NO _X_

Date: 5-31-00                     Classification: DRB ACTION                    Inst.: PBSP

NO. C-43165                                          NAME: ACUNA                    CDC-128-G (Rev. 2/96)
Custody: MAX AS                    Assignment:
Comments: DEPARTMENTAL REVIEW BOARD

MEMBERS:          D. TRISTAN, Deputy Director
                  Institutions Division

                  K.W. PRUNTY, Regional Administrator-South

                  M. KALVELAGE, Chief (A)
                  Institution Operations, Institutions Division

RECORDER:         D. LANKFORD, Classification Staff Representative, Classification Services Unit

ATTENDEES:        B. PARRY, Assistant Director, Law Enforcement and Investigation Unit
                  J. DIGGS, Facility Captain, Classification Services Unit


M. Kalvelage                                         /D. TRISTAN, Deputy Director
M. KALVELAGE, Chief (A)                              Institutions Division
Institution Operations, Institutions Division

Date: 5-31-00                     Classification: DRB ACTION                    Inst.: PBSP

**D 6 204**

CDC 128 B-2 (8/95)

**INMATE'S NAME:** Acuna, Arcadio

**CDC NUMBER:** C43165

On 21 Nov 95 a gang validation package regarding subject was received from Institution Gang Investigator A.L. Bell

at Fc/Som

**TOTAL NUMBER OF ITEMS SUBMITTED FOR REVIEW:** ( 3 )

The following items meet the validation requirements: Three (3) confidential memo dated

10-11-88, 9-20-89 And 8-31-90 *

**TOTAL NUMBER OF ITEMS WHICH MEET VALIDATION REQUIREMENTS:** ( 3 )

The following items do not meet the validation requirements and were/shall not be used as a basis for validation:

**TOTAL NUMBER OF ITEMS WHICH DO NOT MEET VALIDATION REQUIREMENTS:** ( 0 )

**GANG VALIDATION/REJECTION REVIEW**

**Date:** 05 Oct 95

(CONTINUED ON REVERSE)

**GENERAL CHRONO**

## ACTION OF REVIEWER

Pursuant to the validation requirements established in 15 CCR Section 3378 Acuna, Arcadio is
(INMATE'S NAME)

( X ) VALIDATED    ( ) REJECTED

as a member/associate/dropout/safety concern/delete of the MEXICAN MAFIA prison gang/disruptive group.

**REVIEWER'S SIGNATURE**
ROBERT COBAUGH, LIEUTENANT

**DATE:**
05 Oct 95

**DISTRIBUTION:**
Original - Central File
Copy - Classification & Parole Representative/Parole Administrator I
Copy - Institutional Gang Investigator/Region Gang Coordinator
Copy - Law Enforcement Liaison Unit
Copy - Inmate/Parolee



**ACUNA, ARCADIO, SERRANO C-43165 AKA "CADIO"**                    CDC 128-B (REV. 4/74)

On Monday, January 17, 2000, an investigation was initiated on inmate **ACUNA, C-43165**, per the California code of Regulations, section 3378 (d) (e), regarding his (Active/In-Active) gang status.

**ACUNA** was validated on 11-29-90, as an associate of the **Mexican Mafia** prison gang.

The last source document showing activity is dated, **08-31-90.**

During the investigation the following areas were reviewed:

| | | |
|---|---|---|
| CENTRAL FILE | 01/17/00 | I. Dominicci |
| ARCHIVES | N/A | N/A |
| LEIU/INTELL OPS | 01-28-00 | Agent D. Smith |
| CAL GANGS | 01/17/00 | Officer J. Bales |
| WSIN | 01/17/00 | Officer J. Bales |
| PAROLES, LEADS | N/A | N/A |
| LOCAL LAW ENFORCEMENT | 01/19/00 | Deputy S. Chapman |

A review of the above areas revealed no gang activity with the last six years.

A search of **ACUNA'S** assigned cell (D-6207L) proved negative for gang activity.

The Offender Based Information System (OBIS) indicated **ACUNA** has been in Pelican Bay State Prison since 01/19/91.

Based on the above information it is recommended **ACUNA, C-43165**, be placed on **In-Active** status.

**ACUNA** was photographed, and an **In-Active** package is being submitted to the Law Enforcement & Investigations Unit for approval.

I. Dominicci

**I. Dominicci**
I.S.U. Gang Investigator
In-Active Gang Task Force

**Pelican Bay State Prison**
DATE: 01/31/2000          **GANG INFORMATION/IGI REVIEW / IN-ACTIVE STATUS**          CDC 128-B

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS
CDC 128-B-2 (5/95)

D6/207L

---

INMATE'S NAME: ACUNA, ARCADIO                              CDC NUMBER: C43165

---

On 02/04/00 a gang validation package regarding subject was received from Institution Gang Investigator CRANDALL at PBSP.
                                                  TOTAL NUMBER OF ITEMS SUBMITTED FOR REVIEW: (1)
The following items **meet** the validation requirements: 128B DATED 01/31/00.
                                                  TOTAL NUMBER OF ITEMS WHICH MEET VALIDATION REQUIREMENTS: (1)
The following items **do not meet** the validation requirements and were/shall not be used as a basis for validation: NONE.
                                                  TOTAL NUMBER OF ITEMS WHICH DO NOT MEET VALIDATION REQUIREMENTS: (0)

|                          | GANG VALIDATION/REJECTION REVIEW       |                 |
| Date: 02/07/00           | (CONTINUED ON REVERSE)                 | GENERAL CHRONO  |
|                          | LEIU/SSU                               |                 |

---

### ACTION OF REVIEWER

Pursuant to the validation requirements established in 15 CCR Section 3378, ACUNA, ARCADIO is:

☒ **VALIDATED**          ☐ **REJECTED**

as a inactive associate of the **MEXICAN MAFIA** prison gang.

---

REVIEWER'S SIGNATURE                                        DATE: 02/07/00
S.C. WOHLWEND, Senior Special Agent   *J. Wohlwend*

**DISTRIBUTION:**
Original - Central File
Copy - Classification & Parole Representative/Parole Administrator I
Copy - Institutional Gang Investigator/Region Gang Coordinator
Copy - Law Enforcement Liaison Unit
Copy - Inmate/Parolee

CAPTAIN, INVESTIGATI
SERVICES
'00 FEB 10 AM 8
RECEIVED

**EXHIBIT C**

State of California

Department of Corrections
CDC 128-B (8-87)

NAME AND NUMBER    ACUNA, ARCADIO, SERRAN C43165 AKA "CADOI"

On Friday December 12, 2003, an investigation was initiated on Inmate Acuna, C43165, per the California Code of Regulations, Title 15, Section 3378 (d) regarding his (Active/In Active) gang status.

Acuna was validated as an associate of the Mexican Mafia prison gang on 11-29-90.

The last source document showing gang activity is dated 08-31-90.

The California State Prison Los Angeles County (CSP-LAC) Institutional Gang Investigator's Unit has received new Confidential Information dated September 23, 2003 and December 12, 2003, implicating and showing Acuna as being currently involved in associating and participating in gang activity for the Mexican Mafia (EME) at CSP-LAC.

Based on the information it is recommended Acuna, C43165, be placed on the Active Status.

Acuna was photographed, and an active package is being submitted to the Law Enforcement & Intelligence Unit, (LEIU).

J. GARCILAZO
Institutional Gang Investigator
CSP-Los Angeles County

Orig:C-FILE
Cc: Writer

Date:   December 17, 2003,          GANG CHRONO          GENERAL CHRONO

**EXHIBIT D**

State of California                                          Department of Corrections
                                                            CDC 128-B (8-87)

NAME AND NUMBER              ACUNA, ARCADIO, SERRANO, C43165

**INTERVIEW:**

On Thursday December 18, 2003, the Institutional Gang Investigator (IGI) interviewed Inmate Acuna C43165, Validated Mexican Mafia Inactive per California Code Of Regulations Title 15, Section 3378 (f).(1). Acuna was informed that IGI would be submitting a validation package for revalidation with Prison Gang Mexican Mafia. Inmate Acuna was also informed that two confidential Memorandums were being used as new information implicating him as continuing to participate with gang activity. Inmate Acuna was given the opportunity to participate and discuss any issues concerning the validation. Acuna stated he has been clean for three years, you can review my Central File, you can talk to all supervisor's whom I have work for about my character. I don't associate with no prison gang members, associates, or anybody. I do my own program. I can't help if they (Young Southerner's) inmates look up to me. If anything I try to encourage these youngster to stay out of prison to go home and stay out of trouble. Inmate Acuna denied any current involvement with gang activity.


J. GARCILAZO
Institutional Gang Investigator
CSP-Los Angeles County
Inmate

Orig: C-File
Cc: Writer

Date: December 18, 2003                          **GENERAL CHRONO**

**EXHIBIT E**

1  BILL LOCKYER
   Attorney General of the State of California
2  JAMES M. HUMES
   Chief Assistant Attorney General
3  FRANCES T. GRUNDER
   Senior Assistant Attorney General
4  STEPHEN P. ACQUISTO
   Supervising Deputy Attorney General
5  PAMELA B. HOOLEY, State Bar No. 161616
   Deputy Attorney General
6    1300 I Street, Suite 125
     P.O. Box 944255
7    Sacramento, CA 94244-2550
     Telephone: (916) 323-1951
8    Fax: (916) 324-5205

9  Attorneys for Respondent
   SA2005301964

10

11

12                        SUPERIOR COURT OF CALIFORNIA

13                              COUNTY OF DEL NORTE

14

15
   | In re | NO. HCPB05-5242 |
16
   | **ARCADIO ACUNA (C-43165),** | **DECLARATION OF** |
17 | | **DEVAN T. HAWKES** |
   |                              Petitioner, | |
18 | **On Habeas Corpus.** | |

19

20      I, Devan T. Hawkes, hereby declare:

21      1.   I have worked for the California Department of Corrections and Rehabilitation

22  (CDCR) in various capacities since July 1984.  I am currently serving as a Correctional

23  Counselor II, Specialist at Pelican Bay State Prison (PBSP), a position I have held for over two

24  years.  Before that I worked as a Special Agent in the Special Service Unit (SSU), which is the

25  field office of the Law Enforcement and Investigations Unit (LEIU), for approximately five

26  years.  I previously served at PBSP as a Correctional Officer, a Correctional Sergeant, and later

27  as a Correctional Counselor I.  I have personal knowledge of the matters set forth in this

28  declaration and could testify to them if called.

                                            1

1    2.    PBSP contains a Security Housing Unit (SHU) which houses inmates who, for

2    institutional safety and security reasons, must be separated from the general inmate population.

3    3.    Some of the inmates housed in the SHU are inmates who have been identified as being

4    associated with, or members of, a prison gang.  CDCR utilizes certain procedures for identifying

5    and/or validating inmates with gang affiliations.  Those criteria are contained in California Code

6    of Regulations, title 15, section 3378.

7    4.    The initial investigation to determine whether a particular inmate is a member or

8    associate of a prison gang is performed by the Institution Gang Investigation Unit (IGI) at the

9    institution where the inmate is housed.

10    5.    The IGI gathers the relevant information and when he or she has a sufficient basis for

11    believing that the inmate is a member or associate of a prison gang, the IGI prepares a gang

12    validation packet that consists of the relevant documentation, also known as the source items,

13    supporting validation of the inmate as either a member or an associate.

14    6.    Part of the validation packet includes photographs of the inmate, including

15    photographs of his tattoos.  The validation packet is discussed with the inmate before it is

16    submitted to the LEIU for review.  In the past, including at the time of Acuna's re-validation in

17    January 2004, this discussion was generally undertaken at the time the inmate was photographed.

18    7.    In November 2004, the CDCR entered into a settlement agreement in the matter of

19    *Castillo v. Terhune*, U.S. District Court, N.D. Cal., S.F. Div., Case No. C94-2847 MJJ JCS.  In

20    that agreement, the CDCR agreed to provide any inmate who is being considered for validation

21    with 24-hour advance notice of the source items before the validation package is sent to the

22    LEIU.  The CDCR also agreed to record the inmate's opinion concerning each source item and to

23    forward that opinion to the LEIU with the validation package.  Those procedures are, however,

24    prospective, and, therefore, they were not applicable at the time of Acuna's re-validation.

25    8.    If a validation is based on confidential information, a Confidential Disclosure

26    Information Disclosure Form (CDC 1030) is prepared and issued to the inmate for each

27    confidential document that is relied upon as a source item.  This form identifies the reason or

28    reasons why the confidential information is reliable and discloses as much information as

2

Declaration of Devan T. Hawkes

1  possible without jeopardizing the safety and security of the institution.

2      9.    The LEIU reviews the validation packet to assure that the source items provide a

3  sufficient basis for the inmate's validation as a gang member or associate. If the validation

4  packet is accepted by the LEIU, the inmate is then considered a validated gang member or

5  associate. The inmate is then provided with a validation document known as a CDC 128-B2.

6  This document is prepared by the LEIU. It lists the source documents and identifies those

7  documents that the LEIU accepted, as well as any documents that were rejected by the LEIU.

8      10.   During the course of the investigation of an inmate's gang status, in order to maintain

9  institutional safety and security, the inmate is generally transferred to administrative segregation,

10 pending the completion of that investigation and review by the LEIU. The inmate has the right to

11 administratively appeal that decision.

12     11.   In addition, the placement of an inmate in administrative segregation is regularly

13 reviewed during Institution Classification Committee and Unit Classification Committee

14 hearings, during which the inmate may present any information to challenge or refute his

15 placement. An inmate appears approximately once every six months before one of these

16 committees for housing and program review. Additionally, prison regulations provide that an

17 inmate receive at least 72 hours notice before one of these hearings take place. An inmate can

18 waive notice and can waive his right to appear at the hearing. At the hearing, the inmate is

19 informed of the information regarding his gang status, as supplied by Institutional Gang

20 Investigator or LEIU. The inmate is afforded basic due process rights, including the right to

21 present witnesses and documentary evidence and, when necessary, a staff assistant and/or

22 investigative employee will be assigned. Following the hearing, the inmate is provided with a

23 classification chrono (CDC 128G). A Classification Staff Representative (CSR) then reviews the

24 committee's decisions and recommendations for placement.

25     12.   An inmate who has been validated and as an active gang member or associate and

26 placed in the SHU is eligible for review and placement on inactive status if the inmate has not

27 been involved in gang activity for at least six years. However, that inmate may be re-validated if

28 the inmate has been identified as being an active gang member or associate. Unlike the

3

Declaration of Devan T. Hawkes

1    procedure for an initial validation, which requires three separate source items, only one reliable

2    source item is necessary for an inactive gang member or associate to be re-validated as active, as

3    provided in Title 15, section 3378, subdivision (f)(1).

4      13.  I have reviewed the petition for writ of habeas corpus filed by inmate Acuna

5    (C-43165), as well as his central file.  Based on my review, I believe that there was sufficient

6    evidence to re-validate Acuna as an active Mexican Mafia associate rather than as a member.

7      14.  Although only one reliable source item was necessary to re-validate Acuna, three items

8    were presented to the LEIU in the validation package submitted by the IGI in January 2004.  I

9    will refer to these three items as follows.  Exhibit X is a confidential memorandum, dated

10    12/12/03.  Exhibit Y is a confidential memorandum dated 09/23/03.  Exhibit Z is a confidential

11    CDC 128B, dated 09/21/00.

12      15.  Based on my review of Exhibit Y, the confidential memorandum dated 09/23/03, it

13    was properly relied upon to validate Acuna because it includes detailed, reliable information

14    demonstrating that Acuna was currently involved in EME activity.  The reliability of the

15    confidential information in this document was established under Title 15, section 3321,

16    subdivision (c)(3) because the source's information was self-incriminating.  Because only one

17    reliable source item is necessary to identify an inactive gang member or associate as being active,

18    this confidential memorandum (Exhibit Y, the confidential memorandum dated 09/23/03)

19    provided a sufficient basis to re-validate Acuna as an active EME member.

20      16.  Therefore, Exhibit X, the confidential memorandum dated 12/12/03, and Exhibit Z, the

21    confidential CDC 128B, dated 09/21/00, were not necessary for Acuna's re-validation.

22      17.  On March 11, 2004, Acuna appeared before the Institution Classification Committee at

23    Calipatria State Prison for his initial review and based on his status as a validated EME member,

24    the committee recommended his retention in administrative segregation pending a transfer to the

25    PBSP SHU.  During the hearing, Acuna did not raise any objections to the committee's decision,

26    the failure to provide him with the CDC 1030s before the validation packet was submitted to the

27    LEIU, or the validation itself.  Until this hearing, although Acuna had been in administrative

28    segregation, no action had been taken to change his housing or his program based on his

4

1  validated gang status.

2      18.  Acuna was ultimately transferred to the SHU at PBSP on November 17, 2004.  Before

3  he was transferred to the SHU, his placement in administrative segregation was reviewed again

4  by an institution classification committee on April 24, 2004, July 15, 2004, and once more on

5  October 07, 2004.  Although Acuna attended each of these hearings, he never expressed any

6  disagreement with the committee's decisions or his prospective placement in the SHU.

7      19.  I understand that Acuna's petition claims that he was denied due process during his

8  validation.  His claims are based in part on the fact that he was not provided with CDC 1030s for

9  the three documents in the validation packet until April 20, 2004, after that packet had been

10  submitted to the LEIU.  In my opinion, these CDC 1030s should have been provided to Acuna

11  before the validation packet was submitted to LEIU in January 2004.  However, they were

12  provided to him before he was actually transferred to the SHU on November 17, 2004.

13  Moreover, Acuna had the opportunity to present his views concerning his gang status before the

14  validation packet was submitted to the LEIU when he was interviewed by the IGI at California

15  State Prison, Los Angeles.  In addition, Acuna could have expressed his disagreement with both

16  his validation and his pending transfer to the SHU at any of the institution classification

17  committee hearings he attended before his transfer to the SHU.  If Acuna had asserted a

18  challenge to the failure to provide him with the CDC 1030s, or the reliability of the confidential

19  information at any of his committee appearances, the committee could have assessed his claims,

20  and if appropriate, referred the matter to the IGI and/or the LEIU for evaluation and possible

21  further investigation of his gang status.  Under Title 15, section 3378(c)(7), the committee is

22  obligated to refer any questionable gang identifications, notations or new information to the gang

23  coordinator/investigator for investigation.

24      20.  In any event, after the initiation of this litigation, the respondent agreed to review

25  Acuna's entire central files to conduct a thorough review of Acuna's status as an active affiliate

26  of the EME and to provide Acuna with an opportunity to address each item that may be

27  considered by the LEIU for validation before the materials were forwarded to LEIU.  As a result,

28  on June 2, 2006, I provided Acuna with a memorandum documenting this agreement, together

Declaration of Devan T. Hawkes

1  with copies of CDC Form 1030s and copies of non-confidential information relevant to his gang

2  affiliation. In that memorandum, I advised Acuna of the reasons for this review and the relevant

3  procedures. Attachment 1 to my declaration are true and correct copies of my memorandum to

4  Acuna, as well as the CDC Form 1030s and non-confidential documents I gave to him.

5       21.   On June 5, 2006, Sergeant D. Barneburg, who is another member of the IGI,

6  participated with me in an interview of Acuna, during which we discussed all the source items

7  being considered for his validation as an active EME affiliate. In response, Acuna provided two

8  handwritten memoranda. I also documented the opinions he offered, if any, concerning each

9  source item on a general chrono dated June 5, 2006. Attachment 2 to my declaration includes

10  true and correct copies of my memorandum and Acuna's two responses. For the Court's

11  convenience, Attachment 3 to my declaration includes true and correct copies of the most recent

12  CDC form 1030s that were provided to Acuna in connection with this review.

13       22.   On June 6, 2006, I forwarded copies of my memorandum and Acuna's two response

14  memoranda to the LEIU, with my recommendation that Acuna be validated as an active EME

15  associate, rather than as a member. It is my understanding that LEIU has not yet completed its

16  review so LEIU has not yet decided whether to validate Acuna as an active gang affiliate.

17       I declare under penalty of perjury under the laws of the State of California that the foregoing

18  is true and correct. Executed this 16th of June, 2006, at Crescent City, California.

19

20                    _Devan T. Hawkes_
                    DEVAN T. HAWKES

21

22

23

24

25

26

27

28  30103117.wpd

6

# ATTACHMENT 1

June 2, 2006

Mr. Acuna

Per agreement between the Attorney General's Office and your attorney, Mr. Mavris, we are going to review the gang-related documents in your Central File and provide you with an opportunity to:

1) Provide responses to be considered and evaluated by the validating authority
2) Provide information that may be important for the investigator to consider and explore before submitting documentation to the validating authority to have the correct facts.

Enclosed you will find CDC Forms 1030 disclosing confidential information from your C-File. You will also find copies of nonconfidential information. The collection of this information may be submitted to the validating authority for review and consideration. Some of the confidential information was previously disclosed, and copies of those forms are also being provided for your review. Some of the documents specifically mention gang activity or affiliation, while others are behaviors tied to gang activity or gang affiliates. It is the responsibility of the investigator to articulate ties to specific gang activity and affiliates when such is present.

On Monday, June 5, you will be interviewed by a representative of the Institutional Gang Investigations Unit regarding each of the documents. Your attendance at the interview is appreciated and required. This will be the time to bring with you any information to address the sources discussed in the material being provided to you. It is better if you address each item in your own handwriting, but the investigator is prepared to document your statements in his report should this be your preference. If you refuse to attend the interview, it will be noted that the opportunity was afforded to you, but you chose to waive your right to do so.

To be a validated prison gang member or associate, at least three independent source items are required. At least one of those sources must be a direct link to a member of the gang. To be considered an active associate or member, at least one source must address relevant activity within the last six years. Reports dated within the six year period that only refer to activity over six years old may be accepted for validation (three source rule), but not used to substantiate active status (six year rule). So there are two parts of this process being addressed: (1) validation; and (2) active status.

You are referred to the processes outlined in California Code of Regulations, Title 15, Section 3378. Furthermore, there are stipulations regarding reviews of sources after September 2004 when the Department and *Castillo* entered an agreement. You fall under the prospective basis exception, meaning that the original source items used in any validation prior to September 2004 do not fall under the agreement of *Castillo*. Any source items that were not submitted in your original or subsequent validations shall be viewed by the investigator under the *Castillo* guidelines. Nevertheless, the validating authority may choose to review all of the submitted sources under the *Castillo* agreement.

D. T. Hawkes
Correctional Counselor II

STATE OF CALIFORNIA                                                        DEPARTMENT OF CORRECTIONS
CDC 1030 (12/86)

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER    C43165                  INMATE NAME:    ACUNA, ARCADIO

1) Use of Confidential Information.

    Information received from a confidential source(s) has been considered in the:

    a) CDC-115, Disciplinary Report dated _____ submitted by

                                          STAFF NAME, TITLE

    b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2) Reliability of Source.

    The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

    This information is considered reliable because:

    a) ☐ This source has previously provided confidential information which has proven to be true.

    b) ☐ This source participated in and successfully completed a Polygraph examination.

    c) ☒ More than one source independently provided the same information.

    d) ☒ This source incriminated himself/herself in a criminal activity at the time of providing the information.

    e) ☒ Part of the information provided by the source(s) has already proven to be true.

    f) ☐ Other (Explain) _____

3) Disclosure of information received.

A Northern Structure member reported during a debriefing interview that Acuna was assaulted at
PBSP B Facility in 1990 by "Oso" Gerald Winston D51285, because Acuna was an EME associate
and had directed assaults against Northern Hispanic inmates at PBSP Facility A.

(If additional space needed, attach another sheet.)

4) Type and current location of documentation. (for example: CDC-128-B of 5-15-86 in the confidential material
folder). _____

    Confidential Memorandum dated March 29, 2004 in confidential section of C-File.

D. T. Hawkes, Correctional Counselor II                                          June 2, 2008
        STAFF SIGNATURE, TITLE                                               DATE DISCLOSED

DISTRIBUTION: WHITE ⇒ Central File; GREEN ⇒ Inmate; YELLOW ⇒ Institution Use

STATE OF CALIFORNIA                                          DEPARTMENT OF CORRECTIONS
CDC 1030 (12/86)

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER ___C43165___         INMATE NAME: ___ACUNA, ARCADIO___

1) Use of Confidential Information.

   Information received from a confidential source(s) has been considered in the:

   a) CDC-115, Disciplinary Report dated _____ submitted by

      _____
      STAFF NAME, TITLE

   b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2) Reliability of Source.

   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

   This Information is considered reliable because:

   a) ☐ This source has previously provided confidential information which has proven to be true.

   b) ☐ This source participated in and successfully completed a Polygraph examination.

   c) ☐ More than one source independently provided the same information.

   d) ☐ This source incriminated himself/herself in a criminal activity at the time of providing the information.

   e) ☐ Part of the information provided by the source(s) has already proven to be true.

   f) ☒ Other (Explain) _____
      Note discovered in cell of "Duke" Victor Miranda K59950 of Pico Viejo, Dec. 4, 2008.

3) Disclosure of information received.

   The note was sent to Miranda from "Nene" Hugo Hernandez H05442 of San Fer – Jokers. Hernandez wrote: "Beto and Carlo are close friends and they work in Auto Body. What I meant to say is take Conejo's yaves and did. I got the yaves from Conejo. I can prove it. So I think Beto must have told Carlo. I told Diego that I was gonna take the yaves, but it was never Toto's. It was Terco's... If I can get granted to put Diego, Beto, Carlo, Conejo and myself all together the truth will come out. It will show that yes, Beto was under the wrong impression and he ran with it." Gilbert Lopez K86694 is "Beto" of San Diego. Armando Molinar D58455 is "Conejo" of Evergreen, Robert Lopez C06986 is "Toto" of Santa Paula. Victor Acuna D33299 is "Terco" of Bassett Grande. The term "yaves" is "llaves," and refers to authorization to conduct EME gang activities on behalf of the EME.

                    (If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material folder). _____

   Confidential Memorandum dated December 12, 2008 in confidential section of C-File

_D. T. Hawkes_ (signature)

D. T. Hawkes, Correctional Counselor II                              June 2, 2006
         STAFF SIGNATURE, TITLE                                    DATE DISCLOSED
            DISTRIBUTION: WHITE □ Central File; GREEN □ Inmate; YELLOW □ Institution Use

STATE OF CALIFORNIA
CDC 1030 (12/86)

DEPARTMENT OF CORRECTIONS

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER: C 43165          INMATE NAME: ACUNA

1) Use of Confidential Information.

Information received from a confidential source(s) has been considered in the:

a) CDC-115, Disciplinary Report dated _____ submitted by

_____
STAFF NAME, TITLE

b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2) Reliability of Source.

The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

This information is considered reliable because:

a) ☐  This source has previously provided confidential information which has proven to be true.

b) ☐  This source participated in and successfully completed a Polygraph examination.

c) ☐  More than one source independently provided the same information.

d) ☐  This source incriminated himself/herself in a criminal activity at the time of providing the information.

e) ☒  Part of the information provided by the source(s) has already proven to be true.

f) ☐  Other (EXPLAIN) _____

3) Disclosure of information received.

The information received indicated the following: _____
_____
_____
_____
_____

(If additional space needed, attach another sheet)

4) Type and current location of documentation. (for example: CDC 128-B of 5-15-86 in the confidential material folder) _____

_____

_____
STAFF SIGNATURE, TITLE

DATE DISCLOSED

DISTRIBUTION: WHITE — Central File; GREEN — Inmate; YELLOW — Institution Use

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS
CDC 1030 (12/86)

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER   **C43165**              INMATE NAME:   **ACUNA, ARCADIO**

1) Use of Confidential Information.

   Information received from a confidential source(s) has been considered in the:

   a) CDC-115, Disciplinary Report dated _____ submitted by

   _____
   STAFF NAME, TITLE

   b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2) Reliability of Source.

   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

   This information is considered reliable because:

   a) ☐  This source has previously provided confidential information which has proven to be true.

   b) ☐  This source participated in and successfully completed a Polygraph examination.

   c) ☐  More than one source independently provided the same information.

   d) ☐  This source incriminated himself/herself in a criminal activity at the time of providing the information.

   e) ☐  Part of the information provided by the source(s) has already proven to be true.

   f) ☒  Other (Explain). _____
         Letter from EME member "Tudy" Arthur Estrada V26050

3) Disclosure of information received.

In a letter from EME member "Tudy" Arthur Estrada V26050 of Cucamonga to "Spooky" Vella
Mendoza W15593 (discharged) [at 21957 Woodward Street, Perris, CA 92507] Acuna is referenced
as "the hometown Arcadio." Estrada wrote that Acuna may have misled another individual a little. This
does not appear to be a concern to Estrada, for he said after this "So really I'm not tripping." Staff
information identified the misled individual as "Dean" Salvador Mendoza J84814 of Casa Blanca.
Acuna was identified as training EME associates how to avoid becoming validated.

(If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example, CDC-128-B of 5-15-86 in the confidential material
   folder). _____
   Confidential Memorandum dated October 3, 2005 in confidential section of C-File.

_D. T. Hawkes_ (signature)                                            June 2, 2006
D. T. Hawkes, Correctional Counselor II                              DATE DISCLOSED
STAFF SIGNATURE, TITLE

DISTRIBUTION: WHITE ca Central File; GREEN ca Inmate; YELLOW ca Institution Use

STATE OF CALIFORNIA
CDC 1030 (12/86)

DEPARTMENT OF CORRECTIONS

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER __C43165__          INMATE NAME: __ACUNA, ARCADIO__

1) Use of Confidential Information.

   Information received from a confidential source(s) has been considered in the:

   a) CDC-115, Disciplinary Report dated _____ Submitted by

   _____
   STAFF NAME, TITLE

   b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2) Reliability of Source.

   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

   This information is considered reliable because:

   a) ☐ This source has previously provided confidential information which has proven to be true.

   b) ☐ This source participated in and successfully completed a Polygraph examination.

   c) ☐ More than one source independently provided the same information.

   d) ☐ This source incriminated himself/herself in a criminal activity at the time of providing the information.

   e) ☐ Part of the information provided by the source(s) has already proven to be true.

   f) ☒ Other (Explain) _____
      Notes confiscated from Brent Ebert H76330 of Shermans at Calipatria State Prison

3) Disclosure of information received.

   In one note, the author (identified as EME associate "Danny Boy" Daniel Sandigo K07935 of Upland) directs the recipient: "Anyway get at Cadio and let him know what's up with this Mato and also tell Cadio to make sure that Spanky and Strano have a safe trip back here." "Spanky" has been identified as Henry Duenas P05117.

   (If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B on 5-13-86 in the confidential material folder) _____
   Confidential Memorandum dated October 12, 2004 in confidential section of C-File

   _D. T. Hawkes, Correctional Counselor II_          June 2, 2006
   STAFF SIGNATURE, TITLE                              DATE DISCLOSED

   DISTRIBUTION: WHITE □ Central File; GREEN □ Inmate; YELLOW □ Institution Use

STATE OF CALIFORNIA                                                              DEPARTMENT OF CORRECTIONS
CDC 1030 (12/86)

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER    C43165          INMATE NAME:    ACUNA, ARCADIO

1) Use of Confidential Information.

Information received from a confidential source(s) has been considered in the:                    submitted by
   a) CDC-115, Disciplinary Report dated _____

                                    _____
                                    STAFF NAME, TITLE

   b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2) Reliability of Source.

   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

   This information is considered reliable because:

   a) ☐ This source has previously provided confidential information which has proven to be true.
   b) ☐ This source participated in and successfully completed a Polygraph examination.
   c) ☐ More than one source independently provided the same information.
   d) ☐ This source incriminated himself/herself in a criminal activity at the time of providing the information.
   e) ☐ Part of the information provided by the source(s) has already proven to be true.
   f) ☒ Other (Explain) _____
        Address book of EME member "Turtle" Mark Quiroz C50887 of Colton

3) Disclosure of information received.

Acuna's name was in the address book of EME member "Turtle" Mark Quiroz C50887 of Colton. The
book contained the names of over 130 EME members and associates. Both Acuna's name and CDC#
were entered.

(If additional space needed, attach another sheet.)

4) Type and current location of documentation. (for example: CDC-128-B of 5-15-86 in the confidential material
folder). _____
   Confidential CDC Form 128B dated August 10, 2004 in confidential section of C-File

_D. T. Hawkes, Correctional Counselor II_                                    June 2, 2006
STAFF SIGNATURE, TITLE                                                        DATE DISCLOSED
DISTRIBUTION: WHITE co Central File;  GREEN co Inmate;  YELLOW co Institution Use

STATE OF CALIFORNIA
CDC 1030 (12/86)

DEPARTMENT OF CORRECTIONS

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER  C43165          INMATE NAME:  ACUNA, ARCADIO

1) Use of Confidential Information:

   Information received from a confidential source(s) has been considered in the:

   a) CDC-115, Disciplinary Report dated _____ submitted by

   _____
   STAFF NAME, TITLE

   b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2) Reliability of Source

   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

   This information is considered reliable because:

   a) ☐ This source has previously provided confidential information which has proven to be true.

   b) ☐ This source participated in and successfully completed a Polygraph examination.

   c) ☒ More than one source independently provided the same information.

   d) ☒ This source incriminated himself/herself in a criminal activity at the time of providing the information.

   e) ☒ Part of the information provided by the source(s) has already proven to be true.

   f) ☐ Other (Explain) _____

   _____

3) Disclosure of information received.

   An EME associate during a debriefing interview, reported that Acuna is an inactive EME associate,
   who continues to participate in EME gang politics.

   (If additional space needed, attach another sheet.)

4) Type and current location of documentation. (For example: CDC-128-B of 5-15-86 in the confidential material
   folder).

   Confidential Memorandum dated November 18, 2003 in confidential section of C-File.

   _____                                    June 2, 2006
   D. J. Hawkes, Correctional Counselor II                              DATE DISCLOSED
   STAFF SIGNATURE, TITLE

   DISTRIBUTION: WHITE - Central File;   GREEN - Inmate;   YELLOW - Institution Use

STATE OF CALIFORNIA
CDC 1030 (12/86)

DEPARTMENT OF CORRECTIONS

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER    C43165                INMATE NAME:   ACUNA, ARCADIO

1) Use of Confidential Information.

   Information received from a confidential source(s) has been considered in the:

   a)  CDC-115, Disciplinary Report dated _____ submitted by

   _____
   STAFF NAME, TITLE

   b)  CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2) Reliability of Source.

   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

   This information is considered reliable because:

   a) ☐  This source has previously provided confidential information which has proven to be true.

   b) ☐  This source participated in and successfully completed a Polygraph examination.

   c) ☒  More than one source independently provided the same information.

   d) ☒  This source incriminated himself/herself in a criminal activity at the time of providing the information.

   e) ☒  Part of the information provided by the source(s) has already proven to be true.

   f) ☐  Other (Explain) _____

3) Disclosure of information received.

   A self-admitted associate of the EME reported that "Cadio" Acuna was released from PBSP SHU after getting his status changed to inactive. The source related that Acuna is very active, and was awaiting confirmation of EME membership. There were doubts about the granting of EME membership due to Acuna's age and the fact he had not killed anyone for the gang. While at CCI, Acuna was taking care of four or five EME members at PBSP-SHU. Acuna was sending money to EME members "Terco" Acuna, "Sleepy" Gabriel Huerta C80766 of Wilmas, "Chino" David Delgadillo D16318 of Geraghty Loma, and "Popeye." Acuna was reportedly instructing the inmates about the EME. Acuna reportedly targeted "Stupid" Mark Galvan H91736 of Artanza for assault. The targeting of Galvan for assault was questioned by another person operating for the EME. Acuna's name was on a list of persons the EME was protecting. Acuna and the other six individuals with this protection became known as the "Magnificent Seven." The note endorsing the action was signed by ten EME members from PBSP.

   (If additional space needed, attach another sheet.)

4) Type and current location of documentation. (for example: CDC-128-B of 5-15-86 in the confidential material folder).

   Confidential Memorandum dated September 23, 2003 in confidential section of C-File

_D. T. Hawkes_ _____                                          June 2, 2006
D. T. Hawkes, Correctional Counselor II                                                    DATE DISCLOSED
STAFF SIGNATURE, TITLE
DISTRIBUTION: WHITE to Central File; GREEN to Inmate; YELLOW to Institution Use

STATE OF CALIFORNIA
CDC 1030 (12/86)

DEPARTMENT OF CORRECTIONS

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER: C43165        INMATE NAME: ACUNA

1) Use of Confidential Information

Information received from a confidential source(s) has been considered in the:

a) CDC-115, Disciplinary Report dated _____ submitted by

_____
STAFF NAME, TITLE

b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2) Reliability of Source

The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

This information is considered reliable because:

a) ☐ This source has previously provided confidential information which has proven to be true.

b) ☐ This source participated in and successfully completed a Polygraph examination.

c) ☐ More than one source independently provided the same information.

d) ☒ This source incriminated himself/herself in a criminal activity at the time of providing the information.

e) ☐ Part of the information provided by the source(s) has already proven to be true.

f) ☐ Other (EXPLAIN) _____

3) Disclosure of information received:

The information received indicated the following: _That you Inmate Acuna_
_CONTINUE TO INVOLVE YOURSELF IN MEXICAN_
_MAFIA PRISON GANG ACTIVITIES by SENDING_
_MONEY TO MEXICAN MAFIA members_
_____
_____
(If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B at 5-15-86 in the confidential material folder) _CONFIDENTIAL MEMORANDUM DATED 1-23-03_
_LOCATED IN YOUR Confidential Folder_

_____   _____
STAFF SIGNATURE, TITLE     DATE DISCLOSED   4/20/04

DISTRIBUTION: WHITE — Central File; GREEN — Inmate; YELLOW — Institution Use

STATE OF CALIFORNIA
CDC 1030 (12/86)

DEPARTMENT OF CORRECTIONS

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER   C43165                    INMATE NAME:   ACUNA, ARCADIO

1)  Use of Confidential Information.

    Information received from a confidential source(s) has been considered in the:

    a)  CDC-115, Disciplinary Report dated _____   submitted by

                                       STAFF NAME, TITLE

    b)  CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2)  Reliability of Source.

    The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

    This information is considered reliable because:

    a) ☒  This source has previously provided confidential information which has proven to be true.

    b) ☐  This source participated in and successfully completed a Polygraph examination.

    c) ☒  More than one source independently provided the same information.

    d) ☒  This source incriminated himself/herself in a criminal activity at the time of providing the information.

    e) ☒  Part of the information provided by the source(s) has already proven to be true.

    f) ☐  Other (Explain) _____

3)  Disclosure of information received.

This is a debriefing interview with an EME member, who identified Acuna as an EME associate he knew as "Cadio" of Cucamonga. Acuna is referenced on a list as an EME associate. No specific gang activity is identified.

(If additional space needed, attach another sheet.)

4)  Type and current location of documentation. (for example CDC-128-B of 5-15-86 in the confidential/material folder).

    Confidential Memorandum dated June 17, 2003 in confidential section of C-File.

_D. T. Hawkes, Correctional Counselor II_
      STAFF SIGNATURE, TITLE

June 2, 2006
DATE DISCLOSED

DISTRIBUTION:  WHITE ∞ Central File;  GREEN ∞ Inmate;  YELLOW ∞ Institution Use

STATE OF CALIFORNIA                                                DEPARTMENT OF CORRECTIONS
CDC 1030 (12/86)

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER    C43165                    INMATE NAME:    ACUNA, ARCADIO

1) Use of Confidential Information.

    Information received from a confidential source(s) has been considered in the

    a) CDC-115, Disciplinary Report dated _____  submitted by

    _____
                                STAFF NAME, TITLE

    b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2) Reliability of Source.

    The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

    This information is considered reliable because:

    a) ☐ This source has previously provided confidential information which has proven to be true.

    b) ☐ This source participated in and successfully completed a Polygraph examination.

    c) ☒ More than one source independently provided the same information.

    d) ☒ This source incriminated himself/herself in a criminal activity at the time of providing the information.

    e) ☒ Part of the information provided by the source(s) has already proven to be true.

    f) ☐ Other (Explain) _____

3) Disclosure of information received.

An EME associate reported that "Cadio" Acuna taught EME associate, "Corky" Manuel Flores K63202
how to communicate in code. Acuna used this code in his correspondence with "Popeye" at PBSP.
Acuna used "Dean" Salvador Mendoza to assist in redirecting his letters to avoid staff detection that
could result in Acuna's return to active status.

(If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material

    folder). _____

    Confidential Memorandum dated August 8, 2002 in confidential section of C-File.

_D. T. Hawkes_ _____                    _June 2, 2006_____
D. T. Hawkes, Correctional Counselor I
        STAFF SIGNATURE, TITLE                                              DATE DISCLOSED

        DISTRIBUTION: WHITE on Central File; GREEN on Inmate; YELLOW on Institution Use.

STATE OF CALIFORNIA
CDC 1030 (12/86)

DEPARTMENT OF CORRECTIONS

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER   C43165                    INMATE NAME:   ACUNA, ARCADIO

1) Use of Confidential Information

   Information received from a confidential source(s) has been considered in the:

   a) CDC-115, Disciplinary Report dated _____ submitted by _____

   _____
   STAFF NAME, TITLE

   b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2) Reliability of Source.

   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

   This information is considered reliable because:

   a) ☐ This source has previously provided confidential information which has proven to be true.

   b) ☐ This source participated in and successfully completed a Polygraph examination.

   c) ☒ More than one source independently provided the same information.

   d) ☒ This source incriminated himself/herself in a criminal activity at the time of providing the information.

   e) ☒ Part of the information provided by the source(s) has already proven to be true.

   f) ☐ Other (Explain) _____

3) Disclosure of information received.

A validated EME associate reported that Acuna and "Jo Jo" (identified as EME associate Anthony Sisneros D68626) of Trece Locos were directing the gang activities in PBSP ASU H 1000. Acuna was identified as providing weapons to other EME associates. The source identified Acuna as an EME associate known as "Cadio" of Cucamonga.

(if additional space needed, attach another sheet)

4) Type and current location of documentation (for example, CDC-128-B or 115-B) in the confidential material folder). _____

Confidential Memorandum dated March 5, 2002 in confidential section of C-File

_D. T. Hawkes_ (signature)

D. T. Hawkes, Correctional Counselor II          June 2, 2005
        STAFF SIGNATURE/ TITLE                   DATE DISCLOSED

DISTRIBUTION: WHITE → Central File; GREEN → Inmate; YELLOW → Institution Use

STATE OF CALIFORNIA
CDC 1030 (12/86)
DEPARTMENT OF CORRECTIONS

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER   C48165          INMATE NAME:   ACUNA, ARCADIO

1) Use of Confidential Information.

Information received from a confidential source(s) has been considered in the:

   a) CDC-115, Disciplinary Report dated _____ submitted by

   _____ STAFF NAME, TITLE

   b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2) Reliability of Source.

The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

This information is considered reliable because:

   a) ☐ This source has previously provided confidential information which has proven to be true.
   b) ☐ This source participated in and successfully completed a Polygraph examination.
   c) ☒ More than one source independently provided the same information.
   d) ☒ This source incriminated himself/herself in a criminal activity at the time of providing the information.
   e) ☒ Part of the information provided by the source(s) has already proven to be true.
   f) ☐ Other (Explain) _____

3) Disclosure of information received.

An informant stated a conflict occurred between Marshal Smith P07620 and Acuna at DGI V-A Law Library on December 4, 2001. When Acuna warned Smith he could receive a rule violation report if he goes behind the counter, Smith began calling Acuna a "rat" and a "snitch." According to the informant, this resulted in Smith having safety concerns from Acuna on the yard.

(If additional space needed, attach another sheet.)

4) Type and current location of documentation. (for example: CDC-128-B of 5-15-86 in the confidential material folder)

Confidential Memorandum dated December 12, 2001 in confidential section of C-File.

_D. T. Hawkes_                                   June 2, 2006
D. T. Hawkes, Correctional Counselor II           DATE DISCLOSED
STAFF SIGNATURE, TITLE
DISTRIBUTION: WHITE cc Central File; GREEN cc Inmate; YELLOW cc Institution Use

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS
CDC 1030 (12/86)

# CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER    C43165                    INMATE NAME:    ACUNA, ARCADIO

1) Use of Confidential Information.

   Information received from a confidential source(s) has been considered in the:

   a) CDC-115, Disciplinary Report dated _____ submitted by

   _____
                        STAFF NAME, TITLE

   b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2) Reliability of Source:

   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

   This information is considered reliable because:

   a) ☐ This source has previously provided confidential information which has proven to be true.

   b) ☐ This source participated in and successfully completed a Polygraph examination.

   c) ☐ More than one source independently provided the same information.

   d) ☐ This source incriminated himself/herself in a criminal activity at the time of providing the information.

   e) ☐ Part of the information provided by the source(s) has already proven to be true.

   f) ☒ Other (Explain) _____
       Letter from Josie Acuna to Arcadio Acuna.

3) Disclosure of information received.

   In a letter, Josie Acuna informed Arcadio Acuna that she encountered EME member "Tudy" Estrada at the Department of Motor Vehicles. She informed Acuna that she gave Estrada Acuna's address, and Estrada said he would soon be corresponding with him. Josie Acuna also stated that if there is anything important to pass along to Estrada, he simply needs to send her the letter and she will deliver it to Estrada.

   (If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 6-15-86 in the confidential material folder). _____

   Confidential CDC Form 128B dated September 21, 2000 in confidential section of C-File

_D. T. Hawkes_ , _Correctional Counselor II_                    _June 2, 2006_
D. T. Hawkes, Correctional Counselor II                         DATE DISCLOSED
          STAFF SIGNATURE, TITLE

DISTRIBUTION: WHITE – Central File; GREEN – Inmate; YELLOW – Institution Use

STATE OF CALIFORNIA
CDC 1030 (12/86)

DEPARTMENT OF CORRECTIONS

# CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER: _C 43165_          INMATE NAME: _ACUNA_

1) Use of Confidential Information.

Information received from a confidential source(s) has been considered in the:

a) CDC-115, Disciplinary Report dated _____ submitted by

_____
STAFF NAME, TITLE

b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2) Reliability of Source.

The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

This information is considered reliable because:

a) ☐ This source has previously provided confidential information which has proven to be true.

b) ☐ This source participated in and successfully completed a Polygraph examination.

c) ☐ More than one source independently provided the same information.

d) ☒ This source incriminated himself/herself in a criminal activity at the time of providing the information.

e) ☐ Part of the information provided by the source(s) has already proven to be true.

f) ☐ Other (EXPLAIN)

_____

_____

3) Disclosure of information received.

The information received indicated the following: _____

_____

_____

_____

_____

(If additional space needed, attach another sheet.)

4) Type and current location of documentation. (for example: CDC-128-B of 5-15-86 in the confidential material folder)

_____

_____

_____
STAFF SIGNATURE, TITLE                         DATE DISCLOSED

STATE OF CALIFORNIA
CDC 1030 (12/86)

DEPARTMENT OF CORRECTIONS

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER: C48165          INMATE NAME: ACUNA, ARCADIO

1) Use of Confidential Information.

   Information received from a confidential source(s) has been considered in the:

   a) CDC-115, Disciplinary Report dated _____  Submitted by _____
   STAFF NAME, TITLE

   b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2) Reliability of Source.

   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

   This information is considered reliable because:

   a) ☐ This source has previously provided confidential information which has proven to be true.
   b) ☐ This source participated in and successfully completed a Polygraph examination.
   c) ☒ More than one source independently provided the same information.
   d) ☒ This source incriminated himself/herself in a criminal activity at the time of providing the information.
   e) ☒ Part of the information provided by the source(s) has already proven to be true.
   f) ☐ Other (Explain) _____

3) Disclosure of information received.

   During a debriefing interview, an EME associate identified Acuna as an EME associate he knew as "Arcadio" of Cucamonga. Acuna is referenced on a list as an EME associate. No specific gang activity is identified.

   (If additional space needed, attach another sheet.)

4) Type and current location of documentation. (for example: CDC-128-B or CDC-115-86) in the confidential material folder).

   Confidential Memorandum dated January 5, 2000 in confidential section of C-File.

_D. T. Hawkes_

D. T. Hawkes, Correctional Counselor II          June 2, 2005
STAFF SIGNATURE, TITLE                            DATE DISCLOSED
DISTRIBUTION: WHITE ▭ Central File; GREEN ▭ Inmate; YELLOW ▭ Institution Use

STATE OF CALIFORNIA
CDC 1030 (12/86)

DEPARTMENT OF CORRECTIONS

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER   C43165                INMATE NAME:   ACUNA, ARCADIO

1) Use of Confidential Information

Information received from a confidential source(s) has been considered in the:

a) CDC-115, Disciplinary Report dated _____    submitted by _____

STAFF NAME, TITLE

b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2) Reliability of Source

The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

This information is considered reliable because:

a) ☐ This source has previously provided confidential information which has proven to be true.

b) ☐ This source participated in and successfully completed a Polygraph examination.

c) ☒ More than one source independently provided the same information.

d) ☒ This source incriminated himself/herself in a criminal activity at the time of providing the information.

e) ☒ Part of the information provided by the source(s) has already proven to be true.

f) ☐ Other (Explain) _____

3) Disclosure of information received.

During a debriefing interview, an EME associate identified Acuna as an EME associate. He knew as "Catlo" of Cucamonga. Acuna is referenced on a list as an EME associate. No specific gang activity is identified.

_(If additional space needed, attach another sheet.)_

4) Type and current location of documentation. (for example: CDC-128-B or 115-86 in the confidential material folder).

Confidential Memorandum dated March 14, 1997 in confidential section of C-File.

D. T. Hawkes, Correctional Counselor II                    June 2, 2006
STAFF SIGNATURE, TITLE                                       DATE DISCLOSED

DISTRIBUTION:  WHITE - Central File;  GREEN - Inmate;  YELLOW - Institution Use