# EXHIBIT 7



DOCKETED
Hooley
JUL 21 2006
By L. EDWARDS
SA 2005301964

FILED
DEL NORTE
SUPERIOR COURT

2006 JUL 17  AM 11: 59

CLERK OF THE COURT
C. Cumor

BY_____
DEPUTY

1  GEORGE M. MAVRIS (SB# 179471)
   Attorney at Law
2  1 Point St. George Place
   Crescent City, CA   95531
3  Telephone: (707) 464-1418
   Fax:(707) 464-3364
4

5

6

7              SUPERIOR COURT OF CALIFORNIA

8                  COUNTY OF DEL NORTE

9                                        ) No:   HCPB 05-5242
10 In re                                 )
                                         ) DENIAL TO RESPONDENT'S RETURN
11 Arcadio Acuna, C-43165,               )
                                         )
12 Petitioner,                           )
                                         )
13                                       )
                                         )
14 On Habeas Corpus                      )
_____

       Petitioner, Arcadio Acuna, by and through legal counsel
15
16 responds to the Return filed by Respondent as follows:

17      1.    Petitioner admits he is in the custody of the
18
   California Department of Corrections and Rehabilitation (CDCR)
19
20 and is serving three consecutive life sentences following a
21 conviction in Santa Clara County Superior Court.

22      2.    Petitioner admits he is not challenging the validity of
23
   his conviction, but rather has asserted that he was denied
24
25 minimal due process requirements relating to the validation
26 process that labeled him a member of a prison gang when
27
   confidential information relied on was not disclosed <u>before</u> the
28
29 validation package was submitted to the LEIU denying Petitioner

                         Page 1

the opportunity to present his view of the material to the actual decision maker.

3.    Petitioner admits that the CDCR has established a process for validating prisoners as gang members or associates as contained in the Code of Regulations and asserts that the criteria for gang membership as opposed to gang association is clearly distinct and not at all interchangeable.

4.    Petitioner admits that prisoners validated as members or associates of prison gangs are routinely placed in Administrative Segregation and ordered to serve indeterminate terms in the Pelican Bay State Prison Security Housing Unit (PBSP-SHU).

5.    Petitioner admits that prisoners may submit to the debriefing process to obtain a "gang drop-out" designation by informing on other prisoners, but denies that prisoners serving indeterminate terms of segregation are considered every 180 days for release to the general population. This court has previously recognized classification committees at PBSP are simply not inclined, or empowered to overturn or even question a prisoner's validation once it has been imposed by the LEIU, and a review of Petitioner's prison file shows that even though he sought, at every opportunity, to have his case reviewed because obvious of due process violations, no classification committee has ever

1    forwarded his concerns to the IGI for investigation. This writ is
2    the result of those violations.

3        6.    Petitioner admits that he previously served ten years
4    in PBSP-SHU from 1990-2000 after being validated as an associate
5
6    of a prison gang, and was subsequently released to the general
7    population for four years after being granted "inactive" status
8    in May 2000.
9
10       7.    Petitioner admits that he was told by IGI Lt. Garcilazo
11   in December 2003 that a validation package was being submitted to
12   the LEIU and reasserts that the three source items relied upon
13   were not disclosed in any manner whatsoever prior to the
14
15   validation package being submitted.  Respondents concede that
16   Petitioner was not given an opportunity to present a defense to
17   the specific allegations of gang activity to the actual decision
18   maker (i.e., LEIU) at or prior to the time a decision was to be
19
20   made. As a matter of fact, the first time Petitioner was ever
21   made aware of the specific charges made against him was on June
22   16, 2006, when CCII Hawke provided the twenty-seven disclosure
23
24   forms prior to the interview conducted on June 19, 2006.

25       8.    Petitioner denies that a prisoner released to the
26   general population after being granted "inactive" status may be
27   re-validated and returned to the SHU based on one source item.
28
29   Respondent completely misreads or misinterprets the Code of

Page 3

Regulation's by claiming this court was incorrect in finding that three independent source items are required to validate a prisoner as active by completely ignoring the language of CCR 3378(F)(2), which states: "The procedures relating to the initial validation or rejection of gang members or associates as described in this section {3378(C)(1-8)} shall be followed when reviewing the present status of an inactive gang member or associate."

9.    Petitioner admits that Respondent's contend that he was re-validated on January 20, 2004, as a member of a prison gang, but denies Respondent's allegation (in Footnote 1) that Petitioner's erroneous validation as a member should have no impact on these proceedings, as ultimately, some two and a half years after being given an indeterminate term of segregation the three source items were properly disclosed and Petitioner was finally given an opportunity to present a defense against allegations of gang activity in June, 2006.

10.   Petitioner admits that after the validation package was submitted to the LEIU in December 2003, on March 1, 2004, he was transferred to the general population of Calipatria State Prison.

11. Petitioner admits that he was placed in Administrative Segregation on March 05, 2004, at Calipatria State Prison when prison officials there were informed Petitioner had been validated as an active member of a prison gang on January 20, 2004.

12. Petitioner admits he made an appearance before a classification committee at the Calipatria State Prison on March 14, 2004, but denies he expressed no disagreement with committee's decision, that he did not challenge his validation, and denies he made no comments or asked questions during the hearing. In fact, Petitioner strenuously denied involvement in gang activity, brought to the attention of committee members due process violations and advised the committee that IGI Lt. Garcilazo had told Petitioner that if he did not agree to become an informant he was going to send Petitioner back to PBSP-SHU by any means. Unfortunately, as has always been the practice at these hearings, the committee did not record Petitioner's statement nor have any audio recording devices available. Underscoring the fact that Petitioner disagreed with the committee action is the fact that Petitioner, on the very

date that he attended the hearing, filed his very first CDC-602 appeal challenging the validation.

13. Petitioner admits he has attended each and every classification committee hearing reviewing his continued segregation, and denies he has never asked questions or made comments at these hearings. A review of the exhibits attached to the initial Petition shows Petitioner has consistently attempted to make his statements part of the official record and yet has been consistently denied.

14. Petitioner admits that on March 11, 2004, he submitted a CDC-602 appeal challenging his validation, and asserted that the source items had not been properly disclosed and, further, that he was not a member of a prison gang nor involved in gang activity.

15. Petitioner admits that CDC-1030 Disclosure Forms are generally used to disclose confidential information to prisoners.

16. Petitioner admits that on April 20, 2004, he was provided with three CDC-1030 forms which described, in ambiguous terms, the allegations of gang activity contained in Petitioner's prison file. Petitioner asserts that the

first and only time he has ever been provided with specific

details of the charges against him was on June 5, 2006, by

CCII Hawkes.  At that time Petitioner was able to address

each of the three source items and show why they did not

establish that he had been accepted into actual membership

of a gang (a position the Respondent's apparently accept at

this point), and why they did not provide a direct link to

verifiable acts of aiding and abetting, promoting or

furthering gang conduct.  CCII Hawkes, by his own admission

(see Respondent's Return, Declaration, Exhibit E), indicates

that Petitioner is not, nor has he ever been a member of a

prison gang.

　　17.  Petitioner admits that after the three source

items relied on in the validation process were disclosed to

him on April 20, 2004, via the CDC-1030 Disclosure Forms, he

filed three separate CDC-602 appeals challenging each source

item as best he could with the limited information that was

disclosed. However, Petitioner asserts that he was never

interviewed as he should have been during the appeal process

and the issues raised in each of the appeals were never

addressed. On September 23, 2005, one and a half years after

the appeals were first filed, the Director denied the

appeals stating that there was sufficient evidence to

support Petition's validation as an associate of a prison

gang. (See Return, Exhibit H).

18. Petitioner admits that all of the confidential

information contained in his prison file was disclosed to

him by CCII Hawkes on June 2, 2006, and he was advised a new

validation package was being submitted to the LEIU with a

recommendation that he be found to be a an active associate

of a prison gang based on 27 source items, some dating back

almost 20 years, some which had been present in the file

when the instant validation was made but not relied upon,

and others produced after Petitioner was validated.

Petitioner denies that this action afforded him the

requisite due process as alleged by Respondent because these

habeas proceedings required only that CCII Hawkes review the

validations process at issue to determine if the source

items relied on were disclosed in accordance with mandatory

provisions in the Code of Regulations, and if that evidence,

pursuant to specific criteria established Petitioner was

properly classified a member of a prison gang. Respondent

urges the Court to rule that -- even if state law was violated -- that it should make no difference as Petitioner may soon be classified as active associate based on the new validation package recently submitted to the LEIU. As mentioned above, Respondent and CCII Hawkes completely misread or misinterpret the regulations relevant to Petitioner's validation and now claim that only one source item is necessary to impose an indeterminate term of segregation. This, of course, is simply not true by the plain language of the statute.

19. Petitioner denies that he has not established grounds for habeas relief and, by Respondent's Return, asserts that it has been shown how prison officials, acting in bad faith, and with utter disregard for due process and the Code of Regulations, illegally imposed an indeterminate term of segregation based upon an erroneous decision that Petitioner is a member of a prison gang.

20. Petitioner further denies any and all other allegations raised by Respondent that are not specifically admitted herein and asserts that his constitutional right to

be free from long-term segregation has been violated by the actions of prison officials.

## Conclusion

Accordingly, Petitioner submits that the Petition should be Granted, Petitioner's validation as a member of a prison gang be held to have been illegally imposed. Petitioner further argues that the Court should rule the three source items were not properly disclosed and do not establish that Petitioner has been active in gang activity by reference to specific and verifiable acts seen to aid and abet, further or promote a prison gang. In addition, Petitioner respectfully requests that this Court Order that Petitioner be released to the general population of a prison commensurate with his proper custody and classification designation.

Respectfully Submitted,

Date:_____

_____

George M. Mavris, Attorney

MEMORANDUM OF POINTS AND AUTHORITIES

Summary of Argument

The Petition for Habeas Corpus relief must be granted on the grounds that (1) Petitioner's due process rights were violated when they failed to provide him with the basis for his gang validation prior to it being submitted to the Law Enforcement Investigations Unit ("LEIU") and (2) Respondent's erroneously conclude that "re-validation" occurs with only one source item as opposed to three. California Code of Regulations 3378(f)(2) provides: "[t]he procedures relating to the initial validation or rejection of gang members or associates described in this section shall be followed when reviewing the present status of an inactive gang member or associate." (emphasis added). Thus, the initial validation, like the review of the inactive status, requires three source items.

A.    Due Process Requirements

In prison gang validations, due process requires: (1) prison officials must hold an informal non-adversarial hearing within reasonable time after the prisoner is segregated; (2) prison officials must inform the prisoner of the charges against him or their reasons for considering segregation; and (3) prison officials must allow the prisoner to present his views.

Toussaint v. McCarthy, 918 F. 2d 1080, 1100-1101 (9th Cir. 1986),

cert. Denied, 481 U.S. 1069, 95 Led.2d871, 107 Su. Ct. 2462

(1987) (holding that administrative segregation requires notice

of charges and an opportunity to present one's views).

Furthermore, the Ninth Circuit requires that the official

charged with deciding to retain the inmate in segregation must be

the official to whom the inmate presents his views.  Toussaint v.

McCarthy, 918 F. 2d 752 (9th Cir.1990).  The U.S. Supreme Court

similarly decided that due process affords prisoners "an

opportunity to present his views" to the official "charged with

deciding whether to transfer him to administration segregation."

Hewitt v. Helms, 459 U.S. 460, 476, 74 L Ed. 2d 675, 103 S. Ct.

864 (1983).

Here, Petitioner was validated by the LEIU and then ICC

presided over fait accompli decision  - as set by 15 CCR Sec.

3341.5(c)(A)(2) - to house Petitioner in the SHU.

Hence, under the requirements of due process, Petitioner

must have received notice of the source items used in his

validation prior to the decision by LEIU because it was LEIU'S

validation, not the subsequent review by ICC, which resulted in

an indeterminate SHU term.

Respondents admit that Petitioner was not given notice of

the source items until after the validation took place and

Page 12

similarly, was first afforded the opportunity to present his

views at the ICC hearing held long after the validation approval

and resultant SHU term was decided.

The law requires that prison officials also must engage in

periodic review of a prisoner's confinement in the SHU that must

amount to more than "meaningless gestures." Toussaint v.

McCarthy, 801 F .2d 1080, 1104 (9th Cir. 1986); and Toussaint v.

Roland, 711 F Supp. 536, 540 n.11 (N.D.Cal. 1989) (citing

Toussaint v. Mc Carthy, 801 F 2d. at 1102) see also Morris v.

Cambra 1997 U.S. Dist. LEXIS 20647 at 3, citing Mims v. Shapp,

744 F. 2d 946, 951-52 (3rd Cir 1984). Here, there is no

indication that the ICC did anything more than rubber stamp the

decision by the LEIU on the gang validation.  Such bogus hearings

meet the very definition of a Kangaroo Court:  "a term

descriptive of a sham legal proceeding in which a person's rights

are totally disregarded and in which the result is a foregone

conclusion because of the bias of the court or other tribunal."

Blacks Law Dictionary, Fifth Edition.

B.   The "Re-Validation" Process Requires Three Sources

While it is true that --3378(F)(1) does allow for a prisoner

assigned to "inactive" status to be removed from the general

population, with only one source item, this is only the first

step of the process necessary to impose an indeterminate SHU term

for gang activity. Indeed, in clear and unambiguous language, -- 3378(F)(2) states that once a prisoner has been removed from the general population "the procedures relating to the initial validation or rejections of gang members or associates as described in this section [3378 (c) (1-8)] shall be followed when reviewing the present status of an inactive gang member or associate."

In other words, the Court, in issuing the OSC, was correct when it identified that three independent source items are needed to reassign a prisoners "active" status once he has been classified as "inactive."

Because the requisite number of valid source items are lacking, gang validation of Mr. Acuna is inappropriate.

C.    Petitioner Has Been Prejudiced by Placement in the SHU

Surprisingly, the Respondent devotes a significant portion of the Return to the argument that Petitioner has failed to show how he has been prejudiced by being wrongfully placed in the SHU when, as Respondent argues, he would have ended up there at some point anyway.

It is well settled that placement in Administrative Segregation poses an "atypical hardship" on an inmate. Hewitt v. Helms, 459 U.S. 460, 476, 74 L Ed. 2d 675, 103 S. Ct. 864 (1983).

1    Placement in the SHU, as outlined in the United States

2 Supreme Court case of <u>Sandin v. Connor</u>, noted that placement in

3 the SHU "directly and inevitably affects the duration of a

4 sentence." 515 U.S. 483, 487.  Once confined to the SHU, the

5

6 duration of Petitioner's sentence is lengthened because

7 California Board of Prison Terms refuses to parole any gang

8 associate.  <u>Medina v. Gomez</u>, 1997 U.S. Dist. LEXIS 12208 at *3.

9

10 Petitioner's ability to earn conduct credits is also

11 significantly curtailed during the period of wrongful confinement

12 in SHU.

13    In addition, placement in the SHU deprives an inmate of job

14

15 placement opportunities, contact visits, educational

16 opportunities as well as the right to many other prison

17 privileges.

18

19    It is not rocket science to conclude that Petitioner is

20 prejudiced by being wrongfully held in the SHU for any period of

21 time.

22                              Conclusion

23

24    Based on the foregoing, Petitioner respectfully requests

25 the this Petition be Granted, that the Court should declare

26 that Petitioner's validation as a member of a prison gang be

27

28 was illegally imposed. Further, the Court should rule that

29

1  the three source items were not properly disclosed and do

2  not establish that Petitioner has been active in gang

3  activity by reference to specific and verifiable acts seen

4

5  to aid and abet, further or promote a prison gang.

6    Finally, Petitioner respectfully requests that the

7  Court Order that Petitioner be released to the general

8

9  population of a prison commensurate with his proper custody

10  and classification designation.

11

12  Date:7/17/06

George M. Mavris, Appointed Counsel

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

### PROOF OF SERVICE

| | |
|---|---|
| **Case Name:** | In Re Arcadio Acuna, on Habeas Corpus |
| **Court:** | Del Norte County Superior Court |
| **Case No.:** | HCPB 05-5242 |

I am a citizen of the United States, over the age of 18 years, and not a party to the above-entitled action. My business address is 1 Point Saint George Place, Crescent City, California 95531.

On July 17, 2006, I caused to be served

**DENIAL TO RESPONDENT'S RETURN**

on the interested party(ies) listed below, addressed as follows:

> **Pamela B. Hooley**
> **Deputy Attorney General**
> **P. O. Box 944255**
> **Sacramento, CA 94244-2550**

✓ **By Regular Mail.** By depositing a true copy thereof to the party(ies) set forth above, in a sealed envelope for collection and mailing on the date set forth above. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

_____ **By Personal Service.** By personally delivering a true copy thereof to the party(ies) at the address(es) set forth above.

_____ **By Facsimile.** By faxing a true copy thereof to the party(ies) at the facsimile number(s) set forth above.

_____ **By Court Mailbox.** By placing a true copy thereof in the appropriate file folder located in the Court House.

I declare under penalty of perjury under the laws of the State of the California that the foregoing is true and correct.

Executed July 17, 2006, at Crescent City, California, by:

_____ D Lema _____

Donna Lema, Declarant

**EXHIBIT 8**

DOCKETED
Hodey
AUG 0 1 2006

By   L. EDWARDS
No 2005 301964

FILED

JUL 2 6 2006

SUPERIOR COURT OF CALIFORNIA
COUNTY OF DEL NORTE

E. ESPARZA

1
2
3
4
5
6
7
8         SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              FOR THE COUNTY OF DEL NORTE

10

11   IN RE:                          )   Case No.: HCPB 05-5242
                                     )
12                                   )
     ARCADIO ACUNA,                  )   ORDER SETTING STATUS REVIEW
13   C-43165,                        )
                                     )
14                    Petitioner,    )
                                     )
15   On Habeas Corpus.               )
     _____     )

16

17       The Court apparently was under the mistaken impression at the time it

18   issued the Order to Show Cause that this was an initial validation and therefore

19   stated that three source items were needed to validate.  Petitioner now claims that

20   three source items are required to revalidate.  That interpretation is not consistent

21   with practice or other interpretations even by prison advocacy groups.  See, e.g.,

22   The California State Prisoners' Handbook §6.21A (3d ed. 2001).

23       Nevertheless, the Court is interested in whether the one-source requirement

24   to revalidate applies indefinitely after an inmate is determined inactive.  In this

25   case, it appears that the most recent documented gang activity (prior to the

26   incidents in question here) was in 1990.  The Department Review Board's review of

27   the initial validation document showed that Petitioner "did not have a significant

28   EME role" at that time.

HB-D&D

1   This raises the question whether after approximately 13 years of no
2   documented gang activity whether it is intended by the regulations, or is
3   appropriate, that only one source be required to revalidate the petitioner.

4   The Court finds that the failure to provide Form 1030's to petitioner denied
5   petitioner his due process and the ability to voice his views on the source used to
6   revalidate him. There was obvious error in classifying petitioner as a "member"
7   rather than "associate." The initial IGI and LEIU found that two source documents
8   met "validation requirements," although the *in camera* review caused this Court to
9   seriously doubt the reliability of those two sources and whether they met the
10  regulatory requirements for validation. All these concerns cause bring into question
11  whether the original revalidation met minimal constitutional requirements.

12  Nevertheless, respondent indicates it has initiated a new revalidation process
13  that is not yet complete. If only one source is required for revalidation, then it
14  would appear that giving petitioner the process that was initially deprived may cure
15  any defects in the previous revalidation process.

16  The matter is added to calendar on Friday, September 22, 2006, at 8:30 a.m.
17  for a status review of the new revalidation process. If the parties wish to file
18  additional Points and Authorities on the issue of the one-source requirement as it
19  applies to this case or other issues related to the Court's comments herein, they may
20  do so no later than September 15, 2006.

21  DATED:  7/24/06

22

23                                      WILLIAM H. FOLLETT,
                                        Judge of the Superior Court
24

25

26

27

28

HB-D&D

1

PROOF OF SERVICE BY MAIL (1013a, 2015.5 C.C.P)

2

3    I am a citizen of the United States and a resident of the County of Del Norte.  I am over the age
     of eighteen (18) years and am not a party to the entitled action; my business address is 450 H St,
4    Crescent City California 95531.

5    On   7/27/06        , I served a copy of the **ORDER SETTING STATUS REVIEW,**
6    **Dated   7/26/06**      by depositing a true copy in the United States mail in Crescent City,
     California, in a sealed envelope with postage prepaid, addressed as follows:

7

8    **ARCADIO ACUNA, C-43165**
     c/o Pelican Bay State Prison
9    P.O. Box 7500
10   Crescent City, CA 95532

11   **William J. Barlow**
     **Attn: Litigation Department**
12   c/o Pelican Bay State Prison
     P.O. Box 7500
13   Crescent City, CA 95532

14
     **George Mavris, Esq.**
15   1 Point St. George Place
     Crescent City, CA 95531
16

17   **Pamela B. Hooley**
     **Deputy Attorney General**
18   Post Office Box 944255
     Sacramento, CA 94244-2550
19

20
         I certify under penalty of perjury that the foregoing is true and correct to the best of my
21   knowledge and that it was executed at Crescent City, California this date.

22

23   DATED:   7/27/06

24                                            _____
                                              Esperanza Esparza
25                                            Deputy Clerk

26

27

28


HB-D&D