# EXHIBIT 9

DOCKETED

SEP 1 8 2006

By ___J. FARAJ___
No. SQ2N05201964

FILED

SEP 1 5 2006

SUPERIOR COURT OF CALIFORNIA
COUNTY OF DEL NORTE

1  GEORGE M. MAVRIS (SB# 179471)
2  Attorney at Law
   1 Point Saint George Place
   Crescent City, CA  95531
3
   Attorney for Mr. Acuna
4

5              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

6                 **IN AND FOR THE COUNTY OF DEL NORTE**

7

8                                                                P.J. Smith

9  IN RE:                          )  **Case No.: HCPB 05-5242**
                                   )
10                                 )
                                   )  SUBMISSION BY ARCADIO ACUNA IN
11 ARCADIO ACUNA, C-43165          )  RESPONSE TO COURT'S INVITATION
                                   )  FOR SUPPLEMENTAL BRIEFING
12         Petitioner,             )
                                   )
13 On Habeas Corpus.               )
   _____)

14

15         Attached as Exhibit A hereto, please find the submission by Arcadio Acuna in response

16 to the Court's invitation for supplemental briefing.  Counsel for Mr. Acuna wishes to reserve the

17 right to respond to the "findings" of any subsequent "revalidation" of Mr. Acuna by the

18 Respondents.

19

20 Respectfully Submitted:

21

22 Date:  September 14, 2006                    _____|S|_____
                                               George M. Mavris,
23                                             Attorney for Mr. Acuna

24

25

26

27

28

                                               1

                                                                        9/15

Arcadio Acuna* C-43165
P.O. Box 7500 | FDG-113
Crescent City, CA 95532

Petitioner

## Superior Court of California
## County of Del Norte

In re | No. HCPB 05-5242
Arcadio Acuna, # C-43165, | Response to Court's Order
Petitioner, | Setting Status Review /
| Memorandum of Points and
On Habeas Corpus | Authorities In Support
| Thereof

### Introduction

COMES NOW, Petitioner, Arcadio Acuna, in response to the Court's Order Setting Status Review, dated July 26, 2006, herein submits that so as to have revalidated him as an active associate of a prison gang after being granted inactive status and released to the general population for 4-yrs., 3-independent source items establishing he had committed specific, verifiable acts seen to aid and abet, promote or further the interests of a prison gang after his release from PBSP-SHU in May 2000 were required. Also, Petitioner asserts that the revalidation of July 26, 2006, after the Court

recognized in its Order to show cause that Due Process had been denied and indicated that the evidence did not necessarily establish actual membership, did not comport to the criteria established under the "Castillo" Settlement Agreement as the source items, for numerous reasons, did not qualify as evidence of gang activity. Moreover, because the revalidation was achieved with a blatant disregard, misunderstanding or misapplication of the "Castillo" criteria it can in no way, shape or form be taken to cure the defects of the illegal validation of Jan. 2004, nor can it negate the prejudice and ill-effects petitioner will suffer as a consequence thereof.

<u>Memorandum of Points and Authorities</u>

<u>I.</u>

<u>Three Source Items Required to Revalidate a
Prisoner as an Active Associate After He Has
Been Granted Inactive Status</u>

On Sept. 21, 2004, a Settlement Agreement was entered into in Castillo v. Alameida, et. al., #C94-2847-MJJ-JCS, wherein prison officials agreed to propose and codify changes in policy and procedures concerning the gang validation process, (see attached) By this binding agreement due process in gang validations and inactive reviews was defined and it was not established, as Respondent now claims, that only one source item would henceforth be required to revalidate a prisoner as an active associate or member of a prison gang after he had been granted inactive status and released to the GP. (see Settlement Agreement, paragraphs 9-24) Moreover, because any changes in policy were to be

(2)

applied on a prospective basis *only* (see paragraph 25), by terms of the agreement these new provisions were not applicable to the revalidation process as it was applied in Jan. 2004.

Nevertheless, in accordance with the agreement prison officials on Oct. 7, 2005, issued a Notice of Change to Regulations #05/08, announcing amendments to Calif. Code of Regulations, Title 15, in reference to provisions governing gang management validation as detailed in the Settlement Agreement. (see attached) In clear and unambiguous language these provisions establish in §3378(g)(2)[renumbered from §3378(f)(2)], "The procedures relating to the initial validation or rejection of gang members or associates as described in this section shall be followed when reviewing the present status of an inactive gang member or associate."

In other words, under either the pre- or post-Castillo criteria 3-independent source items were required to have revalidated Petitioner as an active associate of a prison gang. (see §3378(c)(3-4)). And, while amended §3378(g)(1)[formally §3378(f)(1)], does allow for a prisoner classified as inactive to be placed in Ad. Seg. based on one reliable source item identifying him as actively involved in gang activity, this is only the first step of the process contained in Code of Regulations for revalidating and returning a prisoner to the SHU to serve an indeterminate term of segregation. (see amended §3378(g)(1-3)[formally §3378(f)(1-3)]).

## II.

### Revalidation Did Not Comport to "Castillo" Settlement Agreement and Cal.C. Code of Regulations

(3)

"On July 24, 2006, Petitioner was revalidated as an active associate of a prison gang based on 16 of 27 source items contained in a validation package presented to the LEIU by D.T. Hawke on June 5, 2006, after this Court recognized that serious questions existed concerning denial of due process and insufficiency of the evidence in the Jan. 20, 2004, validation. (see attached CDC-128B2 Gang Classification Chrono.) The source items submitted ranged in date from Oct. 3, 2005 to Oct. 11, 1988; Items 1, 2, 3 and 6 were developed after Petitioner was erroneously validated as a member in Jan. 2004, Items 5, 7 and 10 were relied on to validate Petitioner as a member on Jan. 20, 2004, Items 14, 15, and 16 were relied on in the Nov. 1990 validation that classified Petitioner as an associate, and, Items 4, 8, 9, 11, 12 and 13 were available in Petitioner's prison file but did not qualify as reliable source items in the Jan. 2004 and Nov. 1990 validations.

On July 30, 2006, Petitioner filed a CDC-602 Institutional Appeal challenging the current validation, asserting that the source items did not qualify as reliable because they did contain evidence of verifiable gang activity as defined in § 3378(c)(8)(A-M), fell outside the 6-yr. rule in § 3378(c)(1), or did not otherwise qualify under other provisions of the Castillo criteria. This appeal is now pending and Petitioner will show that prison officials by this action violated express provisions of the Settlement Agreement and Code of Regulations, and acting in bad faith revalidated Petitioner simply as an attempt to justify the illegal validation imposed in Jan. 2004.

(4)

"Furthermore, Petitioner submits that of importance to these proceedings it should be noted that under the old or new validation procedures once a prisoner is validated as an associate of a prison gang that classification will remain in effect for life, with the only possible change that can occur being whether the prisoner is found to be active, inactive or a drop-out in accordance with provisions contained in the Code of Regulations.

Accordingly, the revalidation that took place on July 26, 2006, should have only focused on whether evidence existed showing Petitioner was actively involved in verifiable gang activity in that time period after he was granted inactive status in May 2000. It was wholly irrelevant to that action, and contrary to the Castillo criteria and Code of Regulations to have relied on documentation dating back almost 20 yrs.

Moreover, Petitioner asserts that the significance of the 3-source item rule arises from the higher level of due process that is mandated in reference to imposing indeterminate terms of segregation to be served in the Pelican Bay State Prison SHU. (see Castillo v. Almeida, supra; Madrid v. Gomez (N.D. cal. 1995) 889 F. Supp. 1146) The conditions and deprivations Petitioner has been made to suffer as described in Madrid cannot be understated, and must be given due consideration by this Court when it makes a decision whether the defects of the previous validation have been cured by the current validation considering that under the current or former 3-source rule Petitioner should not have been validated as an active associate or member of a prison gang.

(5)

Petitioner asserts that under of this case with a view to the case factors made reference to is the Court's Order setting Status Review, it would be a gross miscarriage of justice to allow prison officials to impose another indeterminate term of segregation based on a validation that was obtained in violation of the Castillo criteria. Petitioner submits that the Court should not find the current validation can cure the defects of the previous action because, among other things, the 2½-yrs. he has already served in the SHU since Mar. 2004, will not be applied to the 6-yr. period required for reconsideration of inactive status. (See attached CDC-128B2 Chrono stating Petitioner will not be eligible for such review until Dec. 7, 2011)

Finally, the prejudice Petitioner will suffer from being erroneously labeled a "member" also comes from the fact that documentation reflecting this decision will remain in his prison file for life and will be considered at all future parole hearings and certainly attaches a significant stigma to his character that can never be removed and which will have long-term negative, serious consequences on his state of being; especially when it is noted that even after Petitioners validation as a member was overturned on July 24, 2006, his indeterminate term of segregation was continued on Aug. 8, 2006, based on his classification as a member.

Dated: _____    Respectfully Submitted,

_Arcadio Acuna_
Arcadio Acuna, Petitioner

STATE OF CALIFORNIA.
CDC 128-B-2 (5/95)

DEPARTMENT OF CORRECTIONS

| INMATE'S NAME: Arcadio ACUNA | CDC NUMBER: C43165 |

On October 5, 1995, a CDC 128B2 regarding subject was issued identifying subject as an Active EME associate based upon a gang validation package submitted by Institution Gang Investigator Bell at FOL. A subsequent CDC 128B2 dated February 7, 2000, was issued identifying subject as Inactive. On January 12, 2004, an Active/Inactive Review was completed by Institutional Gang Investigator Garcilazo at LAC, which resulted in a CDC 128B2 dated January 20, 2004, identifying subject as an active EME member. In an agreement with the Del Norte County Superior Court, the validation of subject and his current status were to be reviewed. The following documents were submitted to UPDATE and CHANGE subject's validation status:"

### TOTAL NUMBER OF ITEMS SUBMITTED FOR REVIEW: (27)

Item (1) Confidential Memorandum dated 10/3/05 (Communications)
Item (2) Confidential Memorandum dated 10/12/04 (Communications)
Item (3) Confidential CDC 128B dated 8/10/04 (Association)
Item (4) CDC 115 dated 7/30/90 (Offenses) supported by
    Confidential Memorandum dated 3/29/04 (Debrief).
    Confidential Memorandum dated 2/10/95 (Debrief), and
    Confidential Memorandum dated 2/1/93 (Debrief)
Item (5) Confidential Memorandum dated 12/12/03 (Communications) (Accepted 1/20/04)
Item (6) Confidential Memorandum dated 11/18/03 (Debrief)
Item (7) Confidential Memorandum dated 9/23/03 (Informant) (Accepted 1/20/04)
Item (8) Confidential Memorandum dated 8/8/02 (Informant)
Item (9) Confidential Memorandum dated 3/5/02 (Debrief)
Item (10) Confidential CDC 128B dated 9/21/00 (Communications) (Accepted 1/20/04)
Item (11) Confidential Memorandum dated 1/31/94 (Communications)
Item (12) Confidential Memorandum dated 5/13/93 (Informant)
Item (13) Confidential Memorandum dated 10/29/92 (Communications)
Item (14) Confidential Memorandum dated 8/31/90 (Debrief) (Accepted 10/5/95)
Item (15) Confidential Memorandum dated 9/20/89 (Debrief) (Accepted 10/5/95)
Item (16) Confidential Memorandum dated 10/11/88 (Informant) (Accepted 10/5/95)

### TOTAL NUMBER OF ITEMS WHICH MEET VALIDATION REQUIREMENTS: (19)

The following items **do not meet** the validation requirements and were/shall not be used as a basis for validation:

Item (1) Confidential Memorandum dated 6/17/03 (Debrief) (No EME activity noted)
Item (2) Confidential Memorandum dated 12/12/01 (Informant) (No EME activity noted)
Item (3) Confidential Memorandum dated 1/5/00 (Debrief) (No EME activity noted)
Item (4) Confidential Memorandum dated 3/14/97 (Debrief) (No EME activity noted)
Item (5) Confidential Memorandum dated 11/7/96 (Debrief) (No EME activity noted)
Item (6) CDC 128B dated 5/3/96 (Offenses) (No EME activity noted)
Item (7) Confidential Memorandum dated 5/2/91 (Debrief) (No EME activity noted)
Item (8) Confidential Memorandum dated 4/9/90 (Informant) (No EME activity noted)

### TOTAL NUMBER OF ITEMS WHICH DO NOT MEET VALIDATION REQUIREMENTS: (8)

---

### ACTION OF REVIEWER

Pursuant to the validation requirements established in 15 CCR Section 3378, Arcadio ACUNA is:

    ☒ VALIDATED    ☐ REJECTED

as an "Active" associate of the Mexican Mafia prison gang.

ACTIVE/INACTIVE REVIEW

OCT - 3 2011

ELIGIBILITY DATE

CDC 128B2
Arcadic ACUNA, C43165
Page 2

SIGNATURE
CHAIRPERSON

Printed name

SIGNATURE
MEMBER

Printed name
Everett W. Fischer

SIGNATURE
MEMBER

Printed name
G. Williams

DATE: 7/26/06

GANG VALIDATION/REJECTION REVIEW
GENERAL CHRONO
LEIU/SSU

**DISTRIBUTION:**
Original - Central File
Copy - Classification & Parole Representative/Parole Administrator I
Copy - Institutional Gang Investigator/Region Gang Coordinator
Copy - Law Enforcement Liaison Unit
Copy - Inmate/Parolee — 7/28/06, cc7 O. Erwin

STATE OF CALIFORNIA                                                                          DEPARTMENT OF CORRECTIONS

# NOTICE OF CRITICAL INFORMATION - PRISON GANG IDENTIFICATION   *rcd 8/29*

CDC 812-A (9/92)

This non-confidential form is used to identify primary source documents in the central file, which establish and inmate/parolee's current status relative to prison gang activity/association. The identification process is initiated by completing a form CDC 812 and forwarding it to the Gang Coordinator/Investigator. The Gang Coordinator/Investigator will then complete or supervise the completion of form CDC 812-A and signify to its accuracy by printing name and signing. A CDC 128-B which delineates gang activity/association shall be completed per the CDC operations Manual

## SUPPORTING INFORMATION

Documents shall be identified by date and type such as memorandum, probation report, parole report, incident report, police report, chrono

| | | | |
|---|---|---|---|
| A. | SELF ADMISSION | B. | TATTOOS AND SYMBOLS |
| C. | WRITTEN MATERIAL | D. | PHOTOGRAPHS |
| E. | STAFF INFORMATION | F. | OTHER AGENCIES |
| G. | ASSOCIATION Confidential Memorandum dated 12/12/2003, By Correctional Officer S. Preciado | H. | INFORMANTS (REASON FOR RELIABILITY MUST BE SPECIFIED) |
| I. | OFFENSES (GANG RELATED) | | |
| J. | LEGAL DOCUMENTS | | |
| K. | VISITORS | | |
| L. | COMMUNICATIONS (MAIL/NOTES) Confidential CDC 128B dated 09/21/2000 by Correctional Officer B. Shelton Confidential Memorandum dated 09/23/2003 by Correctional Officer R. Parrilla | | |
| M. | DEBRIEFING REPORTS | | |

ADDITIONAL DOCUMENTS AND COMMENTS  CDC 128B-2 dated 01/20/2004 by Special Agent W. Luper (SSU)

## GANG COORDINATOR/INVESTIGATOR

| PRINT NAME OF PRISON GANG AND CURRENT STATUS: MEMBER/ASSOCIATE/ DROPOUT/ NONE OR SAFETY CONCERNS | PRINT NAME AND SIGN | TITLE | INSTITUTION/ REGION | DATE |
|---|---|---|---|---|
| Mexican Mafia (EME) Associate | K. Roe, *Roe* | Sgt. / IGI | CSP-CAL | 04/20/2004 |
| MEXICAN MAFIA (EME) ASSOC. | D. HIGGENSON  LT. (A) | IGI | PBSP | 08/23/05 |
| Mexican Mafia (EME) member | G. Stewart | Corr. Lt. (A) I GI (A) | PBSP | 08/30/05 |
| MEXICAN MAFIA EME MEMBER | J. BEESON | IGI | PBSP | 7-27-06 |

| CDC NUMBER | INMATE/PAROLEE'S NAME | | | |
|---|---|---|---|---|
| C43165 | ACUNA, Arcadio | | | PAGE 1 OF 1 |

1   James M. Finberg (State Bar No. 114850)
    Joy A. Kruse (State Bar No. 142799)
2   LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
    Embarcadero Center West
3   275 Battery Street, 30th Floor
    San Francisco, CA 94111-3339
4   Telephone: (415) 956-1000
    Facsimile: (415) 956-1008
5
    Charles F.A. Carbone (State Bar No. 206536)
6   CALIFORNIA PRISON FOCUS
    2940 16th Street, Suite 307
7   San Francisco, CA 94103
    Telephone: (415) 252-9211
8   Facsimile: (415) 252-9311

9   Counsel for Plaintiff STEVE M. CASTILLO

10                    UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12

13   STEVE M. CASTILLO,                    Case No. C-94-2847-MJJ-JCS

14              Plaintiff,                 **SETTLEMENT AGREEMENT**

15   v.

16   EDWARD S. ALAMEIDA, JR., et al.,

17              Defendants.

18   ─────────────────────────────

19         Plaintiff STEVEN M. CASTILLO ("Plaintiff") and Defendants EDWARD S.

20   ALAMEIDA, JR, et al.("Defendants") have agreed to resolve the claims alleged in the above-

21   captioned action on the terms set forth in this Settlement Agreement.

22   I.    **INTRODUCTION**

23         1.    This action was originally filed on August 9, 1994. Plaintiff filed five

24   subsequent amended complaints. Plaintiff challenged the constitutionality of the gang validation

25   procedures; the evidence used in his individual validation; and whether or not his validation was

26   the result of retaliation by prison officials for his jailhouse lawyering and peace proposal

27   activities. Using the overbreadth doctrine that applies in the context of First Amendment

28   challenges to regulations, Plaintiff challenged not only his own validation, but also gang

349500.1                              - 1 -

1    validation policies and procedures as applied to other prisoners. Plaintiff also challenged some of

2    the physical conditions in the Segregated Housing Unit ("SHU") at Pelican Bay State Prison

3    ("PBSP"), as well as the psychological effects of long-term SHU confinement.

4              2.       The Defendants are Edward S. Alameida, Jr., Joseph L. McGrath, Jr., Alan

5    Addison, Judy Olson, E.S. Rodriguez, Larry Williams, C. Sheppard, and J. Briddle, all of whom

6    were sued in his or her official capacity. Defendants deny any and all allegations raised by

7    Plaintiff in this action.

8              3.       On June 19, 2002, the Court granted Defendants' summary judgment

9    motion as to Plaintiff's Eighth Amendment claim regarding physical conditions in the SHU.

10   Summary judgment as to Plaintiff's First Amendment claims, retaliation claim, and Eighth

11   Amendment claim (regarding the psychological effects of SHU confinement) were denied.

12            4.       On January 5, 2004, this Court partially granted Defendants' summary

13   judgment motion finding there was no due process violation, except to the extent Mr. Castillo

14   alleges he was denied notice and an opportunity to be heard during the course of his initial

15   validation. The Court also found that there was "some evidence" to support Mr. Castillo's

16   validation. The Court granted Defendants' summary judgment motion as to Plaintiff's Eighth

17   Amendment claim finding that there were no psychological effects of prolonged SHU

18   confinement. Summary judgment as to Mr. Castillo's retaliation and First Amendment claims

19   was denied.

20   **II.    PARTIES**

21            5.       The Plaintiff is Steve M. Castillo, a prisoner at Pelican Bay State Prison.

22            6.       The Defendants are Edward S. Alameida, Jr., the former Director of the

23   California Department of Corrections, Joseph L. McGrath, Jr., the Warden at PBSP, Alan

24   Addison, a retired Senior Special Agent in the former Special Services Unit, Judy Olson, a retired

25   Associate Government Program Analyst in the Law Enforcement and Investigations Unit, E.S.

26   Rodriguez, a former CDC Lieutenant at PBSP, Larry Williams, a retired CDC Lieutenant at

27   PBSP, C. Sheppard, a former Acting Warden at PBSP, and J. Briddle, a former CDC Lieutenant

28   at PBSP.

SETTLEMENT AGREEMENT
CIVIL NO. C-94-2847 MJJ-JCS

## III.  DEFINITIONS

7.   The following terms when used in this Agreement shall have the meanings specified below:

(a)    "Inactive review" shall mean the review of an inmate's prison gang status governed by the process described in Title 15 § 3341.5(c)(5).

(b)    "Articulable basis" shall mean a written record of specific, articulable facts along with the rational inferences drawn from those facts.

(c)    "Current, active determination" shall mean a written record and finding as defined in paragraph 24 of this Settlement Agreement.

(d)    "Defendants" shall mean Edward S. Alameida, Jr., Joseph L. McGrath, Jr., Alan Addison, Judy Olson, E.S. Rodriguez, Larry Williams, C. Sheppard, and J. Briddle.

(e)    "Execution of settlement" or "Effective Date" shall mean the date by which the final party shall have signed the agreement.

(f)    "Gang activity" and "gang content" are defined in this agreement consistent with the definition in Title 15 §§ 3000 & 3023.

(g)    "Parties" shall mean Plaintiff Castillo and the Defendants enumerated *supra* in ¶ 7(d).

(h)    "Released Claims" shall mean any and all claims or causes of action contained in Plaintiff's original Complaint, First Amended Complaint, Second Amended Complaint, Third Amended Complaint, Fourth Amended Complaint, and Fifth Amended Complaint. "Released claims" shall also include Plaintiff's gang validation and conditions of confinement at Pelican Bay State Prison existing from the date of the original Complaint, August 9, 1994, through the date of the execution of this Agreement. "Released claims" does not refer to any claims regarding the review of Mr. Castillo's validation as set forth in paragraph 29 of this Agreement or to any future inactive reviews of Mr. Castillo's status on behalf of the Classification Committee.

(i)    "Released Parties" shall mean Edward J. Alameida, Jr.; Joseph L.

1   McGrath, Jr.; Alan Addison; Judy Olson; E.S. Rodriguez; Larry Williams; C. Sheppard, and

2   J. Briddle, all of whom are released in his/her individual and official capacities.

3           (j)    "Validation" shall mean the process codified in Title 15 § 3378

4   whereby an inmate is identified as a prison gang member or gang associate.

5   **IV.    POLICIES AND PROCEDURES**

6           8.    For all policy and procedure changes described in this agreement, the

7   Department of Corrections agrees to propose to codify the changes in either Title 15 of the

8   California Code of Regulations and/or the Department Operations Manual ("DOM"). The parties

9   estimate it will take approximately 90 days from the date of the execution of the settlement

10  agreement for the Law Enforcement Investigations Unit ("LEIU") to finalize the proposed Title

11  15 and/or DOM changes. The proposed changes, whether to Title 15 or to the DOM, will then be

12  forwarded to the Department of Corrections' Regulation and Policy Management Branch, which

13  may take approximately nine months to finalize the changes. The Regulation and Policy

14  Management Branch will assist in determining whether Title 15 and/or the DOM is the

15  appropriate place to codify the policies and procedures recited herein. The Department shall

16  conclude its internal finalization of the proposed changes to both Title 15 and/or the DOM no

17  later than one year from the date of the execution of this Agreement. Plaintiff understands that

18  following internal finalization of the proposed changes to Title 15 by the Department of

19  Corrections, the Department of Corrections must forward the proposed changes to Title 15 to the

20  California Office of Administrative Law and/or any other interested body for final codification.

21  A written copy of any codification of these policies and procedures in either Title 15 or the DOM

22  shall be provided to Plaintiff's counsel within 30 calendar days of their codification.

23          9.    <u>Due Process in Validations and Inactive Reviews.</u> Defendants shall

24  provide notice and opportunity to be heard to each and every prisoner at the pre-validation and

25  inactive review stage. Defendants agree to provide 24-hour advance notice to each prisoner of

26  the source items considered prior to the validation packet being sent to Law Enforcement and

27  Investigations Unit ("LEIU") for approval or rejection of an initial validation. Defendants also

28  agree to record the prisoner's opinion on each of the source items and to forward in written form

1    such opinions to LEIU. A copy of the written record of the prisoner's opinion shall be given to

2    the prisoner, prior to the time the record is forwarded to LEIU.

3           10.   Defendants shall provide notice and opportunity to be heard for inactive

4    reviews. Notice shall be given to the prisoner at least 24 hours in advance of a consideration of

5    inactive review. Similarly, each prisoner shall be given an opportunity to record his opinions on

6    the new source items as part of the inactive review. The recorded views of the inmate shall be

7    forwarded to the decision-makers over the inactive reviews prior to the rendering of a decision. A

8    copy of the written record of the prisoner's opinions shall be given to the prisoner within fourteen

9    calendar days of the inactive review. Defendants agree that when new source items are raised,

10   beyond those used in the initial validation, each inmate shall be given notice and opportunity to

11   be heard during the inactive review.

12          11.   The policies and procedures discussed in paragraphs 12 through 21 *infra*

13   correspond to the "independent source items" discussed in Title 15 § 3378(c)(8).

14          12.   Photographs. (Title 15 § 3378(c)(8)(D)). Defendants shall reasonably

15   ascertain the date of any photograph used in any validation. Defendants agree that no photograph

16   used in any validation shall be older than six years. Defendants agree that at the time the

17   photograph is taken, at least one person in the photograph shall have been validated, or be

18   validated no more than six months after the date the photograph was taken. Defendants agree that

19   staff shall record this information and provide it on a written form given to the inmate.

20          13.   Talking in the Law Library. (*see* Title 15 § 3378(c)(8)(E)). Defendants

21   agree that a prisoner's talking in a SHU law library to a validated gang member or associate shall

22   not be relied upon as a source item unless IGI or staff has an articulable basis for determining that

23   the communication was related to gang activity. Defendants agree that staff shall record this

24   information and provide it on a written form given to the inmate.

25          14.   Tattoos and symbols. (Title 15 § 3378(c)(8)(B)). Defendants agree that

26   any tattoo or symbol relied upon as a source item must include an articulation by staff as to why

27   the tattoo or symbol has a specific association with a particular prison gang. Defendants agree

28   that staff shall record this information and provide it on a written form given to the inmate.

FROM : California Prison Focu       FAX NO. : 4152529311       Sep. 21 2004 11:29AM P7

15.   Written Material/Communications. (Title 15 § 3378(c)(8)(C) & (L).) Staff must have an articulable basis for why a written material or communication is reliable evidence of gang association or membership. Defendants agree that staff must articulate and record why a written material or communication is evidence of gang association/membership based on either the explicit, or coded, content of the communication. With respect to greeting cards, such as a birthday card or get well card, staff must record an articulable basis for why the communication is evidence of gang membership or association.

16.   Staff Information. (Title 15 § 3378(c)(8)(E).) Defendants agree that staff must have an articulable basis for determining that gang content or conduct at issue is gang-related. Defendants agree that staff shall record this information and provide it on a written form given to the inmate.

17.   Offenses. (Title 15 § 3378(c)(8)(D). Defendants agree that if a disciplinary offense is considered a potential source item for validation, IGI or staff shall have an articulable basis for why the offense is gang-related. Defendants agree that staff shall record this information and provide it on a written form given to the inmate.

18.   Legal Documents. (Title 15 § 3378(c)(8)(J)). Defendants agree that staff shall have an articulable basis for why legal correspondence is a source item. Staff shall articulate and record why a legal document is evidence of gang association or membership based on either the explicit or coded content of the document. This information shall be recorded by staff and provided on a written form given to the inmate.

19.   Address Books. (see Title 15 § 3378(c)(8)(L)). Defendants agree that staff shall have an articulable basis for why the contents of address books are evidence of gang association. This information shall be recorded by staff and provided on a written form given to the inmate.

20.   Visitors. (Title 15 § 3378(c)(8)(K)). Defendants agree that staff must have an articulable basis for determining that the visitor and inmate discussed gang content or conduct. Defendants must have an articulable basis for identifying the visitor as associated with the prison gang, and Defendants agree that the gang identification of a visitor may be rebutted via

1  a prisoner's opportunity to present his views. This information shall be recorded by staff and

2  provided on a written form given to the inmate.

3        21.   Confidential Sources. (Title 15 § 3378(c)(8)(H)). Defendants agree that

4  "laundry lists" – that is, when confidential sources, including debriefers, identify a prisoner as an

5  associate or member by listing names of inmate(s) without reference to gang-related acts

6  performed by the inmate(s) – shall not be relied upon as a source item. Defendants agree that the

7  confidential source must identify specific gang activity or conduct performed by the alleged

8  associate or member before such information can be considered as a source item. This

9  information shall be recorded by staff and provided on a written form given to the inmate.

10        22.   Single Source Rule. Defendants agree that a single, gang-related incident

11  or conduct described or documented by multiple sources, confidential or otherwise, shall

12  constitute one source item only.

13        23.   Hearsay. Defendants also agree that exclusive reliance on hearsay from a

14  confidential source will not be used as a source item for validation.

15        24.   Current, Active Determination. Defendants agree that a prisoner will not

16  receive an indeterminate SHU term as a validated gang member or associate without first being

17  found to be a current, active gang member or associate consistent with the procedural safeguards

18  established in this Agreement. Each ICC and/or UCC review of an indeterminate SHU term will

19  review the inmate's current gang status and indicate that status on the 128G chrono. The inmate

20  will receive a copy of the chrono unless otherwise requested. "Currently active" gang status is

21  defined as any documented gang activity within the past six years consistent with CCR

22  3341.5(c)(5). Defendants agree that these requirements will be reflected in Title 15 and/or the

23  DOM, to the extent they do not already appear there.

24        25.   The provisions set forth in paragraphs 11 to 24 shall be applied on a

25  prospective basis only, and shall apply throughout the Department of Corrections.

26        26.   Training. Defendants agree that the above policy changes shall be

27  reflected in Institutional Gang Investigator ("IGI") training materials and gang educational

28  materials considered and applied by LEIU, and shall be reflected in Title 15 and/or the

349500 1

- 7 -

1    Department of Operations Manual. Defendants agree that all relevant staff, including but not

2    limited to IGI and LEIU, will receive training and instruction on the terms of the settlement

3    agreement no later than 180 days after execution of the settlement where appropriate and as

4    reflected in Paragraph 8.

5        27.    Administrative Bulletin or Memorandum. Defendants shall issue a

6    memorandum or an administrative bulletin to notify general staff of the terms of the settlement

7    agreement no later than 180 days after execution of the settlement. A copy of the memorandum

8    or administrative bulletin shall be provided to Plaintiff's counsel within 30 calendar days of its

9    issuance.

10        28.    Gang Diversion Video. Defendants will seek permission from the Director

11    of the CDC to show a gang diversion video to the general and SHU populations. A copy of the

12    gang diversion video shall be provided to plaintiff's counsel within thirty calendar days of its first

13    broadcast, if any.

14        29.    Gang Validation of Plaintiff Castillo. Defendants agree that after executing

15    the settlement, Defendants will within 90 days review the validation of the Plaintiff in accordance

16    with the modifications adopted pursuant to the settlement. Defendants also agree that no source

17    items learned of through Plaintiff's deposition testimony in this litigation shall be considered

18    against Mr. Castillo in any subsequent review of his gang validation.

19    V.    ENFORCEMENT

20        30.    The Court, specifically the Honorable Martin J. Jenkins, shall retain

21    jurisdiction to enforce the terms of this Agreement. The Court shall have the power to enforce

22    the terms of this Agreement through specific performance and all other remedies permitted by

23    law or equity.

24        31.    While the parties agree that there is no ongoing monitoring of the

25    Settlement Agreement,

26        (a)    If Plaintiff's counsel believes that Defendants are not complying

27    with the specific provisions of this Settlement Agreement to make policy changes, they shall

28    notify Defendants' counsel in writing via the U.S. Postal Service of the facts supporting their

349500.1    - 8 -    SETTLEMENT AGREEMENT
CIVIL NO. C-94-2847 MJJ-JCS

1   belief. Defendants shall investigate the allegations and respond in writing within 45 days. If

2   Plaintiff's counsel are not satisfied with Defendants' response, the parties shall meet and confer to

3   resolve the issue(s). If the parties are unable to resolve the issue(s) satisfactorily, Plaintiff may

4   request relief in the U.S. District Court, Northern District of California, before Judge Martin J.

5   Jenkins. This process will cease to be available once the proposed changes to the policies

6   described in this Settlement Agreement are internally finalized. This occurs when the California

7   Department of Corrections' Regulatory and Policy Management Branch provides the proposed

8   changes to the Office of Administrative Law and/or other interested bodies, where approvals are

9   outside the California Department of Corrections' control.

10          (b)     Following final codification of the proposed changes by the Office

11  of Administrative Law and/or any other interested bodies, the California Department of

12  Corrections will implement the codified changes. For six months following the start date of the

13  implementation of the codified policy changes, if Plaintiff's counsel believes that Defendants are

14  not complying with the implementation of the codified policy changes, they shall notify

15  Defendants' counsel in writing via the U.S. Postal Service of the facts supporting their belief.

16  Defendants shall investigate the allegations and respond in writing within 45 days. If Plaintiff's

17  counsel are not satisfied with Defendants' response, the parties shall meet and confer to resolve

18  the issues(s). If the parties are unable to resolve the issue(s) satisfactorily, Plaintiff may request

19  relief in the U.S. District Court, Northern District of California, before Judge Martin J. Jenkins.

20  This process will cease to be available once the six-month time frame elapses from the

21  implementation start date described above.

22          (c)     There can be no individual inmate relief regarding an inmate's gang

23  validation granted through the above-described process; individual inmate concerns regarding

24  his/her own gang validation can only be raised as exemplars by Plaintiff's counsel of alleged

25  noncompliance. Individual inmate concerns must be raised through the California Department of

26  Corrections inmate appeals process (Cal. Code Regs. tit. 15, §§ 3084 *et seq.*) and separate suit.

27  **VI.    ATTORNEY'S FEES AND COSTS**

28          32.     Defendants shall pay Lieff, Cabraser, Heimann & Bernstein, LLP $240,000

349500.1

-9-

1   within 90 calendar days of the execution of this agreement.  That sum shall be divided among

2   plaintiff's counsel, future litigation efforts, and plaintiff as shall be decided by plaintiff's counsel

3   and plaintiff. Lieff, Cabraser, Heimann & Bernstein, LLP shall complete a Payee Data Record

4   form and shall return that Payee Data Record form to Defendants' counsel upon execution of this

5   agreement.

6          33.     At the time that Plaintiff and his counsel signs this settlement agreement,

7   Plaintiff's counsel shall also sign and return to counsel for Defendants an executed Stipulation

8   and [Proposed] Order of Dismissal With Prejudice. Plaintiff's counsel authorizes counsel for

9   Defendants to file the dismissal with prejudice with the court once the settlement check has been

10  delivered to Plaintiff's counsel.

11  **VII.    RESOLUTION OF CLAIMS**

12          34.     Plaintiff fully and forever releases and discharges all served and unserved

13  Defendants, including Defendants Edward S. Alameida, Jr., Joseph L. McGrath, Jr., Alan

14  Addison, Judy Olson, E.S. Rodriguez, Larry Williams, C. Sheppard, and J. Briddle, and all others

15  who have ever been named as Defendants in this action, in both their individual and official

16  capacities, from all claims, demands, actions, and causes of action including claims for attorneys'

17  fees, court costs, and other costs of suit, arising out of an alleged injury or claims incurred by

18  Plaintiff as alleged in this action. Plaintiff also fully and forever releases and discharges the State

19  of California, the California Department of Corrections and its employees, agents (including, but

20  not limited to the Pelican Bay State Prison in Crescent City, California and its employees and

21  agents), servants, and other representatives, past or present, from all claims, demands, actions,

22  and causes of action, including claims for attorneys' fees, court costs, and other costs of suit,

23  arising out of any alleged injury or claims incurred by Plaintiff as alleged in this action. Plaintiff

24  specifically, but without limitation, releases the Releasees for all claims that were brought or that

25  could have been brought. Plaintiff does not release any claims regarding the review of his

26  validation as set forth in paragraph 29 of this Agreement nor any claims regarding any future

27  inactive reviews of his status on behalf of the Classification Committee.

28          35.     Plaintiff acknowledges and agrees that this release and discharge is a

FROM : California Prison Focus       FAX NO. : 4152529311       Sep. 21 2004 11:32AM  P12

1  general release. Plaintiff expressly waives and assumes the risk of any and all claims identified in

2  Paragraph 7(h) which exist as of this date, but which he does not know or suspect to exist,

3  whether through ignorance, oversight, error, negligence, or otherwise, and which, if known,

4  would materially affect his decision to enter into this settlement agreement. Plaintiffs has read

5  the contents of Section 1542 of the Civil Code of the State of California, and he expressly waives

6  the benefits of this section. Section 1542 reads as follows:

7        Section 1542. (General Release - Claims Extinguished)

8        A general release does not extend to claims which the creditor does
         not know or suspect to exist in his favor at the time of executing the

9        release, which if known by him must have materially affected his
         settlement with the debtor.

10  Plaintiff assumes the risk that the facts or law may be other than he believes.

11        36.    Upon the execution of the settlement agreement, Defendants shall be

12  deemed to and shall have released Plaintiff Castillo from any and all claims relating to the

13  original Complaint and the Second Amended Complaint, Third Amended Complaint, Fourth

14  Amended Complaint, and Fifth Amended Complaint.

15  **VIII.**   **PARTIES' AUTHORITY**

16        37.    The signatories hereby represent that they are fully authorized to enter into

17  this agreement and bind the parties hereto to the terms and conditions hereof.

18        38.    All of the Parties acknowledge that they have been represented by

19  competent, experienced counsel throughout all negotiations which preceded execution of this

20  agreement, and this agreement is made with the consent and advice of counsel.

21  **IX.**   **MUTUAL FULL COOPERATION**

22        39.    The Parties agree to use their best efforts and to fully cooperate with each

23  other to accomplish the terms of this agreement, including but not limited to, execution of such

24  documents and to take such other action as may reasonably be necessary to implement and

25  effectuate the terms of this agreement.

26  **X.**   **MODIFICATION**

27        40.    This agreement may not be changed, altered, or modified, except in writing

28  and signed by the parties hereto, and approved by the Court.

## XI.  ENTIRE AGREEMENT

41.   This agreement constitutes the entire agreement between the Parties concerning the subject matter hereof. No extrinsic oral or written representations or terms shall modify, vary or contradict the terms of this agreement. In the event of any conflict between this agreement and any other settlement-related document, the parties intend that this agreement shall be controlling.

## XII.  CHOICE OF LAW/JURISDICTION

42.   This agreement shall be subject to, governed by, construed, enforced, and administered in accordance with the laws of the State of California, both in its procedural and substantive aspects, and shall be subject to the continuing jurisdiction of the United States District Court for the Northern District of California. According to Magistrate Judge Edward M. Chen at the May 28, 2004 Settlement Conference, "[u]nder the terms of the settlement agreement, the District Court will retain jurisdiction to supervise the enforcement, should that be necessary." This agreement shall be construed as a whole according to its fair meaning and intent, and not strictly for or against any party, regardless of who drafted or who was principally responsible for drafting this agreement or any specific term or condition thereof.

## XIII.  COUNTERPARTS

43.   This agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one agreement. which shall be binding upon and effective as to all Parties.

1    Dated: September 21, 2004      LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

2

3                      By: _____

                               Joy A. Kruse

4

5                      James M. Finberg (State Bar No. 114850)

                      Joy A. Kruse (State Bar No. 142799)

6                      Lieff, Cabraser, Heimann & Bernstein, LLP

                      Embarcadero Center West

7                      275 Battery Street, 30th Floor

                      San Francisco, CA  94111-3339

8                      Telephone:  (415) 956-1000

                      Facsimile:  (415) 956-1008

9                      Counsel for Plaintiff STEVE M. CASTILLO

10   Dated: September ___, 2004     CALIFORNIA PRISON FOCUS

11

12                     By:_____

                          Charles F.A. Carbone

13

14                      Charles F.A. Carbone (State Bar No. 206536)

                      2940 16th Street, Suite 307

15                      San Francisco, CA  94103

                      Telephone: (415) 252-9211

16                      Facsimile:  (415) 252-9311

17                      Counsel for Plaintiff STEVE M. CASTILLO

18   Dated: September ___, 2004     LAW OFFICES OF GRAHAM NOYES

19

20                     By: _____

                          Graham Noyes

21                      James Graham Noyes (State Bar No. 157395)

                      228 Commercial Street, #219

22                      Nevada City, CA  95959

                      Telephone:  (530) 478-9196

23                      Facsimile:  (530) 478-9197

24                      Counsel for Plaintiff STEVE M. CASTILLO

25

26

27

28

349500.1                                                  SETTLEMENT AGREEMENT

                                                      CIVIL NO. C-94-2847 MJJ-JCS

1    Dated: September __, 2004          LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

2

3                                        By: _____

4                                             Joy A. Kruse

5                                        James M. Finberg (State Bar No. 114850)
                                         Joy A. Kruse (State Bar No. 142799)
6                                        Lieff, Cabraser, Heimann & Bernstein, LLP
                                         Embarcadero Center West
7                                        275 Battery Street, 30th Floor
                                         San Francisco, CA  94111-3339
8                                        Telephone:  (415) 956-1000
                                         Facsimile:  (415) 956-1008

9                                        Counsel for Plaintiff STEVE M. CASTILLO

10   Dated: September 21, 2004           CALIFORNIA PRISON FOCUS

11

12                                       By: _____

13                                            Charles F.A. Carbone

14                                       Charles F.A. Carbone (State Bar No. 206536)
                                         2940 16th Street, Suite 307
15                                       San Francisco, CA  94103
                                         Telephone:  (415) 252-9211
16                                       Facsimile:  (415) 252-9311

17                                       Counsel for Plaintiff STEVE M. CASTILLO

18   Dated: September __, 2004           LAW OFFICES OF GRAHAM NOYES

19

20                                       By: _____

21                                            Graham Noyes

22                                       James Graham Noyes (State Bar No. 157395)
                                         228 Commercial Street, #219
23                                       Nevada City, CA  95959
                                         Telephone:  (530) 478-9196
24                                       Facsimile:  (530) 478-9197

25                                       Counsel for Plaintiff STEVE M. CASTILLO

26

27

28

349500.1                          - 13 -                    SETTLEMENT AGREEMENT

1   Dated: September ___, 2004

2

3                                    LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

4                                    By: _____
                                            Joy A. Kruse

5                                    James M. Finberg (State Bar No. 114850)
6                                    Joy A. Kruse (State Bar No. 142799)
                                     Lieff, Cabraser, Heimann & Bernstein, LLP
7                                    Embarcadero Center West
                                     275 Battery Street, 30th Floor
8                                    San Francisco, CA 94111-3339
                                     Telephone: (415) 956-1000
9                                    Facsimile: (415) 956-1008

10                                   Counsel for Plaintiff STEVE M. CASTILLO

11  Dated: September ___, 2004       CALIFORNIA PRISON FOCUS

12

13                                   By: _____
                                            Charles F.A. Carbone

14                                   Charles F.A. Carbone (State Bar No. 206536)
15                                   2940 16th Street, Suite 307
                                     San Francisco, CA 94103
16                                   Telephone: (415) 252-9211
                                     Facsimile: (415) 252-9311

17                                   Counsel for Plaintiff STEVE M. CASTILLO

18  Dated: September 21, 2004        LAW OFFICES OF GRAHAM NOYES

19

20                                   By: _____
                                            Graham Noyes

21

22                                   James Graham Noyes (State Bar No. 157395)
                                     228 Commercial Street, #219
23                                   Nevada City, CA 95959
                                     Telephone: (530) 478-9196
24                                   Facsimile: (530) 478-9197

25                                   Counsel for Plaintiff STEVE M. CASTILLO

26

27

28

345500.1                         - 13 -                  SETTLEMENT AGREEMENT
                                                         CIVIL NO. C-94-2847 MHJ-JCS

1  Dated: September 23, 2004  BILL LOCKYER, Attorney General of the State of
              California
2                OFFICE OF THE ATTORNEY GENERAL

3

4             By: _Jonathan J. Wolff_____
5               Jonathan L. Wolff

6             Jonathan L. Wolff
           Supervising Deputy Attorney General
7             455 Golden Gate Avenue, Suite 11000
           San Francisco, CA. 94102-7004
8             Telephone: (415) 703-1113
           Facsimile:  (415) 703-5843
9
           Attorneys for Defendants Alameida, McGrath, Addison,
           Olson, Rodriguez, Williams, Sheppard, and Briddle
10

11  Dated: September __, 2004  STEVE M. CASTILLO
12

13
14             By :_____
             Steve M. Castillo
15
           Steve M. Castillo
16             P.O. Box 7500
           Pelican Bay State Prison
17             Crescent City, CA 95531

18

19

20

21

22

23

24

25

26

27

28

1    Dated: September ___, 2004          BILL LOCKYER, Attorney General of the State of
                                         California
2                                        OFFICE OF THE ATTORNEY GENERAL

3

4                                        By: _____
                                              Jonathan L. Wolff
5
                                         Jonathan L. Wolff
6                                        Supervising Deputy Attorney General
                                         455 Golden Gate Avenue, Suite 11000
7                                        San Francisco, CA 94102-7004
                                         Telephone: (415) 703-1113
8                                        Facsimile: (415) 703-5843

9                                        Attorneys for Defendants Alameida, McGrath, Addison,
                                         Olson, Rodriguez, Williams, Sheppard, and Briddle
10

11
      Dated: September 21, 2004          STEVE M. CASTILLO
12

13
                                         By: _____
14                                            Steve M. Castillo

15                                       Steve M. Castillo
                                         P.O. Box 7500
16                                       Pelican Bay State Prison
                                         Crescent City, CA 95531
17

18

19

20

21

22

23

24

25

26

27

28

349500.1                              - 14 -                    SETTLEMENT AGREEMENT
                                                                CIVIL NO. C-94-2847 MJJ-JCS

## PROOF OF SERVICE BY MAIL

(C.C.P. section 101a #2015.5; 20 U.S.C. section 1746)

I, _Arcadio Acuna_, am a resident of Pelican Bay State Prison, in the County of Del Norte, State of California. I am over eighteen (18) years of age and am a party to the below entitled action.

My Address is: P.O. Box 7500, Crescent City, CA 95531.

On the _7th_ day of _Sept_, in the year of 20_06_, I served the following documents: (set forth the exact title of documents served)

_Response to Court's Order Setting Status Review / Memorandum of Points and Authorities in Support Thereof_

on the party(s) listed below by placing a true copy(s) of said document, enclosed in a sealed envelope(s) with postage thereon fully paid, in the United states mail, in a deposit box so provided at Pelican Bay State Prison, Crescent City, CA 95531 and addressed as follows:

_Pamela B Hooley, Deputy Attorney General_
_Department of Justice_
_1300 "I" Street, Ste 125_
_Sacramento    CA_
_94244-2550_

I declare under penalty of perjury that the foregoing is true and correct.

Dated this _7th_ day of _Sept_, 20_06_.

Signed: _Arcadio Acuna_

(Declarant Signature)

Rev: 03/10/00

## PROOF OF SERVICE

**Case Name:**    In Re Arcadio Acuna, on Habeas Corpus
**Court:**    Del Norte County Superior Court
**Case No.:**    HCPB 05-5242

    I am a citizen of the United States, over the age of 18 years, and not a party to the above-entitled action. My business address is 1 Point Saint George Place, Crescent City, California 95531.

    On September 15, 2006, I caused to be served

**SUBMISSION BY ARCADIO ACUNA IN RESPONSE TO COURT'S INVITATION FOR SUPPLEMENTAL BRIEFING**

on the interested party(ies) listed below, addressed as follows:

    **Pamela B. Hooley**
    **Deputy Attorney General**
    **P. O. Box 944255**
    **Sacramento, CA 94244-2550**

✓  **By Regular Mail.** By depositing a true copy thereof to the party(ies) set forth above, in a sealed envelope for collection and mailing on the date set forth above. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

_____**By Personal Service.** By personally delivering a true copy thereof to the party(ies) at the address(es) set forth above.

_____**By Facsimile.** By faxing a true copy thereof to the party(ies) at the facsimile number(s) set forth above.

_____**By Court Mailbox.** By placing a true copy thereof in the appropriate file folder located in the Court House.

    I declare under penalty of perjury under the laws of the State of the California that the foregoing is true and correct.

    Executed September 15, 2006, at Crescent City, California, by:

                                       _D Lema_
                                     Donna Lema, Declarant