# EXHIBIT 15
# part 2 of 2

STATE OF CALIFORNIA
CDC 1030 (12/86)

DEPARTMENT OF CORRECTIONS

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER: _C 43165_     INMATE NAME: _ACUNA_

1)   Use of Confidential Information.

Information received from a confidential source(s) has been considered in the:

a)  CDC-115, Disciplinary Report dated _____ submitted by

_____
STAFF NAME, TITLE

b)  CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _1-3-95_

2)   Reliability of Source.

The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

This information is considered reliable because:

a)  ☐  This source has previously provided confidential information which has proven to be true.

b)  ☐  This source participated in and successfully completed a Polygraph examination.

c)  ☐  More than one source independently provided the same information.

d)  ☐  This source incriminated himself/herself in a criminal activity at the time of providing the information.

e)  ☐  Part of the information provided by the source(s) has already proven to be true.

f)  ☒  Other (EXPLAIN) _Correctional Staff circumvented misuse_ _of Legal assistance between inmates_

3)   Disclosure of information received.

The information received indicated the following: _A letter was directed_ _to you from an EME member and the message_ _was a coded message in the form of a false_ _case citation._

_____

_____

(If additional space needed, attach another sheet.)

4)   Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material folder). _Memorandum dated Jan 31, 1994 located in the_ _Confidential section authored by O.T. Hawkes_

_B.P.O._
STAFF SIGNATURE, TITLE

_1-3-95_
DATE DISCLOSED

DISTRIBUTION: WHITE — Central File; GREEN — Inmate; YELLOW — Institution Use

STATE OF CALIFORNIA                                    DEPARTMENT OF CORRECTIONS
CDC 1030 (12/86)

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER    C43165                  INMATE NAME:    ACUNA, ARCADIO

1) Use of Confidential Information.

   Information received from a confidential source(s) has been considered in the:

   a) CDC-115, Disciplinary Report dated _____ submitted by

   _____
                              STAFF NAME, TITLE

   b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2) Reliability of Source.

   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

   This information is considered reliable because:

   a)☐ This source has previously provided confidential information which has proven to be true.

   b)☐ This source participated in and successfully completed a Polygraph examination.

   c)☒ More than one source independently provided the same information.

   d)☒ This source incriminated himself/herself in a criminal activity at the time of providing the information.

   e)☒ Part of the information provided by the source(s) has already proven to be true.

   f)☐ Other (Explain) _____

   _____

3) Disclosure of information received.


This documents an interview with an EME associate. The source identified Acuna as "Cadio" of
Cucamonga, and reported that Acuna was recently (1993) granted EME membership. The source
also reported that Acuna's crime partner was "Huero" Marco Ramirez C55431 of Ontario, who was
assaulted at PBSP B Facility by EME associates for becoming a "Christian."



(If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material
folder). _____

   Confidential Memorandum dated May 13, 1993 in confidential section of C-File
   _____

*D. T. Hawkes* (signature)

D. T. Hawkes, Correctional Counselor II                          June 2, 2006
             STAFF SIGNATURE, TITLE                           DATE DISCLOSED
       DISTRIBUTION:  WHITE ◌ Central File;  GREEN ◌ Inmate;  YELLOW ◌ Institution Use

STATE OF CALIFORNIA
CDC 1030 (12/86)

DEPARTMENT OF CORRECTIONS

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER: _C43165_    INMATE NAME: _Acuna_

1) Use of Confidential Information.

Information received from a confidential source(s) has been considered in the:

a) CDC-115, Disciplinary Report dated _____ submitted by

_____
STAFF NAME, TITLE

b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated __9/29/93__

2) Reliability of Source.

The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

This information is considered reliable because:

a) ☒ This source has previously provided confidential information which has proven to be true.

b) ☐ This source participated in and successfully completed a Polygraph examination.

c) ☒ More than one source independently provided the same information.

d) ☒ This source incriminated himself/herself in a criminal activity at the time of providing the information.

e) ☒ Part of the information provided by the source(s) has already proven to be true.

f) ☐ Other (EXPLAIN) _____

_____

_____

3) Disclosure of information received.

The information received indicated the following: _In an interview with an inmate ~~test~~ you were identified as a new EME member from Cocamonga aka "Cadio."_

_____

_____

(If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material folder). _Confidential memo located in confidential section of c-file dated 5/13/93 by P. Hawkes, PBSP IGI_

_CCI_

_____    _9/ /93_
STAFF SIGNATURE, TITLE          DATE DISCLOSED

DISTRIBUTION: WHITE -          GREEN -

STATE OF CALIFORNIA
CDC 1030 (12/86)

DEPARTMENT OF CORRECTIONS

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER    C43165          INMATE NAME:    ACUNA, ARCADIO

1) Use of Confidential Information.

    Information received from a confidential source(s) has been considered in the:

    a) CDC-115, Disciplinary Report dated _____ submitted by

    _____
                                       STAFF NAME, TITLE

    b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2) Reliability of Source.

    The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.
    This information is considered reliable because:

    a) ☐ This source has previously provided confidential information which has proven to be true.

    b) ☐ This source participated in and successfully completed a Polygraph examination.

    c) ☐ More than one source independently provided the same information.

    d) ☐ This source incriminated himself/herself in a criminal activity at the time of providing the information.

    e) ☐ Part of the information provided by the source(s) has already proven to be true.

    f) ☒ Other (Explain) _____
        Letter from Gavaldon C15377 to Gavaldon C15376

3) Disclosure of information received.

In a letter from EME associate "Little Spider" Roy Gavaldon C15377 to his brother, EME member "Big Spider" David Gavaldon C15376, the younger Gavaldon informs his brother that Acuna received a letter from a lawyer who has an office in his area. Included with the letter was a birthday greeting card for David Gavaldon signed by various EME associates, including Acuna. Acuna's message to Gavaldon , with portions in Spanish translated, stated the following "With all my respect, I send you greetings. Hope to see you again soon. Your pal, Cadio." The letter contained coded information (numbers written in Nahuatl), references to several EME members, names of people who were just granted EME membership, and other EME gang-related messages.

                           (If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material folder). _____

   Confidential Memorandum dated October 29, 1992 in confidential section of C-File

D. T. Hawkes, Correctional Counselor II
         STAFF SIGNATURE, TITLE

June 2, 2006
        DATE DISCLOSED

DISTRIBUTION: WHITE ∞ Central File; GREEN ∞ Inmate; YELLOW ∞ Institution Use

STATE OF CALIFORNIA
CDC 1030 (12/86)

DEPARTMENT OF CORRECTIONS

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER: __C 43165__     INMATE NAME: __Acuna__

1) Use of Confidential Information.

   Information received from a confidential source(s) has been considered in the:

   a) CDC-115, Disciplinary Report dated _____ submitted by

   _____
   STAFF NAME, TITLE

   b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated __9/29/93__

2) Reliability of Source.

   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

   This information is considered reliable because:

   a) ☐  This source has previously provided confidential information which has proven to be true.

   b) ☐  This source participated in and successfully completed a Polygraph examination.

   c) ☐  More than one source independently provided the same information.

   d) ☐  This source incriminated himself/herself in a criminal activity at the time of providing the information.

   e) ☐  Part of the information provided by the source(s) has already proven to be true.

   f) ☒  Other (EXPLAIN) __Primary source information__

3) Disclosure of information received.

   The information received indicated the following: __In a coded letter from one EME affiliate to another you are implicated in gang activity.__

   _____

   _____

   (If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material folder). __Confidential memo & attached correspondence in confidential section of c-file dated 10/29/92 by Hawkes PBSP, IG__

   _____       __CCI__          __9/29/93__
   STAFF SIGNATURE, TITLE                         DATE DISCLOSED

   DISTRIBUTION: WHITE — Central File; GREEN — Inmate; YELLOW — Institution Use

STATE OF CALIFORNIA                                              RTMENT OF CORRECTIONS
CDC 1030 (12/86)

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER    C43165          INMATE NAME:    ACUNA, ARCADIO

1) Use of Confidential Information.

   Information received from a confidential source(s) has been considered in the:

   a) CDC-115, Disciplinary Report dated _____ submitted by

   _____
   STAFF NAME, TITLE

   b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2) Reliability of Source.

   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

   This information is considered reliable because:

   a) ☐ This source has previously provided confidential information which has proven to be true.

   b) ☐ This source participated in and successfully completed a Polygraph examination.

   c) ☒ More than one source independently provided the same information.

   d) ☒ This source incriminated himself/herself in a criminal activity at the time of providing the information.

   e) ☒ Part of the information provided by the source(s) has already proven to be true.

   f) ☐ Other (Explain) _____

3) Disclosure of information received.

This is an interview with an EME associate, who identified Acuna as an active EME associate. Acuna is referenced on a list as an EME associate. No specific gang activity is identified.

(If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material folder). _____

   Confidential Memorandum dated August 31, 1990 in confidential section of C-File

_D. T. Hawkes_

D. T. Hawkes, Correctional Counselor II                          June 2, 2006
STAFF SIGNATURE, TITLE                                          DATE DISCLOSED

DISTRIBUTION:  WHITE ☐ Central File;  GREEN ☐ Inmate;  YELLOW ☐ Institution Use

STATE OF CALIFORNIA
CDC 1030 (12/86)

*C File*

DEPARTMENT OF CORRECTIONS

*14*

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER: _C-43165_      INMATE NAME: _Acuna_

1)  Use of Confidential Information.

    Information received from a confidential source(s) has been considered in the:

    a)  CDC-115, Disciplinary Report dated _____ submitted by

    _____
    STAFF NAME, TITLE

    b)  CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _11-5-90_

2)  Reliability of Source.

    The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.
    This information is considered reliable because:

    a)  ☐  This source has previously provided confidential information which has proven to be true.

    b)  ☐  This source participated in and successfully completed a Polygraph examination.

    c)  ☒  More than one source independently provided the same information.

    d)  ☒  This source incriminated himself/herself in a criminal activity at the time of providing the information.

    e)  ☒  Part of the information provided by the source(s) has already proven to be true.

    f)  ☐  Other (EXPLAIN) _____

    _____

3)  Disclosure of information received.

    The information received indicated the following: _During the debriefing_
    _Process a reliable confidential source identified_
    _you as an active EMF associate housed_
    _at PBSP._

    _____

    _____

    *(If additional space needed, attach another sheet.)*

4)  Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material
    folder). _Confidential Memo dated 8-31-90 authored by_
    _J. Anderson Lt. located in confidential section of C-F._

    _P. Perkins    CCI_                              _2-8-91_
    STAFF SIGNATURE, TITLE                           DATE DISCLOSED

STATE OF CALIFORNIA
CDC 1030 (12/86)

DEPARTMENT OF CORRECTIONS

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER: _C43165_    INMATE NAME: _ACUNA_

1) Use of Confidential Information.

   Information received from a confidential source(s) has been considered in the:

   a) CDC-115, Disciplinary Report dated _____ submitted by

   _____
   STAFF NAME, TITLE

   b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____ .

2) Reliability of Source.

   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

   This information is considered reliable because:

   a) ☐ This source has previously provided confidential information which has proven to be true.

   b) ☐ This source participated in and successfully completed a Polygraph examination.

   c) ☒ More than one source independently provided the same information.

   d) ☒ This source incriminated himself/herself in a criminal activity at the time of providing the information.

   e) ☐ Part of the information provided by the source(s) has already proven to be true.

   f) ☐ Other (EXPLAIN) _____

   _____

3) Disclosure of information received.

   The information received indicated the following: _Confidential memo dated 8-31-90 identifies you as an EME associate through a Debrief interview of an inmate requesting to disassociate himself from the EME Prison Gang._

   (If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material folder). _Confidential folder of your C-File contained C.M. 8-31-90_

   _N Reynolds CCI_
   STAFF SIGNATURE, TITLE

   _8-20-9?_
   DATE DISCLOSED

DISTRIBUTION: WHITE

STATE OF CALIFORNIA                                    DEPARTMENT OF CORRECTIONS
CDC 1030 (12/86)

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER    C43165              INMATE NAME:    ACUNA, ARCADIO

1) Use of Confidential Information.

   Information received from a confidential source(s) has been considered in the:

   a) CDC-115, Disciplinary Report dated _____ submitted by

   _____
                              STAFF NAME, TITLE

   b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2) Reliability of Source.

   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

   This information is considered reliable because:

   a) ☐ This source has previously provided confidential information which has proven to be true.

   b) ☐ This source participated in and successfully completed a Polygraph examination.

   c) ☒ More than one source independently provided the same information.

   d) ☒ This source incriminated himself/herself in a criminal activity at the time of providing the information.

   e) ☒ Part of the information provided by the source(s) has already proven to be true.

   f) ☐ Other (Explain) _____

3) Disclosure of information received.

This is a debriefing interview with an EME associate, who identified Acuna as an EME associate he
knew as "Carrio." The source stated that Acuna may have been involved in the riot that took place at
California State Prison Sacramento County on May 25, 1989 (referring to the EME gang-related
assault on Black inmates).

(If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material
folder). _____

   Confidential Memorandum dated September 20, 1989 in confidential section of C-File

_____
D. T. Hawkes, Correctional Counselor II                          June 2, 2006
                   STAFF SIGNATURE, TITLE                        DATE DISCLOSED
        DISTRIBUTION:  WHITE ▭ Central File;  GREEN ▭ Inmate;  YELLOW ▭ Institution Use

STATE OF CALIFORNIA
CDC 1030 (12/86)

DEPARTMENT OF CORRECTIONS

15

# CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER: _C43165_    INMATE NAME: _ACUNA_

1) Use of Confidential Information.

Information received from a confidential source(s) has been considered in the:

a) CDC-115, Disciplinary Report dated _____ submitted by

_____
STAFF NAME, TITLE

b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2) Reliability of Source.

The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution. This information is considered reliable because:

a) ☐  This source has previously provided confidential information which has proven to be true.

b) ☐  This source participated in and successfully completed a Polygraph examination.

c) ☒  More than one source independently provided the same information.

d) ☒  This source incriminated himself/herself in a criminal activity at the time of providing the information.

e) ☐  Part of the information provided by the source(s) has already proven to be true.

f) ☐  Other (EXPLAIN) _____

_____

3) Disclosure of information received.

The information received indicated the following: _Confidential memo dated 9-20-89 identifies you as an EME associate through a Debrief interview of an inmate requesting to disassociate himself from the EME Prison Gang._

(If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material folder). _Confidential Folder of your C-File_

_N Reynolds  CCI_
STAFF SIGNATURE, TITLE

_8-26-91_
DATE DISCLOSED

STATE OF CALIFORNIA
CDC 1030 (12/86)

DEPARTMENT OF CORRECTIONS

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER: _C-43165_____    INMATE NAME: _Acuña_____

1)  Use of Confidential Information.

   Information received from a confidential source(s) has been considered in the:

   a)  CDC-115, Disciplinary Report dated _____ submitted by

   _____
   STAFF NAME, TITLE

   b)  CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _11-5-90_____

2)  Reliability of Source.

   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

   This information is considered reliable because:

   a)  ☐  This source has previously provided confidential information which has proven to be true.

   b)  ☐  This source participated in and successfully completed a Polygraph examination.

   c)  ☒  More than one source independently provided the same information.

   d)  ☒  This source incriminated himself/herself in a criminal activity at the time of providing the information.

   e)  ☒  Part of the information provided by the source(s) has already proven to be true.

   f)  ☐  Other (EXPLAIN) _____

   _____

3)  Disclosure of information received.

   The information received indicated the following: _during the debriefing process an EME associate identified you as an EME associate who may have been involved in the 5-25-89 incident at Folsom Fac. B._

   _____

   (If additional space needed, attach another sheet.)

4)  Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material folder). _Confidential memo dated 9-20-89 authored by C. Davis c/o located in confidential section of C-File_

   _P. Perkins  CC I_                    _2-8-91_
   STAFF SIGNATURE, TITLE                  DATE DISCLOSED

STATE OF CALIFORNIA                                                DEPARTMENT OF CORRECTIONS
CDC 1030 (12/86)

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER    C43165                  INMATE NAME:    ACUNA, ARCADIO

1) Use of Confidential Information.

   Information received from a confidential source(s) has been considered in the:

   a) CDC-115, Disciplinary Report dated _____ submitted by

   _____
   STAFF NAME, TITLE

   b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____ .

2) Reliability of Source.

   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

   This information is considered reliable because:

   a) ☐ This source has previously provided confidential information which has proven to be true.

   b) ☐ This source participated in and successfully completed a Polygraph examination.

   c) ☒ More than one source independently provided the same information.

   d) ☒ This source incriminated himself/herself in a criminal activity at the time of providing the information.

   e) ☒ Part of the information provided by the source(s) has already proven to be true.

   f) ☐ Other (Explain) _____

   _____

3) Disclosure of information received.

   During a debriefing interview, an EME associate identified Acuna as an EME associate he knew as "Gladio." Acuna is referenced on a list as an EME associate.  No specific gang activity is identified

   (If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material folder). _____

   Confidential Memorandum dated October 11, 1988 in confidential section of C-File

*D. T. Hawkes*

D. T. Hawkes, Correctional Counselor II                          June 2, 2006
    STAFF SIGNATURE, TITLE                                       DATE DISCLOSED

DISTRIBUTION:  WHITE ▯▯ Central File;  GREEN ▯▯ Inmate;  YELLOW ▯▯ Institution Use

STATE OF CALIFORNIA
CDC 1030 (12/86)

DEPARTMENT OF CORRECTIONS

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER: _C-43165_     INMATE NAME: _Acuna_

1) Use of Confidential Information.

   Information received from a confidential source(s) has been considered in the:

   a) CDC-115, Disciplinary Report dated _____ submitted by

   _____
   STAFF NAME, TITLE

   b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _11-5-90_ .

2) Reliability of Source.

   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

   This information is considered reliable because:

   a) ☒ This source has previously provided confidential information which has proven to be true.

   b) ☐ This source participated in and successfully completed a Polygraph examination.

   c) ☒ More than one source independently provided the same information.

   d) ☒ This source incriminated himself/herself in a criminal activity at the time of providing the information.

   e) ☒ Part of the information provided by the source(s) has already proven to be true.

   f) ☐ Other (EXPLAIN) _____

   _____

3) Disclosure of information received.

   The information received indicated the following: _during the debriefing_
   _process a validated EME defector listed you_
   _as an EME associate housed at Folsom._

   _____

   _____

   _____

   (If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material
   folder). _Confidential memo dated 10-11-88 authored by_
   _J McMrllin C/O located in confidential section of C-File_

   _P. Perkins   CCI_                          _2-8-91_
   STAFF SIGNATURE, TITLE                      DATE DISCLOSED

   DISTRIBUTION: WHITE — Central File; GREEN — Inmate; YELLOW — Institution Use

   BI 82069

**EXHIBIT C**

1   James M. Finberg (State Bar No. 114850)
    Joy A. Kruse (State Bar No. 142799)
2   LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
    Embarcadero Center West
3   275 Battery Street, 30th Floor
    San Francisco, CA  94111-3339
4   Telephone:  (415) 956-1000
    Facsimile:  (415) 956-1008.
5
    Charles F.A. Carbone (State Bar No. 206536)
6   CALIFORNIA PRISON FOCUS
    2940 16th Street, Suite 307
7   San Francisco, CA  94103
    Telephone:  (415) 252-9211
8   Facsimile:  (415) 252-9311

9   Counsel for Plaintiff STEVE M. CASTILLO

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12

13   STEVE M. CASTILLO,                    Case No. C-94-2847-MJJ-JCS

14              Plaintiff,                 **SETTLEMENT AGREEMENT**

15   v.

16   EDWARD S. ALAMEIDA, JR., et al.,

17              Defendants.

18

19          Plaintiff STEVEN M. CASTILLO ("Plaintiff") and Defendants EDWARD S.

20   ALAMEIDA, JR, et al.("Defendants") have agreed to resolve the claims alleged in the above-

21   captioned action on the terms set forth in this Settlement Agreement.

22   I.     **INTRODUCTION**

23          1.      This action was originally filed on August 9, 1994.  Plaintiff filed five

24   subsequent amended complaints.  Plaintiff challenged the constitutionality of the gang validation

25   procedures; the evidence used in his individual validation; and whether or not his validation was

26   the result of retaliation by prison officials for his jailhouse lawyering and peace proposal

27   activities.  Using the overbreadth doctrine that applies in the context of First Amendment

28   challenges to regulations, Plaintiff challenged not only his own validation, but also gang

1   validation policies and procedures as applied to other prisoners. Plaintiff also challenged some of

2   the physical conditions in the Segregated Housing Unit ("SHU") at Pelican Bay State Prison

3   ("PBSP"), as well as the psychological effects of long-term SHU confinement.

4                   2.      The Defendants are Edward S. Alameida, Jr., Joseph L. McGrath, Jr., Alan

5   Addison, Judy Olson, E.S. Rodriguez, Larry Williams, C. Sheppard, and J. Briddle, all of whom

6   were sued in his or her official capacity. Defendants deny any and all allegations raised by

7   Plaintiff in this action.

8                   3.      On June 19, 2002, the Court granted Defendants' summary judgment

9   motion as to Plaintiff's Eighth Amendment claim regarding physical conditions in the SHU.

10  Summary judgment as to Plaintiff's First Amendment claims, retaliation claim, and Eighth

11  Amendment claim (regarding the psychological effects of SHU confinement) were denied.

12                  4.      On January 5, 2004, this Court partially granted Defendants' summary

13  judgment motion finding there was no due process violation, except to the extent Mr. Castillo

14  alleges he was denied notice and an opportunity to be heard during the course of his initial

15  validation. The Court also found that there was "some evidence" to support Mr. Castillo's

16  validation. The Court granted Defendants' summary judgment motion as to Plaintiff's Eighth

17  Amendment claim finding that there were no psychological effects of prolonged SHU

18  confinement.  Summary judgment as to Mr. Castillo's retaliation and First Amendment claims

19  was denied.

20  **II.   PARTIES**

21                  5.      The Plaintiff is Steve M. Castillo, a prisoner at Pelican Bay State Prison.

22                  6.      The Defendants are Edward S. Alameida, Jr., the former Director of the

23  California Department of Corrections, Joseph L. McGrath, Jr., the Warden at PBSP, Alan

24  Addison, a retired Senior Special Agent in the former Special Services Unit, Judy Olson, a retired

25  Associate Government Program Analyst in the Law Enforcement and Investigations Unit, E.S.

26  Rodriguez, a former CDC Lieutenant at PBSP, Larry Williams, a retired CDC Lieutenant at

27  PBSP, C. Sheppard, a former Acting Warden at PBSP, and J. Briddle, a former CDC Lieutenant

28  at PBSP.

III.    **DEFINITIONS**

7.    The following terms when used in this Agreement shall have the meanings specified below:

(a)    "Inactive review" shall mean the review of an inmate's prison gang status governed by the process described in Title 15 § 3341.5(c)(5).

(b)    "Articulable basis" shall mean a written record of specific, articulable facts along with the rational inferences drawn from those facts.

(c)    "Current, active determination" shall mean a written record and finding as defined in paragraph 24 of this Settlement Agreement.

(d)    "Defendants" shall mean Edward S. Alameida, Jr., Joseph L. McGrath, Jr., Alan Addison, Judy Olson, E.S. Rodriguez, Larry Williams, C. Sheppard, and J. Briddle.

(e)    "Execution of settlement" or "Effective Date" shall mean the date by which the final party shall have signed the agreement.

(f)    "Gang activity" and "gang content" are defined in this agreement consistent with the definition in Title 15 §§ 3000 & 3023.

(g)    "Parties" shall mean Plaintiff Castillo and the Defendants enumerated supra in ¶ 7(d).

(h)    "Released Claims" shall mean any and all claims or causes of action contained in Plaintiff's original Complaint, First Amended Complaint, Second Amended Complaint, Third Amended Complaint, Fourth Amended Complaint, and Fifth Amended Complaint. "Released claims" shall also include Plaintiff's gang validation and conditions of confinement at Pelican Bay State Prison existing from the date of the original Complaint, August 9, 1994, through the date of the execution of this Agreement. "Released claims" does not refer to any claims regarding the review of Mr. Castillo's validation as set forth in paragraph 29 of this Agreement or to any future inactive reviews of Mr. Castillo's status on behalf of the Classification Committee.

(i)    "Released Parties" shall mean Edward J. Alameida, Jr.; Joseph L.

1  McGrath, Jr.; Alan Addison; Judy Olson; E.S. Rodriguez; Larry Williams; C. Sheppard, and

2  J. Briddle, all of whom are released in his/her individual and official capacities.

3  (j)  "Validation" shall mean the process codified in Title 15 § 3378

4  whereby an inmate is identified as a prison gang member or gang associate.

5  IV.  **POLICIES AND PROCEDURES**

6  8.  For all policy and procedure changes described in this agreement, the

7  Department of Corrections agrees to propose to codify the changes in either Title 15 of the

8  California Code of Regulations and/or the Department Operations Manual ("DOM"). The parties

9  estimate it will take approximately 90 days from the date of the execution of the settlement

10  agreement for the Law Enforcement Investigations Unit ("LEIU") to finalize the proposed Title

11  15 and/or DOM changes. The proposed changes, whether to Title 15 or to the DOM, will then be

12  forwarded to the Department of Corrections' Regulation and Policy Management Branch, which

13  may take approximately nine months to finalize the changes. The Regulation and Policy

14  Management Branch will assist in determining whether Title 15 and/or the DOM is the

15  appropriate place to codify the policies and procedures recited herein. The Department shall

16  conclude its internal finalization of the proposed changes to both Title 15 and/or the DOM no

17  later than one year from the date of the execution of this Agreement. Plaintiff understands that

18  following internal finalization of the proposed changes to Title 15 by the Department of

19  Corrections, the Department of Corrections must forward the proposed changes to Title 15 to the

20  California Office of Administrative Law and/or any other interested body for final codification.

21  A written copy of any codification of these policies and procedures in either Title 15 or the DOM

22  shall be provided to Plaintiff's counsel within 30 calendar days of their codification.

23  9.  Due Process in Validations and Inactive Reviews. Defendants shall

24  provide notice and opportunity to be heard to each and every prisoner at the pre-validation and

25  inactive review stage. Defendants agree to provide 24-hour advance notice to each prisoner of

26  the source items considered prior to the validation packet being sent to Law Enforcement and

27  Investigations Unit ("LEIU") for approval or rejection of an initial validation. Defendants also

28  agree to record the prisoner's opinion on each of the source items and to forward in written form

349500.1                                   - 4 -                          SETTLEMENT AGREEMENT
                                                                          CIVIL NO. C-94-2847 MJJ-JCS

1    such opinions to LEIU. A copy of the written record of the prisoner's opinion shall be given to

2    the prisoner, prior to the time the record is forwarded to LEIU.

3            10.    Defendants shall provide notice and opportunity to be heard for inactive

4    reviews. Notice shall be given to the prisoner at least 24 hours in advance of a consideration of

5    inactive review. Similarly, each prisoner shall be given an opportunity to record his opinions on

6    the new source items as part of the inactive review. The recorded views of the inmate shall be

7    forwarded to the decision-makers over the inactive reviews prior to the rendering of a decision. A

8    copy of the written record of the prisoner's opinions shall be given to the prisoner within fourteen

9    calendar days of the inactive review. Defendants agree that when new source items are raised,

10   beyond those used in the initial validation, each inmate shall be given notice and opportunity to

11   be heard during the inactive review.

12           11.    The policies and procedures discussed in paragraphs 12 through 21 *infra*

13   correspond to the "independent source items" discussed in Title 15 § 3378(c)(8).

14           12.    Photographs. (Title 15 § 3378(c)(8)(D)). Defendants shall reasonably

15   ascertain the date of any photograph used in any validation. Defendants agree that no photograph

16   used in any validation shall be older than six years. Defendants agree that at the time the

17   photograph is taken, at least one person in the photograph shall have been validated, or be

18   validated no more than six months after the date the photograph was taken. Defendants agree that

19   staff shall record this information and provide it on a written form given to the inmate.

20           13.    Talking in the Law Library. (*see* Title 15 § 3378(c)(8)(E)). Defendants

21   agree that a prisoner's talking in a SHU law library to a validated gang member or associate shall

22   not be relied upon as a source item unless IGI or staff has an articulable basis for determining that

23   the communication was related to gang activity. Defendants agree that staff shall record this

24   information and provide it on a written form given to the inmate.

25           14.    Tattoos and symbols. (Title 15 § 3378(c)(8)(B)). Defendants agree that

26   any tattoo or symbol relied upon as a source item must include an articulation by staff as to why

27   the tattoo or symbol has a specific association with a particular prison gang. Defendants agree

28   that staff shall record this information and provide it on a written form given to the inmate.

15.    Written Material/Communications. (Title 15 § 3378(c)(8)(C) & (L)).
Staff must have an articulable basis for why a written material or communication is reliable evidence of gang association or membership. Defendants agree that staff must articulate and record why a written material or communication is evidence of gang association/membership based on either the explicit, or coded, content of the communication. With respect to greeting cards, such as a birthday card or get well card, staff must record an articulable basis for why the communication is evidence of gang membership or association.

16.    Staff Information. (Title 15 § 3378(c)(8)(E).) Defendants agree that staff must have an articulable basis for determining that gang content or conduct at issue is gang-related. Defendants agree that staff shall record this information and provide it on a written form given to the inmate.

17.    Offenses. (Title 15 § 3378(c)(8)(I)). Defendants agree that if a disciplinary offense is considered a potential source item for validation, IGI or staff shall have an articulable basis for why the offense is gang-related. Defendants agree that staff shall record this information and provide it on a written form given to the inmate.

18.    Legal Documents. (Title 15 § 3378(c)(8)(J)). Defendants agree that staff shall have an articulable basis for why legal correspondence is a source item. Staff shall articulate and record why a legal document is evidence of gang association or membership based on either the explicit or coded content of the document. This information shall be recorded by staff and provided on a written form given to the inmate.

19.    Address Books. (see Title 15 § 3378(c)(8)(L)). Defendants agree that staff shall have an articulable basis for why the contents of address books are evidence of gang association. This information shall be recorded by staff and provided on a written form given to the inmate.

20.    Visitors. (Title 15 § 3378(c)(8)(K)). Defendants agree that staff must have an articulable basis for determining that the visitor and inmate discussed gang content or conduct. Defendants must have an articulable basis for identifying the visitor as associated with the prison gang, and Defendants agree that the gang identification of a visitor may be rebutted via

1  a prisoner's opportunity to present his views. This information shall be recorded by staff and

2  provided on a written form given to the inmate.

3       21.    Confidential Sources, (Title 15 § 3378(c)(8)(H)). Defendants agree that

4  "laundry lists" – that is, when confidential sources, including debriefers, identify a prisoner as an

5  associate or member by listing names of inmate(s) without reference to gang-related acts

6  performed by the inmate(s) – shall not be relied upon as a source item. Defendants agree that the

7  confidential source must identify specific gang activity or conduct performed by the alleged

8  associate or member before such information can be considered as a source item. This

9  information shall be recorded by staff and provided on a written form given to the inmate.

10       22.    Single Source Rule. Defendants agree that a single, gang-related incident

11  or conduct described or documented by multiple sources, confidential or otherwise, shall

12  constitute one source item only.

13       23.    Hearsay. Defendants also agree that exclusive reliance on hearsay from a

14  confidential source will not be used as a source item for validation.

15       24.    Current, Active Determination. Defendants agree that a prisoner will not

16  receive an indeterminate SHU term as a validated gang member or associate without first being

17  found to be a current, active gang member or associate consistent with the procedural safeguards

18  established in this Agreement. Each ICC and/or UCC review of an indeterminate SHU term will

19  review the inmate's current gang status and indicate that status on the 128G chrono. The inmate

20  will receive a copy of the chrono unless otherwise requested. "Currently active" gang status is

21  defined as any documented gang activity within the past six years consistent with CCR

22  3341.5(c)(5). Defendants agree that these requirements will be reflected in Title 15 and/or the

23  DOM, to the extent they do not already appear there.

24       25.    The provisions set forth in paragraphs 11 to 24 shall be applied on a

25  prospective basis only, and shall apply throughout the Department of Corrections.

26       26.    Training. Defendants agree that the above policy changes shall be

27  reflected in Institutional Gang Investigator ("IGI") training materials and gang educational

28  materials considered and applied by LEIU, and shall be reflected in Title 15 and/or the

349600 1

- 7 -

1     Department of Operations Manual. Defendants agree that all relevant staff, including but not

2     limited to IGI and LEIU, will receive training and instruction on the terms of the settlement

3     agreement no later than 180 days after execution of the settlement where appropriate and as

4     reflected in Paragraph 8.

5               27.     <u>Administrative Bulletin or Memorandum</u>. Defendants shall issue a

6     memorandum or an administrative bulletin to notify general staff of the terms of the settlement

7     agreement no later than 180 days after execution of the settlement. A copy of the memorandum

8     or administrative bulletin shall be provided to Plaintiff's counsel within 30 calendar days of its

9     issuance.

10              28.     <u>Gang Diversion Video</u>. Defendants will seek permission from the Director

11     of the CDC to show a gang diversion video to the general and SHU populations. A copy of the

12     gang diversion video shall be provided to plaintiff's counsel within thirty calendar days of its first

13     broadcast, if any.

14              29.     <u>Gang Validation of Plaintiff Castillo</u>. Defendants agree that after executing

15     the settlement, Defendants will within 90 days review the validation of the Plaintiff in accordance

16     with the modifications adopted pursuant to the settlement. Defendants also agree that no source

17     items learned of through Plaintiff's deposition testimony in this litigation shall be considered

18     against Mr. Castillo in any subsequent review of his gang validation.

19    V.    **ENFORCEMENT**

20              30.     The Court, specifically the Honorable Martin J. Jenkins, shall retain

21     jurisdiction to enforce the terms of this Agreement. The Court shall have the power to enforce

22     the terms of this Agreement through specific performance and all other remedies permitted by

23     law or equity.

24              31.     While the parties agree that there is no ongoing monitoring of the

25     Settlement Agreement,

26              (a)     If Plaintiff's counsel believes that Defendants are not complying

27     with the specific provisions of this Settlement Agreement to make policy changes, they shall

28     notify Defendants' counsel in writing via the U.S. Postal Service of the facts supporting their

349500.1

SETTLEMENT AGREEMENT
CIVIL NO. C-94-2847 MJJ JCS

1   belief. Defendants shall investigate the allegations and respond in writing within 45 days. If

2   Plaintiff's counsel are not satisfied with Defendants' response, the parties shall meet and confer to

3   resolve the issue(s). If the parties are unable to resolve the issue(s) satisfactorily, Plaintiff may

4   request relief in the U.S. District Court, Northern District of California, before Judge Martin J.

5   Jenkins. This process will cease to be available once the proposed changes to the policies

6   described in this Settlement Agreement are internally finalized. This occurs when the California

7   Department of Corrections' Regulatory and Policy Management Branch provides the proposed

8   changes to the Office of Administrative Law and/or other interested bodies, where approvals are

9   outside the California Department of Corrections' control.

10          (b)    Following final codification of the proposed changes by the Office

11  of Administrative Law and/or any other interested bodies, the California Department of

12  Corrections will implement the codified changes. For six months following the start date of the

13  implementation of the codified policy changes, if Plaintiff's counsel believes that Defendants are

14  not complying with the implementation of the codified policy changes, they shall notify

15  Defendants' counsel in writing via the U.S. Postal Service of the facts supporting their belief.

16  Defendants shall investigate the allegations and respond in writing within 45 days. If Plaintiff's

17  counsel are not satisfied with Defendants' response, the parties shall meet and confer to resolve

18  the issues(s). If the parties are unable to resolve the issue(s) satisfactorily, Plaintiff may request

19  relief in the U.S. District Court, Northern District of California, before Judge Martin J. Jenkins.

20  This process will cease to be available once the six-month time frame elapses from the

21  implementation start date described above.

22          (c)    There can be no individual inmate relief regarding an inmate's gang

23  validation granted through the above-described process; individual inmate concerns regarding

24  his/her own gang validation can only be raised as exemplars by Plaintiff's counsel of alleged

25  noncompliance. Individual inmate concerns must be raised through the California Department of

26  Corrections inmate appeals process (Cal. Code Regs. tit. 15, §§ 3084 et seq.) and separate suit.

27  VI.    **ATTORNEY'S FEES AND COSTS**

28          32.    Defendants shall pay Lieff, Cabraser, Heimann & Bernstein, LLP $240,000

349500.1

SETTLEMENT AGREEMENT
CIVIL NO. C-94-2847 MJJ JCS

1  within 90 calendar days of the execution of this agreement. That sum shall be divided among

2  plaintiff's counsel, future litigation efforts, and plaintiff as shall be decided by plaintiff's counsel

3  and plaintiff. Lieff, Cabraser, Heimann & Bernstein, LLP shall complete a Payee Data Record

4  form and shall return that Payee Data Record form to Defendants' counsel upon execution of this

5  agreement.

6        33.    At the time that Plaintiff and his counsel signs this settlement agreement,

7  Plaintiff's counsel shall also sign and return to counsel for Defendants an executed Stipulation

8  and [Proposed] Order of Dismissal With Prejudice. Plaintiff's counsel authorizes counsel for

9  Defendants to file the dismissal with prejudice with the court once the settlement check has been

10  delivered to Plaintiff's counsel.

11  **VII.    RESOLUTION OF CLAIMS**

12        34.    Plaintiff fully and forever releases and discharges all served and unserved

13  Defendants, including Defendants Edward S. Alameida, Jr., Joseph L. McGrath, Jr., Alan

14  Addison, Judy Olson, E.S. Rodriguez, Larry Williams, C. Sheppard, and J. Briddle, and all others

15  who have ever been named as Defendants in this action, in both their individual and official

16  capacities, from all claims, demands, actions, and causes of action including claims for attorneys'

17  fees, court costs, and other costs of suit, arising out of an alleged injury or claims incurred by

18  Plaintiff as alleged in this action. Plaintiff also fully and forever releases and discharges the State

19  of California, the California Department of Corrections and its employees, agents (including, but

20  not limited to the Pelican Bay State Prison in Crescent City, California and its employees and

21  agents), servants, and other representatives, past or present, from all claims, demands, actions,

22  and causes of action, including claims for attorneys' fees, court costs, and other costs of suit,

23  arising out of any alleged injury or claims incurred by Plaintiff as alleged in this action. Plaintiff

24  specifically, but without limitation, releases the Releasees for all claims that were brought or that

25  could have been brought. Plaintiff does not release any claims regarding the review of his

26  validation as set forth in paragraph 29 of this Agreement nor any claims regarding any future

27  inactive reviews of his status on behalf of the Classification Committee.

28        35.    Plaintiff acknowledges and agrees that this release and discharge is a

749500.1                        - 10 -                        SETTLEMENT AGREEMENT
                                                              CIVIL NO. C-94-2847 MJJ-JCS

1  general release. Plaintiff expressly waives and assumes the risk of any and all claims identified in

2  Paragraph 7(h) which exist as of this date, but which he does not know or suspect to exist,

3  whether through ignorance, oversight, error, negligence, or otherwise, and which, if known,

4  would materially affect his decision to enter into this settlement agreement. Plaintiffs has read

5  the contents of Section 1542 of the Civil Code of the State of California, and he expressly waives

6  the benefits of this section. Section 1542 reads as follows:

7
8
9

> Section 1542. (General Release - Claims Extinguished)
> A general release does not extend to claims which the creditor does
> not know or suspect to exist in his favor at the time of executing the
> release, which if known by him must have materially affected his
> settlement with the debtor.

10  Plaintiff assumes the risk that the facts or law may be other than he believes.

11          36.    Upon the execution of the settlement agreement, Defendants shall be

12  deemed to and shall have released Plaintiff Castillo from any and all claims relating to the

13  original Complaint and the Second Amended Complaint, Third Amended Complaint, Fourth

14  Amended Complaint, and Fifth Amended Complaint.

15  VIII.  PARTIES' AUTHORITY

16          37.    The signatories hereby represent that they are fully authorized to enter into

17  this agreement and bind the parties hereto to the terms and conditions hereof.

18          38.    All of the Parties acknowledge that they have been represented by

19  competent, experienced counsel throughout all negotiations which preceded execution of this

20  agreement, and this agreement is made with the consent and advice of counsel.

21  IX.   MUTUAL FULL COOPERATION

22          39.    The Parties agree to use their best efforts and to fully cooperate with each

23  other to accomplish the terms of this agreement, including but not limited to, execution of such

24  documents and to take such other action as may reasonably be necessary to implement and

25  effectuate the terms of this agreement.

26  X.    MODIFICATION

27          40.    This agreement may not be changed, altered, or modified, except in writing

28  and signed by the parties hereto, and approved by the Court.

349500:1

- 11 -

## XI.    ENTIRE AGREEMENT

41.    This agreement constitutes the entire agreement between the Parties concerning the subject matter hereof. No extrinsic oral or written representations or terms shall modify, vary or contradict the terms of this agreement. In the event of any conflict between this agreement and any other settlement-related document, the parties intend that this agreement shall be controlling.

## XII.    CHOICE OF LAW/JURISDICTION

42.    This agreement shall be subject to, governed by, construed, enforced, and administered in accordance with the laws of the State of California, both in its procedural and substantive aspects, and shall be subject to the continuing jurisdiction of the United States District Court for the Northern District of California. According to Magistrate Judge Edward M. Chen at the May 28, 2004 Settlement Conference, "[u]nder the terms of the settlement agreement, the District Court will retain jurisdiction to supervise the enforcement, should that be necessary." This agreement shall be construed as a whole according to its fair meaning and intent, and not strictly for or against any party, regardless of who drafted or who was principally responsible for drafting this agreement or any specific term or condition thereof.

## XIII.    COUNTERPARTS

43.    This agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one agreement. which shall be binding upon and effective as to all Parties.

349500.1

- 19 -

1   Dated: September 7, 2004          LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

2

3                                     By: _____
                                          Joy A. Kruse
4

5                                     James M. Finberg (State Bar No. 114850)
                                      Joy A. Kruse (State Bar No. 142799)
6                                     Lieff, Cabraser, Heimann & Bernstein, LLP
                                      Embarcadero Center West
7                                     275 Battery Street, 30th Floor
                                      San Francisco, CA 94111-3339
8                                     Telephone: (415) 956-1000
                                      Facsimile: (415) 956-1008
9
                                      Counsel for Plaintiff STEVE M. CASTILLO
10  Dated: September ___, 2004        CALIFORNIA PRISON FOCUS

11

12                                    By: _____
                                          Charles F.A. Carbone
13

14                                    Charles F.A. Carbone (State Bar No. 206536)
                                      2940 16th Street, Suite 307
15                                    San Francisco, CA 94103
                                      Telephone: (415) 252-9211
16                                    Facsimile: (415) 252-9311

17                                    Counsel for Plaintiff STEVE M. CASTILLO

18  Dated: September ___, 2004        LAW OFFICES OF GRAHAM NOYES

19

20                                    By: _____
                                          Graham Noyes
21

22                                    James Graham Noyes (State Bar No. 157395)
                                      228 Commercial Street, #219
23                                    Nevada City, CA 95959
                                      Telephone: (530) 478-9196
24                                    Facsimile: (530) 478-9197

25                                    Counsel for Plaintiff STEVE M. CASTILLO

26

27

28

FROM : California Prison Fo          FAX NO. : 4152529311          Sep. 21 2004 11:33AM P14

Dated: September __, 2004

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

By: _____
        Joy A. Kruse

James M. Finberg (State Bar No. 114850)
Joy A. Kruse (State Bar No. 142799)
Lieff, Cabraser, Heimann & Bernstein, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Counsel for Plaintiff STEVE M. CASTILLO

CALIFORNIA PRISON FOCUS

Dated: September 21, 2004

By: _____
        Charles F.A. Carbone

Charles F.A. Carbone (State Bar No. 206536)
2940 16th Street, Suite 307
San Francisco, CA  94103
Telephone:  (415) 252-9211
Facsimile:  (415) 252-9311

Counsel for Plaintiff STEVE M. CASTILLO

Dated: September __, 2004

LAW OFFICES OF GRAHAM NOYES

By: _____
        Graham Noyes

James Graham Noyes (State Bar No. 157395)
228 Commercial Street, #219
Nevada City, CA  95959
Telephone:  (530) 478-9196
Facsimile:  (530) 478-9197

Counsel for Plaintiff STEVE M. CASTILLO

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

349500.1

SETTLEMENT AGREEMENT
CIVIL NO. C-04-2917 MJ1-JCS

@014

1

Dated: September ___, 2004

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

2

3

By: _____
         Joy A. Kruse

4

5      James M. Finberg (State Bar No. 114850)
       Joy A. Kruse (State Bar No. 142799)
6      Lieff, Cabraser, Heimann & Bernstein, LLP
       Embarcadero Center West
7      275 Battery Street, 30th Floor
       San Francisco, CA 94111-3339
8      Telephone: (415) 956-1000
       Facsimile: (415) 956-1008

9      Counsel for Plaintiff STEVE M. CASTILLO

10   Dated: September ___, 2004

       CALIFORNIA PRISON FOCUS

11

12

13

By: _____
         Charles F.A. Carbone

14     Charles F.A. Carbone (State Bar No. 206536)
       2940 16th Street, Suite 307
15     San Francisco, CA 94103
       Telephone: (415) 252-9211
16     Facsimile: (415) 252-9311

17     Counsel for Plaintiff STEVE M. CASTILLO

18   Dated: September 21, 2004

       LAW OFFICES OF GRAHAM NOYES

19

20

By: _____
         Graham Noyes

21

22     James Graham Noyes (State Bar No. 157395)
       228 Commercial Street, #219
       Nevada City, CA 95959
23     Telephone: (530) 478-9196
       Facsimile: (530) 478-9197

24     Counsel for Plaintiff STEVE M. CASTILLO

25

26

27

28

348500.1

- 13 -

SETTLEMENT AGREEMENT
CIVIL NO. C-94-2847 MHJ-JCS

1    Dated: September 23, 2004         BILL LOCKYER, Attorney General of the State of
                                       California
2                                      OFFICE OF THE ATTORNEY GENERAL

3

4                                      By: _Jonathan J. Wolff_
                                           Jonathan L. Wolff
5

6                                      Jonathan L. Wolff
                                       Supervising Deputy Attorney General
7                                      455 Golden Gate Avenue, Suite 11000
                                       San Francisco, CA 94102-7004
                                       Telephone: (415) 703-1113
8                                      Facsimile: (415) 703-5843

9                                      Attorneys for Defendants Alameida, McGrath, Addison,
                                       Olson, Rodriguez, Williams, Sheppard, and Briddle
10

11

12   Dated: September ___, 2004        STEVE M. CASTILLO

13

14                                     By : _____
                                           Steve M. Castillo
15

16                                     Steve M. Castillo
                                       P.O. Box 7500
17                                     Pelican Bay State Prison
                                       Crescent City, CA 95531

18

19

20

21

22

23

24

25

26

27

28

349500.1                   - 14 -                    SETTLEMENT AGREEMENT
                                                     CIVIL NO. C-94-2847 MJJ-JCS

1    Dated: September ___, 2004

BILL LOCKYER, Attorney General of the State of
2    California
OFFICE OF THE ATTORNEY GENERAL

3

4    By: _____
5    Jonathan L. Wolff

6    Jonathan L. Wolff
Supervising Deputy Attorney General
7    455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
8    Telephone: (415) 703-1113
Facsimile:  (415) 703-5843

9    Attorneys for Defendants Alameida, McGrath, Addison,
Olson, Rodriguez, Williams, Sheppard, and Briddle
10

11    Dated: September 21, 2004
12
STEVE M. CASTILLO
13

14    By: _____
Steve M. Castillo
15

16    Steve M. Castillo
P.O. Box 7500
17    Pelican Bay State Prison
Crescent City, CA 95531
18

19

20

21

22

23

24

25

26

27

28

349500.1

- 14 -

**EXHIBIT D**

State of California                                                     Department of Corrections

# Memorandum

Date    :    March 10, 2005

To      :    All CDC Staff

Subject:    **NOTIFICATION OF THE TERMS OF THE SETTLEMENT AGREEMENT IN**
            ***CASTILLO V. TERHUNE, ET AL.,*** **USDC N.D. CASE NO. C 94-2847 MJJ**

In the above-cited action, inmate Steven Castillo challenged the Department's process for validating inmates as prison gang members or associates.  On September 23, 2004, the Department entered into a Settlement Agreement (Settlement).  The Settlement improves the Department's validation process and affords inmates additional due process protections.

To fulfill the Settlement, the Department agreed to recommend and request specific changes in the California Code of Regulations (CCR), Title 15, and the Department Operations Manual (DOM).  The recommended changes concern the validation procedure and inmate due process.  The Department also agreed to provide training to all relevant staff involved in the validation process regarding the changes to the validation procedures.  Lastly, the Department agreed to notice all departmental personnel about the changes that this Settlement initiated.

This memorandum delineates the changes made in the validation process, which were agreed to in the Settlement.  All staff should be provided with a copy of this memorandum and/or provided training regarding its contents.  The following items are the changes to the validation process and will be incorporated into the appropriate CCR and DOM sections.  Even though these changes have not yet been codified, it is the intent of the Department to institute these changes.

A.    <u>Additional Due Process Requirements:</u>

The Department shall give an inmate involved in the validation process notice and opportunity to be heard (interviewed) at the pre-validation and inactive review stage.

The Department agreed to provide 24-hour advance notice to the inmate of the source items considered prior to the pre-validation interview.  The investigator shall interview the inmate regarding both confidential and nonconfidential evidence and record the inmate's opinions on the source items.  The record of the inmate's opinions shall be submitted to the Law Enforcement and Investigations Unit (LEIU) for consideration in the validation review.  A copy of the written record of the inmate's opinion shall be given to the inmate prior to the time the record is forwarded to LEIU.

The same considerations shall be given during the inactive review process, including the inmate shall be given an opportunity to record his opinions on the new source items as part of the inactive review.  A copy of the written record of the inmate's opinions shall be given to the inmate within 14 calendar days of the inactive review.  When new source items are

All CDC Staff
Page 2

raised beyond those in the initial validation, the inmate shall be given notice and opportunity to be heard during the inactive review.

**B.    Source Items:**

The Department agreed to the following changes to source items used during validation. The Department further agreed that staff shall record the source item information used for validation and provide it on a written form given to the inmate.

  1.    Photographs:

The Department agreed that the date of any photograph shall be reasonably ascertained prior to any photograph being relied upon for validation purposes. The Department agreed that no photograph shall be older than six years (at the time of validation).

The Department agreed that at the time the photograph is taken, at least one person in the photograph shall have been validated, or be validated no more than six months after the photograph was taken.

  2.    Law Library:

The Department agreed that talking in the Security Housing Unit (SHU) law libraries to a validated gang member or associate shall not be relied upon as a source item unless the Institution Gang Investigator (IGI) or staff has an articulable basis for determining the communication was related to gang activity.

  3.    Tattoos and Symbols:

The Department agreed that any tattoo or symbol being relied upon as a source item must include an articulation by staff as to why the particular tattoo or symbol has a specific association with a particular prison gang.

  4.    Written Material/Communications:

The Department agreed that staff must have an articulable basis for why a written material or communication is reliable evidence of gang association or membership, and must articulate and record why a written material or communication is evidence of gang association or membership based on either the explicit or coded content of the communication.

With respect to greeting cards, such as "get well" or birthday cards, staff must record an articulable basis for why the the communication is evidence of gang membership or association.

  5.    Staff Information/Observations:

The Department agreed that staff must have an articulable basis for determining that gang content or conduct at issue is gang-related. In other words, staff must clearly

All CDC Staff
Page 3

document how the conclusion was reached, not merely that the incident or conduct occurred.

6.  Offenses:

The Department agreed that if a disciplinary offense is considered as a potential source item for validation, the IGI or staff shall articulate why the offense is considered gang-related.

7.  Legal Documents:

The Department agreed that staff shall have an articulable basis for why a legal document(s) or legal correspondence is a source item.  Staff shall articulate and record the gang-related significance of the legal correspondence based on either the explicit or coded content of the document.

8.  Address Books:

The Department agreed that staff shall articulate why the contents of an address book are evidence of gang association.

9.  Visitors:

The Department agreed that staff must articulate their reason for determining that the visitor and inmate discussed gang content or conduct, and that the visitor is associated with the prison gang.

The gang identification of a visitor may be rebutted via the inmate's opportunity to present his views.

## C.  Confidential Sources:

The Department agreed that it will not use as a source item "laundry lists," which is the practice of confidential sources, including debriefers, identifying an inmate as an associate or member of a gang by listing the names of inmate(s) without reference to gang-related acts performed by the inmate(s).

The Department also agreed that the confidential source must identify specific gang activity or conduct performed by the alleged associate or member before such information can be considered a source item.

## D.  Single-Source Rule:

The Department agreed that a single, gang-related incident or conduct described or documented by multiple sources, confidential or otherwise, shall constitute one source item only.  Exclusive reliance on hearsay information from a confidential source(s) will not be used for validation.

All CDC Staff
Page 4

### E.  "Current Activity":

The Department agreed that current activity will be defined as any documented gang activity within the past six years consistent with CCR Section 3341.5.

The Department agreed that an inmate will not receive an indeterminate SHU term as a validated gang member or associate without first being found to be a current, active gang member or associate consistent with the procedural safeguards established in this memorandum.    Each Institution Classification Committee and/or Unit Classification Committee review of an indeterminate SHU term will review the inmate's current gang status and indicate that status on the 128G chrono.

### F.  Application of Revisions:

The Department agreed that all policy changes will be applied on a prospective basis, meaning that these policies would take effect September 23, 2004.

### G.  Training:

The Department agreed that training and instruction will be given to all relevant staff, including but not limited to IGI and LEIU staff, with regard to the terms of the Settlement within 180 days of the signed Settlement.

If you have any questions or concerns, please contact Michael Ruff, Senior Special Agent, Gang Intelligence Unit, LEIU, at (916) 631-0175 or Everett W. Fischer, Special Agent, LEIU, at (916) 327-0733.


*Original signed by John Dovey*

J. S. WOODFORD
Director

cc:   John Dovey, Chief Deputy Director, Field Operations
      Ben Eason, Assistant Director (A), LEIU

**EXHIBIT E**



| | |
|---|---|
| **Department of Corrections and Rehabilitation**<br><br>**NOTICE OF CHANGE TO REGULATIONS**<br><br>**Sections:** 3040.1, 3341.5, 3375, 3375.3, and 3378 | **Number:**<br>05/08<br><br>**Date Issued:**<br>10/07/05<br><br>**Effective Date:**<br>To Be Announced |

## INSTITUTIONAL POSTING REQUIRED

This notice announces amendments to Sections 3040.1, 3341.5, 3375, 3375.3, and 3378 of the California Code of Regulations (CCR), Title 15, Crime Prevention and Corrections, to incorporate into the CCR, provisions governing gang management validation.

**IMPLEMENTATION: To Be Announced.**

### PUBLIC COMMENT PERIOD

Any person may submit written comments about the proposed regulations to the California Department of Corrections and Rehabilitation, Regulation and Policy Management Branch (RPMB), PO Box 942883, Sacramento, CA 94283-0001, by fax to (916) 358-2636 or by e-mail to *RPMB@cdcr.ca.gov*. All written comments must be received by the close of the public comment period, November 30, 2005, at 5:00 pm.

### PUBLIC HEARING INFORMATION

A public hearing regarding these proposed regulations will be held November 30, 2005, from 9:00 am to 11:00 am in the Resources Agency Auditorium, 1416 Ninth Street, Sacramento, CA 95814. This location is wheelchair accessible. The purpose of the hearing is to receive oral comments about this action. It is not a forum to debate the proposed regulations. No decision regarding the permanent adoption of these regulations will be rendered at this hearing. Written or facsimile comments submitted during the prescribed comment period have the same significance and influence as oral comments presented at the hearing.

### POSTING

This notice shall be posted immediately upon receipt at locations accessible to inmates, parolees, and employees in each Department facility and field office. Also, facilities shall make this notice available for review by inmates in segregated housing who do not have access to the posted copies and shall distribute it to inmate law libraries and advisory councils.

### CONTACT PERSON

Inquiries regarding this notice should be directed to Timothy M. Lockwood, Chief, RPMB, or to Ann Cunningham, RPMB, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, CA 94283-0001, by telephone (916) 358-1655 or e-mail *RPMB@cdcr.ca.gov*. Inquiries regarding the subject matter of these regulations may be directed to Everett Fischer, Law Enforcement and Investigations Unit, at (916) 327-3268

*[signature]*

JOE McGRATH
Chief Deputy Secretary
Adult Operations

Attachments
CDC 1189 (6/94)

## NOTICE OF PROPOSED REGULATIONS

**California Code of Regulations
Title 15, Crime Prevention and Corrections
Department of Corrections and Rehabilitation**

**NOTICE IS HEREBY GIVEN** that the Secretary of the Department of Corrections and Rehabilitation (CDCR), pursuant to the authority granted by Government Code Section 12838.5 and Penal Code (PC) Section 5055, and the rulemaking authority granted by PC Section 5058, in order to implement, interpret and make specific PC Section 5054, proposes to amend Sections 3040.1, 3341.5, 3375, 3375.3, and 3378 in the California Code of Regulations (CCR), Title 15 concerning gang management validation.

### PUBLIC HEARING:

| | |
|---|---|
| Date and Time: | November 30, 2005, 9:00am to 11:00am |
| Place: | Water Resources Auditorium<br>1416 Ninth Street<br>Sacramento, CA 95814 |
| Purpose: | To receive comments about this action. |

### PUBLIC COMMENT PERIOD:

The public comment period will close <u>November 30, 2005 at 5:00 pm.</u> Any person may submit public comments in writing (by mail, by fax or by e-mail) regarding the proposed changes. To be considered by the Department, comments must be submitted to the Department of Corrections and Rehabilitation, Regulation and Policy Management Branch, P.O. Box 942883, Sacramento, CA 94283-0001; by fax at (916)358-2636; or by e-mail at *RPMB@cdcr.ca.gov* before the close of the comment period.

### CONTACT PERSON:

Please direct any inquiries regarding this action to:

**Timothy M. Lockwood, Chief
Regulation and Policy Management Branch
Department of Corrections and Rehabilitation
P.O. Box 942883, Sacramento, CA 94283-0001
Telephone (916) 358-1655**

In the event the contact person is unavailable, inquires should be directed to the following back-up person:

**Ann Cunningham
Regulation and Policy Management Branch
Telephone (916) 358-1655**

Questions regarding the substance of the proposed regulatory action should be directed to:

**Everett Fischer
Law Enforcement and Investigations Unit
Telephone (916) 327-3268**

### LOCAL MANDATES:

This action imposes no mandates on local agencies or school districts, or a mandate which requires reimbursement pursuant to Government Code Section 17561.

**INFORMATIVE DIGEST/POLICY STATEMENT OVERVIEW:**

On May 10, 2005, Legislation (Senate Bill 737) was signed into law and effective on July 1, 2005, the Youth and Adult Correctional Agency, which consisted of the California Department of Corrections (CDC), the California Youth Authority (CYA), the Board of Prison Terms, the Board of Corrections, the Youth Authority Board, and the Narcotic Addict Evaluation Authority was abolished, and reorganized into the Department of Corrections and Rehabilitation.

Government Code (GC) Section 12838(a) creates the Department of Corrections and Rehabilitation (CDCR), headed by a secretary.GC Section 12838.5 vests to the CDCR, all the powers, functions, duties, responsibilities, obligations, liabilities, and jurisdiction of the abolished entities: CYA, CDC, Department of the Youth Authority, Commission on Correctional Peace Officer Standards and Training, Board of Corrections, and State Commission on Juvenile Justice, Crime and Delinquency Prevention.  The abolished entities are known as "predecessor entities."

GC Section 12838.8 authorizes that all regulations adopted by the predecessor entities, continuing entities, and any of their predecessors are expressly continued in force, and any statue, law, rule, or regulation now in force or that may hereafter be enacted or adopted with reference to the predecessor entities and any of their predecessors shall mean the CDCR.

Penal Code (PC) Section 5000 provides that commencing July 1, 2005, any reference to the Department of Corrections in this or any code refers to the CDCR, Division of Adult Operations.Penal Code (PC) Section 5050 provides that commencing July 1, 2005, any reference to the Director of Corrections in this or any other code refers to the Secretary of the CDCR.  As of that date, the office of the Director of Corrections is abolished.

PC Section 5054 provides that the supervision, management and control of the State prisons, and the responsibility for the care, custody, treatment, training, discipline and employment of persons confined therein are vested in the director. Commencing July 1, 2005, the supervision, management and control of the state prisons, and the responsibility for the care, custody, treatment, training, discipline and employment of persons confined therein are vested in the Secretary of the CDCR.

PC Section 5055 provides that all powers and duties granted to and imposed upon the Department of Corrections shall be exercised by the Director of Corrections, except where such powers and duties are expressly vested by law in the Board of Prison Terms.  Commencing July 1, 2005, all powers and duties previously granted to and imposed upon the Department of Corrections shall be exercised by the Secretary of the CDCR, except where those powers and duties are expressly vested by law in the Board of Parole Hearings.

PC Section 5058 authorizes the Director to prescribe and amend regulations for the administration of prisons.

- The Department certifies that gang activity undermines the safety and security of the institution.  The gang validation and debriefing process is necessary in order to decrease the risk that prison gangs pose to the safety and security of the institutions.

- This language provides the inmate and staff with clear and concise language regarding prison gang validation.  This action includes language that states that a gang member or associate who is validated as a dropout of a prison gang may be removed from the general population or any other placement based upon a reliable source item identifying the inmate as an active gang member or associate of the prison gang with which the inmate was previously validated.

- The verification methods now requires staff to articulate the basis for determining the content of visual or audible observations or conduct at issue which indicate gang activity; to articulate why, based on either the explicit or coded content of any material or documents, including addresses, and names, evidencing gang activity that the written material is reliable evidence of association or membership with the gang; and to document information gathered in a written form.

- Changes for enhanced clarity, including reference, grammatical corrections, and changes in punctuation are also made to meet departmental standards.

**Subsection 3341.5(c)(7) through (c)(10) is unchanged.**

NOTE Authority cited: section 5058, Penal Code. Reference: Sections 5054 and 5068, Penal Code; *Sandin v. Connor* (1995) 515 U.S. 472; *Madrid v. Gomez* (N.D. Cal. 195) 889 F.Supp. 1146; *Toussaint v. McCarthy* (9th Cir. 1990) 926 F.2d 800; and *Toussaint v. Yockey* (9th Cir. 1984) 722 F.2d 1490.

**Section 3375 is amended to read:**

**3375. Classification Process.**

(a) The classification process shall be uniformly applied, commencing upon reception of a person committed to the custody of the director and shall continue throughout the time the individual remains under the director's jurisdiction. Each inmate shall be individually classified in accordance with this article.

**Subsections 3375(b) through 3375(g) are unchanged.**

**Subsection 3375(h) is amended to read:**

(h) An inmate shall be provided a copy of all nonconfidential staff documentation and reports placed in the inmate's central file <u>unless otherwise requested in writing by the inmate</u>.

**Subsections 3375(i) through 3375(k) are unchanged.**

NOTE: Authority cited: Sections 5058 and 5058.3, Penal Code. Reference: Sections 5054 and 5068, Penal Code; *Wright v. Enomoto* (1976) 462 F.Supp. 397, and *Stoneham v. Rushen* (1984) 156 Cal.App.3d 302.

**Section 3375.3 is amended to read:**

**3375.3. CDC Classification Score Sheet, CDC Form 839, Calculation.**

The factors and related numerical weights used to determine an inmate's preliminary score are listed below. Box numbers appear to the right, but refer to the first box on the left of each field.

(a) Background factors (Boxes 30-46):

**Subsection 3375.3(a)(1) through 3375.3(a)(3) is unchanged.**

**Subsection 3375.3(a)(4) is amended to read:**

(4) Street gang/disruptive group (Boxes 35-38). For the purpose of preliminary score evaluation, if there is information that the inmate is or has been involved in gang activity, enter 6 points in Box 35.

(A) Type of street gang/disruptive group code. Apply the code that most closely identifies the inmate's gang. Enter the appropriate alpha code in Boxes 36-37.

1. CR.  Crip street gang/disruptive group.



disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

7. Code G – Association. Information related to the inmate's association with gang affiliates. Information including addresses, names, identities and reasons why such information is indicative of association with a prison gang or disruptive group.  Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

8. Code H – Offenses. The circumstances of an offense evidence gang activity such as an offense being between rival gangs, the victim is a verified gang affiliate, or the inmate's crime partner is a verified gang affiliate.  Staff shall articulate why an offense is gang related.  Multiple sources of information relative to a single incident or offense will be considered one source of validation. Staff shall document and disclose this information to the inmate/parolee in written form that would not jeopardize the safety of any person or the security of the institution.

9. Code I – Legal documents. Probation officer's report or court transcripts evidencing gang activity.  Staff shall assure the document containing this information is disclosed to the inmate/parolee in written form that would not jeopardize the safety of any person or the security of the institution.

10. Code J – Communications. Documentation of telephone conversations, conversations between inmates, mail, greeting cards, notes, or other communication, including coded messages evidencing gang activity.  Staff shall articulate why, based on either the explicit or coded content, the communication is reliable evidence of association or membership with the gang.  Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

**Subsection 3375.3(a)(5) through 3375.3(f) are unchanged.**

NOTE: Authority cited: Sections 5058 and 5058.3, Penal Code.  Reference: Sections 5054 and 5068, Penal Code; *Wright v. Enomoto* (1976) 462 F Supp. 397; and *Stoneham v. Rushen* (1984) 156 Cal.App. 3d 302.

**Section 3378 is amended to read:**

**3378. Documentation of Critical Case Information.**

**Subsections 3378(a) through 3378(b) are unchanged.**

**Subsection 3378(c) is amended to read:**

(c) Gang involvement allegations shall be investigated by a gang ~~coordinator/~~investigator or their designee.

(1) CDC Form 812-A or B shall be completed if an inmate/parolee has been verified as a currently active member~~,~~/associate, inactive member/associate or dropout of a gang (prison gang or disruptive group) as defined in sSection 3000~~, or has safety concerns relating to gangs~~. Current activity is defined as any documented gang activity within the past six (6) years consistent with Section 3341.5(c)(5).




(F)  The inmate's mental health status and/or need for staff assistance shall be evaluated prior to interview.  Staff assistance shall be assigned per guidelines set forth in Section 3318.

(G)  The validation and/or rejection of evidence relied upon shall be documented on a CDC Form 128-B2 (Rev. 5/95) , Gang Validation/Rejection Review, and forwarded to the facility or parole region of origin for placement in the inmate/parolee's central file.  Upon receipt of the CDC Form 128-B2, the Classification and Parole Representative or Parole Administrator 1, or their designee, shall clearly note in some permanent manner upon the face of every document whether or not the item met validation requirements.

(7) The CDC Forms 812-A and 812-B shall be reviewed by a classification committee at each annual hearing and upon any review for transfer consideration. This shall be documented on a CDC Form 128-G (Rev. 10/89), Classification Chrono. Questionable gang identifications, notations, or new information shall be referred to the gang coordinator/investigator for investigation.

(8) The determination of a gang identification shall reference each independent source item in the inmate/parolee's central file. The sources shall be based on the following criteria:

(A) Self admission.  Staff shall document information about the inmate/parolee's self-admission and specific involvement with the gang.  Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

(B) Tattoos and symbols. Body markings, hand signs, distinctive clothing, graffiti, etc., which have been identified by gang ~~coordinators/~~investigators as being used by and distinctive to specific gangs.  Staff shall describe the tattoo or symbol and articulate why it is believed that the tattoo is used by and distinctive of gang association or membership.  Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

(C) Written material. Any material or documents evidencing gang ~~affiliation~~ activity such as the membership or enemy lists, constitutions, organizational structures, codes, training material, etc., of specific gangs.  Staff shall articulate why, based on either the explicit or coded content, the written material is reliable evidence of association or membership with the gang.  Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

(D) Photographs. Individual or group photographs with gang connotations such as those, which include insignia, symbols, or validated gang affiliates.  The date of a photograph shall be reasonably ascertained prior to any photo being relied upon for inclusion as a source item.  No photograph shall be considered for validation purposes that is estimated to be older than six (6) years.  Any photograph being utilized as a source item that depicts gang members shall require that at least one of the individuals be previously validated by the department, or validated by the department within six (6) months of the photograph's established or estimated date or origin. Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

(E) Staff information. Documentation of staff's visual or audible observations, which reasonably indicate gang ~~affiliation~~ activity.  Staff shall articulate the basis for determining the content or conduct at issue is gang related.  Staff shall document and disclose this information to the

 

~~affiliation~~ activity.  Staff shall articulate why, based on either the explicit or coded content, the communication is reliable evidence of association or membership with the gang.  Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

(M) Debriefing reports. Documentation resulting from the debriefing required by (c)(2), above.  Only information referencing specific gang related acts or conduct shall be considered as a source item.  Multiple sources of information relative to a single gang related offense or activity shall be considered a single source of validation.  Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

**Subsections 3378(d) through 3378 (e) are unchanged.**

(d) An inmate housed in the general population as a gang member or associate may be considered for review for inactive status when the inmate has not been identified as having been involved in gang activity for a minimum of two (2) years. Verification of an inmate's inactive status shall be approved or rejected by the LEIU assistant director or a designee. The approval or rejection shall be forwarded for placement in the inmate's central file. The Institution Classification Committee shall review and consider this determination at the next hearing and upon review for transfer consideration.

(e) An inmate housed in a security housing unit (SHU) as a gang member or associate may be considered for review of inactive status by the Departmental Review Board when the inmate has not been identified as
having been involved in gang activity for a minimum of six (6) years. Verification of an inmate's inactive status shall be approved or rejected by the assistant director, LEIU, or a designee. The approval or rejection shall be forwarded for placement in the inmate's central file.

**Subsection 3378(f)(1) is renumbered to 3378(f) and amended to read:**

(f)~~(1)~~ A gang member or associate, who is categorized as inactive or validated as a dropout of a prison gang and released from a SHU, may be removed from the general population or any other placement based upon one reliable source item identifying the inmate as an active gang member or associate of the prison gang with which the inmate was previously validated. The source item must identify the inmate as a gang member or associate based on information developed after his or her release from SHU. The source item need not be confidential, but must meet the test of reliability established at ~~s~~Section 3321.

**Subsection 3378(f)(2) is renumbered to 3378(g) and amended to read:**

~~(f)(2)~~ (g) The procedures relating to the initial validation or rejection of gang members or associates as described in this section shall be followed when reviewing the present status of an inactive gang member or associate.  Verification of an inmate's active status shall be approved or rejected by the assistant director, LEIU, or a designee. This determination shall be forwarded for placement in the inmate's central file.

**Subsection 3378(f)(3) is renumbered to 3378(h) and amended to read:**

 

## INITIAL STATEMENT OF REASONS:

This action amends provisions governing the gang management of inmates within the California Department of Corrections and Rehabilitation (Department). California Code of Regulations, Sections 3040.1, 3341.5, 3375, 3375.3, and 3378 are being amended as a result of a settlement agreement, in the case of *Castillo v. Alameida, et al.*, Case No. C-94-2847-MJJ-JCS, U.S. District Court Northern District of California. This settlement agreement is a result of Inmate Castillo's challenge of the validation process for prison gang members/associates.

The Department certifies that gang activity undermines the safety and security of its institutions. The gang validation and debriefing process is necessary in order to decrease the risk that prison gangs pose to the safety and security of the institutions. The content of these regulations, pursuant to departmental policy, had been confined to the confidential and restricted portion of the Department's Operations Manual (DOM) Section 55000, and therefore, had been exempt from the Administrative Procedure Act (APA) [Penal Code section 5058 (c)(1)(B)(3) and Government Code Section 6254(f)]. Due to the ongoing need for an effective Gang Management policy and the urgent need to comply with ongoing departmental litigation, language regarding gang management is now being placed in the non-restricted DOM. This language is now subject to the APA, thereby requiring regulatory language to be placed in the Title 15. Changes to the regulations include language regarding Due Process, single source rule, hearsay, and staff training, all previously located in the confidential DOM.

This language provides the inmate and staff with clear and concise language regarding prison gang validation. This language includes language that states that a gang member or associate who is validated as a dropout of a prison gang may be removed from the general population or any other placement based upon a reliable source item identifying the inmate as an active gang member or associate of the prison gang with which the inmate was previously validated. This is necessary for the safety and security of inmates who have been validated as a dropout of a prison gang. Additionally, the verification methods now requires staff to articulate the basis for determining that the content of visual or audible observations or conduct at issue indicate gang activity; to articulate why, based on either the explicit or coded content of any material or documents, including addresses and names evidencing gang activity, that the written material is reliable evidence of association or membership with the gang; and to document information gathered in a written form.

In addition, changes for enhanced clarity, including reference, grammatical corrections, and changes in punctuation are also made to meet departmental standards.

The Department must determine that no alternative considered would be more effective in carrying out the purpose of this action or would be as effective, and less burdensome to affected private persons than the action proposed.

**Subsections 3040.1(a) through 3040.1(c)(2) are unchanged.**

**Subsection 3040.1(c)(3) is amended** to change the name Criminal Activities Coordinator to Institution Gang Investigator. This is necessary for consistency throughout the text and to better describe the duties of the individuals whose job description is to investigate gang affiliation and not to "coordinate criminal activities."

**Subsection 3040.1(c)(4) through 3040.1(i) are unchanged.**

**Subsections 3341.5(a) through 3341.5(c)(5) are unchanged.**

**Subsection 3341.5(c)(6) is amended** to reflect language agreed upon in the Settlement Agreement regarding gang validation. This language provides the inmate and staff with clear and concise language regarding prison gang validation. The definition of "current activity" specifies that any documented activity within the past six years shall be utilized for the removal of the inmate from the general population, the review of the initial segregation order, and all periodic review of the indeterminate Security Housing Unit (SHU) term. Current activity is defined as, any documented activity within the past six (6) years. This language is consistent with existing language



**Subsection 3378(c)(3) and (4) is amended** to ensure that at least one (1) of the three (3) required independent source items of documentation indicative of actual gang membership be a direct link to a current or former validated member or associate of the gang. This is necessary to ensure that information gathered to validate gang membership is specific and accurate and that inmates' associations are direct links and not just minor associations with other gang members.

**Subsection 3378(c)(5) is unchanged.**

**Subsection 3378(c)(6) is amended** to include the specific process by which verification of an inmate/parolee's gang identification shall be validated or rejected. This subsection is a direct result of the stipulated agreement and language has been written to comply with the agreement. This also affords the inmate/parolee all due process rights. The specific processes include step-by-step instructions regarding: (A) prior to submission of a validation package, the subject (inmate/parolee) shall be interviewed and given an opportunity to be heard in regard to the source items used in the validation or inactive review; (B) the inmate is provided with written notice at least 24 in advance of the interview, it also allows for the interview to be held earlier than 24 hours if the inmate waives that right in writing; (C) all source information referenced in the validation or inactive review process shall be disclosed to the inmate at the time of notification and the inmate shall receive copies of all non-confidential documents, unless the inmate requests in writing that he not receive copies of these documents. Also, confidential information will be disclosed via a departmental Confidential Information Disclosure Form; (D) the interview shall be documented and recorded on the appropriate form as stated in Section 3378(c)(2) and include a record of the inmate's opinion on each source item used for validation, and provide a written record to the inmate within fourteen calendar days prior to the submission of the validation package to the Law Enforcement Investigation Unit (LEIU); (E) the validation package or inactive review, including the documented interview shall be submitted to LEIU; (F) the inmate's mental health status and/or the need for staff assistance shall be evaluated prior to the interview, and Section 3318 sets the guidelines for staff assistance assignments; and (G) lists the forms and procedure for validation and/or rejection of evidence documentation.

**Subsection 3378(c)(7) is unchanged.**

**Subsection 3378(c)(8) is amended** to comply with the stipulated agreement and make more specific the sources and criteria upon which gang identification is based. The new language defines existing criteria, such as self admission. The new language also expands on existing definitions and ensures specific, detailed documentation and disclosure of information verbally and in written form to the inmate/parolee and in the central file. Criteria such as tattoos and symbols, photographs, written material, must be described, dated, and staff must articulate why the material is being considered. Additionally, staff shall document and disclose information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

**Subsection 3378(d) through 3378(e) are unchanged.**

**Subsection 3378(f)(1) is renumbered to 3378(f)** to correct an incorrect numbering sequence. Additionally, it is amended to include language that states that a gang member or associate who is validated as a dropout of a prison gang may be removed from the general population or any other placement based upon a reliable source item identifying the inmate as an active gang member or associate of the prison gang with which the inmate was previously validated. This is necessary for the safety and security of inmates who have been validated as a dropout of a prison gang. Additionally, a non-substantive change is made to capitalize the word Section, to be consistent throughout the text.

**Subsections 3378(f)(2) and (f)(g) are renumbered to 3378(g) and (h), respectively.** Additionally, a non-substantive change in (h) is made to capitalize the word Section, to be consistent throughout the text.



**EXHIBIT F**

Arcadio Acuna #C-43165
PBSP-SHU/FDG-113
P.O. Box 7500
Crescent City, CA 95532


In Pro Per

                    Superior Court of California
                         County of Del Norte


Arcadio Acuna,                    )    Case No._____
            Petitioner,           )
                                  )
    v.                            )
                                  )
Robert A. Horel, Warden,          )         Declaration
            Respondent.           )
_____ )


        I, Arcadio Acuna, declare as follows:


1.) I am a prisoner of the State of California serving a triple-
life sentence, plus 8-years, and am currently confined to the Security
Housing Unit of Pelican Bay State Prison in Crescent City, California,
on an indeterminate term of administrative segregation.

2.) I was originally validated as an associate of a prison gang
on Nov. 29, 1990, but was granted in-active status on Jan. 31, 2000,
after spending 10-years in solitary confinement and released to the
general population on July 20, 2000.

3.) After spending almost 2-years at California Correctional Institution,
in Tehachapi, California, on May 20, 2002 I was transferred to Calif-
ornia State Prison - Los Angeles County, in Lancaster, Cal-

I could be housed closer to my brother and daughter.

4.) Approximately one-year and a half after my arrival there, during the first week of December 2003, I was approached by Institutional Gang Investigator Lt. Garcilazo, and told that in order to remain in the general population I would have to become a prison informant.

5.) Lt. Garcilazo also said that while he knew I was not involved in gang activity, because I was once validated as an associate of a prison gang he knew I would be able to gain the confidence of other prisoners and obtain information of illegal activities and pass it on to prison staff.

6.) Lt. Garcilazo further advised me that I had no choice in the matter and if I refused to become an informant he would find a way to revalidate me as active and seperate me from my family by sending me back to Pelican Bay State Prison Security Housing Unit.

7.) I refused to succumb to Lt. Garcilazo's threats and on Dec. 12, 2003, he informed me that he was submitting a validation package to the Law Enforcement and Investigations unit in Sacramento to revalidate me as active, but said I still had a chance to stop the process if I agreed to become an informant.

8.) On Mar. 01, 2004, I was transferred from California State Prison-Los Angeles County to Calipatria State Prison in Imperial County, where on Mar. 05, 2004, I was placed in administrative segregation because prison officials there had recieved notice that on Jan. 20, 2004, I had been validated as an active member of a prison gang.

9.) I vehemently assert that I am not now, nor have I ever been a member of any prison gang, and that after my release to the general population in July 2000 until the present I have

not been involved in prison gang activity in any way, shape or form.

I declare under penalty of perjury that the above statement is true and correct, and was executed on this 10th day of December, 2006, in Crescent City, California.


Arcadio Acuna
Arcadio Acuna, Declarant
In Pro Per

# PROOF OF SERVICE BY MAIL

(C.C.P. section 101a #2015.5; 20 U.S.C. section 1746)

I, _Arcadio Acuna_, am a resident of Pelican Bay State Prison, in the County of Del Norte, State of California. I am over eighteen (18) years of age and am a party to the below entitled action.

My Address is: P.O. Box 7500, Crescent City, CA 95531.

On the _10th_ day of _Dec_, in the year of 20 _06_, I served the following documents: (set forth the exact title of documents served)

_Petition for Writ of Habeas Corpus_

on the party(s) listed below by placing a true copy(s) of said document, enclosed in a sealed envelope(s) with posteage thereon fully paid, in the United states mail, in a deposit box so provided at Pelican Bay State Prison, Crescent City, CA 95531 and addressed as follows:

_Bill Lockyer Atty General_
_1300 "I" Street Ste. 125_
_P.O. Box 94255_
_Sacramento CA_
_94244_

I declare under penalty of perjury that the foregoing is true and correct.

Dated this _10th_ day of _Dec_, 20 _06_

Signed: _Arcadio Acuna_

(Declarant Signature)

Rev: 03/10/00

(59)