# EXHIBIT 16

```
FILED

JAN 1 7 2007

SUPERIOR COURT OF CALIFORNIA
COUNTY OF DEL NORTE
```

1
2
3
4
5
6                    SUPERIOR COURT OF THE STATE OF CALIFORNIA
7                          , FOR THE COUNTY OF DEL NORTE
8
9    IN RE:                              )        Case No.: HCPB06-5235
                                         )
10                                       )
                                         )
11   ARCADIO ACUNA,                      )        REQUEST FOR INFORMAL
     C-43165                             )        RESPONSE TO PETITION FOR
12                                       )        WRIT OF HABEAS CORPUS (*Cal.*
                                         )        *Rule of Court 4.551(b)*)
13                    Petitioner,        )
                                         )
14   On Habeas Corpus.                   )
                                         )
15   _____)
16        Before passing on the Petition for Writ of Habeas Corpus, the Court requests
17   that the Attorney General provide an informal response on behalf of the respondent
18   or real party in interest.
19        Pursuant to California Rule of Court 4.551, the informal response shall be
20   served on the petitioner and filed with the court.  The Court hereby extends the
21   time for the informal response to be filed to sixty (60) days from today's date to give
22
23   the Attorney General adequate time to request, receive, and review the file from the
24   Respondent.  Additional extensions of time will be considered only for good cause
25   and upon showing of due diligence.
26        Petitioner shall have 15 days from date of service of the informal response to
27   file a reply with the court.
28

RIR-SGI

1  Since the Petition challenges the sufficiency of the evidence used in a gang

2  validation, the Court will consider reviewing at the informal-response stage any

3  confidential documents submitted under seal for an *in camera* review.  Such an

4  camera review will occur at the informal response stage only if the Attorney

5  General submits such documents and if Petitioner does not object prior to the time

6  allowed for filing an informal response.

7  If Respondent provides confidential documents under seal, the portions

8  relating specifically to Petitioner of any lengthy documents should be pointed out to

9  the court.  In the past, the court has been provided with extremely lengthy

10 documents, such as debriefing memoranda, when only a small portion relates to the

11 inmate in question.  This creates a time-consuming task for the Court to sift

12 through irrelevant materials and also creates a risk that the Court may overlook

13 important information.

14

15

16 DATED: _____     JAN 1 7 2007

17

18                                        _____

19                                        WILLIAM H. FOLLETT
                                         Judge of the Superior Court
20

21

22

23

24

25

26

27

28

RIR-SGI

PROOF OF SERVICE BY MAIL (1013a, 2015.5 C.C.P)

I am a citizen of the United States and a resident of the County of Del Norte.  I am over the age of eighteen (18) years and am not a party to the entitled action; my business address is 450 H St, Crescent City California 95531.

On Wednesday, January 17, 2007, I served a copy of the **REQUEST FOR INFORMAL RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS** *(Cal. Rule of Court 4.551(b))*, **Filed 1/17/2007** by depositing a true copy in the United States mail in Crescent City, California, in a sealed envelope with postage prepaid, addressed as follows:

Arcadio Acuna, C-43165
C/O Pelican Bay State Prison
P.O. Box 7500
Crescent City, CA  95532

William J. Barlow
Litigation Department
P.O. Box 7500
Crescent City, CA  95531
[*Copy of Petition for Writ of Habeas Corpus as Filed 12/13/06 also enclosed.*]

Bill Lockyer
Attorney General
P.O. Box 944255
Sacramento, CA  94244-2550
[*Copy of Petition for Writ of Habeas Corpus as Filed 12/13/06 also enclosed.*]

    I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and that it was executed at Crescent City, California this date.

DATED:  January 17, 2007

## J. McCubbin

Jamie McCubbin
Judicial Assistant

# EXHIBIT 17



**BILL LOCKYER**
*Attorney General*

*State of California*
**DEPARTMENT OF JUSTICE**

FILED

MAR 2 0 2007

SUPERIOR COURT OF CALIFORNIA
COUNTY OF DEL NORTE

P. J. Smith

1300 I STREET, SUITE 125
P.O. BOX 944255
SACRAMENTO, CA 94244-2550
Public: (916) 445-9555
Telephone: (916) 327-3893
Facsimile: (916) 324-5205
E-Mail: Jessica.Blonien@doj.ca.gov

March 16, 2007



The Honorable William H. Follett
Del Norte County Superior Court
450 "H" Street, Room 182
Crescent City, CA 95531

RE:    INFORMAL RESPONSE
*In re Arcadio Acuna* (C-43165), Case No. HCPB06-5235

Dear Judge Follett:

Petitioner, Arcadio Acuna, is an inmate lawfully incarcerated at Pelican Bay State Prison. (Ex. A, Abstract of Judgment.) In his petition for writ of habeas corpus, he claims that prison officials improperly found that he was an active prison-gang associate. The Court should deny his petition because petitioner was properly found to be an active associate of the Mexican Mafia (EME).

Petitioner was validated as a member of the EME prison gang in 1990 and was housed in the Security Housing Unit (SHU). (Ex. B; Cal. Code Regs., tit. 15, § 3378, subd. (c)(4).) In 2000, petitioner was considered for inactive status because he had not been identified as having been involved in prison-gang activity for over six years. (Ex. B, Memos on Petitioner's Inactive Status; Cal. Code Regs., tit. 15, § 3378, subd. (e). Petitioner was granted inactive status and given the opportunity to live in the general population. (Ex. B at p. 2.)

An inmate categorized as an inactive prison gang member "may be removed from the general population . . . based upon one reliable source item identifying the inmate as an active gang member or associate of the prison gang with which the inmate was previously validated." (Cal. Code Regs., tit. 15, § 33378, subd. (f).) The source item relied on must be based on information developed after his release from SHU. (*Ibid.*) An inmate who may be re-validated as an active prison gang member or associate is also entitled to the same procedural protections provided in the initial validation. (Cal. Code Regs., tit. 15, § 3378, subd. (g). This means that the inmate is entitled to notice of the source items that may be used against him; an interview with the Institution Gang Investigator, or his designee; notice of the interview; documentation of the interview; a staff assistant if necessary; and notice of the evidence relied upon if validated as a prison gang member. (Cal. Code Regs., tit. 15, § 3378.)

OFFICE COPY
ATTORNEY GENERAL

The Honorable William H. Follett
March 16, 2007
Page 2

In 2004, petitioner's inactive status was revoked. Petitioner challenged that decision in this Court, and pursuant to a negotiated agreement, petitioner's prison-gang status was again reviewed in 2006, and he was found to be an active prison gang associate. (Ex. C, Documentation of Petitioner's Interview and Due Process Rights; Ex. D, July 26, 2006 Memo Validating Petitioner as Active.) It is this determination petitioner is currently challenging.

Petitioner was provided with copies of Confidential Information Disclosure Forms and non-confidential reports to be used in his validation proceedings on June 2, 2006, and was informed that he was scheduled for an interview regarding his prison gang status on June 5, 2006. (Ex. C at 1.) It was determined that petitioner did not need a staff assistant. (*Ibid.*)

On June 5, 2006, petitioner was interviewed by two members of the Institution Gang Investigation Unit. Petitioner had prepared written statements addressing the evidence to be considered in the validation process. (Ex. C at 8-15.) During the interview, petitioner also provided oral comments which were documented so they could be considered by the Chief of the Office of Correctional Safety, or his designee. (Ex. C; Cal. Code Regs. tit. 15, § 3378, subd. (c)(6).)

After the evidence and petitioner's comments were considered, petitioner was validated as an active associate of the EME. Of the 27 items submitted to the Office of Correctional Safety for review, 19 were found to meet the validation requirements. (Ex. D; Ex. G, Confidential Information Disclosure Forms Not Used in Validation.) Of those 19, 8 revealed that petitioner participated in prison gang activity after he was released from the SHU in February 2000. (Ex. E, Confidential Information Disclosure Forms Meeting Validation Requirements and Documenting Actions After February 2000; Cal. Code Regs., tit. 15, §3378, subd. (f).) The information in the other eleven items pre-dated petitioner's inactive status. (Ex. F, Confidential Information Disclosure Forms Meeting Validation Requirements and Documenting Actions Before February 2000.)

1.    **An Inactive Gang Member or Associate May Be Reclassified as an Active Gang Associate Based on a Single Source.**

Here, not one, but eight different items demonstrate that Acuna is an active associate of the EME. (Ex. D, E.) Acuna's contention that three items are required to find that an inactive gang associate has resumed active affiliation with a prison gang is irrelevant because over three items were used in his validation. In any event, under the regulations, only one item is necessary to reclassify a previously validated, but currently inactive gang associate as active. (Cal. Code Regs., tit. 15, § 3378, subd. (f)-(g).) Acuna attempts to stretch the requirement that an inmate be provided the same procedures during a review of inactive status as an initial validation to mean that three source items are required to remove an inmate from inactive status. (Petn. at 7-8.) This argument, however, is contrary to the unambiguous provision in the regulations that an inactive gang member may be "removed from the general population . . . based upon one reliable source item identifying the inmate as an active gang member or associate." (Cal. Code Regs. tit. 15, § 3378, subd. (f).) Because the unambiguous language of the California Regulations allow

The Honorable William H. Follett
March 16, 2007
Page 3

for an inactive gang associate to be re-classified as an active associate, only one source item was required in Acuna's 2006 validation.

### 2.    Acuna Was Properly Found to Be an Active EME Associate.

Acuna does not challenge the procedures used in his 2006 prison gang validation. Instead, he alleges that the evidence used in the validation was used in previous validations, was not reliable, and did not document verifiable acts of gang misconduct. (Petn. at 8-9.) Here, respondent only addresses the eight items that met the validation requirements and that developed after his 2000 release from SHU. (Cal. Code Regs., tit. 15, § 3378.)

First is an October 3, 2005 confidential memorandum. (Ex. C, Ex. E at 1.) This document is described as a letter from an EME member to a former inmate. In the letter, petitioner is referenced as "the hometown Arcadio" and it is indicated that petitioner may have misled another individual. (Ex. E at 1.) Because petitioner has been identified as training EME associates on how to avoid being validated as a gang member, the information that petitioner was providing instruction to gang associates demonstrated that he was actively associating with EME members. (Cal. Code Regs., tit. 15, § 3378, subd. (c)(8)(C).) Because this information came from a known EME member, "Tudy" Arthur Estrada, the reliability requirements that apply to confidential sources do not apply. (See Cal. Code Regs., tit. 15, § 3321.) This item was properly used to validate petitioner as an active EME associate.

In notes confiscated from an inmate's cell, an identified EME associate directs the recipient to "get at Cadio [petitioner] and let him know what's up with this vato and also tell Cadio to make sure Spanky and Stano have a safe trip back here." (Ex. C, Ex. E at 2.) This item was properly used to validate petitioner as an active EME associate because it shows that he was actively associating with EME members.

Petitioner's name and prison number were found in the address book of an EME member. (Ex. E at 3; Cal. Code Regs. tit. 15, § 3378, subd. (c)(8)(C).) The address book contained the names of over 130 EME members and associates. This item again showed that petitioner was associating with EME members and the reliability of the information is not at issue because it came from an identified source.

A note written by an EME associate regarding authorization to conduct EME activities discusses a need to meet with petitioner (Cario). (Ex. E at 4.) As demonstrated in exhibit W, filed under seal with the Court, the information in the note is reliable evidence of associate with the gang. (Ex. W.)

During a debriefing interview, an EME associate reported that Acuna was an inactive EME associate who continued to participate in EME gang politics. (Ex. E at 5.) The information was considered reliable because more than one source independently provided the same information, the source incriminated himself/herself in criminal activity, and because part of the information had already proven to be true. (*Ibid*; Cal. Code Regs., tit. 15, § 3321, subd. (c).)

The Honorable William H. Follett
March 16, 2007
Page 4

This information was properly relied upon in finding that petitioner was an active EME associate.

An admitted EME member identified petitioner as being very active in the EME and awaiting confirmation of whether or not he had been accepted for EME membership. (Ex. E at 6; Ex. X, filed under seal.) The source also recounted that petitioner was sending money to EME members and was instructing inmates about EME. (Ex. E at 6; Ex. X.) The information was considered reliable because more than one source independently provided the same information, the source incriminated himself/herself in criminal activity, and because part of the information had already proven to be true. (Ex. E at 6; Cal. Code Regs., tit. 15, § 3321, subd. (c).)

An EME associate reported that petitioner taught an EME associate how to communicate in code. (Ex. E at 7; Ex. Y, filed under seal.) The information was considered reliable because more than one source independently provided the same information, the source incriminated himself/herself in criminal activity, and because part of the information had already proven to be true. (Ex. E at 6; Cal. Code Regs., tit. 15, § 3321, subd. (c).) This information demonstrates that petitioner was actively involved with the EME prison gang and was properly relied upon in validating him as an active prison gang associate.

Finally, in a letter, petitioner's niece indicated that she met up with an EME member at the Department of Motor Vehicles and gave the EME member petitioner's address. (Ex. E at 8; Ex. Z, filed under seal.) She also offered to pass information along from petitioner to the EME member.

These eight items, which developed after petitioner's release from SHU in 2000, were properly relied upon in validating petitioner as an active EME associate as they demonstrate that he was actively participating in the EME. (Cal. Code Regs., tit. 15, § 3378, subd. (f).)

Contrary to the allegations in his petition, the evidence of petitioner's continuing involvement with the EME is sufficient to justify his re-validation. Accordingly, his petition should be denied and this matter dismissed.

Sincerely,

JESSICA N. BLONIEN
Deputy Attorney General
State Bar No. 189137

For    BILL LOCKYER
Attorney General

Acuna.wpd

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   **In re Arcadio Acuna**

No.:   **HCPB06-5235**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter; my business address is 1300 I Street, Suite 125, P.O. Box 944255, Sacramento, CA 94244-2550.

On <u>March 16, 2007</u>, I served the attached

**INFORMAL RESPONSE**

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States Mail at Sacramento, California, addressed as follows:

Arcadio Acuna
C-43165
Pelican Bay State Prison
P.O. Box 7500
Crescent City, CA  95532
In Pro Per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on March 16, 2007, at Sacramento, California.

| | |
|---|---|
| Debra De Frantz | _(signature)_ |
| Declarant | Signature |

30236960.wpd

# Ex. A

ABSTRACT OF JUDGMENT — COMMITMENT

FORM DSL 290

SUPERIOR COURT OF CALIFORNIA, COUNTY OF __SANTA CLARA__

BRANCH __CRIMINAL__

COURT I.D. | 4 | 3

CASE NUMBER(S)

PEOPLE OF THE STATE OF CALIFORNIA    versus    [X] PRESENT    103259    – A

[ ] NOT PRESENT    – B

DEFENDANT: ARCADIO SERRANO ACUNA    – C

AKA:    – D

COMMITMENT TO STATE PRISON    [ ] AMENDED    – E
ABSTRACT OF JUDGMENT    ABSTRACT

CLERK: RALPH B. ULATE

DATE OF HEARING (MO) (DAY) (YR): 03 | 09 | 87    DEPT. NO.: 04    JUDGE: JACK KOMAR

REPORTER: D. ROGINA    COUNSEL FOR PEOPLE: T. HANFORD    COUNSEL FOR DEFENDANT: R. DIXON    PROBATION NO. OR PROBATION OFFICER: E. KAMMELAAR

1. DEFENDANT WAS CONVICTED OF THE COMMISSION OF THE FOLLOWING FELONIES:

A. [ ] ADDITIONAL COUNTS ARE LISTED ON ATTACHMENT

| COUNT | CODE | SECTION NUMBER | CRIME | YEAR CRIME COMMITTED | MO | DAY | YEAR | JURY TRIAL | COURT TRIAL | PLEA | CONVICTION BY | CONCURRENT | CONSECUTIVE VIOLENT | CONSECUTIVE NON-VIOL. | CONSECUTIVE 1/3 NON-VIOL. | CONSECUTIVE SENTENCE(S) | 654 STAY | PRINCIPAL OR CONSECUTIVE TIME IMPOSED YEARS | MONTHS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 08 | PC 211 | | Robbery (Prin. Term) | 85 | 01 | 29 | 87 | X | | | U | | | | | | | 05 | 00 |
| 10 | PC 211 | | Robbery | 85 | 01 | 29 | 87 | X | | | U | | | | | X | | 01 | 00 |
| 11 | PC 211 | | Robbery | 85 | 01 | 29 | 87 | X | | | U | | | X | | | | 01 | 00 |
| 12 | VC 10851(a) | (Drive or Take Veh) | 85 | 01 | 29 | 87 | X | | | U | | | | X | | XX | (03 | 00) |

2. ENHANCEMENTS (CHARGED AND FOUND, STRICKEN, TIME IMPOSED):

| COUNT | 12022(a) C/F S I | 12022(b) C/F S I | 12022.3(a) C/F S I | 12022.3(b) C/F S I | 12022.5 C/F S I | 12022.6(a) C/F S I | 12022.6(b) C/F S I | 12022.7 C/F S I | 12022.8 C/F S I | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 08 | | | | | X   X | | | | | 02 | 00 |
| 10 | | | | | Stayed PC 1170.1(a) | | | | | (01 | 00) |
| 11 | X   X | | | | Stayed PC 1170.1(a) | | | | | (01 | 00) |
| 12 | XX | | | | Stayed PC 654 | | | | | | |

*****CTS. SEE INDETERMINATE SENTENCE JUDGMENT!*****

3. INCOMPLETED SENTENCE(S) CONSECUTIVE:

| COUNTY | CASE NUMBER | CREDIT FOR TIME SERVED |
|---|---|---|
| | | |

5. A. NUMBER OF PRIOR PRISON TERMS:

| § | C/F | |
|---|---|---|
| 667.5(a) | 0 | 0 |
| 667.5(b) | 0 | 0 |
| 667.6(b) | 0 | 0 |

4. OTHER ORDERS: **Total Term Imposed**
09Yrs 08 Mos Stayed PC 654****
Ct. 05 dismissed mot. DA
Deft. advised appeal rights

B. NUMBER OF PRIOR FELONY CONVICTIONS:

| § | C/F | |
|---|---|---|
| 667.6(a) | 0 | 0 |

6. TOTAL TIME IMPOSED ON ALL ATTACHMENT PAGES (FORM DSL 290-A):    00 | 08

7. TIME STAYED § 1170.1(a) [5-YEAR LIMIT] AND/OR § 1170.1(f) [DOUBLE BASE LIMIT]: →    09 | 08 *

8. TOTAL TERM IMPOSED:

9. EXECUTION OF SENTENCE IMPOSED:

A. [XX] AT INITIAL SENTENCING HEARING    B. [ ] AT RESENTENCING PURSUANT TO DECISION ON APPEAL    C. [ ] AFTER REVOCATION OF PROBATION    D. [ ] AT RESENTENCING PURSUANT TO RECALL OF COMMITMENT [PC§1170(d)]

10. DATE SENTENCE PRONOUNCED: MO 03 | DAY 09 | YEAR 87    CREDIT FOR TIME SPENT IN CUSTODY: *** TOTAL DAYS    INCLUDING: ACTUAL LOCAL TIME ***    LOCAL CONDUCT CREDITS ***    STATE INSTITUTIONS [ ] DMH    [ ] CDC

11. DEFENDANT IS REMANDED TO THE CUSTODY OF THE SHERIFF, TO BE DELIVERED:

[XX] FORTHWITH
[ ] AFTER 48 HOURS, EXCLUDING SATURDAYS, SUNDAYS AND HOLIDAYS

INTO THE CUSTODY OF THE DIRECTOR OF CORRECTIONS AT THE RECEPTION-GUIDANCE CENTER LOCATED AT:

[ ] CALIF. INSTITUTION FOR WOMEN — FRONTERA    [X] CALIF. MEDICAL FACILITY — VACAVILLE    [ ] CALIF. INSTITUTION FOR MEN — CHINO
[ ] OTHER (SPECIFY):

CLERK OF SUPERIOR COURT

I hereby certify the foregoing to be a correct abstract of the judgment made in this action.

DEPUTY'S SIGNATURE: Ralph B. Ulate    DATE: 9 MARCH 1987

This form is prescribed pursuant to Penal Code §1213.5 to satisfy the requirements of Penal Code §1213 (Abstract of Judgment and Commitment) for determinate sentences under Penal Code §1170. A copy of probation report shall accompany the Department of Corrections' copy of this form pursuant to Penal Code §1203c. A copy of the sentencing proceedings and any supplementary probation report shall be transmitted to the Department of Corrections pursuant to Penal Code §1203.01. Attachments may be used but must be incorporated by reference.

Form Adopted by the Judicial Council of California Effective July 1, 1981

ABSTRACT OF JUDGMENT — COMMITMENT
FORM DSL 290

Pen.C. 1213.5.

DISTRIBUTION:    PINK COPY — COURT FILE.    YELLOW COPY — DEPARTMENT OF CORRECTIONS.    WHITE COPY — ADMINISTRATIVE OFFICE OF THE COURTS.

# ABSTRACT OF JUDGMENT – COMMITMENT
## ATTACHMENT PAGE

FORM DSL 290-A

SUPERIOR COURT OF CALIFORNIA, COUNTY OF __SANTA CLARA__

BRANCH __CRIMINAL__

COURT I.D. 4 3

PEOPLE OF THE STATE OF CALIFORNIA    versus

DEFENDANT: ARCADIO SERRANO ACUNA

AKA:

[XX] PRESENT    [ ] NOT PRESENT

COMMITMENT TO STATE PRISON

ABSTRACT OF JUDGMENT    [ ] AMENDED ABSTRACT

CASE NUMBER 103259

| DATE OF HEARING (MO) (DAY) (YR) | DEPT. NO. | JUDGE | CLERK |
|---|---|---|---|
| 03  09  87 | 04 | JOACK KOMAR | RALPH B. ULATE |

| REPORTER | COUNSEL FOR PEOPLE | COUNSEL FOR DEFENDANT | PROBATION NO. OR PROBATION OFFICER |
|---|---|---|---|
| D. ROGINA | T. HANFORD | R. DIXON | E. KAMMELAAR |

1. DEFENDANT WAS CONVICTED OF THE COMMISSION OF THE FOLLOWING FELONIES:

A. [ ] ADDITIONAL COUNTS ARE LISTED ON ATTACHMENT

SENTENCE RELATION

| COUNT | CODE | SECTION NUMBER | CRIME | YEAR CRIME COMMITTED | DATE OF CONVICTION MO | DAY | YEAR | CONVICTION BY JURY TRIAL | COURT TRIAL | PLEA | TERM (L.M.U.) | CONCURRENT | CONSECUTIVE 1/3 VIOLENT | CONSECUTIVE NONVIOLENT | CONSECUTIVE 1/3 INCOMPLETED | INCOMPLETED SENTENCES 1/3 | 654 STAY | PRINCIPAL OR CONSECUTIVE TIME IMPOSED YEARS | MONTHS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 13 | PC 664-211 | (Attempts) | | 85 | 01 | 29 | 87 | x | | U | | x | | | | | | 00 | 08 |
| 06 | PC 12021(a)(Poss. Firearm by Person prev. convicted viol. offenses) | | | 85 | 01 | 14 | 87 | x | x | U | | | | | | | xx | (01 00) | |
| 09 | VC 10851 (Drive or Take Feh.) | | | 85 | 01 | 29 | 87 | x | | U | | | | | | | xx | (02 00) | |

**** NOTE:

        Ct. 10 PC211 Deft. Sent. STATE PRISON 05 YEARS OF SAID SENTENCE 04
YEARS WAS STAYED PURSUANT TO SECTION 1170.1(a) of the PC.
        Ct. 11 PC 211 Deft. Sent. State Prison 05 Yrs. 04 YRS STAYED PURSUANT
TO SECTION 1170.1(a) PC.
        Ct. 11 PC 664-211 (Attempts) Deft. Sentenced to State Prison 03 YRS.
28 months STAYED PURSUANT TO SEC. 1170.1(a) PC.
        Deft. Pay Restitution $100.00 (Atty Fees)
        Deft. advised of Parole Rights

2. ENHANCEMENTS (CHARGED AND FOUND, STRICKEN, TIME IMPOSED):

| COUNT | 12022 (a) C/F | S | I | 12022 (b) C/F | S | I | 12022.3 (a) C/F | S | I | 12022.3 (b) C/F | S | I | 12022.5 C/F | S | I | 12022.6 (a) C/F | S | I | 12022.6 (b) C/F | S | I | 12022.7 C/F | S | I | 12022.8 C/F | S | I | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 13 | x | | x | | | | Stayed PC 1170.1(a) | | | | | | | | | | | | | | | | | | | | | (01 00) |
| 09 | | | | | | | | | | | | | x | | x | Stayed PC 654 | | | | | | | | | | | | (02 00) |

3. TOTAL TIME IMPOSED ON THIS ATTACHMENT PAGE:    ➤    00  08

This form is prescribed pursuant to Penal Code §1213.5 to satisfy the requirements of Penal Code §1213 (Abstract of Judgment and Commitment) for determinate sentences under Penal Code §1170. A copy of probation report shall accompany the Department of Corrections' copy of this form pursuant to Penal Code §1203c. A copy of the sentencing proceedings and any supplementary probation report shall be transmitted to the Department of Corrections pursuant to Penal Code §1203.01. Attachments may be used but must be incorporated by reference.

Form Adopted by the
Judicial Council of California
Effective July 1, 1981

## ABSTRACT OF JUDGMENT – COMMITMENT
ATTACHMENT FORM DSL 290-A

Pen. C. 1213.5

DISTRIBUTION:    PINK COPY - COURT FILE.    YELLOW COPY - DEPARTMENT OF CORRECTIONS.    WHITE COPY - ADMINISTRATIVE OFFICE OF THE COURT.

DEPT. No. **04**    CASE NO. **103259**

# In the Superior Court of the State of California

IN AND FOR THE _____ COUNTY OF **SANTA CLARA**

### AMENDED
### ABSTRACT OF JUDGMENT
(Commitment to State Prison as provided by Penal Code Section 1213.5)

The People of the State of California,

vs

**ARCADIO SERRANO ACUNA**                    Defendant.

Hon **JACK KOMAR**
(Judge of Superior Court)

**T. HANFORD**
(District Attorney)

**R. DIXON**
(Counsel for Defendant)

This certifies that on the **09th** day of **MARCH**, 19**87** judgment of conviction of the above-named defendant was entered as follows:

In Case No. **103259** _____ Count No. **02** _____ he was convicted by **JURY**; on his plea of _____
(Court of Jury)

**NOT GUILTY** _____ (guilty, not guilty, former conviction or acquittal, once in jeopardy,

not guilty by reason of insanity); of the crime of **KIDNAPPING FOR ROBBERY** _____

(designation of crime and degree, if any, including fact that it constitutes a second or subsequent conviction of same offense if that affects the sentence and if under Section 209 of the Penal Code whether victim suffered bodily harm):

in violation of **PENAL CODE SECTION 209(b)** _____
(reference to Code or Statute, including Section and Sub-section):

with prior convictions charged and proved or admitted as follows:

| DATE | COUNTY AND STATE | CRIME | DISPOSITION |
|------|-----------------|-------|-------------|
|  | SAN BERNARDINO | Robbery (PC 211) | STATE PRISON |
|  | SAN BERNARDINO | Burglary (PC 459) | STATE PRISON |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

Defendant **WAS** _____ charged and admitted being, or was found to have been armed with a deadly weapon at the time
(was) or (was not)

of commission of the offense, or a concealed deadly weapon at the time of his arrest within the meaning of Penal Code Sections ~~969 and 3024~~ **12022.5**


7936 REV 8/74

This certifies that ... the _09th_ day of _MARCH_ , 19 _87_ judg___ of conviction of the above-named defendant was entered as follows:

In case No. _103259_ Count No. _03_ he was convicted by _JURY_ ; on his plea of _NOT_
_GUILTY_ (guilty, not guilty, former conviction or acquittal, once in jeopardy, not guilty by reason of
insanity); of the crime of _KIDNAPPING FOR ROBBERY_

(designation of crime and degree, if any, including fact that it constitutes a second or subsequent conviction of same
offense if that affects the sentence and if under Section 209 of the Penal Code whether victim suffered bodily harm):
in violation of _PENAL CODE SECTION 209 (b)_
(reference to Code or Statute, including Section and Sub-section);

with prior convictions charged and proved or admitted as follows:

| DATE | COUNTY AND STATE | CRIME | DISPOSITION |
|------|------------------|-------|-------------|
|      | SAN BERNARDINO | Robbery (PC 211) | STATE PRISON |
|      | SAN BERNARDINO | Burglary (PC 459) | STATE PRISON |
|      |                |       |             |
|      |                |       |             |

Defendant _WAS_ charged and admitted being, or was found to have been armed with a deadly weapon at the time
(was) or (was not)
of commission of the offense, or a concealed deadly weapon at the time of his arrest within the meaning of Penal Code Sections ~~969c and 3024~~ _12022 (a)_

---

This certifies that on the _09th_ day of _MARCH_ , 19 _87_ judgment of conviction of the above-named defendant was entered as follows:

In case No. _103259_ Count No. _04_ he was convicted by _JURY_ ; on his plea of _NOT_
_GUILTY_ (guilty, not guilty, former conviction or acquittal, once in jeopardy, not guilty by reason of
insanity); of the crime of _KIDNAPPING FOR ROBBERY_

(designation of crime and degree, if any, including fact that it constitutes a second or subsequent conviction of same
offense if that affects the sentence and if under Section 209 of the Penal Code whether victim suffered bodily harm):
in violation of _PENAL CODE SECTION 209 (b)_
(reference to Code or Statute, including Section and Sub-section);

with prior convictions charged and proved or admitted as follows:

| DATE | COUNTY AND STATE | CRIME | DISPOSITION |
|------|------------------|-------|-------------|
|      | SAN BERNARDINO | Robbery (PC 211) | STATE PRISON |
|      | SAN BERNARDINO | Burglary (PC 459) | STATE PRISON |
|      |                |       |             |
|      |                |       |             |

Defendant _WAS_ charged and admitted being, or was found to have been armed with a deadly weapon at the time
(was) or (was not)
of commission of the offense, or a concealed deadly weapon at the time of his arrest within the meaning of Penal Code Sections ~~969c and 3024~~ _12022 (a)_

7956 REV 8/74

...nt __WAS  NOT__ ............ judged a habitual criminal within the meani... ..f Sub-division __A or B__ ....of
    (was) or (was not)                                              (a) or (b)

...ection 644 of the Penal Code; and the defendant __IS  NOT__ ............ a habitual criminal in accordance with Sub-division (c)
                                    (is) or (is not)
of that Section.

IT  IS  THEREFORE  ORDERED,  ADJUDGED  AND  DECREED  that the said defendant be punished by imprison-
ment in the State Prison of the State of California for the term provided by law, and that he be remanded to the Sheriff
of the.................... County of __SANTA  CLARA__ ....................and by him delivered to the Director of Corrections of the
State of California at the place hereinafter designated. __CALIFORNIA  MEDICAL  FACILITY- VACAVILLE__

It is ordered that sentences shall be served in respect to one another as follows. __CONSECUTIVE__
                                               (Note whether concurrent or consecutive as to each count):

__CT. 02  Viol. P.C. Sec. 209 (b) (KIDNAPPING FOR ROBBERY) DEFT. SENT. TO STATE PRISON FOR THE
TERM OF LIFE; FOR A VIOL P.C. SECTION 12022.5 DEFT. SENT. TO STATE PRISON FOR THE TERM OF
02 YEARS CONSECUTIVE TO LIFE TERM. CT. 02.   CT. 03. Viol. P.C. SEC. 209 (b) KIDNAPPING FOR
ROBBERY) DEFT. SENT. TO STATE PRISON FOR THE TERM OF LIFE CONSECUTIVE TO CT. 02, FOR
A VIOL. P.C. SEC. 12022 (a) DEFT. SENT. TO STATE PRISON FOR THE TERM OF 01 YEAR CONSECUTIVE
TO CT. 02 STAYED IN THE INTEREST OF JUSTICE, CT. 04  VIOL. PC SEC. 209 (b) (KIDNAPPING FOR
ROBBERY) DEFT. SENT. TO STATE PRISON FOR THE TERM OF LIFE CONSECUTIVE TO CTS COUNTS 2 AND 3.__
and in respect to any prior incomplete sentence (s) as follows: __N/A__
    (NOTE whether concurrent or consecutive as to all incomplete sentences from other jurisdictions):
__FOR A VIOL. P.C SECTION 12022 (a) DEFT. SENT. TO STATE PRISON FOR THE TERM OF 01 YEAR
CONSECUTIVE TO CTS 2 AND 3, STAYED PURSUANT TO SECTION 654 PC.
PRIOR CONVICTIONS:
FOR A VIOL PC SEC. 667/1172. 7 DEFT. SENT. STATE PRISON FOR A TERM OF 05 YEARS
CONSECUTIVE TO COUNTS 2,3,4 (SINGLE 5 YEAR TERM). FOR A VIOL PC SEC. 667.5(b) DEFT. SENT.
TO STATE PRISON FOR A TERM OF 01 YEAR CONSECUTIVE TO COUNTS 2, 3, 4.__
To the Sheriff of the .................... County of __SANTA  CLARA__ .......... and to the Director of Corrections:

Pursuant to the aforesaid judgment, this is to command you, the said Sheriff, to deliver the above-named defendant into the
custody of the Director of Corrections at __CALIFORNIA  MEDICAL  FACILITY- VACAVILLE__
at your earliest convenience.

__CREDIT FOR TIME SERVED:__   Witness my hand and seal of said court

__ACTUAL LOCAL TIME__

__504 days__          this.............28th................ day of........__APRIL__...........__1987__

__LOCAL CONDUCT CREDITS:__

__252 days__          ........__GRACE  K. YAMAKAWA__................................ Clerk

                 SEAL    by......__Ralph B. Ulate__...__(RALPH B. ULATE)__..............Deputy

__TOTAL:__

__756 days__        State of California,           } ss.

__NOTE:__             .............. County of __SANTA  CLARA__............... }

__MOTION NEW TRIAL__       I do hereby certify the foregoing to be a true and correct abstract of the judgment duly made

__DENIED 3/9/87__    and entered on the minutes of the Superior Court in the above entitled action as provided by Penal
Code Section 1213.

__MOTION TO STRIKE PRIOR__   Attest my hand and seal of the said Superior Court this....28th... day of...__APRIL__........... 19 __87__

__CONVICTIONS- DENIED 3/9/87__   __GRACE K. YAMAKAWA, COUNTY CLERK__
                           __By  Ralph B. Ulate   (RALPH B. ULATE)__

__DEFT. ADVISED__       County Clerk and Ex-officio Clerk of the Superior Court of the State of California, in and for
__APPEAL RIGHTS 3/9/87__   County of __SANTA  CLARA__....................

                      The Honorable:.......................................

                               __JACK KOMAR__
                      Judge of the Superior Court of the State of California, in and for
                      __SANTA  CLARA__...........................

Note:  If probation was granted in any sentence of which abstract of judgment is cer...
minute order reciting the fact and imposing sentence or ordering a suspended sentence in...

7956 REV 8/76

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SANTA CLARA

Court convenes at SAN JOSE

DATE: 28 APRIL 1987

Courtroom 04

PRESENT: HON __JACK KOMAR__, JUDGE

RALPH B. ULATE _____ DEPUTY CLERK

__NOT REPORTED__, REPORTER

P. O'DONOVAN _____ BAILIFF

| TITLE: THE PEOPLE OF THE STATE OF CALIFORNIA,        Plaintiff, vs. ARCADIO SERRANO ACUNA,        Defendant. | COUNSEL PRESENT:  T. HANFORD, DDA  R. DIXON, ESQ., |

NATURE OF PROCEEDINGS:

## MINUTE ORDER

THE INDETERMINATE ABSTRACT OF JUDGMENT FOR DEFENDANT ARCADIO SERRANO ACUNA DATED 09 MARCH 1987 IS ORDERED AMENDED AS FOLLOWS:

DEFENDANTS SENTENCE TO STATE PRISON FOR A VIOLATION OF PENAL CODE SECTION 12022(a) in COUNT 03 of 12 MONTHS WITH 08 MONTHS STAYED IS VACATED.

DEFENDANT SENTENCED TO STATE PRISON FOR A VIOLATION OF PENAL CODE SECTION 12022(a) IN COUNT 03 FOR THE TERM OF 12 MONTHS TO RUN CONSECUTIVE TO COUNT 02, WITH SAID 12 MONTH SENTENCE STAYED IN THE INTEREST OF JUSTICE.

*F01-B*

cc: DEPARTMENT OF CORRECTIONS
    LEGAL PROCESSING UNIT
    P.O. BOX 942883
    SACRAMENTO, CA. 94283-0001

CRIMINAL

| | | |
| --- | --- | --- |
| ☐ LAW AND MOTION MINUTES | BOOK _____ | ACTION NO. 103259 |
| XXX MINUTE ORDER | | |
| ☐ TRIAL MINUTES | PAGE _____ | DATE: 28 APRIL 1987 |

Ⓢ 2826

# Ex. B

STATE OF CALIFORNIA                                                                    DEPARTMENT OF CORRECTIONS

**ACUNA, ARCADIO, SERRANO C-43165 AKA "CADIO"**                     CDC 128-B (REV. 4/74)

On Monday, January 17, 2000, an investigation was initiated on inmate **ACUNA**, **C-43165**, per the California code of Regulations, section 3378 (d) (e), regarding his (Active/In-Active) gang status.

**ACUNA** was validated on 11-29-90, as an associate of the **Mexican Mafia** prison gang.

The last source document showing activity is dated, **08-31-90**.

During the investigation the following areas were reviewed:

| | | |
|---|---|---|
| CENTRAL FILE | 01/17/00 | I. Dominicci |
| ARCHIVES | N/A | N/A |
| LEIU/INTELL OPS | 01-28-00 | Agent D. Smith |
| CAL GANGS | 01/17/00 | Officer J. Bales |
| WSIN | 01/17/00 | Officer J. Bales |
| PAROLES, LEADS | N/A | N/A |
| LOCAL LAW ENFORCEMENT | 01/19/00 | Deputy S. Chapman |

A review of the above areas revealed no gang activity with the last six years.

A search of **ACUNA'S** assigned cell (D-6207L) proved negative for gang activity.

The Offender Based Information System (OBIS) indicated **ACUNA** has been in Pelican Bay State Prison since 01/19/91.

Based on the above information it is recommended **ACUNA, C-43165**, be placed on **In-Active** status.

**ACUNA** was photographed, and an **In-Active** package is being submitted to the Law Enforcement & Investigations Unit for approval.

*I. Dominicci*

**I. Dominicci**
I.S.U. Gang Investigator
In-Active Gang Task Force

**Pelican Bay State Prison**
DATE: 01/31/2000          **GANG INFORMATION/IGI REVIEW / IN-ACTIVE STATUS**          CDC 128-B

STATE OF CALIFORNIA
CDC 128-B-2 (5/95)

D6/207L

DEPARTMENT OF CORRECTIONS

INMATE'S NAME: ACUNA, ARCADIO

CDC NUMBER: C43165

On 02/04/00 a gang validation package regarding subject was received from Institution Gang Investigator CRANDALL at PBSP.

**TOTAL NUMBER OF ITEMS SUBMITTED FOR REVIEW:** (1)

The following items meet the validation requirements: 128B DATED 01/31/00.

**TOTAL NUMBER OF ITEMS WHICH MEET VALIDATION REQUIREMENTS:** (1)

The following items **do not** meet the validation requirements and were/shall not be used as a basis for validation: NONE.

**TOTAL NUMBER OF ITEMS WHICH DO NOT MEET VALIDATION REQUIREMENTS:** (0)

Date: 02/07/00

GANG VALIDATION/REJECTION REVIEW
(CONTINUED ON REVERSE)
LEIU/SSU

GENERAL CHRONO

---

**ACTION OF REVIEWER**

Pursuant to the validation requirements established in 15 CCR Section 3378, ACUNA, ARCADIO is:

☒ **VALIDATED**     ☐ **REJECTED**

as a inactive associate of the **MEXICAN MAFIA** prison gang.

---

**REVIEWER'S SIGNATURE**
S.C. WOHLWEND, Senior Special Agent *[signature]*

**DATE: 02/07/00**

**DISTRIBUTION:**
Original - Central File
Copy - Classification & Parole Representative/Parole Administrator I
Copy - Institutional Gang Investigator/Region Gang Coordinator
Copy - Law Enforcement Liaison Unit
Copy - Inmate/Parolee

CAPTAIN, INVESTIGATI
SERVICES

'00 FEB 10 AM 8:

RECEIVED

# Ex. C

NAME and NUMBER     ACUNA, ARCADIO     C-43165     D06-...     CDC 128-B (Rev. 4/74)

On May 26, 2006, I initiated the review of the Central Files of validated Mexican Mafia (EME) member "Cadio" Arcadio Acuna C-43165 (DOB: 10/26/1951) of Cucamonga. This review was based upon an understanding between the Attorney General's Office and Acuna's attorney, Mr. George Mavris, that there were possible due process errors (relating to confidential disclosure) associated with the revalidation of Acuna. Furthermore, the Judge has requested clarification regarding the validated status of Acuna, whether he should be validated as an EME member or as an EME associate. The Institutional Gang Investigations unit at Pelican Bay State Prison agreed to review the Central Files of Acuna to determine the appropriate status, and afford him an opportunity to address each item that may be considered for validation.

On June 2, 2006, Acuna was provided with copies of the CDC Forms 1030 disclosing each of the confidential memorandums listed in this report. He was also provided with a copy of the nonconfidential reports. Acuna was advised that he is scheduled for an interview on June 5, 2006, and informed of the purpose for the interview. There was no need to assign a Staff Assistant, as Acuna has a 12.9 grade point level, is fluent in English, and is not included in the Mental Health Services Delivery System.

On June 5, 2006, Sergeant D. Barneburg and I, as representatives of the Institution Gang Investigation Unit, interviewed Acuna regarding the following bulleted information sources. Acuna provided two handwritten response memorandums (attached, identified as Response A and Response B). Additional comments are noted with the reference to the source items listed below and on succeeding pages.

- ◆ Confidential Memorandum dated October 3, 2005 (Communication). This documents a letter from EME member "Tudy" Arthur Estrada V26050 of Cucamonga to "Spooky" Velia Mendoza W15593 (discharged) at 21957 Woodward Street, Perris, CA, 92507. Acuna is referenced as "the hometown Arcadio", and Estrada wrote that Acuna may have misled another individual a little. This does not appear to be a concern to Estrada, for he said after this "So really I'm not tripping." Staff information identified the misled individual as "Dean" Salvador Mendoza J84814 of Casa Blanca. Acuna was identified as training EME associates how to avoid becoming validated.

  **Acuna provided a handwritten response to this item (See item #1 on Response A). . During the interview, Acuna reported that he has known Estrada and his family since Estrada was about three years old. Acuna claimed he has never corresponded with Estrada.**

- ◆ Confidential Memorandum dated October 12, 2004 (communication). Notes were confiscated from Brent Ebert H78330 of Shermans at Calipatria State Prison. In one note, the author (identified as EME associate "Danny Boy" Daniel Sandigo K07935 of Upland) directs the recipient, "Anyway get at Cadio and let him know what's up with this vato and also tell Cadio to make sure that Spanky and Strañio have a safe trip back here." "Spanky" has been identified as Henry Duenas P05117.

  **Acuna provided a handwritten response to this item (See item #2 on Response A). During the interview, Acuna stated he does not know Sandigo.**

- ◆ Confidential CDC Form 128B dated August 10, 2004 (association). Acuna's name was in the address book of EME member "Turtle" Mark Quiroz C50887 of Colton. The book contained the names of over 130 EME members and associates. Both Acuna's name and CDC# were entered.

  **Acuna provided a handwritten response to this item (See item #4 on Response A). During the interview, Acuna stated he knows Quiroz from the SHU, but has not corresponded with him.**

(continued on page 2)

(Page 2, continued from page 1)

• Confidential Memorandum dated March 29, 2004 (debrief). A Northern Structure member reported that Acuna was assaulted at PBSP B Facility in 1990 by "Oso" Gerald Winston D51285, because Acuna was an EME associate and had directed assaults against Northern Hispanic inmates at PBSP Facility A (See source item dated July 30, 1990).

Acuna provided a handwritten response to this item (See item #3 on Response A). During the interview, Acuna stated he was not involved in ordering assaults on Northern Hispanic inmates. He also claimed that Winston had just arrived at PBSP B Facility, and attacked him in the Dining Room because he (Acuna) was the person seated at the table nearest the entry to the Dining Room. Acuna believed he was a target of opportunity and not the victim of a specific plan.

• Confidential Memorandum dated December 12, 2003 (communication). A note was discovered December 4, 2003 in the cell of "Duke" Victor Miranda K59950 of Pico Viejo. The note was sent to Miranda from "Nene" Hugo Hernandez H05442 of San Fer – Jokers. Hernandez wrote "Beto and Cario are close friends and they work in Auto Body. What I meant to say is take Conejo's yaves and I did. I got the yaves from Conejo. I can prove it. So I think Beto must have told Cario I told Ciego that I was gonna take the yaves, but it was never Toto's. It was Terco's...If I can get granted to put Ciego, Beto, Cario, Conejo and myself all together the truth will come out. It will show that yes Beto was under the wrong impression and he ran with it." Gilbert Lopez K86894 is "Beto" of San Diego   Armando Molinar D53455 is "Conejo" of Evergreen. Robert Lopez C06986 is "Tot" of Santa Paula. Victor Acuna D33299 is "Terco" of Bassett Grande. The term "yaves" is "llaves," and refers to authorization to conduct EME gang activities on behalf of the EME. [Note: This information does not support Acuna is an EME member, but it was accepted as a source for validation. At best, it indicates EME associate].

Acuna provided a handwritten response to this item (See item #3 on Response B). During the interview, Acuna stated the source simply assumes "Beto" told something to Acuna, and felt Acuna could contribute to verifying it. Acuna denied involvement or knowledge of any of this.

• Confidential Memorandum dated November 18, 2003 (debrief). An EME associate participated in the debriefing process. He reported that Acuna is an inactive EME associate who continues to participate in EME gang politics.

Acuna provided a handwritten response to this item (See item #5 on Response A).

• Confidential Memorandum dated September 23, 2003 (informant). A self-admitted associate of the EME reported that "Cadio" Acuna was released from PBSP-SHU after getting his status changed to inactive. The source said Acuna is very active, and was awaiting confirmation of EME membership. There were doubts about the granting of EME membership due to Acuna's age and the fact he had not killed anyone for the gang. While at CCI, Acuna was taking care of four or five EME members at PBSP-SHU. Acuna was sending money to EME members "Terco" Acuna, "Sleepy" Huerta C80766 of Wilmas, "Chino" Delgadillo D16318 of Geraghty Loma, and "Popeye." Acuna was reportedly instructing the inmates about the EME. Acuna reportedly targeted "Squid" Mark Galvan H91736 of Arlanza for assault. The targeting of Galvan for assault was questioned by another person operating for the EME. Acuna's name was on a list of persons the EME was protecting. Acuna and the other six individuals with this protection became known as the "Magnificent Seven." The note endorsing this action was signed by ten EME members from PBSP. [Note: This information does not support Acuna is an EME member, but it was accepted as a source for validation. At best, it indicates EME associate].

(continued on page 3)

(Page 3, continued from page 2)

Acuna provided a handwritten response to this item (See item #2 on Response B). During the interview, Acuna denied involvement in any of this activity. Furthermore, he stated that he would have been issued a rule violation report, and absence of it supports that he was not involved in it. He said there is no evidence of him sending money to EME members.

♦ Confidential Memorandum dated June 17, 2003 (debrief). This is a debriefing interview with an EME member, who identified Acuna as an EME associate he knew as "Cadio" of Cucamonga. Acuna is referenced on a list as an EME associate. No specific gang activity is identified

Acuna provided a handwritten response to this item (See item #6 on Response A).

♦ Confidential Memorandum dated August 8, 2002 (informant). An EME associate reported that "Cadio" Acuna taught EME associate "Corky" Manuel Flores K32962 how to communicate in code. Acuna used this code in his correspondence with "Popeye" at PBSP. Acuna used "Dean" Salvador Mendoza to assist in redirecting his letters to avoid staff detection that could result in Acuna's return to active status.

Acuna provided a handwritten response to this item (See item #7 on Response A).

♦ Confidential Memorandum dated March 5, 2002 (debrief). A validated EME associate reported that Acuna and "Jo Jo" (identified as EME associate Anthony Sisneros D68626) of Trece Locos were directing the gang activities in PBSP ASU in 1990. Acuna was identified as providing weapons to other EME associates. The source identified Acuna as an EME associate known as "Cadio" of Cucamonga.

Acuna provided a handwritten response to this item (See item #8 on Response A).

♦ Confidential Memorandum dated December 12, 2001 (informant). This reports an interview with an inmate who stated a conflict occurred between Marshal Smith P07620 and Acuna at CCI IV-A Law Library on December 4, 2001. When Acuna warned Smith he could receive a rule violation report if he goes behind the counter, Smith began calling Acuna a "rat" and a "snitch." According to the informant, this resulted in Smith having safety concerns from Acuna on the yard.

Acuna provided a handwritten response to this item (See item #9 on Response A). During the interview, Acuna said that Smith was a "ding" and did this in front of many people. He denies targeting Smith or giving any attention to the behavior.

♦ Confidential CDC Form 128B dated September 21, 2000 (communication). In a letter, Josie Acuna informed Arcadio Acuna that she encountered EME member "Tudy" Estrada at the Department of Motor Vehicles. She informed Acuna that she gave Estrada Acuna's address, and Estrada said he would soon be corresponding with him. Josie Acuna also stated that if there is anything important to pass along to Estrada, he simply needs to send her the letter and she will deliver it to Estrada.

Acuna provided a handwritten response to this item (See item #1 on Response B). During the interview, Acuna stated that "Josie" is his niece. He added that he has known Estrada's family for many years, but he has not corresponded with him.

(continued on page 4)

(Page 4, continued from page 3)

◆ Confidential Memorandum dated January 5, 2000 (debrief). This is a debriefing interview with an EME associate, who identified Acuna as an EME associate he knew as "Arcadio" of Cucamonga. Acuna is referenced on a list as an EME associate. No specific gang activity is identified.

Acuna provided a handwritten response to this item (See item #10 on Response A).

◆ Confidential Memorandum dated March 14, 1997 (debrief). This is a debriefing interview with an EME associate, who identified Acuna as an EME associate he knew as "Cadio" of Cucamonga. Acuna is referenced on a list as an EME associate. No specific gang activity is identified.

Acuna provided a handwritten response to this item (See item #11 on Response A).

◆ Confidential CDC 128B dated November 7, 1996 (debrief). This is a debriefing interview with an EME associate. The source reported that in 1990, Acuna was directing gang activities on behalf of the EME at PBSP Administrative Segregation. The source added that Acuna's cellmate was Manuel Aguirre C90519. The source identified Acuna as an EME associate known as "Cadio."

Acuna provided a handwritten response to this item (See item #12 on Response A).

◆ CDC Form 128A dated May 3, 1996 (offense). Acuna was observed by staff passing a folded paper to EME member "Wino" Thomas Grajeda C90753 (now V22200) in the PBSP SHU Law Library where communication between inmates is prohibited. A subsequent search of both inmates did not yield discovery of the paper. Based on the event, Acuna was restricted from physical access to the Law Library for 45 days.

Acuna did not address this item in his handwritten responses. During the interview, he stated that he did not pass a note. He said Grajeda asked him for a pen filler. He said he wrapped it in a paper for weight and slid it to him. He said this was not related to gang activity or behavior.

◆ Confidential Memorandum dated February 10, 1995 (debrief). This is a debriefing interview with an EME associate. The source identified Acuna as an EME associate known as "Cadio" of Cucamonga. He stated Acuna was assaulted in the B4 Dining Room in 1990 by a gang rival, a Northern Hispanic (identified in the report as NS member "Oso" Gerald Winston D51285: see source item dated July 30, 1990).

Acuna provided a handwritten response to this item (See item #13 on Response A).

◆ Confidential Memorandum dated January 31, 1994 (communication). This documents the misuse of legal assistance between inmates for the purpose of EME member "Tupi" Ruben Hernandez C-04672 to pass along a coded message on January 26, 1994, to Acuna. In the message, Hernandez made reference to "Estrada v. Cucamonga 94 Daily Journal 237. Tudy made out alright. 7 years." Hernandez referenced a volume of the Daily Journal that did not exist in order to pass along information to Acuna about EME member "Tudy" Arthur Estrada C63175 (now V26050) of Cucamonga.

Acuna provided a handwritten response to this item (See item #14 on Response A).

(continued on page 5)

(Page 5, continued from page 4)

♦ Confidential Memorandum dated May 13, 1993 (informant). This documents an interview with an EME associate. The source identified Acuna as "Cadio" of Cucamonga, and reported that Acuna was recently (1993) granted EME membership. The source also reported that Acuna's crime partner was "Huero" Marco Ramirez C55431 of Ontario, who was assaulted at PBSP B Facility by EME associates for becoming a "Christian."

Acuna provided a handwritten response to this item (See item #15 on Response A). During the interview, Acuna claims he did not know Ramirez was assaulted. [Investigative Note: Page 3 of Santa Clara County Probation Officer Report dated March 9, 1987 in Central File of Acuna reflects that Marco Anthony Ramirez, Jr. was Acuna's crime partner].

♦ Confidential Memorandum dated February 1, 1993 (debrief). This documents a debriefing interview with an EME associate. The source reported that Acuna was one of the EME's representatives in PBSP B Facility, and was slashed across the face by a Northern Hispanic inmate when he was eating in the dining room (See source item dated July 30, 1990). After Acuna arrived at PBSP Administrative Segregation Unit, he wrote to EME associate "Gusi" Gustavo Flores C62331 of Rivas and directed an assault on "Wolfie" Louis Robles D11016 of Casa Blanca because Robles failed to warn or assist Acuna when he was assaulted in the Dining Room. Instead, Robles was cleared of any wrongdoing by other EME associates. The source identified Acuna as "Cadio" of Cucamonga.

Acuna provided a handwritten response to this item (See item #16 on Response A). During the interview, Acuna denied targeting Robles, and added that Robles was his cellmate.

♦ Confidential Memorandum dated October 29, 1992 (communication). In a letter from EME associate "Little Spider" Roy Gavaldon C15377 to his brother, EME member "Big Spider" David Gavaldon C15376, the younger Gavaldon informs his brother that Acuna received a letter from a lawyer who has an office in his area. Included with the letter was a birthday greeting card for David Gavaldon signed by various EME associates, including Acuna. Acuna's message to Gavaldon, with portions in Spanish translated, stated the following "With all my respect, I send you greetings. Hope to see you again soon. Your pal, Cadio." The letter accompanying the card contained coded information (numbers written in Nahuatl), references to several EME members, names of people who were just granted EME membership, and other EME gang-related messages. Based on this, the correspondence is considered to be EME gang-related communication.

Acuna provided a handwritten response to this item (See item #17 on Response A).

♦ Confidential Memorandum dated May 2, 1991 (debrief). This is a debriefing interview with an EME associate, who identified Acuna as an EME associate he knew as "Cadio" of Cucamonga. Acuna is referenced on a list as an EME associate. No specific gang activity is identified.

Acuna provided a handwritten response to this item (See item #18 on Response A).

♦ Confidential Memorandum dated August 31, 1990 (interview). This is an interview with an EME associate, who identified Acuna as an active EME associate. Acuna is referenced on a list as an EME associate. No specific gang activity is identified.

Acuna provided a handwritten response to this item (See items #19 and #20 on Response A).

(continued on page 6)

(Page 6, continued from page 5)

◆ CDC Form 115 dated July 30, 1990, Log# B-90-07-146 (offense). Acuna was involved in an altercation with gang rival, NS member "Oso" Gerald Winston D51285. Acuna was slashed across the face and neck by Winston, and retaliated by kicking him. The two inmates continued to fight on the floor until responding staff arrived. Acuna pled guilty and was assessed 90 days loss of credit.

   **Acuna did not address this item in his handwritten responses. Additional or corroborative information is contained in other source items].**

◆ Confidential Memorandum dated April 9, 1990 (interview). This is an interview with an EME associate, who identified Acuna as an EME associate he knew as "Cadio" of Cucamonga. Acuna is referenced on a list as an EME associate. No specific gang activity is identified.

   **Acuna provided a handwritten response to this item (See item #21 on Response A).**

◆ Confidential Memorandum dated September 20, 1989 (debrief). This is a debriefing interview with an EME associate, who identified Acuna as an EME associate he knew as "Carrio." The source stated that Acuna may have been involved in the riot that took place at California State Prison Sacramento County on May 25, 1989 (referring to the EME gang-related assault on Black inmates).

   **Acuna provided a handwritten response to this item (See items #22 and #23 on Response A). During the interview, Acuna reported that he was initially charged with participating in the riot, but he was found not guilty. Acuna's Central File does not contain a rule violation report to indicate his involvement in the incident.**

◆ Confidential Memorandum dated October 11, 1988 (debrief). This is a debriefing interview with an EME associate, who identified Acuna as an EME associate he knew as "Gladio." Acuna is referenced on a list as an EME associate. No specific gang activity is identified

   **Acuna provided a handwritten response to this item (See item #24 on Response A).**

Following the interview, Acuna was reviewed for tattoos to see if any reflected EME gang affiliation. Acuna has a scar on his left shoulder from a rotator cup surgery. No tattoos were observed that were specific to EME gang affiliation. The following are the tattoos that were noted and photographed:

◆ Stomach: Cucamonga

◆ Neck (Right side): "Eliana" covering "Tonia"
◆ Left Forearm: butterfly, roses, "Andrea"
◆ Right Forearm: coiled snake, "Cuca"

◆ Back: two bare-breasted women, one wearing a sombrero
◆ Left Leg: bare-breasted female, cross
◆ Right Leg: faded dragon; two roses above knee
◆ Left Ankle: "Viva mi raza"

The documentation does not appear to support EME membership, but association is reflected.

D. T. Hawkes
Correctional Counselor II
Institution Gang Investigations Unit
Pelican Bay State Prison

GENERAL CHRONO

DATE:    June 5, 2006

To: D.T. Hawkes

PBSP-SHU

Correctional Counselor II

From: A. Acuña #C-43165

PBSP-SHU IFD 6-113

Date: June 05, 2006

RESPONSE A

Re: Superior Court Case # HCPB-05-5242

Notwithstanding the fact that only the (3)CDC-128 B Confidential memo's dated 9/24/00, 9/23/03 and 12/12/03, were relied on in the validation which is the basis for the above cited court action, and the other (24) CDC-128 B Confidential memo's disclosed on 4/02/06 are not relevant to the validation process at issue under provisions set forth in the Code of Regulations, I will briefly address each item as follows:

(1) CDC-128 B Confidential memo dated 10/3/05 - Alleges a letter was written to the mother of one of my ex-cell mates by Arthur Estrada, but does not identify any gang activity on my part, and does not show I have ever communicated with Estrada.

(2) CDC-128 B Confidential memo dated 10/12/04 - Discloses that a note confiscated from a prisoner at California State Prison mentions me by name but does not provide information depicting gang activity on my part.

(3) CDC-128 B Confidential memo dated 3/24/04 - Simply reports information taken from a RVR written in 1990 where I was found guilty of an assault. The informant falsely claims I had directed assaults against Northern Hispanic inmates at PBSP during some unspecified time, when no such conduct

has ever been documented.

(4) CDC-128 B Confidential Memo dated 3/10/04 - States my name and number found in another prisoner's phone book. No link to gang activity, or evidence that I ever communicated with this person.

(5) CDC-128 B Confidential Memo dated 11/18/03 - Self-serving debriefing statement alleging unverified, and non-specific acts of misconduct.

(6) CDC-128 B Confidential Memo dated 4/17/03 - Alleges gang association with no specific reference to verifiable acts.

(7) CDC-128 B Confidential Memo dated 3/13/02 - Alleges through hearsay that I was instructing prisoners on how to communicate in code in a self-serving debriefing statement with no direct evidence of gang activity.

(8) CDC-128 B Confidential Memo dated 3/5/02 - Informant claims I was directing gang activities and providing weapons to other prisoners, yet offers no direct or verifiable evidence of such conduct.

(9) CDC-128 B Confidential Memo dated 12/12/01 - Alleges a conflict arose between myself and another prisoner which resulted in this individual having safety concerns. No allegations of gang activity were made.

(10) CDC-128 B Confidential Memo dated 3/5/00 - Outdated information containing no specific allegations of gang conduct.

(11) CDC-128 B Confidential Memo dated 3/14/97 - No specific gang activity alleged.

(12) CDC-128 B Confidential Memo dated 11/7/96 - No specific gang activity is alleged.

(13) CDC-128 B Confidential Memo dated 2/10/95 - Simply makes reference to RVR where I was found guilty of mutual combat.

(14) CDC-128 B Confidential Memo dated 1/3/94 - Discloses that a note

was intercepted via legal correspondence, but does not reveal gang activity on my part.

(15) CDC-128 B Confidential Memo dated 5/13/93 - Informant claims knowledge of my being accepted into membership, and references an alleged assault on my crime partner that I was never aware of. No direct evidence of misconduct is provided.

(16) CDC-128 B Confidential memo dated 7/11/93 - A debriefer claims I wrote to another prisoner seeking to have an individual assaulted. No direct evidence provided to show any such communication ever took place.

(17) CDC-128 B Confidential memo dated 10/29/92 - Documents a birthday card that was sent from one prisoner to his brother. No gang activity noted.

(18) CDC-128 B Confidential memo dated 7/2/91 - Debriefer claims association, but offers no direct link to specific acts.

(19) CDC-128 B Confidential memo dated 8/31/80 - Debriefer claims association with no evidence of misconduct.

(20) CDC-128 B Confidential Memo dated 8/31/90 - No specific gang activity alleged.

(21) CDC-128 B Confidential memo dated 4/9/90 - Debriefing statement containing no verifiable acts of gang activity.

(22) CDC-128 B Confidential memo dated 9/20/89 - Informant claimed I was involved in racial disturbance at New Folsom when I was specifically found "not guilty" of such misconduct.

(23) CDC-128 B Confidential Memo dated 9/20/89 - Debriefing statement makes no reference to specific gang activity.

(24) CDC-128 B Confidential memo dated 10/14/88 - Informant alleges association without evidence of specific acts

Finally, because all of the above cited documents did

not form part of the evidence relied on in the validation process at issue here they are wholly irrelevant and are completely misleading as to how I have conducted myself over the course of the 20+yrs. of my current incarceration. Many acts of serious misconduct are alleged, yet a review of my prison file shows I have _never_ been charged or found guilty via a CDC-115 RVR of conduct which shows I have been as deeply involved in gang activity as prison officials seem to be trying to convince the court I have been. Again, I vehemently declare I am not now, nor have I ever been a member of a prison gang, and assert that the only reason I was validated as a member is because I refused to become an informant.

/s/ _Aricidio Acuna_
A. Acuña # C-43165

(4)

RESPONSE B

To: D.T. Hawkes
PBSP-SHU
Correctional Counselor II

From: A. Acuna # C-43165
PBSP-SHU / FD6-113

Date: June 08, 2006

Re: Superior Court Case # HCPB-05-5242

on 6/02/06, I received written Notice that I would be interviewed by the IGI on 6/5/06 per an agreement entered into between the Attorney General's office and the attorney representing me in the above referenced court action where I challenged my validation as a member of a prison gang and the indeterminate term of segregation imposed as a result of that validation. A total of (27) CDC-1030 Confidential Information Disclosure Forms were provided, some of them dating back almost 20 yrs. but only (3) of these were actually relied on in the validation process, and it was the first time ever the information contained there was revealed to me. Because the purpose of the forthcoming interview is to determine whether I was provided with the due process required by law in the validation and examine the source items to see if they support my validation as a member of a prison gang, each of these documents is addressed as follows:

(1) CDC-128 A Confidential Memo dated 4/21/00 - The New 1030 form discloses that I received a letter from my niece, Josie Acuna, while I was at CCI where she wrote she had seen Arthur Estrada and gave him my address.

(1)

The form does not allege that I ever communicated with Estrada through my niece in any way shape or form, either directly or indirectly. It does not show I actively promoted, furthered or abetted any verified gang activity, and certainly does not by any means establish I have been accepted into membership by the criteria set forth in the Code of Regulations. At most, it indicates I know Estrada because we are from the same neighborhood and I grew up with his mom and Dad and we were cell mates here at PBSP-SHU in the mid-1990's. But more importantly, it cannot be disputed the documented information was not disclosed to me in accordance with established criteria prior to when the validation package was submitted to the LEIU in Sacramento.

(2) CDC-128 B Confidential memo dated 4/23/03 - The new 103c form I received on 6/02/06 puts forth numerous allegations of gang activity, documenting that I was "reportedly" instructing inmates about gang activity, that I was sending money to various individuals, that I targeted a prisoner for assault, and a note endorsing my actions was signed by ten validated gang members from PBSP. All of this information is patently false and unverified, the so-called note never existed, and because the charges of misconduct are so serious, it cannot be argued that if prison officials had actually accepted the information as true they would have been obligated by provisions in the Code of Regulations to issue a RVR, and at the very least should have placed me in Ad Seg and taken preventive measures to insure the safety of the individual the informant

(2)

claimed I was targeting for assault. Obviously, the debriefer who provided this false information could not have had first-hand knowledge of something that never occurred and was able to make these wild accusations because he knew I had arrived from PBSP-SHU and was simply assisting himself in the debriefing process knowing the IGI would accept the information as true once the debriefer implicated himself in gang activity. Also, a review of the documents shows the information was not properly disclosed before the validation package was submitted to the LEIU.

(3) CDC-128 B Confidential Memo dated 12/22/03 — This new and expanded disclosure form documents that a note was recovered from a prisoner's cell where another prisoner speculates I may have been provided with information dealing with prison politics by yet another prisoner, but does not allege any gang activity on my part. I was never aware of the situation described in the note until now, and in any case the source item does not establish that I had been accepted into membership of a gang, does not in any way shape or form indicate I was specifically acting to further, aid or abet criminal gang activity, and was not disclosed before the validation package was submitted to the LEIU.

But more importantly, taken individually or collectively, the source items do not establish I have been accepted into factual membership in accordance with the criteria set forth in the Code of Regulations. A review of the record shows that the source items were not disclosed according to manda-tory procedures and do not contain evidence of verified

gang activity.

Furthermore, great emphasis must be put on the fact that I remained in the general population of various prisons for almost 4 yrs. after I was granted inactive status in 2000 and that not once during that time period was I issued a CDC-115 RVR for the serious gang misconduct alleged in the source items. Instead, documentation in my prison file shows I performed all of my assigned duties diligently, that I received commendatory work reports from all of my supervisors and was regularly rewarded with classification score reductions for good conduct.

Finally, I am stating for the record that this is the first time ever the information contained in the 3-source items used in the validation process has been disclosed to me, I assert that all of the allegations of gang activity contained therein are false, I submit the only reason I was validated was because I refused to become an informant, and under penalty of perjury declare I am not now, nor have I ever been a member of a gang.

/s/ Cereezio-Clcuna
(1. Acuna # C-43165

# Ex. D

ARTMENT OF CORRECTIONS

STATE OF CALIFORNIA.
CDC 128-B-2 (5/95)

CDC NUMBER: C43165

INMATE'S NAME: Arcadio ACUNA

On October 5, 1995, a CDC 128B2 regarding subject was issued identifying subject as an Active EME associate based upon a gang validation package submitted by Institution Gang Investigator Bell at FOL. A subsequent CDC 128B2 dated February 7, 2000, was issued identifying subject as Inactive. On January 12, 2004, an Active/Inactive Review was completed by Institutional Gang Investigator Garcilazo at LAC, which resulted in a CDC 128B2 dated January 20, 2004, identifying subject as an active EME member. In an agreement with the Del Norte County Superior Court, the validation of subject and his current status were to be reviewed. The following documents were submitted to UPDATE and CHANGE subject's validation status:

### TOTAL NUMBER OF ITEMS SUBMITTED FOR REVIEW: (27)

Item (1) Confidential Memorandum dated 10/3/05 (Communications)
Item (2) Confidential Memorandum dated 10/12/04 (Communications)
Item (3) Confidential CDC 128B dated 8/10/04 (Association)
Item (4) CDC 115 dated 7/30/90 (Offenses) supported by
    Confidential Memorandum dated 3/29/04 (Debrief),
    Confidential Memorandum dated 2/10/95 (Debrief), and
    Confidential Memorandum dated 2/1/93 (Debrief)
Item (5) Confidential Memorandum dated 12/12/03 (Communications) (Accepted 1/20/04)
Item (6) Confidential Memorandum dated 11/18/03 (Debrief)
Item (7) Confidential Memorandum dated 9/23/03 (Informant) (Accepted 1/20/04)
Item (8) Confidential Memorandum dated 8/8/02 (Informant)
Item (9) Confidential Memorandum dated 3/5/02 (Debrief)
Item (10) Confidential CDC 128B dated 9/21/00 (Communications) (Accepted 1/20/04)
Item (11) Confidential Memorandum dated 1/31/94 (Communications)
Item (12) Confidential Memorandum dated 5/13/93 (Informant)
Item (13) Confidential Memorandum dated 10/29/92 (Communications)
Item (14) Confidential Memorandum dated 8/31/90 (Debrief) (Accepted 10/5/95)
Item (15) Confidential Memorandum dated 9/20/89 (Debrief) (Accepted 10/5/95)
Item (16) Confidential Memorandum dated 10/11/88 (Informant) (Accepted 10/5/95)

### TOTAL NUMBER OF ITEMS WHICH MEET VALIDATION REQUIREMENTS: (19)

The following items **do not meet** the validation requirements and were/shall not be used as a basis for validation:

Item (1) Confidential Memorandum dated 6/17/03 (Debrief) (No EME activity noted)
Item (2) Confidential Memorandum dated 12/12/01 (Informant) (No EME activity noted)
Item (3) Confidential Memorandum dated 1/5/00 (Debrief) (No EME activity noted)
Item (4) Confidential Memorandum dated 3/14/97 (Debrief) (No EME activity noted)
Item (5) Confidential Memorandum dated 11/7/96 (Debrief) (No EME activity noted)
Item (6) CDC 128B dated 5/3/96 (Offenses) (No EME activity noted)
Item (7) Confidential Memorandum dated 5/2/91 (Debrief) (No EME activity noted)
Item (8) Confidential Memorandum dated 4/9/90 (Informant) (No EME activity noted)

### TOTAL NUMBER OF ITEMS WHICH DO NOT MEET VALIDATION REQUIREMENTS: (8)

### ACTION OF REVIEWER

Pursuant to the validation requirements established in 15 CCR Section 3378, Arcadio ACUNA is:

☒ VALIDATED    ☐ REJECTED

as an "Active" associate of the Mexican Mafia prison gang.

**ACTIVE/INACTIVE REVIEW**

**OCT - 3 2011**

**ELIGIBILITY DATE**

CDC 128B2
Arcadio ACUNA, C43165
Page 2

SIGNATURE
CHAIRPERSON

SIGNATURE
MEMBER

SIGNATURE
MEMBER

Printed name

Everett W. Fischer
Printed name

G. Williams
Printed name

DATE: 7/26/06

GANG VALIDATION/REJECTION REVIEW
GENERAL CHRONO
LEIU/SSU

DISTRIBUTION:
Original - Central File
Copy - Classification & Parole Representative/Parole Administrator I
Copy - Institutional Gang Investigator/Region Gang Coordinator
Copy - Law Enforcement Liaison Unit
Copy - Inmate/Parolee

**Ex. E**

STATE OF CALIFORNIA                                        DEPARTMENT OF CORRECTIONS
CDC 1030 (12/86)

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER    C43165          INMATE NAME:    ACUNA, ARCADIO

1) Use of Confidential Information.

   Information received from a confidential source(s) has been considered in the:

   a) CDC-115, Disciplinary Report dated _____ submitted by

   _____
                                    STAFF NAME, TITLE

   b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2) Reliability of Source.

   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

   This information is considered reliable because:

   a)☐ This source has previously provided confidential information which has proven to be true.

   b)☐ This source participated in and successfully completed a Polygraph examination.

   c)☐ More than one source independently provided the same information.

   d)☐ This source incriminated himself/herself in a criminal activity at the time of providing the information.

   e)☐ Part of the information provided by the source(s) has already proven to be true.

   f)☒ Other (Explain) _____
        Letter from EME member "Tudy" Arthur Estrada V26050

3) Disclosure of information received.


In a letter from EME member "Tudy" Arthur Estrada V26050 of Cucamonga to "Spooky" Velia
Mendoza W15593 (discharged) [at 21957 Woodward Street; Perris, CA, 92507], Acuna is referenced
as "the hometown Arcadio." Estrada wrote that Acuna may have misled another individual a little. This
does not appear to be a concern to Estrada, for he said after this "So really I'm not tripping." Staff
information identified the misled individual as "Dean" Salvador Mendoza J84814 of Casa Blanca.
Acuna was identified as training EME associates how to avoid becoming validated


(If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material

   folder). _____

   Confidential Memorandum dated October 3, 2005 in confidential section of C-File _____

D. T. Hawkes, Correctional Counselor II                          June 2, 2006
           STAFF SIGNATURE, TITLE                                DATE DISCLOSED
        DISTRIBUTION: WHITE σ; Central File;  GREEN ∞ Inmate;  YELLOW ∞ Institution Use

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

CDC 1030 (12/86)

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER **C43165**     INMATE NAME: **ACUNA, ARCADIO**

1) Use of Confidential Information.

    Information received from a confidential source(s) has been considered in the:

    a) CDC-115, Disciplinary Report dated _____ submitted by

    _____

                               STAFF NAME, TITLE

    b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2) Reliability of Source.

    The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

    This information is considered reliable because:

    a) ☐ This source has previously provided confidential information which has proven to be true.

    b) ☐ This source participated in and successfully completed a Polygraph examination.

    c) ☐ More than one source independently provided the same information.

    d) ☐ This source incriminated himself/herself in a criminal activity at the time of providing the information.

    e) ☐ Part of the information provided by the source(s) has already proven to be true.

    f) ☒ Other (Explain) _____

        Notes confiscated from Brent Ebert H78330 of Shermans at Calipatria State Prison.

3) Disclosure of information received.

In one note, the author (identified as EME associate "Danny Boy" Daniel Sandigo K07935 of Upland) directs the recipient, "Anyway get at Cadio and let him know what's up with this vato and also tell Cadio to make sure that Spanky and Straño have a safe trip back here." "Spanky" has been identified as Henry Duenas P05117.

(If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material folder). _____

    Confidential Memorandum dated October 12, 2004 in confidential section of C-File

_D. T. Hawkes_

D. T. Hawkes, Correctional Counselor II
            STAFF SIGNATURE, TITLE

June 2, 2006
DATE DISCLOSED

DISTRIBUTION: WHITE ᴄɴ Central File; GREEN ᴄᴏ Inmate; YELLOW ᴄᴏ Institution Use

STATE OF CALIFORNIA DE    RTMENT OF CORRECTIONS
CDC 1030 (12/86)

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER   **C43165**          INMATE NAME:   **ACUNA, ARCADIO**

1) Use of Confidential Information.

Information received from a confidential source(s) has been considered in the:

a) CDC-115, Disciplinary Report dated _____ submitted by

_____
STAFF NAME, TITLE

b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2) Reliability of Source.

The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

This information is considered reliable because:

a)☐ This source has previously provided confidential information which has proven to be true.

b)☐ This source participated in and successfully completed a Polygraph examination.

c)☐ More than one source independently provided the same information.

d)☐ This source incriminated himself/herself in a criminal activity at the time of providing the information.

e)☐ Part of the information provided by the source(s) has already proven to be true.

f)☒ Other (Explain) _____
     Address book of EME member "Turtle" Mark Quiroz C50887 of Colton

3) Disclosure of information received.

Acuna's name was in the address book of EME member "Turtle" Mark Quiroz C50887 of Colton. The book contained the names of over 130 EME members and associates. Both Acuna's name and CDC# were entered.

(If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material folder). _____

  Confidential CDC Form 128B dated August 10, 2004 in confidential section of C-File

*D. T. Hawkes*

D. T. Hawkes, Correctional Counselor II.                          June 2, 2006
              STAFF SIGNATURE, TITLE                              DATE DISCLOSED
          DISTRIBUTION: WHITE ▭ Central File; GREEN ▭ Inmate; YELLOW ▭ Institution Use

STATE OF CALIFORNIA
CDC 1030 (12/86)

DEPARTMENT OF CORRECTIONS

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER   C43165

INMATE NAME:   ACUNA, ARCADIO

1) Use of Confidential Information.

Information received from a confidential source(s) has been considered in the:

a) CDC-115, Disciplinary Report dated _____ submitted by

_____
STAFF NAME, TITLE

b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2) Reliability of Source.

The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

This information is considered reliable because:

a) ☐ This source has previously provided confidential information which has proven to be true.

b) ☐ This source participated in and successfully completed a Polygraph examination.

c) ☐ More than one source independently provided the same information.

d) ☐ This source incriminated himself/herself in a criminal activity at the time of providing the information.

e) ☐ Part of the information provided by the source(s) has already proven to be true.

f) ☒ Other (Explain) _____

   Note discovered in cell of "Duke" Victor Miranda K59950 of Pico Viejo, Dec. 4, 2003

3) Disclosure of information received.

The note was sent to Miranda from "Nene" Hugo Hernandez H05442 of San Fer – Jokers. Hernandez wrote:
"Beto and Cario are close friends and they work in Auto Body. What I meant to say is take Coriejo's yaves and I
did. I got the yaves from Conejo. I can prove it. So I think Beto must have told Cario I told Ciego that I was
gonna take the yaves, but it was never Toto's. It was Terco's...If I can get granted to put Ciego, Beto, Cario,
Conejo and myself all together the truth will come out. It will show that yes Beto was under the wrong
impression and he ran with it." Gilbert Lopez K86894 is "Beto" of San Diego  Armando Molinar D53455 is
"Conejo" of Evergreen. Robert Lopez C06986 is "Toto" of Santa Paula. Victor Acuna D33299 is "Terco" of
Bassett Grande. The term "yaves" is "llaves," and refers to authorization to conduct EME gang activities on
behalf of the EME.

(If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material
folder). _____

   Confidential Memorandum dated December 12, 2003 in confidential section of C-File

_D. T. Hawkes_ (signature)

D. T. Hawkes, Correctional Counselor II
STAFF SIGNATURE, TITLE

June 2, 2006
DATE DISCLOSED

DISTRIBUTION: WHITE ☐ Central File;  GREEN ☐ Inmate;  YELLOW ☐ Institution Use

STATE OF CALIFORNIA
CDC 1030 (12/86)

DEPARTMENT OF CORRECTIONS

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER   C43165          INMATE NAME:  ACUNA, ARCADIO

1) Use of Confidential Information.

   Information received from a confidential source(s) has been considered in the:

   a) CDC-115, Disciplinary Report dated _____ submitted by

   _____
   STAFF NAME, TITLE

   b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2) Reliability of Source.

   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

   This information is considered reliable because:

   a) ☐ This source has previously provided confidential information which has proven to be true.

   b) ☐ This source participated in and successfully completed a Polygraph examination.

   c) ☒ More than one source independently provided the same information.

   d) ☒ This source incriminated himself/herself in a criminal activity at the time of providing the information.

   e) ☒ Part of the information provided by the source(s) has already proven to be true.

   f) ☐ Other (Explain) _____
   _____

3) Disclosure of information received.

An EME associate during a debriefing interview, reported that Acuna is an inactive EME associate who continues to participate in EME gang politics.

(If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material folder). _____

   Confidential Memorandum dated November 18, 2003 in confidential section of C-File

*D. T. Hawkes*

D. T. Hawkes, Correctional Counselor II          June 2, 2006
STAFF SIGNATURE, TITLE                           DATE DISCLOSED

DISTRIBUTION: WHITE ∞ Central File;  GREEN ∞ Inmate;  YELLOW ∞ Institution Use

06/15/2006

STATE OF CALIFORNIA
CDC 1030 (12/86)

DEPARTMENT OF CORRECTIONS

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER    C43165          INMATE NAME:   ACUNA, ARCADIO

1) Use of Confidential Information.

Information received from a confidential source(s) has been considered in the:

a) CDC-115, Disciplinary Report dated _____ submitted by

_____
STAFF NAME, TITLE

b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2) Reliability of Source.

The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

This information is considered reliable because:

a) ☐ This source has previously provided confidential information which has proven to be true.

b) ☐ This source participated in and successfully completed a Polygraph examination.

c) ☒ More than one source independently provided the same information.

d) ☒ This source incriminated himself/herself in a criminal activity at the time of providing the information.

e) ☒ Part of the information provided by the source(s) has already proven to be true.

f) ☐ Other (Explain) _____

_____

3) Disclosure of information received.

A self-admitted associate of the EME reported that "Cadio" Acuna was released from PBSP-SHU after getting his status changed to inactive. The source related that Acuna is very active, and was awaiting confirmation of EME membership. There were doubts about the granting of EME membership due to Acuna's age and the fact he had not killed anyone for the gang. While at CCI, Acuna was taking care of four or five EME members at PBSP-SHU. Acuna was sending money to EME members "Terco" Acuna, "Sleepy" Gabriel Huerta C80766 of Wilmas, "Chino" David Delgadillo D16318 of Geraghty Loma, and "Popeye." Acuna was reportedly instructing the inmates about the EME. Acuna reportedly targeted "Squid" Mark Galvan H91736 of Arlanza for assault. The targeting of Galvan for assault was questioned by another person operating for the EME. Acuna's name was on a list of persons the EME was protecting. Acuna and the other six individuals with this protection became known as the "Magnificent Seven." The note endorsing this action was signed by ten EME members from PBSP

(If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material folder). _____

  Confidential Memorandum dated September 23, 2003 in confidential section of C-File

_D. T. Hawkes, Correctional Counselor II_
STAFF SIGNATURE, TITLE

June 2, 2006
DATE DISCLOSED

DISTRIBUTION: WHITE ▭ Central File;  GREEN ▭ Inmate;  YELLOW ▭ Institution Use

STATE OF CALIFORNIA
CDC 1030 (12/86)

DEPARTMENT OF CORRECTIONS

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER   **C43165**          INMATE NAME:   **ACUNA, ARCADIO**

1) Use of Confidential Information.

    Information received from a confidential source(s) has been considered in the:

    a) CDC-115, Disciplinary Report dated _____ submitted by

    _____
    STAFF NAME, TITLE

    b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2) Reliability of Source.

    The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

    This information is considered reliable because:

    a) ☐ This source has previously provided confidential information which has proven to be true.

    b) ☐ This source participated in and successfully completed a Polygraph examination.

    c) ☒ More than one source independently provided the same information.

    d) ☒ This source incriminated himself/herself in a criminal activity at the time of providing the information.

    e) ☒ Part of the information provided by the source(s) has already proven to be true.

    f) ☐ Other (Explain) _____

3) Disclosure of information received.

An EME associate reported that "Cadio" Acuna taught EME associate "Corky" Manuel Flores K32962 how to communicate in code. Acuna used this code in his correspondence with "Popeye" at PBSP. Acuna used "Dean" Salvador Mendoza to assist in redirecting his letters to avoid staff detection that could result in Acuna's return to active status.

(If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material folder). _____

    Confidential Memorandum dated August 8, 2002 in confidential section of C-File

_D. T. Hawkes_ (signature)

D. T. Hawkes, Correctional Counselor II                          June 2, 2006
            STAFF SIGNATURE, TITLE                              DATE DISCLOSED

DISTRIBUTION: WHITE ∞ Central File; GREEN ∞ Inmate; YELLOW ∞ Institution Use

STATE OF CALIFORNIA
CDC 1030 (12/86)

DEPARTMENT OF CORRECTIONS

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER    C43165      INMATE NAME:    **ACUNA, ARCADIO**

1) Use of Confidential Information.

     Information received from a confidential source(s) has been considered in the:

     a) CDC-115, Disciplinary Report dated _____ submitted by

     _____
                             STAFF NAME, TITLE

     b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2) Reliability of Source.

     The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

     This information is considered reliable because:

     a) ☐ This source has previously provided confidential information which has proven to be true.

     b) ☐ This source participated in and successfully completed a Polygraph examination.

     c) ☐ More than one source independently provided the same information.

     d) ☐ This source incriminated himself/herself in a criminal activity at the time of providing the information.

     e) ☐ Part of the information provided by the source(s) has already proven to be true.

     f) ☒ Other (Explain) _____

         Letter from Josie Acuna to Arcadio Acuna

3) Disclosure of information received.

In a letter, Josie Acuna informed Arcadio Acuna that she encountered EME member "Tudy" Estrada at the Department of Motor Vehicles. She informed Acuna that she gave Estrada Acuna's address, and Estrada said he would soon be corresponding with him. Josie Acuna also stated that if there is anything important to pass along to Estrada, he simply needs to send her the letter and she will deliver it to Estrada

(If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material folder). _____

     Confidential CDC Form 128B dated September 21, 2000 in confidential section of C-File

_D. T. Hawkes, Correctional Counselor II_
STAFF SIGNATURE, TITLE

June 2, 2006
DATE DISCLOSED

DISTRIBUTION: WHITE ▭ Central File; GREEN ▭ Inmate; YELLOW ▭ Institution Use

**Ex. F**

STATE OF CALIFORNIA
CDC 1030 (12/86)

DEPARTMENT OF CORRECTIONS

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER    C43165                 INMATE NAME:    ACUNA, ARCADIO

1) Use of Confidential Information.

   Information received from a confidential source(s) has been considered in the:

   a) CDC-115, Disciplinary Report dated _____ submitted by

   _____
                                    STAFF NAME, TITLE

   b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2) Reliability of Source.

   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.
   This information is considered reliable because:

   a) ☐ This source has previously provided confidential information which has proven to be true.

   b) ☐ This source participated in and successfully completed a Polygraph examination.

   c) ☒ More than one source independently provided the same information.

   d) ☒ This source incriminated himself/herself in a criminal activity at the time of providing the information.

   e) ☒ Part of the information provided by the source(s) has already proven to be true.

   f) ☐ Other (Explain) _____

   _____

3) Disclosure of information received.

During a debriefing interview, an EME associate reported that Acuna was one of the Mexican Mafia's
representatives in PBSP B Facility, and was slashed across the face by a Northern Hispanic inmate
when he was eating in the dining room. After Acuna arrived at PBSP Administrative Segregation Unit,
he wrote to EME associate "Gusi" Gustavo Flores C62331 of Rivas and directed an assault on
"Wolfie" Louis Robles D11016 of Casa Blanca because Robles failed to warn or assist Acuna when
he was assaulted in the Dining Room. Instead, Robles was cleared of any wrongdoing by other EME
associates. The source identified Acuna as "Cadio" of Cucamonga.

(If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material
folder). _____

   Confidential Memorandum dated February 1, 1993 in confidential section of C-File

D. T. Hawkes, Correctional Counselor II                          June 2, 2006
                STAFF SIGNATURE, TITLE                           DATE DISCLOSED
              DISTRIBUTION: WHITE ☐ Central File; GREEN ☐ Inmate; YELLOW ☐ Institution Use

STATE OF CALIFORNIA                                              DEPARTMENT OF CORRECTIONS
CDC 1030 (12/86)

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER    C43165                    INMATE NAME:    ACUNA, ARCADIO

1)  Use of Confidential Information.

   Information received from a confidential source(s) has been considered in the:
                                                                            submitted by
      a) CDC-115, Disciplinary Report dated _____

      _____
                              STAFF NAME, TITLE

      b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2)  Reliability of Source.

   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

   This information is considered reliable because:

   a) ☐ This source has previously provided confidential information which has proven to be true.

   b) ☐ This source participated in and successfully completed a Polygraph examination.

   c) ☒ More than one source independently provided the same information.

   d) ☒ This source incriminated himself/herself in a criminal activity at the time of providing the information.

   e) ☒ Part of the information provided by the source(s) has already proven to be true.

   f) ☐ Other (Explain) _____
      _____

3)  Disclosure of information received.

This is a debriefing interview with an EME associate. The source identified Acuna as an EME associate known as "Cadio" of Cucamonga. He stated Acuna was assaulted in the B4 Dining Room in 1990 by a gang rival, a Northern Hispanic (identified in the report as NS member "Oso" Gerald Winston D51285)

(if additional space needed, attach another sheet.)

4)  Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material

folder). _____

   Confidential Memorandum dated February 10, 1995 in confidential section of C-File

_D. T. Hawkes_ (signature)

D. T. Hawkes, Correctional Counselor II                    June 2, 2006
          STAFF SIGNATURE, TITLE                          DATE DISCLOSED
      DISTRIBUTION: WHITE ▭ Central File; GREEN ▭ Inmate; YELLOW ▭ Institution Use

STATE OF CALIFORNIA                                        DEPARTMENT OF CORRECTIONS
CDC 1030 (12/86)

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER   C43165                INMATE NAME:   ACUNA, ARCADIO

1) Use of Confidential Information.

Information received from a confidential source(s) has been considered in the:

a) CDC-115, Disciplinary Report dated _____ submitted by

_____
STAFF NAME, TITLE

b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2) Reliability of Source.

The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

This information is considered reliable because:

a) ☐ This source has previously provided confidential information which has proven to be true.

b) ☐ This source participated in and successfully completed a Polygraph examination.

c) ☒ More than one source independently provided the same information.

d) ☒ This source incriminated himself/herself in a criminal activity at the time of providing the information.

e) ☒ Part of the information provided by the source(s) has already proven to be true.

f) ☐ Other (Explain) _____

3) Disclosure of information received.

A Northern Structure member reported during a debriefing interview that Acuna was assaulted at PBSP B Facility in 1990 by "Oso" Gerald Winston D51285, because Acuna was an EME associate and had directed assaults against Northern Hispanic inmates at PBSP Facility A.

(If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material folder). _____

Confidential Memorandum dated March 29, 2004 in confidential section of C-File

D. T. Hawkes, Correctional Counselor II                    June 2, 2006
STAFF SIGNATURE, TITLE                                        DATE DISCLOSED

DISTRIBUTION: WHITE ☐ Central File; GREEN ☐ Inmate; YELLOW ☐ Institution Use

STATE OF CALIFORNIA                                            DEPARTMENT OF CORRECTIONS
CDC 1030 (12/86)

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER    C43165      INMATE NAME:    **ACUNA, ARCADIO**

1) Use of Confidential Information.

     Information received from a confidential source(s) has been considered in the:

     a) CDC-115, Disciplinary Report dated _____ submitted by

     _____
                                STAFF NAME, TITLE

     b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____.

2) Reliability of Source.

     The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

     This information is considered reliable because:

     a) ☐ This source has previously provided confidential information which has proven to be true.

     b) ☐ This source participated in and successfully completed a Polygraph examination.

     c) ☒ More than one source independently provided the same information.

     d) ☒ This source incriminated himself/herself in a criminal activity at the time of providing the information.

     e) ☒ Part of the information provided by the source(s) has already proven to be true.

     f) ☐ Other (Explain) _____

3) Disclosure of information received.

A validated EME associate reported that Acuna and "Jo Jo" (identified as EME associate Anthony Sisneros D68626) of Trece Locos were directing the gang activities in PBSP ASU in 1990. Acuna was identified as providing weapons to other EME associates. The source identified Acuna as an EME associate known as "Cadio" of Cucamonga.

(If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material folder). _____

   Confidential Memorandum dated March 5, 2002 in confidential section of C-File

_D.T. Hawkes_

D. T. Hawkes, Correctional Counselor II              June 2, 2006
             STAFF SIGNATURE, TITLE                      DATE DISCLOSED

DISTRIBUTION: WHITE ▭ Central File; GREEN ▭ Inmate; YELLOW ▭ Institution Use

STATE OF CALIFORNIA                                    D    TMENT OF CORRECTIONS
CDC 1030 (12/86)

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER    C43165              INMATE NAME:    ACUNA, ARCADIO

1) Use of Confidential Information.

   Information received from a confidential source(s) has been considered in the:

   a)  CDC-115, Disciplinary Report dated _____ submitted by

   _____
                              STAFF NAME, TITLE

   b)  CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2) Reliability of Source.

   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

   This information is considered reliable because:

   a) ☐  This source has previously provided confidential information which has proven to be true.

   b) ☐  This source participated in and successfully completed a Polygraph examination.

   c) ☐  More than one source independently provided the same information.

   d) ☐  This source incriminated himself/herself in a criminal activity at the time of providing the information.

   e) ☐  Part of the information provided by the source(s) has already proven to be true.

   f) ☒  Other (Explain) _____

   ____ Coded communication from EME member Ruben Hernandez C04672 to Acuna ____

3) Disclosure of information received.

This documents the misuse of legal assistance between inmates for the purpose of EME member
"Tupi" Ruben Hernandez C-04672 to pass along a coded message on January 26, 1994, to Acuna. In
the message, Hernandez made reference to "Estrada v. Cucamonga 94 Daily Journal 237. Tudy
made out alright. 7 years." Hernandez referenced a volume of the Daily Journal that did not exist in
order to pass along information to Acuna about EME member "Tudy" Arthur Estrada C63175 (now
V26050) of Cucamonga.

(If additional space needed, attach another sheet.)

4)  Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material
folder). _____

____ Confidential Memorandum dated January 31, 1994 in confidential section of C-File ____

*D. T. Hawkes* (signature)

D. T. Hawkes, Correctional Counselor II                              June 2, 2006
              STAFF SIGNATURE, TITLE                                 DATE DISCLOSED
              DISTRIBUTION:  WHITE ∞ Central File;  GREEN ∞ Inmate;  YELLOW ∞ Institution Use

STATE OF CALIFORNIA                                                                    DEPARTMENT OF CORRECTIONS
CDC 1030 (12/86)

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER    C43165                    INMATE NAME:    ACUNA, ARCADIO

1) Use of Confidential Information.

    Information received from a confidential source(s) has been considered in the:

    a) CDC-115, Disciplinary Report dated _____    submitted by

    _____

STAFF NAME, TITLE

    b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2) Reliability of Source.

    The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.
    This information is considered reliable because:

    a) ☐ This source has previously provided confidential information which has proven to be true.

    b) ☐ This source participated in and successfully completed a Polygraph examination.

    c) ☒ More than one source independently provided the same information.

    d) ☒ This source incriminated himself/herself in a criminal activity at the time of providing the information.

    e) ☒ Part of the information provided by the source(s) has already proven to be true.

    f) ☐ Other (Explain) _____

3) Disclosure of information received.

This documents an interview with an EME associate. The source identified Acuna as "Cadio" of Cucamonga, and reported that Acuna was recently (1993) granted EME membership. The source also reported that Acuna's crime partner was "Huero" Marco Ramirez C55431 of Ontario, who was assaulted at PBSP B Facility by EME associates for becoming a "Christian."

(If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material folder). _____

    Confidential Memorandum dated May 13, 1993 in confidential section of C-File _____

*D. T. Hawkes*

D. T. Hawkes, Correctional Counselor II                                          June 2, 2006
STAFF SIGNATURE, TITLE                                    DATE DISCLOSED

DISTRIBUTION: WHITE ɷ Central File; GREEN ɷ Inmate; YELLOW ɷ Institution Use

STATE OF CALIFORNIA
CDC 1030 (12/86)

DEPARTMENT OF CORRECTIONS

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER    C43165          INMATE NAME:    ACUNA, ARCADIO

1) Use of Confidential Information.

Information received from a confidential source(s) has been considered in the:

a) CDC-115, Disciplinary Report dated _____  submitted by

_____
STAFF NAME, TITLE

b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2) Reliability of Source.

The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

This information is considered reliable because:

a) ☐ This source has previously provided confidential information which has proven to be true.

b) ☐ This source participated in and successfully completed a Polygraph examination.

c) ☐ More than one source independently provided the same information.

d) ☐ This source incriminated himself/herself in a criminal activity at the time of providing the information.

e) ☐ Part of the information provided by the source(s) has already proven to be true.

f) ☒ Other (Explain) _____
        Letter from Gavaldon C15377 to Gavaldon C15376

3) Disclosure of information received.

In a letter from EME associate "Little Spider" Roy Gavaldon C15377 to his brother, EME member "Big Spider" David Gavaldon C15376, the younger Gavaldon informs his brother that Acuna received a letter from a lawyer who has an office in his area. Included with the letter was a birthday greeting card for David Gavaldon signed by various EME associates, including Acuna. Acuna's message to Gavaldon, with portions in Spanish translated, stated the following "With all my respect, I send you greetings. Hope to see you again soon. Your pal, Cadio." The letter contained coded information (numbers written in Nahuatl), references to several EME members, names of people who were just granted EME membership, and other EME gang-related messages.

(If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material folder): _____

  Confidential Memorandum dated October 29, 1992 in confidential section of C-File

_D. T. Hawkes_                                    June 2, 2006
D. T. Hawkes, Correctional Counselor II                DATE DISCLOSED
              STAFF SIGNATURE, TITLE
              DISTRIBUTION: WHITE ☐ Central File;  GREEN ☐ Inmate;  YELLOW ☐ Institution Use

STATE OF CALIFORNIA
CDC 1030 (12/86)

DEPARTMENT OF CORRECTIONS

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER    C43165                    INMATE NAME:    ACUNA, ARCADIO

1)  Use of Confidential Information.

    Information received from a confidential source(s) has been considered in the:

    a)  CDC-115, Disciplinary Report dated _____ submitted by

    _____
                                   STAFF NAME, TITLE

    b)  CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2)  Reliability of Source.

    The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

    This information is considered reliable because:

    a) ☐  This source has previously provided confidential information which has proven to be true.

    b) ☐  This source participated in and successfully completed a Polygraph examination.

    c) ☒  More than one source independently provided the same information.

    d) ☒  This source incriminated himself/herself in a criminal activity at the time of providing the information.

    e) ☒  Part of the information provided by the source(s) has already proven to be true.

    f) ☐  Other (Explain) _____

3)  Disclosure of information received.

This is an interview with an EME associate, who identified Acuna as an active EME associate. Acuna
is referenced on a list as an EME associate.  No specific gang activity is identified.

(If additional space needed, attach another sheet.)

4)  Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material
folder): _____

    Confidential Memorandum dated August 31, 1990 in confidential section of C-File

_D. T. Hawkes_____
D. T. Hawkes, Correctional Counselor II
        STAFF SIGNATURE, TITLE

June 2, 2006
DATE DISCLOSED

DISTRIBUTION: WHITE ▭ Central File;  GREEN ▭ Inmate;  YELLOW ▭ Institution Use

STATE OF CALIFORNIA                                              DEPARTMENT OF CORRECTIONS
CDC 1030 (12/86)

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER   C43165                    INMATE NAME:   ACUNA, ARCADIO

1)  Use of Confidential Information.

    Information received from a confidential source(s) has been considered in the:

    a)  CDC-115, Disciplinary Report dated _____ submitted by

    _____
                                STAFF NAME, TITLE

    b)  CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2)  Reliability of Source.

    The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

    This information is considered reliable because:

    a) ☐  This source has previously provided confidential information which has proven to be true.

    b) ☐  This source participated in and successfully completed a Polygraph examination.

    c) ☒  More than one source independently provided the same information.

    d) ☒  This source incriminated himself/herself in a criminal activity at the time of providing the information.

    e) ☒  Part of the information provided by the source(s) has already proven to be true.

    f) ☐  Other (Explain) _____
    _____

3)  Disclosure of information received.

This is a debriefing interview with an EME associate, who identified Acuna as an EME associate he knew as "Carrio." The source stated that Acuna may have been involved in the riot that took place at California State Prison Sacramento County on May 25, 1989 (referring to the EME gang-related assault on Black inmates).

(If additional space needed, attach another sheet.)

4)  Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material folder). _____

   Confidential Memorandum dated September 20, 1989 in confidential section of C-File _____

*D. T. Hawkes* (signature)

D. T. Hawkes, Correctional Counselor II                           June 2, 2006
      STAFF SIGNATURE, TITLE                                    DATE DISCLOSED
      DISTRIBUTION: WHITE ∞ Central File;  GREEN ∞ Inmate;  YELLOW ∞ Institution Use

STATE OF CALIFORNIA
CDC 1030 (12/86)

DEPARTMENT OF CORRECTIONS

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER **C43165**     INMATE NAME: **ACUNA, ARCADIO**

1) Use of Confidential Information.

   Information received from a confidential source(s) has been considered in the:

   a) CDC-115, Disciplinary Report dated _____ submitted by

   _____
                                  STAFF NAME, TITLE

   b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2) Reliability of Source.

   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

   This information is considered reliable because:

   a) ☐ This source has previously provided confidential information which has proven to be true.

   b) ☐ This source participated in and successfully completed a Polygraph examination.

   c) ☒ More than one source independently provided the same information.

   d) ☒ This source incriminated himself/herself in a criminal activity at the time of providing the information.

   e) ☒ Part of the information provided by the source(s) has already proven to be true.

   f) ☐ Other (Explain) _____

3) Disclosure of information received.

During a debriefing interview, an EME associate identified Acuna as an EME associate he knew as
"Gladio." Acuna is referenced on a list as an EME associate. No specific gang activity is identified

(If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material
folder). _____

   Confidential Memorandum dated October 11, 1988 in confidential section of C-File

_D. T. Hawkes_____

D. T. Hawkes, Correctional Counselor II          June 2, 2006
                STAFF SIGNATURE, TITLE                    DATE DISCLOSED

DISTRIBUTION: WHITE ∞ Central File; GREEN ∞ Inmate; YELLOW ∞ Institution Use

# Ex. G

STATE OF CALIFORNIA
CDC 1030 (12/86)

DEPARTMENT OF CORRECTIONS

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER   __C43165__

INMATE NAME:   __ACUNA, ARCADIO__

1) Use of Confidential Information.

Information received from a confidential source(s) has been considered in the:

a) CDC-115, Disciplinary Report dated _____ submitted by

_____
STAFF NAME, TITLE

b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2) Reliability of Source.

The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution. This information is considered reliable because:

a)☒ This source has previously provided confidential information which has proven to be true.

b)☐ This source participated in and successfully completed a Polygraph examination.

c)☒ More than one source independently provided the same information.

d)☒ This source incriminated himself/herself in a criminal activity at the time of providing the information.

e)☒ Part of the information provided by the source(s) has already proven to be true.

f)☐ Other (Explain) _____

_____

3) Disclosure of information received.

This is a debriefing interview with an EME member, who identified Acuna as an EME associate he knew as "Cadio" of Cucamonga. Acuna is referenced on a list as an EME associate. No specific gang activity is identified.

(If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material folder). _____

   Confidential Memorandum dated June 17, 2003 in confidential section of C-File

_____
D. T. Hawkes, Correctional Counselor II
STAFF SIGNATURE, TITLE

June 2, 2006
DATE DISCLOSED

DISTRIBUTION: WHITE ∞ Central File;  GREEN ∞ Inmate;  YELLOW ∞ Institution Use

STATE OF CALIFORNIA                                                          DEPARTMENT OF CORRECTIONS
CDC 1030 (12/86)

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER    C43165              INMATE NAME:    ACUNA, ARCADIO

1) Use of Confidential Information.

    Information received from a confidential source(s) has been considered in the:

    a) CDC-115, Disciplinary Report dated _____ submitted by

    _____
                               STAFF NAME, TITLE

    b) CDC-114-D, Order and Hearing for Placement in Segregated Housing, dated _____

2) Reliability of Source.

    The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

    This information is considered reliable because:

    a) ☐ This source has previously provided confidential information which has proven to be true.

    b) ☐ This source participated in and successfully completed a Polygraph examination.

    c) ☒ More than one source independently provided the same information.

    d) ☒ This source incriminated himself/herself in a criminal activity at the time of providing the information.

    e) ☒ Part of the information provided by the source(s) has already proven to be true.

    f) ☐ Other (Explain) _____
    _____

3) Disclosure of information received.

An informant stated a conflict occurred between Marshal Smith P07620 and Acuna at CCI IV-A Law Library on December 4, 2001. When Acuna warned Smith he could receive a rule violation report if he goes behind the counter, Smith began calling Acuna a "rat" and a "snitch." According to the informant, this resulted in Smith having safety concerns from Acuna on the yard

(If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material

folder). _____

    Confidential Memorandum dated December 12, 2001 in confidential section of C-File

*D. T. Hawkes*

D. T. Hawkes, Correctional Counselor II                                  June 2, 2006
           STAFF SIGNATURE, TITLE                                    DATE DISCLOSED
           DISTRIBUTION: WHITE ▭ Central File;  GREEN ▭ Inmate;  YELLOW ▭ Institution Use

STATE OF CALIFORNIA
CDC 1030 (12/86)

DEPARTMENT OF CORRECTIONS

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER    C43165                    INMATE NAME:    ACUNA, ARCADIO

1) Use of Confidential Information.

    Information received from a confidential source(s) has been considered in the:

    a) CDC-115, Disciplinary Report dated _____ submitted by

    _____
                                STAFF NAME, TITLE

    b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2) Reliability of Source.

    The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

    This information is considered reliable because:

    a) ☐ This source has previously provided confidential information which has proven to be true.

    b) ☐ This source participated in and successfully completed a Polygraph examination.

    c) ☒ More than one source independently provided the same information.

    d) ☒ This source incriminated himself/herself in a criminal activity at the time of providing the information.

    e) ☒ Part of the information provided by the source(s) has already proven to be true.

    f) ☐ Other (Explain) _____

    _____

3) Disclosure of information received.


During a debriefing interview, an EME associate identified Acuna as an EME associate he knew as
"Arcadio" of Cucamonga. Acuna is referenced on a list as an EME associate.  No specific gang
activity is identified


                      (If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material

folder). _____

   Confidential Memorandum dated January 5, 2000 in confidential section of C-File

_D. T. Hawkes_____

D. T. Hawkes, Correctional Counselor II                                    June 2, 2006
        STAFF SIGNATURE, TITLE                                    DATE DISCLOSED

    DISTRIBUTION: WHITE ☐ Central File;  GREEN ☐ Inmate;  YELLOW ☐ Institution Use

STATE OF CALIFORNIA
CDC 1030 (12/86)

DEPARTMENT OF CORRECTIONS

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER  **C43165**          INMATE NAME:  **ACUNA, ARCADIO**

1) Use of Confidential Information.

    Information received from a confidential source(s) has been considered in the:

    a) CDC-115, Disciplinary Report dated _____ submitted by

    _____
                            STAFF NAME, TITLE

    b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2) Reliability of Source.

    The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

    This information is considered reliable because:

    a) ☐ This source has previously provided confidential information which has proven to be true.

    b) ☐ This source participated in and successfully completed a Polygraph examination.

    c) ☒ More than one source independently provided the same information.

    d) ☒ This source incriminated himself/herself in a criminal activity at the time of providing the information.

    e) ☒ Part of the information provided by the source(s) has already proven to be true.

    f) ☐ Other (Explain) _____

3) Disclosure of information received.

  During a debriefing interview, an EME associate identified Acuna as an EME associate he knew as "Cadio" of Cucamonga. Acuna is referenced on a list as an EME associate. No specific gang activity is identified.

(If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material folder). _____

  Confidential Memorandum dated March 14, 1997 in confidential section of C-File

_D. T. Hawkes_ _____          June 2, 2006
D. T. Hawkes, Correctional Counselor II                    DATE DISCLOSED
          STAFF SIGNATURE, TITLE
    DISTRIBUTION: WHITE m Central File; GREEN ☐ Inmate; YELLOW ☐ Institution Use

STATE OF CALIFORNIA
CDC 1030 (12/86)

_____TMENT OF CORRECTIONS

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER     C43165                 INMATE NAME:     ACUNA, ARCADIO

1) Use of Confidential Information.

Information received from a confidential source(s) has been considered in the:

a) CDC-115, Disciplinary Report dated _____ submitted by

_____
STAFF NAME, TITLE

b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2) Reliability of Source.

The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution. This information is considered reliable because:

a) ☐ This source has previously provided confidential information which has proven to be true.

b) ☐ This source participated in and successfully completed a Polygraph examination.

c) ☒ More than one source independently provided the same information.

d) ☒ This source incriminated himself/herself in a criminal activity at the time of providing the information.

e) ☒ Part of the information provided by the source(s) has already proven to be true.

f) ☐ Other (Explain) _____

3) Disclosure of information received.

This is a debriefing interview with an EME associate. The source reported that in 1990, Acuna was directing gang activities on behalf of the EME at the PBSP Administrative Segregation Unit. The source added that Acuna's cellmate was Manuel Aguirre C90519. The source identified Acuna as an EME associate known as "Cadio."

(If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material folder). _____

Confidential CDC 128B dated November 7, 1996 in confidential section of C-File

_D. T. Hawkes_ (signature)

D. T. Hawkes, Correctional Counselor II                                    June 2, 2006
STAFF SIGNATURE, TITLE                                                  DATE DISCLOSED

DISTRIBUTION: WHITE ☐ Central File; GREEN ☐ Inmate; YELLOW ☐ Institution Use

STATE OF CALIFORNIA
CDC 1030 (12/86)

C    ...RTMENT OF CORRECTIONS

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER    C43165                    INMATE NAME:    ACUNA, ARCADIO

1) Use of Confidential Information.

　　Information received from a confidential source(s) has been considered in the:

　　a) CDC-115, Disciplinary Report dated _____ submitted by

　　　_____
　　　　　　　　　　　　　　　　STAFF NAME, TITLE

　　b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2) Reliability of Source.

　　The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.
　　This information is considered reliable because:

　　a) ☐ This source has previously provided confidential information which has proven to be true.

　　b) ☐ This source participated in and successfully completed a Polygraph examination.

　　c) ☒ More than one source independently provided the same information.

　　d) ☒ This source incriminated himself/herself in a criminal activity at the time of providing the information.

　　e) ☒ Part of the information provided by the source(s) has already proven to be true.

　　f) ☐ Other (Explain) _____
　　　_____

3) Disclosure of information received.

During a debriefing interview, an EME associate identified Acuna as an EME associate he knew as
"Cadio" of Cucamonga. Acuna is referenced on a list as an EME associate.  No specific gang activity
is identified

(If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material

folder). _____

　Confidential Memorandum dated May 2, 1991 in confidential section of C-File _____

_D. T. Hawkes_ (signature)

D. T. Hawkes, Correctional Counselor II                          June 2, 2006
　　　　　STAFF SIGNATURE, TITLE                                DATE DISCLOSED

DISTRIBUTION: WHITE ∞ Central File;  GREEN ∞ Inmate;  YELLOW ∞ Institution Use

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS
CDC 1030 (12/86)

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER    C43165                    INMATE NAME:    **ACUNA, ARCADIO**

1) Use of Confidential Information.

   Information received from a confidential source(s) has been considered in the:

   a) CDC-115, Disciplinary Report dated _____ submitted by

   _____
   STAFF NAME, TITLE

   b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____ .

2) Reliability of Source.

   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

   This information is considered reliable because:

   a)☐ This source has previously provided confidential information which has proven to be true.

   b)☐ This source participated in and successfully completed a Polygraph examination.

   c)☒ More than one source independently provided the same information.

   d)☒ This source incriminated himself/herself in a criminal activity at the time of providing the information.

   e)☒ Part of the information provided by the source(s) has already proven to be true.

   f)☐ Other (Explain) _____

3) Disclosure of information received.

An EME associate identified Acuna as an EME associate he knew as "Cadio" of Cucamonga. Acuna
is referenced on a list as an EME associate. No specific gang activity is identified

(If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material

folder). _____

   Confidential Memorandum dated April 9, 1990 in confidential section of C-File

_D. T. Hawkes, Correctional Counselor II_                        June 2, 2006
STAFF SIGNATURE, TITLE                                           DATE DISCLOSED

DISTRIBUTION: WHITE ∞ Central File;  GREEN ∞ Inmate;  YELLOW ∞ Institution Use

# - CONFIDENTIAL -



# DOCUMENTS FILED UNDER SEAL

(Exhibit W, X, Y, Z to the Informal Response dated March 16, 2006)

# EXHIBIT 18

Arcadio Acuna #C-43165
PBSP-SHU / FD6-113
P. O. Box 7500
Crescent City, CA 95532


In pro per


        Superior Court of California
            County of Del Norte

In Re:                              ] No. HCPB 06-0535
    Arcadio Acuna,                  ]
            Petitioner.             ]
                                    ] Reply To Informal
                                    ] Response
                                    ]
On Habeas Corpus                    ]
                                    ]


        Comes Now, Petitioner Arcadio Acuna, a state prisoner
proceeding in pro se in the above entitled cause of action,
in reply to Respondent's Informal Response received by
Petitioner on Mar. 21, 2007, herein admits, denies
and alleges as follows:


    Petitioner admits that he is not challenging his criminal
conviction or sentence but brings to issue the revalidation
process that took place on July 26, 2006, that labeled
him as active associate of a prison gang after a

                    (1)

previous illegal validations that had erroneously labeled him as active "member" was overturned. Petitioner also asserts that the source items relied on do not comport to the criteria established in the Castillo Settlement Agreement and Code of Regulations.

Petitioner admits that pursuant to Calif. Code of Regulations, (CCR) Title 15, sec. 3378(f), a prisoner classified as inactive may be temporarily removed from the general population and placed in Ad Seg pending review of his gang status, but vehemently denies that a prisoner may be revalidated as active based on only one source item and sent back to the SHU to serve a minimum of six years in solitary confinement.

Petitioner asserts that CCR, sec. 3378(g) is absolutely clear on this point and expresses in mandatory language that a prisoner is entitled as a matter of due process to the same procedural protections as required in an initial validation. There is absolutely no support for Respondents contention that only one source item is required for a revalidation, and this Court need only look to the terms of the Castillo Settlement Agreement (see Petitioner's habeas petition, Exh. C) and the Department's own Memorandum dated Mar. 10, 2005 (see Petitioner's habeas petition, Exh. D), to refute Respondent's claim. [Settlement Agreement, p.4, paragraph 9, describing due process on validations and inactive reviews in terms of source items (see CCR, sec. 3378(c)(4) requiring three source items); see also Memorandum dated Mar. 10, 2005, stating at p.1, paragraph 3, that as additional

(2)

due process requirements the "same considerations" shall be given during the inactive review process". The memorandum also makes reference to new source items and establishes that in addition to the procedural safeguards cited by Respondent all other due process as required in an initial validation applies to a revalidation.]

Furthermore, Petitioner asserts that special notice should be given to the fact Respondent has now readily admitted that the current validation is based on eleven source items that do not meet the requirements for establishing current gang activity. (see Informal Response, p. 2, paragraph 4) On this basis alone, Petitioner submits that the revalidation should be held to have been illegally obtained.

## 1.

## Inactive Gang Associate May Not Be
## Revalidated Based On A Single Source Item

Respondent, while admitting that more than half of the source items actually relied on by the LEIU to classify Petitioner as an active associate do not qualify as reliable source items pursuant to the criteria contained in the Code of Regulations, nevertheless argues that the number of items used is irrelevant because according to Respondent's interpretation of the rules only one source item is required in a revalidation and to return a prisoner to the SHU for six years.

Respondent conveniently ignores the express language of CCR, sec. 3378(g), which states that all procedures relating to an initial validation must be met and makes no mention of the Castillo Settlement Agreement or the Memorandum Petitioner

(3)

provided as proof that the interpretation of relevant provisions he proffered to the Court that three independent source items are required for both an initial validation and revalidation is valid.

With all due respect Petitioner asserts that considering the liberty interests at issue and the duration and circumstances of the six years of solitary confinement that arise from a revalidation, together with a review of the language and intent of the process described in the Castillo Settlement Agreement, as a matter of law, and in the interests of justice, the Court should rule that due process in a revalidation includes the provision that three independent source items be provided that show a prisoner has been involved in verifiable acts of gang misconduct after he has been granted inactive status.

2.

### Revalidation Was Not Properly Obtained

Again, Respondent in the Informal Response freely admits that most of the source items cited in the CDC-128 B2 Gang Validation Chrono dated July 27, 2006, do not meet established revalidation requirements (see Informal Response, p. 3, paragraph 2), but then goes on to address eight of the other documents in an attempt to justify what is clearly an illegal validation.

Pointing to a confidential memo dated Oct. 05, 2005, Respondent claims that because Petitioner was referenced by name in correspondence between two other persons who wrote Petitioner may have misled yet another individual, this constitutes gang activity under provisions of the Code of Regulations. First

(4)

of all, the individual Petitioner is alleged to have misled was an inmate who was his cellmate of over a year when Petitioner was housed in the general population of CCI in Tehachapi in the year 2000, yet there is no evidence of how Petitioner may have misled him and it is pure speculation on the part of Respondent to allege that any gang activity was involved. Moreover, because Petitioner was not the author or intended recipient of the correspondence at issue no direct link exists to tie Petitioner to any specific act of gang misconduct.

The second item addressed by Respondent likewise alleges Petitioner was made reference to in a note confiscated from another prisoner that was not directed to or coming from Petitioner. Respondent speculates that this is indicative of gang activity on the part of petitioner yet cannot say that either of these two other individuals ever communicated with Petitioner. In the context of a revalidation this item cannot be accepted as evidence of gang activity.

Item Three alleges that Petitioner's name and prison number were found in the address book of a reputed gang member, and Respondent claims that this can be taken as evidence that Petitioner is actively involved in gang conduct. This is absolutely false as CCR, sec 3378(c)(8)(G) establishes that if a prisoner is found to be in possession of names and addresses of gang members or affiliates this may be used against that particular prisoner, but not against the prisoner named. It would be a gross miscarriage of justice to allow a prisoner to be subjected to six years

of solitary confinement because another prisoner had his name in his possession, especially when Respondent urges the Court to rule that only one source item is necessary to revalidate a prisoner as active.

The next item addressed by Respondent concerns yet another note written from one prisoner to another where the writer speculates that Petitioner may have been advised of a certain situation involving prison politics. This information is based completely on hearsay, and in the previous habeas proceedings the Court expressed grave concerns on whether this source item was reliable evidence of gang activity (see Order to Show Cause, case no HCPB 05-5242)

Item Number Five relates to a confidential memo dated Nov. 18, 2003, which alludes to some unidentified gang activity. Of importance to this particular source item the Court should note that while this document was available for the Jan 2004 revalidation prison officials at that time found that it did not qualify as a reliable source. For the same reasons, it should not have been relied on in the current revalidation.

Respondent next details a confidential memo dated Sept 23, 2003 which makes serious accusations of criminal conduct including drug trafficking, using drug money to gang members and targeting at least one prisoner for assault. No direct evidence was produced to support these allegations other than the self-serving statement of an informant whose reliability was established when he implicated himself

(6)

these very same activities. But more importantly, Respondent should be asked to explain why if this information is true Petitioner was never formally charged with serious misconduct in accordance with the mandatory provisions contained in CCR, sec 3312(a)(3), and issued a CDC-115 Rules Violation Report. Petitioner submits that the reason is because the information is false, and as such should not have been relied on in the revalidation process.

Item number seven alleges Petitioner was instructing other prisoners on how to communicate in code with gang members and claims Petitioner himself was corresponding with a gang member using some such code. No evidence was ever produced to support these accusations other than the self-serving statement of an informant, and Petitioner has never received a CDC-115 Rules Violation Report for any such conduct. Petitioner submits that clearly this source item does not qualify as **reliable** evidence of gang activity and should not have been relied on in the revalidation process.

As the final source item addressed by Respondent, a confidential memo dated Sept. 21, 2000, is cited, which states that Petitioner's niece came into contact with a reputed gang member at the Department of Motor Vehicles, conveyed greetings from this individual whose family Petitioner has known all his life and expressed a willingness to forward messages to this person if Petitioner so

(7)

desired. No evidence has ever been produced that Petitioner in fact corresponded with this individual either through his niece or in any other way, shape or form. In the previous habeas proceedings the Court expressed grave concerns about the reliability of this source item as evidence of gang activity (see Order to Show Cause, Case No. HCPB05-5242) As such, it should not have been relied on in the current revalidation.

In closing, Petitioner denies Respondent's allegations that only one source item was required to revalidate Petitioner as an active associate of a prison gang, submits that the current revalidation was illegally obtained because it relied on eleven source items that did not meet the requirements of the Castillo criteria and asserts that the remaining eight source items addressed by Respondent likewise do not qualify as reliable because they do not conform to the criteria contained in the Code of Regulations. Also, a review of the process at issue here clearly shows that Petitioner was erroneously classified as an active associate of a prison gang based on source items that were previously relied on to label him a "member" when the criteria for each category is wholly distinct, and that it was not until this Court in the previous habeas proceedings expressed its concerns about the revalidation process that prison officials acknowledged the evidence did not support its previous decision.

Based on all of the above, Petitioner submits that

there can be no confidence that prison officials will ever comply with the mandatory provisions contained in the Castillo Settlement Agreement and Code of Regulations in regards to the validation and revalidation processes unless and until this Court issues an Order compelling them to do so.

Accordingly, Petitioner respectfully requests that the Petition be granted, the current revalidation held to have been illegally obtained and grant any and all other relief as may be just and proper under the law.

Dated: Mar. 25, 2007                    Respectfully Submitted,


Arcadio Acuna
Arcadio Acuna # C-43165
Petitioner, In Pro Per

(9)

# EXHIBIT 19

FILED

APR 0 6 2007

SUPERIOR COURT OF CALIFORNIA
COUNTY OF DEL NORTE

APR - 5 2007

BY
SQ 2007100231

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF DEL NORTE

IN THE MATTER OF:                    )    CASE NO.: HCPB06-5235
                                     )
                                     )
ARCADIO ACUNA,                       )    ORDER DISMISSING THE PETITION
C-43165,                             )    FOR HABEAS CORPUS
                                     )
                    Petitioner,      )
                                     )
On Habeas Corpus.                    )

Petitioner is an inmate at Pelican Bay State Prison. He was previously validated as member of the Mexican Mafia prison gang. However in 2000 he was determined to be "inactive" and released from the Security Housing Unit (SHU). In a prior habeas proceeding (case number 05-5242), this Court issued an Order to Show Cause related to the department determination that he was no longer "inactive." The Court appointed counsel for Petitioner and reviewed *in camera* confidential documents used in the process of determining his active status. The Court had concerns as to the validity of some sources and the apparent failure to accord Petitioner his due process rights. The habeas petition was dismissed after the department agreed to undertake anew proceedings against Petitioner to establish his "active" status and return him to S.H.U. While the court finds no use of such term in the regulations, in common vernacular, the proceedings to reclassify

1  an inmate as active are referred to as "revalidation." This petition follows

2  exhaustion of administrative appeals related to the new revalidation.

3      The department determined that 19 documents, from 16 separate sources,

4  met the validation requirements and that eight did not. The Petitioner -- and the

5  Court -- question the usefulness of some of the documents that go back more than

6  17 years. However, the Department found "reliable" eight separate source

7  documents generated since Petitioner was found to be "inactive" in 2000.

8      Petitioner was provided with detailed 1030 confidential disclosure forms. For

9  the most part his complaints about the recent source documents are that they are

10  from sources that are "self serving." That is not a ground to find the documents

11  insufficient. Because such confidential sources are often self serving and provide a

12  high risk for false information is undoubtedly why multiple different sources are

13  required for an original validation. *See generally Madrid v. Gomez* 889 Fed. Supp.

14  1146, 1274.

15      Since the concept of "inactive" status was first recognized as a basis for

16  release from S.H.U., only one new source is required to revalidate as active an

17  inmate previously validated as a gang member or associate. See 15 Cal. Code Regs.

18  § § 3341.5 (c)(6) and 3378(f). *See also* The California State Prisoners Handbook §

19  6.21 A. Petitioner argues that the settlement in *Castillo v. Alameida* (Case No. C-

20  94·2847MJJ, U.S. Dist.Ct. for N. Cal.) and consequent changes in the regulations

21  since then require that reclassifying him as "active" requires three new independent

22  sources, rather than one. While the applicable regulations read out of context might

23  arguably lend some weight to that position, nothing in the *Castillo* order nor

24  anything this Court has read from any other source indicates that such a change

25  was intended. For instance, in the 2006 supplement to the Prisoners Handbook,

26  cited above (published by the Prison Law Office, a prisoner advocacy group),  the

27  discussion of changes ordered by the *Castillo* settlement makes no mention of any

28  such change in the number of sources needed to return a formerly inactive inmate

1   to S.H.U. Therefore, the Court finds that only one, not three, source item is required

2   to return Petitioner to active gang status and mandatory S.H.U. commitment.

3   In reviewing *in camera* the new confidential documents, the Court still has

4   reservations about the sufficiency of some of the eight new sources used in the new

5   proceedings. However, the Court determines at least one of documents, the

6   September 23, 2003, confidential memorandum, meets the reliability requirements

7   section 3378 of Title 15 of the California Code of Regulations. If it were to be

8   determined that three new validation sources were required, as Petitioner argues,

9   further review of the other source documents would be necessary.

10   The Petition for Writ of Habeas Corpus is therefore denied.

11   DATED: ____APR 0 6 2007____



WILLIAM H. FOLLETT
Judge of the Superior Court

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE BY MAIL (1013a, 2015.5 C.C.P)

I am a citizen of the United States and a resident of the County of Del Norte. I am over the age of eighteen (18) years and am not a party to the entitled action; my business address is 450 H St, Crescent City California 95531.

On Friday, April 06, 2007, I served a copy of the **ORDER DISMSSING PETITION FOR WRIT OF HABEAS CORPUS, FILED 04/06/07** by depositing a true copy in the United States mail in Crescent City, California, in a sealed envelope with postage prepaid, addressed as follows:

Arcadia Acuna, C-43165
C/O Pelican Bay State Prison
P.O. Box 7500
Crescent City, CA 95531

William J. Barlow
Attn: Litigation Department
P.O. Box 7500
Crescent City, CA 95531

Jessica Blonien
Deputy Attorney General
P.O. Box 944255
Sacramento, CA 94244-2550

I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and that it was executed at Crescent City, California this date.

DATED: April 6, 2007

J. McCubbin
_____
Jamie McCubbin
Judicial Assistant

# EXHIBIT 20

```
ID-DSPRC8                    DEL NORTE SUPERIOR COURT                    PAGE  1
DATE  6/09/08        CASE#: DN SU HC-PB-06-0005235-000               TIME 15:44
```

```
TYPE: PELICAN BAY HABEAS CORPUS          STATUS: CLOSED               4/06/07
      ACUNA, ARCADIO VS. HOREL, ROBERT A. WARDEN
      -----------JUDGE -----------            --PARTY #--
CURRENT: FOLLETT, WILLIAM H
                                         ------------ATTORNEYS-------------
PT 001: ACUNA, ARCADIO C-43165           NONE
        VS.
RS 002: HOREL, ROBERT A  (WARDEN)        ATTORNEY GENERAL,
-------------------------------------------------------------------------------
                                   ISSUES
-------------------------------------------------------------------------------
                               MAJOR EVENTS
12/13/06 HABEAS CORPUS PET.                                     CRT6051000
 4/06/07 ORDER DENYING WRIT                                     CRT7937000
 4/06/07 DATE CLOSED     DISPOSITION:  ORDER DENYING WRIT
-------------------------------------------------------------------------------
FILING                          PROCEEDINGS
DATE      EVENT            COMMENT          EVENT DATE      PERSON/PARTY
12/13/06 HABEAS CORPUS PET.                                     CRT6051000
         HABEAS CORPUS PETITION FILED
12/13/06 FILE TRACKING                                          CRT6051000
         FILE LOCATED AT: FOLLETT
 1/17/07 REQ. INFORM. RES.                                      CRT7937000
         REQUEST FOR INFORMAL RESPONSE
 1/17/07 TRACKING            TO JAMIE      FOR:  2/16/07  6:00 CRT7937000
 DISPOSITION: VACATE
         TRACKING PURPOSE ONLY  CLERK TO REVIEW
 2/21/07 FILE TRACKING                                          CRT7937000
         FILE LOCATED AT: on Jamie's Desk
 2/28/07 TRACKING            TO JAMIE      FOR:  3/19/07  6:00 CRT7937000
 DISPOSITION: VACATE
         TRACKING PURPOSE ONLY  CLERK TO REVIEW
 3/20/07 FILED                                                  CRT9875000
         Informal response filed.
 3/21/07 TRACKING            TO JAMIE/IR BY IN FOR:  4/04/07  6:00 CRT7937000
 DISPOSITION: VACATE
         TRACKING PURPOSE ONLY  CLERK TO REVIEW
 3/21/07 FILE TRACKING                                          CRT7937000
         FILE LOCATED AT: on Wall
 3/27/07 FILED                                                  CRT9875000
         Reply to informal response.
 3/28/07 FILE TRACKING                                          CRT9875000
         FILE LOCATED AT: to judge Follett for review
 4/06/07 MINUTE ORDER                                           CRT7937000
         MINUTE ORDER (See Order)
 4/06/07 ORDER DENYING WRIT                                     CRT7937000
         ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
 4/06/07 FILE TRACKING                                          CRT7937000
         FILE LOCATED AT: on Wall
```