Arcadio S. Acuna #C-43165
Pelican Bay State Prison
P.O. Box 7500 / FC-10-124
Crescent City, CA  95532

FILED

08 AUG 25 PM 1:53

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

In Pro Per

In the United States District Court
For the Northern District of California

Arcadio S. Acuna,
              Plaintiff,

      v.

Lea Ann Chrones et. al.,
              Defendants.

No C-07-5423 VRW (PR)

Opposition to Defendant's
Motion to Dismiss the
Complaint

Comes Now, Plaintiff Arcadio S. Acuna, a state prisoner proceeding in pro se in the above entitled Cause of Action, herein submits this Opposition to Defendant's Motion to Dismiss the Complaint received on June 23, 2008, asserting that as a matter of law the Complaint should not be dismissed because he has exhausted administrative remedies on all claims, asserts that dismissal under the doctrines of res judicata and collateral estoppel is not proper under the law, and submits Defendants are not entitled to Qualified Immunity.

(1)

This Opposition is based upon the attached Memorandum of Points and Authorities, the Complaint, declarations and exhibits filed in support thereof, and all other pleadings and papers filed in the case. Plaintiff also requests the Court afford his pleadings and papers the liberal construction due pro se prisoner litigants. (See Haines v. Kerner, 404 U.S. 519 (1972)), and asks that the factual allegations raised in the Complaint be construed as true and in a light most advantageous to Plaintiff, drawing all reasonable references in his favor. (See e.g. Gompper v. VISX, Inc., 298 F.3d 843, 896 (9th cir. 2002); Two Rivers v. Lewis, 174 F.3d 987, 991 (9th cir 1999)).

Dated: 8/17/08 _____     Respectfully Submitted,

_____

Arcadio S. Acuna, Plaintiff
In Pro Per


<u>Memorandum of Points and Authorities</u>

To begin with, Plaintiff asserts that in the Motion to Dismiss Defendants base their argument on an erroneous and important misstatement of fact. Defendants incorrectly claim that Plaintiff was re-validated as an associate of a prison gang on two seperate occasion, in 2004 and 2006. (See Motion, p.3:13-25) This is false because the

record shows that in 2004 Plaintiff for the first time during his current long term of incarceration was validated (not re-validated) as a "member" of a prison gang. (see Complaint, Exhibit-E, ¶ 23)

This point is absolutely critical to these proceedings because the criteria for a first-time validation as a member opposed to re-validation as an active associate after in-active status is granted is wholly different, was clearly established in 2004, and the consequences for each classification are worlds apart. Moreover, in order to have validated Plaintiff as a member, documentary evidence was required showing he had been actually accepted into membership in the form of at least three independent source items indicative of membership with at least one source item being a direct link to a current or former validated member or associate. (see Calif. Code of Regulations, Title 15, Div. 3, § 3378 (c)(3)).

A review of the record here shows that not a shred of evidence was ever presented indicating Plaintiff was accepted into membership of a prison gang. In fact, Defendant Hawke readily declared the evidence did not support such a finding (see Defendants' Exhibit-6, part 4 of 4, chrono dated June 05, 2006), and prison officials during habeas proceedings acknowledged Plaintiff should not have been validated as a member. (see Defendants' Exhibit-6, part 1 of 4, Return p.3, n.1)).

The significance of Defendants' misstatement of fact

thus arises from a showing that acting under color of
state law, in their individual capacities, each Defen-
dant Knowingly put in force, or otherwise approved an
illegal validation that was obtained in violation of
clearly established law. (see e.g. Superintendent v.
Hill, 472 U.S. 445, 455 (1985); Toussaint v. McCarthy,
801 F.2d 1080, 1100 (9th cir. 1986); Madrid v. Gomez,
889 F.Supp. 1146, 1273 (N.D. Calif. 1995)).

### The Parties

Contrary to Defendants' allegation, Plaintiff provided
evidence Defendants Woodford, Alameida and Chrones
took direct action against him by the responses they
provided to the institutional appeals at the Director's
Level of Review. (see Complaint, Exhibit-F, p.40; Exhibit-
H, p.40) By these responses a showing was made
they knew of, were responsible in part for the viola-
tion of constitutional rights suffered by Plaintiff, and
failed to prevent them.

Likewise, Defendants Kirkland and Hunter by their
responses to the institutional appeal took direct action
against Plaintiff in that they were made aware of
the violation of Plaintiff's constitutional rights and
denial of due process, failed to prevent them, and so
were responsible for the harm suffered by Plaintiff.
(see Complaint, Exhibit-F, p.47; Exhibit-H, pp.58-59)

Defendant Grannis, by the response he provided
to the institutional appeal took direct action against
Plaintiff in that he was made aware of the

(4)

violation of clearly established constitutional rights and denial of due process suffered by Plaintiff, failed to prevent them and in turn was responsible for the harm suffered by Plaintiff. (see Complaint, Exhibit-H, p.60; Defendants' Exhibit-1, part 2 of 2, memos dated Dec. 20, 2004 and May 24, 2005.)

Defendant Garcilazo at times mentioned in the Complaint was assigned as an Institutional Gang Investigator, and held the rank of Correctional Lieutenant. (see Complaint, Exhibit-E, p. 23) In this capacity he was a supervisor within the gang unit and knew of the criteria necessary to validate Plaintiff as a member of a prison gang and the due process required when he subjected Plaintiff to the validation process. (see e.g. Calif. Code of Regulations, Title 15, Div. 3, section 3378, et. seq.; see also Toussaint v. McCarthy, supra., 801 F.2d at 1104).

Defendants Luper, Hawke, Williams and Fisher, assigned to various supervisory positions within the gang unit, knew of the criteria required to validate Plaintiff as a member of a prison gang, were made aware that the documentary evidence relied on did not support the validation, and were specifically put on notice that Plaintiff was falsely accused of being a member by Defendant Garcilazo in retaliation for his refusal to become an informant. (see Defendants' Exhibit-6, part 4 of 4, Memos A and B, dated June 01, 2006.)

(5)

<u>Defendants' Summary of the Allegations</u>
<u>In the Complaint</u>

The 2004 Validation

Plaintiff asserts that Defendants misstatement of fact that he was revalidated as an associate of a prison gang on two seperate occasions in 2004 and then in 2006, and their reliance on this misstatement in their argument shows that the Motion to Dismiss the Complaint is fundamentally flawed.

Defendants attempt to apply the legal standards applicable to a re-validation as an active associate after in-active status has been granted to a first-time validation as an actual member. This argument is not supported by the law and requires denial of the Motion to Dismiss the Complaint.

Moreover, because Defendants have provided no evidence to rebutt Plaintiff's declaration that Defendant Garcilazo initiated the validation process in retaliation for his refusal to become an informant, as a matter of law, the retaliation claim must be accepted as true. This in turn establishes that Plaintiff has presented a cognizable claim likely to succeed on the merits. (See <u>Two Rivers</u> v. <u>Lewis</u>, supra., 174 F.3d at 991.)

Furthermore, Plaintiff asserts that the Superior Court in habeas proceedings HCPB 05-5242, did specifically rule that he had been denied due process and that the evidence relied on did not support the decision

(6)

he was a member of a prison gang. (see Defendants' Exhibit-8, Order dated July 26, 2006.

But, Plaintiff submits that the Superior Court did not make a final ruling on the merits of the claims because it dismissed the petition and withdrew its Order to Show Cause after prison officials filed a Brief arguing the issues were moot because a re-validation was then in progress. (see Defendants' Exhibit-11.) Moreover, it must be noted, and emphasized, that prison officials during these habeas proceedings admitted some 2 1/2-years after the fact, and after exhaustive challenges, that Plaintiff should not have been validated as a member of a prison gang (see Defendants' Exhibit-6, part 1 of 4, Return, p 3, n.1)

The 2006 Re-validation

After the Superior Court in case no. HCPB 05-5242 indicated due process had been denied in the 2004 validation and the evidence did not support the decision Plaintiff is a member of a prison gang, Defendant Hawke, in his capacity as Institutional Gang Investigator, Correctional Counselor II, conducted a re-validation in 2006. This process, pursuant to clearly established criteria required that Plaintiff's conduct after he was granted in-active status in 2000 be evaluated to determine if evidence existed showing he had been involved in verifiable acts of misconduct shown to aid and abet, promote or further

the interests of a prison gang (see _Castillo v. Alameida_, No. 94-2849 MJJ (N.D. Calif.)

Defendant Hawke, contrary to the criteria set forth in _Castillo_ and California Code of Regulations, submitted 27 source items as part of a validation package he sent to the Law Enforcement and Investigation Unit in Sacramento, going back as far as the year 1988. Defendants Rull, Fisher and Williams thereafter validated Plaintiff as an active associate based on documentation that did not qualify as evidence of current activity under specific provisions of the _Castillo_ decision. (see Defendants' Exhibit-9, Settlement Agreement.)

But, while it is true the Superior Court in case No. HCPB 06-5235 denied the petition challenging the 2006 re-validation of Plaintiff as an active associate of a prison gang, it is also true that of the 16 source items relied on by Defendants in the process the Court found only one it apparently felt complied with the _Castillo_ criteria. (see Defendants' Exhibit-19, Order dated Apr. 06, 2007.) As such, a showing is thereby made Plaintiff is now serving an indeterminate term of administrative segregation based on a re-validation process that relied on a document containing up to 15 source items that do not comport to clearly established statutory law.

Finally, Defendants incorrectly claim Plaintiff did not appeal the Superior Court's denial of his habeas

petitions. (see motion to Dismiss, p.5:15 ; p.6:29) of course, direct appeal of a habeas denial is not permitted under state court appellate procedures, but Plaintiff did in fact file a Petition for writ of Habeas Corpus in the California Court of Appeal. That petition was summarily denied on Aug. 07, 2007 (see attached Exhibit-1) Plaintiff thereafter filed a Petition for Review in the California Supreme Court, which was also summarily denied on Oct. 24, 2007. (see attached Exhibit-2)

## Argument

As more fully argued below, Plaintiff asserts that Defendants' motion to Dismiss the Complaint should be denied because Plaintiff has clearly stated claims for which relief can be granted. A showing has also been made that Plaintiff exhausted available administrative remedies on all claims by presenting the underlying facts to prison officials at various stages of the validation process, classification hearings, state habeas proceedings and institutional appeals. Also, Plaintiff herein pleads that in the interests of justice a procedural default sanction should not be imposed based on a pleading technicality, and asserts that as a matter of law Defendants are not entitled to qualified immunity.

## The Complaint States a Claim For which Relief May be Granted

Defendants argue that the doctrines of res judicata and collateral estoppel require dismissal of the Complaint, alleging that the primary right asserted in the state habeas petitions and Complaint are the same, and that Plaintiff has not suffered injury to more than one interest. (see Motion to Dismiss, pp 7-14)  This is incorrect because regarding the 2004 illegal validation Plaintiff showed he served approximately 2½ years in segregation based on an action that did not afford him due process, where the documentary evidence relied on did not support the finding he was a member of a prison gang, and established he was illegally validated in retaliation for his refusing to become an informant. (see Complaint, pp 3a-3d)

Moreover, the second habeas action challenged a re-validation that took place in 2006 and brought to issue that the process did not comport to the <u>Castillo</u> decision, arguing that 3-source items were required to re-validate him as an active associate. (see Complaint, pp 3e-3f)  Plaintiff herein also asserts that because Defendants abused the gang re-validation in 2006 as a ruse to cover the violation of constitutional rights Plaintiff suffered in the 2004 validation, it cannot be said their actions were lawful or served a valid penological purpose, even if they now attempt to argue Plaintiff ended up where he belongs. (<u>see</u> <u>Rizzo</u> v. <u>Dawson</u>, 778 F.2d 527, 532 (9th cir. 1985)).

Furthermore, Plaintiff asserts that contrary to Defendants' statement that the Superior Court in the second habeas action found reliable the source items relied on in the 2006 re-validation, what the Court actually ruled in its Order was that it found only one item that qualified as reliable and held that if it was later found more than one item was required, as a matter of law, it would re-visit the issue. (see Defendants' Exhibit-19, Order dated Apr. 06, 2007.) In other words, it left unresolved the question of how many source items are required under the Castillo decision, inviting the federal courts to clarify the matter by applying federal standards of law thereto.

Additionally, in their motion to Dismiss, Defendants acknowledge there is a question whether the Superior Court's dismissal of the first habeas petition permits application of the doctrines of res judicata and/or collateral estoppel to the case (see Defendants' Motion to Dismiss, p. 10:20 - 11:6) Defendants admit the law is not clear on the point and suggest the Court consider the record of the entire judicial proceedings in making its decision. (see Defendants' Motion to Dismiss, p. 10:23-24)

Plaintiff asserts that under such an analysis a review of the record clearly shows that the Superior Court did not make a final ruling on the merits in case No. HCPB 05-5242, and did not address the issue of whether Plaintiff was validated as a member of a prison gang in retaliation for his refusal to become

an informant. (see Defendants' Exhibit-13, order dated Oct. 06, 2006.)

Instead, the record shows the Superior Court issued a brief order without explanation or citation to legal authority dismissing the petition and withdrawing the Order to Show Cause after prison officials in a Supplemental brief argued the claims were moot because a re-validation had by then been undertaken. (see Defendants' Exhibit-11, p. 3: 9-24.)

Finally it is important to emphasize that the money damages Plaintiff now seeks in this 42 U.S.C. § 1983 law-suit for his unlawful validation as a member of a prison gang and violations of constitutional rights were not available in the state habeas actions. What Plaintiff sought, and received, was a ruling that the validation was illegally obtained. (see Edwards v. Balisock, 520 U.S. 641 (1997)).

<u>Defendants Woodford, Alameida, Chrones, Kirkland and Hunter are liable for violation of constitutional rights under § 1983</u>

Contrary to Defendants' allegation that Plaintiff attempts to impose liability on the named individuals through respondent superior or vicarious liability, (see Motion to Dismiss, pp. 13: 3-25) evidence was presented in the complaint that each Defendant, acting under color of state law, participated in or directed the violations, or was made aware of the violations of clearly

established constitutional rights and failed to prevent them. (see Complaint, Exhibits F, H); Taylor v. List, 880 F.2d 1040, 1045 (9th cir. 1989)).

As such, as a matter of law, the Court should not dismiss the claims as to each of the named Defendants on these grounds.

### Plaintiff Has Exhausted Retaliation Claim

Plaintiff asserts that he has exhausted all available administrative remedies on the retaliation claim because from the time he was validated as a member of a prison gang in 2004 he put prison officials on notice of Defendant Garcilazo's illegal action and the claim has always been at the heart of his arguments. He has also given Defendants numerous opportunities to dispute the fact Defendant Garcilazo submitted a validation package accusing Plaintiff of being a member of a prison gang because Plaintiff refused to become an informant. (See e.g. Exhibit-1, habeas proceedings in case No. HCPB 05-5242, part 2 of 2, pp 55-56, memos dated Aug. 29, 2005, Aug 31, 2005; Exhibit-4, Informal Response in habeas case No. HCPB 05-5242; Exhibit-6, part 4 of 4, memos dated June 05, 2006; Exhibit-7, memo dated May 14, 2004, p. 5; Exhibit-13, habeas proceedings in case No HCPB 06-5233, p 4) In spite of these numerous opportunities to address this issue Defendants have stead fastedly refused to even acknowledge it in anyway, shape or form.

Furthermore, Defendants are mistaken in stating

(13)

the retaliation claim is seperate from, and therefore
not exhausted as part of the institutional appeal that
challenged his validation as a member of a prison
gang. In essence, Defendants ask the Court to
impose a procedural default sanction on a claim
that has always been at the center of the argument
his constitutional rights were violated.

Indeed, it has been shown that less than two
weeks after he was placed in segregation, Plaintiff
on may 14, 2004, presented a written memo to a classif-
ication committee advising them of Defendant Garcilezo's
action. (see Defendants' Exhibit-7, p.5) As mentioned
above, thereafter Plaintiff gave Defendants numerous
other opportunities to rebute the claim, which they
failed to do.

Moreover, Plaintiff submits that it is clear ordinary
principles of administrative law do not justify engrafting
the procedural default into the Prison Litigation Reform Act
(PLRA), 42 u.s.c. § 199e(a) exhaustion requirement Defendents
urge the Court to adopt. It is undisputed the PLRA does
nothing to change the nature of a federal action under
§1983; prisoners who bring such actions after exhausting
their administrative remedies are entitled to de novo pro-
ceedings in federal court without any deference (on issues
of law or fact) to any ruling in the administrative
grievance proceedings.

In sum, the proceedings in this Court bear no

resemblance to appellate review of lower court decisions and the Court should not engraft a judge-made procedural default sanction into the PLRA.

The Court should also be particularly hesitant to impose "judicially-created procedural technicalities ... in a statutory scheme in which a lay-man unassisted by trained lawyers, initiated the process" (see Oscar Mayar ' Co v. Evans, 441 U.S 750 (1979)).

Additionally, Plaintiff asserts that an established exception to Defendants' argument of non-exhaustion could come from the fact that as a matter of law it is permitted to raise constitutional claims for the first time in federal court even if those claims were not properly filed before an agency (see Sims v. Apfel, 530 U.S. 103, 115 (2000) [citing Matthews v. Eldridge, 424 US 319, 329, N.10]). Because Plaintiff has raised constitutional claims, under U.S Supreme Court precedent, the Court should not as a matter of federal administrative law apply an extra-statutory waiver requirement against him.

Plaintiff also asserts that his right of access to the courts is an aspect of the First Amendment Right to petition the government for redress of grievances. (see Bill Johnson's Restaurants, Inc. v NLRB, 461 U.S 731, 741 (1983)). Accordingly, the Constitution guarantees that prisoners, such as Plaintiff, like all citizens, have a reasonable opportunity to raise constitutional claims

(15)

before impartial judges. (see e.g. <u>Lewis</u> v. <u>Casey</u>, 518 U.S. 343, 331 (1996)). Because access to the courts is a fundamental right (Id., at 346), government draws classifications that impose substantial burdens on the capacity of a group of citizens to exercise that right require searching judicial examination under the Equal Protection Clause. (see e.g. <u>Lyng</u> v. <u>Automobile</u> <u>Workers</u>, 485 U.S. 360, 370 (1988)).

Based on all of the above, Plaintiff submits that his retaliation claim should not be held to be unexhausted.

<u>Defendants Are Not Entitled to Qualified Immunity</u>

In the motion to Dismiss the Complaint Defendants incorrectly claim that the Superior Court on two seperate occasions ruled Plaintiff had not suffered any constitutional violation by his placement in the SHU to serve an indeterminate term of segregation (see Motion to Dismiss, p.18: 6-11) As previously stated, the record shows that the Superior Court in case HCPB 05-5242 specifically ruled that Plaintiff was denied due process in the 2004 action that labeled him a member of a prison gang, and that the evidence relied on did not support the decision to so label him. (see Defendants' Exhibit-8, order dated July 26, 2006.)

But, Defendants do correctly note that in order to determine whether qualified immunity applies here a two-step inquiry must be undertaken by the Court. (see <u>Saucier</u> v. <u>Katz</u>, 533 U.S. 194, 205-206 (2001)). First, it must be determined whether "taken in the

(16)

light most favorable to the party asserting the injury
... the facts alleged show the officials' conduct vio-
lated a constitutional right. (Id., at 201) Then, if
there appears to have been a violation the Court must
determine whether the right in question was clearly
established ..., in light of the specific context of the
case, not in a broad general proposition. (Id.)

    As set forth below, Plaintiff clearly has met both
prongs of the <u>Saucier</u> analysis as to each of his
claims:

<u>2004 Validation as a member</u>

1  It cannot be disputed that Plaintiff had a con-
stitutional right to due process in the action that valid-
ated him as a member of a prison gang. (<u>see</u> e.g.
<u>Superintendent</u> v. <u>Hill</u>, 472 U.S. 445, 455 (1985), <u>Toussaint</u>
v. <u>McCarthy</u>, 801 F.2d 1080, 1100 (9th cir 1986),
<u>Madrid</u> v <u>Gomez</u>, 889 F Supp 1146, 1273 (N.D Calif.
1995)).

2  It is also true that Defendants' conduct violated
clearly established statutory and constitutional rights
as defined in the above cases and set forth in
the Rules and Regulations of the Director of which
a reasonable person would have Known. (Id., Calif-
ornia Code of Regulations, Title 15, Div. 3, section 3378(c),
et seq; <u>Jeffers</u> v <u>Gomez</u>, 267 F.3d 895, 916 (9th cir.
2001) [ quoting <u>Harlow</u> v. <u>Fitzgerald</u>, 457 U.S. 800, 818(1982)]).

<u>2006 Re-validation as an active associate</u>

(17)

1. At the time Plaintiff was re-validated as an active associate of a prison gang it was clearly established he had a right to due process as defined in Settlement Agreement entered into in the case Castillo v. Alameida, et. al., No. C-94-2847-MJJ (JCS). The provisions applicable to the process were also put in force through the California Code of Regulations. (see Defendants' Exhibit-15, part 2 of 2, Notice of Change to Regulations, dated Oct. 07, 2005; Exhibit-9, Castillo Settlement Agreement, dated Sept. 21, 2004.)

2. It follows then that Defendants' conduct violated clearly established statutory and constitutional rights as identified above, especially considering that a memo was issued by Defendant Woodford on Mar. 10, 2005, to all CDCR staff specifically detailing the application of the Castillo decision to the re-validation process. (see Defendants' Exhibit-15)

Retaliation Claim

1. At the time Plaintiff was validated as a member of a prison gang in retaliation for his refusing to become an informant it was clearly established that prison officials are prohibited against retaliatory punishment for purposes of qualified immunity. (see e.g. Pratt v. Rowland, 65 F 3d 802, 808 (9th cir 1995) [citing Schroeder v. McDonald, 55 F 3d 454, 461 (9th cir 1995)]).

2. Accordingly, it can be said Defendants' conduct

violated clearly established constitutional rights of
which a reasonable person would have known.

## Conclusion

Plaintiff by this opposition denies each and
every other allegation raised by Defendants not other-
wise specifically addressed herein, and pleads that
as a matter of law the Motion to Dismiss the
Complaint should be Denied.


Dated: 8/17/08 _____ Respectfully Submitted,



_Arcadio S. Acuna_

Arcadio S. Acuna, Plaintiff
In Pro Per

(19)

# EXHIBIT "1"

COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

FILED
Court of Appeal First Appellate District

AUG - 7 2007

Diana Herbert, Clerk
By_____Deputy Clerk

In re ARCADIO ACUNA,

on Habeas Corpus.

A117757

(Del Norte County
Super. Ct. No. HCPB06-5235)

BY THE COURT:

The petition for writ of habeas corpus is denied.

Dated:    AUG - 7 2007                    KLINE, P. J.                    P.J.

1

# EXHIBIT "2"

Court of Appeal, First Appellate District, Div. 2 - No. A117757
**S155461**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

In re ARCADIO ACUNA on Habeas Corpus

The petition for review is denied.

SUPREME COURT
**FILED**

OCT 2 4 2007

Frederick K. Ohlrich Clerk

Deputy

GEORGE

Chief Justice

## PROOF OF SERVICE BY MAIL

(C.C.P. Section 101(a) # 2015.5, 28 U.S.C. 1746)

I, _Arcadio S. Acuna,_ am a resident of Pelican Bay State Prison, in the County of Del Norte, State of California. I am over eighteen (18) years of age and am a party to the below named action.

My Address is: P.O. Box 7500, Crescent City, CA 95531.

On the _17th_ day of _August_, in the year of 20 _08_, I served the following documents: (set forth the exact title of documents served)

_Opposition to Defendants' Motion to Dismiss the Complaint_

on the party(s) listed below by placing a true copy(s) of said document, enclosed in a sealed envelope(s) with postage thereon fully paid, in the United States mail, in a deposit box so provided at Pelican Bay State Prison, Crescent City, CA 95531 and addressed as follows:

_Charles J. Antonen_
_Deputy Attorney General_
_455 Golden Gate Avenue, Ste 1100_
_San Francisco, CA_
_94102-7004_

I declare under penalty of perjury that the foregoing is true and correct.

Dated this _17th_ day of _August_, 20 _08_.

Signed: _____
(Declarant Signature)

Rev. 12/06

NAME A. Acuna
CDC NO. C-43165 HOUSING C-10-124
PELICAN BAY STATE PRISON
PO BOX 7500
CRESCENT CITY, CA. 95532



CONFID

**PELICAN BAY STATE PRISON**
5905 Lake Earl Dr
Crescent City CA 95532



$ 01.51⁰
AUG 19 2008
MAILED FROM ZIP CODE 95531

U.S. Northern Dist. of Ca.
U.S. Courthouse
450 Golden Gate Ave.
San Francisco, Ca.  94102-3483

NTIAL LEGAL MAIL

